**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,

    Plaintiff,

    v.

U.S. DEPARTMENT OF JUSTICE, ET AL.,

    Defendants.

No. 19-cv-03626-DLF

<u>DECLARATION OF KARA CHRISTENSON</u>

# Contents

I.     Preliminary Information............................................................................................... 1
II.    Plaintiff's FOIA Request ............................................................................................ 3
III.   Search for Responsive Records ................................................................................. 4
    A.    BOP Search for Emails ....................................................................................... 5
    B.    BOP Search for Non-Email Records .................................................................. 9
IV.   Application of Exemptions ...................................................................................... 10
    A.    Exemption 4 – Justification for Application of Exemption ................................. 10
    C.    Exemption 5 – Justification for Application of Exemption ................................. 15
    D.    Exemption 6 – Justification for Application under FOIA ................................... 26
    E.    Exemption 7 – Justification for Threshold Requirement for Exemptions ........... 29
    F.    Exemption 7(A) – Justification for Application of Exemption ........................... 30
    G.    Exemption 7(C) – Justification for Application of Exemption............................ 37
    H.    Exemption 7(E) – Justification for Application of Exemption ........................... 38
    I.    Exemption 7(F) – Justification for Application of Exemption ........................... 39

## I.     **Preliminary Information**

I, Kara Christenson, do hereby declare and state as follows:

1.      I am employed by the United States Department of Justice ("DOJ"), Federal Bureau of Prisons ("BOP"), as a Government Information Specialist ("GIS") for Central Office, stationed at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester").  I have been assigned to Central Office since August 2016.  Prior to that time, I served as a Paralegal for the North Central Regional Office ("NCRO") from September 2008 to August 2016. From June of 1994 through September of 2008, I served as Legal Support staff for the Legal Department at FMC Rochester. I have been employed by BOP since March 1992.

2.      I am familiar with the Complaint filed by Plaintiff, Citizens for Responsibility and Ethics in Washington (hereinafter "CREW"), seeking disclosure of records sought through the Freedom of Information Act ("FOIA").

3.      The statements I make hereinafter are made on the basis of my review of the official files and records of BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.  Due to the nature of my official duties as a GIS for Central Office, I am familiar with the procedures followed by it and the NCRO in responding to requests made pursuant to FOIA.

4.      Requests for BOP records are governed by the DOJ's FOIA regulations, *see* 28 C.F.R. Part 16, BOP's FOIA regulations, *see* 28 C.F.R. Part 513, and BOP Program Statement 1351.05, Release of Information.[1]

---

[1] All BOP Program Statements referenced herein may be located at BOP's public website, www.bop.gov.

5.      Under 28 C.F.R. § 513.60, FOIA requests must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street N.W., Washington, D.C. 20534.  All FOIA requests are received by the FOIA/Privacy Act Section of the Office of General Counsel in Central Office.  Pursuant to 28 C.F.R. § 16.3(a), each DOJ component, including BOP, must also have the capability to receive requests electronically through either email or a web portal.  Requesters may submit FOIA requests electronically to BOP through their public website located at www.bop.gov or via the FOIA/PA mail referral Unit with the DOJ.

6.       If submitted to DOJ, the request is referred to the appropriate component and the timeframe for response does not begin to run until the request is actually received by the component, or ten business days after the request was received by DOJ.  *See* 28 C.F.R. § 16.5. When referred, DOJ sends a letter acknowledging receipt, assigning a tracking number and notifying the requester of the referral.

7.      Once received by BOP, a Central Office FOIA Technician will review the request to determine the likely location of the records sought.  If the records are likely to be located in Central Office, such as policy-development or contracting records, the request will be assigned to Central Office FOIA processors.  Central Office FOIA staff will scan the request, upload it into the FOIA database and assign the request a FOIA tracking number.

8.      BOP has designated different processing tracks for FOIA requests, including an expedited track for requests that have been granted expedited processing, and a complex and simple track that distinguish between requests based on the location of the documents requested, the number of pages involved in processing the request, and other factors that complicate responding to the FOIA request.  *See* 28 C.F.R. § 16.5(b).  Except for requests placed on the expedited track, BOP will ordinarily respond to FOIA requests on a first in, first out basis, according to their order of receipt. *See* 28 C.F.R. § 16.5(a).

9.      The FOIA processor assigned the FOIA request will review the request to determine where the records requested are likely to be located, and, if appropriate, will then assign a search for responsive records at the appropriate location(s).  The FOIA processor will then process the request by releasing all non-exempt information and withholding exempt information by applying applicable FOIA exemptions.

10.     Once the FOIA request is processed, the requester will be advised in writing of any denial of information, whether in part or in whole, and the reasons for the denial.  The requester will also be advised that he may appeal the denial of information to OIP.

**II.     <u>Plaintiff's FOIA Request</u>**

11.     On August 8, 2019, BOP received a FOIA request from Lauren White, who identified herself as a Press Associate for CREW.  *See* Ex. A (August 8, 2019, email from Lauren White).[2] In her request, Ms. White (hereinafter referred to as "CREW"), sought "all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards."[3] *See* Exhibit. A.[4]

12.     CREW's request was accepted by BOP and assigned FOIA Request No. 2019-05579. On August 14, 2019, BOP sent CREW an acknowledgment letter, indicating that the FOIA request

---

[2] An index of all exhibits cited in this declaration is included at the end of this document.
[3] For ease of reference, I will refer to "pentobarbital, pentobarbital sodium, or Nembutal" collectively as "Pentobarbital."
[4] CREW also indicated the request included the Office of the Attorney General, the Office of the Deputy Attorney General and the Office of the Associate Attorney General.  It is my understanding that a separate, yet identical FOIA request was also made to the U.S. Department of Justice and has been managed by DOJ's Office of Information Policy ("OIP").

had been received and was assigned to the complex processing track.  *See* Exhibit B (August 14, 2019 letter to CREW).

13.     In my prior position as a paralegal, as well as in my current position, I provide administrative and litigation assistance regarding death-penalty issues and have first-hand knowledge regarding the scope of documents maintained by BOP related to death penalty issues. Accordingly, I was assigned to process CREW's FOIA Request No. 2019-05579.

14.     Based on my knowledge of the documents requested, the nature of the documents, pending litigation regarding death penalty issues and consideration of the harm that would ensue if the requested information was disclosed, I determined that any records responsive to CREW's request would be categorically exempt from disclosure under the FOIA, pursuant to exemptions 5, 6, 7(A), 7(B), 7(C), 7(E) and 7(F). By letter dated September 30, 2019, I informed CREW of BOP's release determination and the nature of the exemptions applied. *See* Exhibit C (September 30, 2019 Response Letter).  I also advised CREW of the right to appeal BOP's determination to DOJ's Office of Information and Policy ("OIP").  *Id.*

15.     On October 10, 2019, Anne Weismann, Chief FOIA Counsel for CREW, filed an appeal with OIP regarding BOP's total withholding of the documents responsive to FOIA Request No. 2019-05579.  *See* Exhibit D (Oct. 10, 2019 CREW letter).  The appeal was assigned Appeal No. DOJ-AP-2020-000362.  *Id.*  On February 19, 2020, OIP issued its response indicating that it had been informed that CREW had filed a lawsuit concerning BOP's actions in the United States District Court for the District of Columbia.  Exhibit E (February 19, 2020 OIP Determination Letter). As a result, and pursuant to DOJ regulations, OIP closed CREW's appeal because the FOIA request was the subject of litigation.  *See id*.

16.     CREW's Complaint, filed December 4, 2019, challenges BOP's withholding of records responsive to FOIA Request No. 2019-05579, which seeks information about the procurement of Pentobarbital.  *See* Compl. ¶ 2, Doc. 1.

## III.     Search for Responsive Records

### A.  BOP Search for Emails

17.     CREW's FOIA request, seeking records related to BOP's procurement of Pentobarbital, specifically requested a search for responsive records regardless of format, to include email communications and any attachments to emails. *See* Ex. A (FOIA Request No. 2019-05579).

18.     BOP uses a Novell GroupWise email system to provide internal and external email communication by staff.  To archive email, BOP also uses the Netmail Email Archive System ("Netmail").  Netmail collects email content directly from GroupWise and saves it into its separate system in an SML file format, preserving applicable metadata in the corresponding property page. Regular email messages are flagged for a seven-year retention period and emails flagged as trash are subject to a 45-day retention period.

19.     Via Netmail, BOP staff email is ordinarily searchable using names, date ranges, and specific search terms.  After the email is searched and responsive email is located and collected, that email can be exported from Netmail for review purposes and will automatically include the corresponding property page(s), which provide tracking information for the email.

20.     To search for emails responsive to a FOIA request, a network administrator must log into Netmail, identify the staff member's email to be searched by the staff member's network user ID, and then conduct a search against their archive based on defined search terms and dates provided by the FOIA requester.  After the search is completed and saved, the responsive email must be exported to a reviewable file format.  This process must be repeated for every identified staff member.

21.     In drafting the scope of the email search, I first identified key custodians (either current or former BOP staff) based on my personal knowledge, as well as in consultation with Central Office and NCRO staff who oversee the United States Penitentiary located in Terre Haute, Indiana ("USP Terre Haute"), where executions for BOP inmates are performed.  The twelve (12) custodians I identified were all involved in the procurement of Pentobarbital during the relevant time frame.

22.     After identifying key custodians, I also identified key words intended to generate responsive records based on CREW's FOIA request.  I developed these search terms based on my personal knowledge, as well as in consultation with current and former BOP personnel knowledgeable about BOP's efforts to procure Pentobarbital.

23.     After determining the scope of the search request based on CREW's FOIA request, I provided the network administrator the following search parameters:

      a.     <u>Date Range</u>:  February 14, 2019, through August 8, 2019.[5]

      b.     <u>Search Terms</u>:  I requested separate searches for each  of the twelve (12) custodian for each of the following broad terms:

            (1)     "Pentobarbital"
            (2)     "Nembutal"
            (3)     "pento"

      c.     <u>Directories</u>:  twelve (12) current or now retired staff members.

24.     By identifying these particular staff, and utilizing the broad search terms, I was reasonably certain that all communication concerning the procurement of Pentobarbital from the relevant time would be located. In reviewing the records returned in the email search, I am reasonably certain all responsive records were located.

---

[5] Since CREW's request sought records from February 14, 2019, to the present, the search parameters were defined as February 14, 2019, through August 8, 2019, the date that the search was initiated.

25.     Using the search procedures described above and the parameters I provided, the network specialist conducted the email search.  One thousand-two-hundred-forty-eight (1,248) emails were located and provided to me for processing.

### 1. <u>Nonresponsive and Duplicative Email Records</u>

26.      Due to the broad terms used in the attempt to obtain all responsive emails and the fact that many emails included multiple custodians whose directories were searched, several of the email records retrieved in the search were either nonresponsive to the FOIA request or duplicative of other records retrieved in the search.

27.     I reviewed each of the 1,248 emails provided by the network administrator who performed the search and eliminated nine-hundred-seventy (970) emails because they were entirely duplicative of other records, were blank pages, or were entirely non-responsive to the FOIA request.

28.     I deemed an email nonresponsive when it merely forwarded a hyperlink to a public news article that contained one of the search terms and contained no text in the body of the email, or if the body of the email contained only perfunctory content such as "FYI" or instructions regarding where or how to file the hyperlinked article.  I also deemed an email record nonresponsive if the email content was completely unrelated to the subject of the FOIA request (i.e., did not discuss BOP's procurement of Pentobarbital during the relevant time).  For instance, I deemed emails nonresponsive that contained case summaries with one of the search terms, but did not provide further information responsive to the request. I also deemed property pages nonresponsive, as they merely recited the sender(s), recipient(s), and subject line of the email, and contained other nonresponsive information; they did not contain substantive comments or any portion of the body of the email itself.  Finally, I deemed generic email attachment cover sheets as nonresponsive, as

they contained no substance information.  For example, a generic email attachment cover sheet that read "Mail Attachment image001.png" was deemed nonresponsive.

### 2.  Categorization of Remaining Email Records

29.    I then conducted a review of the remaining two-hundred-seventy-eight (278) emails, which consisted of two-thousand-three-hundred-ten (2,310) pages of potentially responsive records. During this review, I categorized and identified email records by dividing each email chain into individual email records.  I considered each email, even if contained among a chain of several emails, to be one (1) record.  For instance, an email from a sender to the recipient(s) would be considered one record.  The response from a recipient to the sender would be considered a second record, and so on.

30.    If an email record within a chain of emails was deemed responsive, I assigned it a record number.  If an email record within a chain of emails was deemed duplicative of a responsive record that had already been assigned a record number, I assigned the duplicate record its own record number, marked it as duplicative, and included a reference to the original record number.

31.    Based on my review of the email records, I identified 1095 email records that were responsive to CREW's FOIA request.  Among those, 848 records were deemed duplicative.

32.    Each email record identified as responsive or duplicative was, as described above, assigned a record number. Each record number, along with a brief description of the record and the information withheld, as well as the FOIA Exemptions applied to withheld information, is contained in the *Vaughn* Index, which was prepared for this litigation and attached hereto as Exhibit F.

33.    I processed all records responsive to CREW's request, including a page-by-page and line-by-line search of all responsive records, to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions.  Every effort was made to provide

CREW with all reasonably segregable nonexempt information in the responsive records. BOP plans to provide CREW all reasonably segregable nonexempt information from the email records on November 6, 2020. Exempt information was redacted from the records, as described herein and in Ex. F, the *Vaughn* Index.

34.    All withheld material is supported by a statutory exemption or multiple exemptions. BOP's withholding of information from the release in response to FOIA Request No. 2019-05579 will be addressed specifically in greater detail below.

### B.  BOP Search for Non-Email Records

35.    In addition to email records, CREW specifically requested procurement records, to include notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards. *See* Ex. A.

36.    During the relevant time frame, any Pentobarbital would have been purchased by the NCRO, Financial Management Department. Any documents related to the purchase of such substances would be maintained in a locked filing cabinet located at NCRO Financial Management, to which only specified staff had access. As such, in order to determine whether any non-email records responsive to CREW's FOIA request existed, I forwarded the request to the NCRO Financial Management Department to conduct a search.

37.    An authorized NCRO Financial Management staff member conducted a search of records within the relevant time frame (i.e., from February 14, 2019, through August 8, 2019), maintained in the relevant NCRO locked filing cabinet. The authorized staff member provided me with fifty-seven pages (57) pages of documents.

38.    I conducted a review of the 57 pages of records provided by the NCRO Financial Management Department. During this review, I removed one (1) page of records consisting of a blank purchase order form that was not responsive to CREW's request.

39.     I conducted a page-by-page and line-by-line review of the remaining fifty-six (56) pages of responsive non-email documents.  I then grouped similar documents into categories of records, and assigned each category of records a record number.  For example, I grouped all contracts together and assigned them a single record number, and I grouped all voucher validation reports together and assigned them a single record number. Each record number, along with a brief description of the record and the information withheld, as well as the FOIA Exemptions applied to withheld information, is contained in the *Vaughn* Index prepared for this litigation, which is attached hereto as Ex. F.

40.     I processed all records responsive to CREW's request, including a page-by-page and line-by-line search of all responsive records, to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions.  Every effort was made to provide CREW with all reasonably segregable nonexempt information in the responsive records.  BOP provided CREW with such information on September 11, 2020. Exempt information was redacted from the records, as described herein and in Ex. F, *Vaughn* Index.

41.     All withheld material is supported by a statutory exemption or multiple exemptions.  BOP's withholding of information from the release in response to FOIA Request No. 2019-05579 will be addressed specifically in greater detail below.

42.     By taking the steps describe above, I conducted a search of every location where responsive records could reasonably be expected to be maintained.  I have no reason to believe that responsive records were or are likely to be maintained elsewhere.

## IV.   **Application of Exemptions**

### A.   **Exemption 4 – Justification for Application of Exemption**

43.     Exemption 4 protects "trade secrets and commercial or financial information obtained from a person which is privileged or confidential."  *See* 5 U.S.C. § 552(b)(4).  BOP has applied this

exemption to commercial and financial information, as well as to identifying information, included in both email and non-email records responsive to FOIA Request No. 2019-05579, as specifically described in Exhibit F, *Vaughn* Index.[6]

44.     To apply Exemption 4 when withheld records do not contain trade secrets, an agency must establish that the records are (1) commercial or financial; (2) obtained from a person; and (3) privileged or confidential.

45.     Information is commercial if, in and of itself, it serves a commercial function or is of a commercial nature or if the provider of the information has a commercial interest in the information submitted to the agency.

46.     A "person" under Exemption 4 includes both individuals and companies.

47.     A commercial or financial matter is "confidential" for purposes of the exemption if it is customarily and actually kept private, or at least closely held, by the person imparting it.

48.     Exemption 4 was applied to confidential commercial or financial information received by BOP from sources from whom BOP procured Pentobarbital during the relevant time to be used for lethal injection purposes, and individuals/companies who performed related critical services on that Pentobarbital supply (including information reformulated into government records by using information provided by such sources).  First, as detailed in the *Vaughn* Index, Exemption 4 was applied to any information that could lead to the identity of any such individual or company, including names, titles, department titles, purchase order/reference numbers, account numbers, contract numbers, phone and fax numbers, web addresses, physical addresses, video conference ID numbers, IT information,  as well as company logos, company brochures, quotations, invoices,

---

[6] *See* Ex. F, *Vaughn* Index, for a full description of the records, including records that were identified as duplicative.  The duplicative records were deemed to be subject to the same exemptions as the original record.

testing results, dates of purchase, service, and/or delivery, substance description, item/stock/UPC numbers, price, quantity, concentration, packaging details, expiration dates, container units, lot numbers, and product identification numbers. *See* Ex. F, *Vaughn* Index for full detail of information withheld.

49.   Exemption 4 was also applied to confidential commercial or financial information (including information reformulated into government records by using information provided by such sources), such as price and contract term negotiations, pricing and business strategies, instructions for ordering and purchase, unique order and purchase requirements, and production and/or testing capability, to include formulas, quantity, timing of production and/or testing, and specific production/testing methods or standards.  Such information was provided by sources from whom BOP procured Pentobarbital during the relevant time to be used for lethal injection purposes.

50.   Exemption 4 was also applied to withhold, in full, invoices, quotations, and protocols for third-party testing services, as well as test results, as these documents reflect price and contract term negotiations, specific methods of testing, and detailed descriptions of how testing was or can be completed, including formulas, quantities and time frames required for testing.

51.   The commercial information described above is confidential because the individuals/companies providing the information have typically kept it private, have specifically designated the information as proprietary and/or confidential, and have expressly required or requested that the Government maintain the information as confidential to the greatest extent possible under the law, a condition to which the Government has agreed to abide.

52.   This information is kept private because those individuals and companies involved in BOP's procurement of Pentobarbital are well aware that those involved in the process (at the state or federal level) are commonly subject to harassment, threats, and negative publicity leading to

commercial decline when it is discovered that they are providing substances to be used in implementing the death penalty.

53.     For example, when it was disclosed that Woodlands Compounding Pharmacy was providing lethal injection substances to be used in the State of Texas's lethal injection protocol, the owner of the pharmacy demanded the return of the substances citing a "firestorm" of angry emails, protests, and media coverage.  *See* Exhibit G, (Oct. 9, 2013 Fox News Article).[7]

54.     An October 6, 2013, blog posting followed, announcing Woodlands Compounding Pharmacy as the "first winner of the death race."  *See* Exhibit H (Oct. 6, 2013 Blog).[8]  The blog, which appeared below a graphic of an exploding head, then proceeded to invite its readers to:

> "[m]eet the pharmacist who sold the medical ethics and shamed his profession for $2,800, . . . **Mr. Jasper Lovoi, RPh**; the man who had no issue selling the poison to [Texas Department of Criminal Justice] as long as he believed the identity of his company was protected and would not be revealed."

*Id*. (emphasis in the original).

55.     The blog invited the public to write a negative review about the pharmacy on the pharmacy's Google page and to contact the American Pharmacist Association to lodge a complaint against the pharmacy.  The blog also contained a hyperlink to the letter signed by the pharmacist seeking the return of the substances.  *See* Exhibit I, (Oct. 4, 2013 letter).[9]

---

[7] Barnini Chakraborty, *Texas refuses to give back lethal drugs, proceeds with execution*, FOX NEWS Politics, (Oct. 9, 2013), http://www.foxnews.com/politics/2013/10/09/texas-execution-to-proceed-despite-controversy-over-drug-and-compounding.html.

[8] *The Pharmacist who approves the business of killing, but only under the veil of secrecy*, The Pentobarbital Experiment Blog (October 6, 2013): https://thepentobarbitalexperiment.wordpress.com/2013/10/06/the-pharmacist-who-approves-the-business-of-killing-but-only-under-the-veil-of-secrecy/.

[9] October 6, 2013 Letter from Jasper Loboi, RPh, included as hyperlink from: *The Pharmacist who approves the business of killing, but only under the veil of secrecy*, The Pentobarbital Experiment Blog (October 6, 2013), https://thepentobarbitalexperiment.wordpress.com/2013/10/06/the-

56.     Doxing[10] suppliers and/or their employees with the intent to shame, coerce or threaten them into refusing to provide lethal injection substances through negative publicity and subsequent financial injury is a recognized strategy by anti-death penalty advocates.  In fact, Supreme Court Justice Samuel Alito recognized there was a "guerilla war" against the death penalty during arguments in *Glossip v. Gross*.  *See* Exhibit J (July 1, 2015 Mimesis Law Article).[11]  Justice Alito catalogued the results of one such effort in his majority opinion for the Court in *Glossip*.  *See Glossip v. Gross*, 576 U.S. 863, 869-71 (2015) (noting that a concerted campaign in 2009-2011 caused the sole American manufacturer of sodium thiopental to exit the world market for production of the drug).

57.     Other federal and state courts have continued to recognize these concerns in cases centering on the potential disclosure of lethal injection drug suppliers.  *See Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1331–32 (11th Cir. 2020) ("As described by the *Glossip* Court, the ultimate outcome of this very effective advocacy by death penalty opponents has been to make it difficult—if not impossible—for states to acquire sodium thiopental and pentobarbital for use in executions, even though it is generally acknowledged that the use of either of these drugs renders an execution by lethal injection as humane as it can possibly be."); *Texas Dep't of Criminal Justice v. Levin*, 572 S.W.3d 671, 682 (Tex. 2019) (recognizing that a fear of negative publicity and declining sales was one of the reasons pharmacies do not want to be publicly identified as suppliers of lethal injection drugs); and *McGehee v. Texas Dep't of Criminal Justice*, No. No. H-18-1546,

---

pharmacist-who-approves-the-business-of-killing-but-only-under-the-veil-of-secrecy/.

[10] Doxing is the practice of publishing private or identifying information about a particular individual or organization on the Internet, typically with malicious intent.

[11] T. Tabo, *Alito's Payback in the "Guerilla War" Over Executions*, Mimesis Law, (July 1, 2015), http://mimesislaw.com/fault-lines/alitos-payback-in-the-guerilla-war-over-executions/1610.

2018 WL 3996956, at *8-10 (S.D. Tex. Aug. 21, 2018) (identifying numerous jurisdictions in which disclosure efforts were rebuffed in light of providers' fears of exposure).

58.     Due to these fears, during the relevant times, and continuing to this day, BOP has restricted communications with, and knowledge of, providers of lethal injection substances only to those within the agency who were directly involved in the process of obtaining the substances or had a need to know the information in the performance of their duties.

59.     The commercial information withheld from the records could also reveal companies' contract negotiation strategies, their physical capabilities in terms of quantity or quality of manufacturing, obtaining, compounding, or testing such substances, as well as pricing, advertising, and other business strategies.  Disclosure of this information would subject the companies to a competitive disadvantage, and would deter them from sharing information with the Government or engaging in business transactions for future procurement of lethal injection substances.

60.     For various records, information in those records that BOP withheld under Exemption 4 may also be exempt under one or more of the following:  Exemptions 5, 6, 7(A), 7(C), 7(E) and 7(F).  While every effort was made to release all segregable information, *see supra* ¶¶ 33 & 40, including by conducting a line-by-line, page-by-page review, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

## C.  Exemption 5 – Justification for Application of Exemption

61.     Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* 5 U.S.C. § 552(b)(5).  This language has been construed to exempt documents that are normally privileged in the civil discovery context.  Of the litigation privileges generally available to BOP, the deliberative-process, attorney-client, and work-product privileges are applicable to the records responsive to CREW's FOIA request.

### 1.   Attorney-Client, Work-Product and Deliberative Process Privileges

62.    The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege.  To be privileged, a communication must be for the purpose of securing primarily either (i) an opinion on law, (ii) legal services, or (iii) assistance in some legal proceeding.

63.    Information involving communications with agency attorneys regarding compliance with employment laws and legal advice from attorneys about the requirements of certain federal statutes and regulations is also covered by the attorney-client privilege.  And while not every record created by a government lawyer qualifies for the attorney-client privilege, the privilege has readily been recognized when the record is prepared by the attorney in anticipation of litigation.

64.    To qualify for the work-product privilege, a document must have been created by or at the direction of an attorney in anticipation of litigation.  The litigation anticipated need not be imminent, as long as the motivating factor behind the creation of the document was to aid in possible future litigation.  The work product doctrine shields materials "prepared in anticipation of litigation or for trial by or for [a] party or by or for that . . . party's representative (including the . . . party's attorney, consultant, . . . or agent)."  Fed. R. Civ. P. 26(b)(3).  It also includes factual materials prepared in anticipation of litigation.

65.    The deliberative process privilege, on the other hand, is not necessarily linked to litigation or legal advice and is applied if the communication was 1) pre-decisional and 2) deliberative. Materials are pre-decisional if they are generated before the adoption of an agency policy.  The document is deliberative in nature if it is a direct part of the deliberative process—that is, it makes recommendations or expresses opinions on legal or policy matters.  The exemption covers

recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process.

66.    This privilege exists to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the government.  It rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.

67.    The privilege further protects against premature disclosure of proposed polices before they are actually adopted as public confusion might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.  Accordingly, even the status of an agency decision within an agency decision-making process is protectable if release of the information would prematurely disclose the recommended outcome of the consultative process or the source of any decisions.

### 2.    Lethal Injection Regulations and Litigation

68.    BOP is tasked with setting the date, time, place and method of execution when a sentence of death has been imposed.  Specifically, ". . . a sentence of death shall be executed: . . .  [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal."  *See* 28 C.F.R. § 26.3(a) (1993).

69.    Between 1964 and 2019, BOP fulfilled its law-enforcement mandate associated with the implementation of the death penalty pursuant to 28 C.F.R. § 26.3(a) three times:  Timothy McVeigh and Juan Garza in June 2001, and Louis Jones in March 2003.

70.    Beginning in 2005, several federal inmates facing a sentence of death filed civil actions in the District of Columbia alleging constitutional and statutory violations related to BOP's lethal

injection protocol, which, at that time, used a three-drug mix consisting of sodium thiopental, pancuronium bromide and potassium chloride in implementing a sentence of death.  *See Roane, et al. v. Gonzales*, No. 05-2337 (D.D.C. filed Dec. 6, 2005), Doc. 1 (Complaint) & Doc. 8 (Amended Complaint); *Robinson v. Mukasey*, No. 07-2145 (D.D.C. filed Nov. 28, 2007); *Bourgeois v. U.S. Dept. of Justice, et al.*, No. 12-00782 (D.D.C. filed May 15, 2012), and *Fulks v. U.S. Dept. of Justice*, No. 13-00938 (D.D.C. filed June 21, 2013).

71.   On March 4, 2011, the Department of Justice announced that "at the present time, the federal government does not have any reserves of sodium thiopental for lethal injections."  *See Roane*, 05-02337, Doc. 281 (Joint Status Report).

72.   Due to the unavailability of sodium thiopental, each of the cases contesting the constitutionality and statutory authority for BOP's use of the three-drug protocol were stayed pending BOP's completion of its re-evaluation and revision of the lethal injection protocol.  *See Roane*, Minute Order (July 29, 2011) & Minute Order (November 3, 2011); *Robinson*, Doc. 9 (Joint Status Report) & Minute Order (January 13, 2012); *Bourgeois*, Doc. 14 (Joint Motion for Stay) & Doc. 15 (January 23, 2013 Order); and *Fulks*, Doc. 6 (Joint Motion for Stay) & Doc. 7 (September 13, 2013 Order).[12]

73.   Following the stays of execution in *Roane*, *Robinson*, *Bourgeois*, and *Fulks*, and in accordance with the regulations requiring BOP to select lethal injection substances to implement the death penalty, BOP and DOJ engaged in a comprehensive review and revision of the federal

---

[12] While the Court in *Roane* granted a preliminary injunction barring Defendants from setting an execution date and executing plaintiffs in that matter (*see Roane*, Docs. 5, 27, 67, 68, 336 (Orders Granting Motions for Injunction)), in *Robinson*, *Bourgeois* and *Fulks*, the federal defendants represented that no execution warrant would be sought and no execution would be carried out against the plaintiffs until revision of the lethal injection protocol was complete. *See Robinson*, Doc. 9 (Joint Status Report); *Bourgeois,* Doc. 14 (Joint Motion to Stay); and *Fulks*, Doc. 6 (Joint Motion to Stay).

execution protocol.  On July 25, 2019, BOP adopted and DOJ announced a proposed addendum to the federal execution protocol and scheduled executions for five condemned federal inmates: Daniel Lewis, Lezmond Mitchell, Wesley Purkey, Alfred Bourgeois, and Dustin Honken. *See Roane*, 05-02338, at Doc. 385; *see also* Exhibit K (Dept. of Justice press release, dated July 25, 2019).[13]

74.     On August 20, 2019, the United States District Court for the District of Columbia consolidated each of the four (4) pending protocol cases, including *Roane*, *Mukasey*, *Bourgeois*, and *Fulks*, into a newly established Master Case: *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.) [hereinafter "*Execution Protocol Cases*"].  *See Roane*, Doc. 392.[14]

75.     Thereafter, four (4) of the five (5) inmates who had been scheduled for execution (Bourgeois, Lee, Honken, and Purkey) filed motions seeking an injunction barring their execution. *See Execution Protocol Cases*, 19-mc-00145, at Docs. 2, 13, 29, 34.

---

[13]  July 25, 2019 Dept. of Justice Press Release, https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse.

[14] Since the Master Case was established, several federal death row inmates intervened as plaintiffs in the case, or filed separate civil cases challenging the lethal injection addendum, which were consolidated into the Master Case.  *See Execution Protocol Cases*, No. 19-mc-00145 at Doc. 26 (federal death row inmate Dustin Honken's unopposed motion to intervene, granted by the Court on November 8, 2019, by Minute Order); *Lee v. Barr et al.*, No. 19-2559   (D.D.C.) (filed on Aug. 23, 2019 by federal death row inmate Daniel Lewis Lee and consolidated into Master Case on Aug. 29, 2019 (Doc. 10)); *Purkey v. Barr et al.*, No. 19-03214 (D.D.C.) (filed on Oct. 25, 2019, by federal death row inmate Wesley Purkey and consolidated into Master Case on November 8, 2019 (Doc. 13)); *Holder v. Barr et al.*, No. 19-03520 (D. D.C.) (filed on Nov. 22, 2019, by federal death row inmate Norris Holder and consolidated into Master Case on Dec. 4, 2019 (Doc. 5)); *Bernard v. Barr et al.*, No. 20-00474 (D.D.C.) (filed on Feb. 19, 2020, by federal death row inmate Brandon Bernard and consolidated into Master Case on April 2, 2020 (Doc. 7)); and *Nelson v. Barr et al.*, No. 20-00557 (D.D.C.) (filed on Feb. 25, 2020, by federal death row inmate Keith Nelson and consolidated into Master Case on April 2, 2020 (Doc. 17)).

76.     On November 20, 2019, the United States District Court for the District of Columbia issued a preliminary injunction barring the execution of all federal death row inmates. *Id.* at Doc. 51. On November 21, 2019, the defendants filed an appeal in the United States Court of Appeals for the District of Columbia, 19-5322, Doc. 1.  On April 7, 2020, the Court of Appeals for the District of Columbia vacated the district court's preliminary injunction. *Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020).

77.     Plaintiffs in the *Execution Protocol Cases* filed an amended complaint on June 1, 2020. *Execution Protocol Cases*, Doc 92.  Since then, the parties in that case have engaged in extensive litigation, much of which is described in the court's Memorandum Opinion, *see* Doc. 261 at 4-8 (describing the filing of preliminary injunction motions, dispositive motions, interim and final rulings, and appeals, including to the Supreme Court on multiple occasions).  Although seven federal inmates have been executed between July 2020 and the present day, and nearly all of the claims in that litigation have been decided, it is still very much active.  As described in the *Execution Protocol Cases* parties' September 29, 2020 Joint Status Report, various of the remaining plaintiffs filed three motions to alter or amend judgment and two of the plaintiffs filed as-applied challenges.  *See id.* Doc. 279 at 1-3.  The court has since denied the three motions to alter or amend judgment, which sets the stage for near-certain appeals of those judgments by the plaintiffs in that action.  *See* Doc. 305 (Order denying outstanding motions to alter or amend).

78.     In addition, other litigation aimed at foreclosing or postponing scheduled executions has consistently cropped up as a given inmate's execution approaches.  For example, at present, federal death row inmate Orlando Hall is scheduled to be executed on November 19, 2020.  On November 3, 2020, Hall filed a complaint along with a motion for preliminary injunctive relief and a temporary restraining order claiming constitutional and statutory violations stemming from the scheduling of his execution and seeking an order from the District Court of the District of

Columbia postponing his execution. *See, e.g.*, *Hall v. Barr et al.*, No. 1:20-cv-03184 (D.D.C.), Doc. 1.   Federal death row inmates Lisa Montgomery and Brandon Bernard are scheduled to be executed on December 8 and 10, 2020, respectively.   Montgomery attempted to intervene in the Master Case to raise an as-applied challenge to BOP's protocol, *see Execution Protocol Cases*, Doc. 303, but that motion was withdrawn during a telephonic conference with the court, *id.* at Minute Entry (November 2, 2020), and Montgomery is expected to file a new litigation court imminently.

### 3.   <u>Application of Privileges</u>

79.   BOP has invoked Exemption 5 and the attorney-client, work-product and deliberative-process privileges to withhold information and records responsive to CREW's FOIA Request.

80.   On July 25, 2019, DOJ announced the adoption of BOP's proposed Addendum to the Federal Execution Protocol. *See* Ex. K. As described in DOJ's press release, the Protocol's Addendum "closely mirrors protocols utilized by several states, including currently Georgia, Missouri, and Texas," and it replaced "the three-drug procedure previously used in federal executions with a single drug—pentobarbital." *Id.*

81.   CREW's FOIA request seeks records related to BOP's procurement of Pentobarbital prior to the adoption of the Addendum, specifically from February 14, 2019, to the present (interpreted as August 8, 2019, *see supra* n. 5). Therefore, at least a portion of any responsive records contain pre-decisional, deliberative information regarding BOP's efforts to procure such substances for the Protocol.

82.   Intra or inter-agency email records responsive to CREW's FOIA request consist of, as described below and more fully in the attached *Vaughn* Index, email communications between BOP attorneys, BOP and DOJ attorneys, BOP/DOJ attorneys and BOP staff, or between two or more BOP non-attorney staff.  The email records contain information that was considered as part

of BOP's effort to fulfill its regulatory requirement to determine and procure the substance(s) used in the execution of a federal death sentence, and which also occurred in the context of anticipated litigation, as described above, concerning BOP's execution protocol.  Such records are covered by the deliberative process privilege.

83.    In addition, many of the email records responsive to CREW's FOIA request are also privileged pursuant to the attorney-client privilege and work-product doctrine, because they consist of communications between attorneys or between attorneys and their client(s), and contain opinions or guidance regarding compliance with the regulations that require BOP to implement federal death sentences and other regulatory requirements concerning procurement of lethal injection substances, pending or anticipated legal proceedings, laws, regulations, or case decisions, or because it was a document created by or obtained at the direction of an attorney in anticipation of litigation, including, but not limited to, the lethal injection protocol litigation that has occurred in the form of the *Execution Protocol Cases* and related cases.

84.    BOP applied Exemption 5 and the litigation privileges, as described above, to the following types of email records:

85.    ***Draft "processing summary" concerning the procurement and proposed use of Pentobarbital***. Several records, as identified in Exhibit F, *Vaughn* Index, consist of a draft processing summary, which was originally prepared by a BOP attorney in preparation for the finalization of the Addendum, as well as in anticipation of litigation concerning the Protocol.[15] The draft processing summary was forwarded a number of times between BOP attorneys and staff, and DOJ attorneys and staff, and underwent several revisions based on feedback and editing by

---

[15] OIP, after consulting with BOP, also withheld three (3) records (consisting of six (6) pages), that were drafts of the same processing summary, and thus, subject to the same exemptions as described here.

other BOP/DOJ attorneys and staff, and as necessary to update the documents as time went on. Each draft of the processing summary is covered by the deliberative process privilege, as they were generated prior to the finalization of the Addendum, and reflect BOP's deliberative process in deciding how to formally present the information concerning its efforts to procure pentobarbital, and its proposed intentions for use, to DOJ. The drafts are also covered by the work-product privilege, as the original draft was created by a BOP attorney as part of BOP's efforts to revise the execution protocol and in anticipation of the pending Protocol litigation, as described above.

86.     Similarly, several records, as identified in Exhibit F, *Vaughn* Index, consist of email communications between BOP and DOJ attorneys and staff, in which a draft of the processing summary was forwarded for review, updating, and/or editing, or returned with comments and/or revisions. To the extent the email communications contained discussions or commentary about proposed edits, those discussions are covered by the deliberative process privilege, and thus, were redacted from the email communications. To the extent the discussions contained legal analysis, advice, and/or opinions offered by BOP attorneys, those discussions are covered by the attorney-client and work product privileges.

87.     ***Communications regarding available testing services and the status of, or descriptions of such services***:  The deliberative process privilege also applies to records, as identified and described in Exhibit F, *Vaughn* Index, that were generated prior to the finalization of the Addendum, and which reflect discussions among and between staff, which would reveal BOP's deliberative process in evaluating, the availability, efficacy, and reliability of third party testing services critical to BOP's ability to procure Pentobarbital for inclusion in the revised Protocol.

88.     ***Communications regarding the status of the finalization of the Addendum***: The deliberative process privilege also applies to records, as identified and described in Exhibit F,

*Vaughn* Index, that were generated prior to the finalization of the Addendum, and which contain discussions among and between BOP and DOJ attorneys and staff regarding the status of the finalization of the Addendum. These email records contain BOP staff's assessment, analysis, recommendations and opinions, as well as back and forth discussions regarding the information, data, or actions that were complete or needed to be complete in order to finalize the revised Protocol, and therefore would expose BOP's deliberative process in formulating the revised Protocol.

89.    ***Communications regarding a draft memorandum regarding the Addendum***: Several records, as identified in Exhibit F, *Vaughn* Index, consist of a draft memorandum addressed to the Attorney General, which was originally prepared by a BOP attorney in preparation for the finalization of the Addendum, as well as in anticipation of litigation concerning the revised Protocol, and as such, are covered by the deliberative process, attorney-client and work-product privileges. The draft memorandum was forwarded a number of times between BOP attorneys and staff, and underwent several revisions based on feedback and editing by other BOP attorneys and staff.  Each draft of the memorandum is covered by the deliberative process privilege, as they were generated prior to the finalization of the execution protocol addendum, and reflect BOP's deliberative process in deciding how to formally present the revised, proposed Addendum to the execution protocol to the Attorney General for approval.  The drafts are also covered by the work-product privilege, as the original draft was created by a BOP attorney as part of BOP's efforts to revise the execution protocol and in anticipation of the pending Protocol litigation, as described above.

90.    Similarly, several records, as identified in Exhibit F, *Vaughn* Index, consist of email communication between BOP attorneys, in which a draft of the memorandum was forwarded for review, updating, and/or editing, or returned with comments and/or revisions.  To the extent the

email communications contained discussions or commentary about proposed edits, those discussions are covered by the deliberative process privilege, and thus, were redacted from the email communications.   To the extent the discussions contained legal analysis, advice, and/or opinions offered by BOP attorneys, those discussions are covered by the attorney-client and work product privileges.

91.   ***Communications regarding identifying viable substances for inclusion in the Protocol***:  The deliberative process privilege also applies to records, as identified and described in Exhibit F, *Vaughn* Index, that were generated as part of BOP's efforts to revise the execution protocol, and which reflect discussions among and between staff, and thus, which would reveal BOP's deliberative process in identifying, obtaining, and selecting an appropriate substance to be included in the revised Protocol.

92.   ***Communications regarding procurement processes related to Pentobarbital***: Several records, as identified in Exhibit F, *Vaughn* Index, consist of a draft memorandum concerning BOP's justification for procuring Pentobarbital in a non-traditional manner (other than through full and open competition).  The draft justification memorandum was forwarded a number of times between BOP staff and underwent several revisions based on feedback and editing by other BOP staff.  Each draft of the processing summary is covered by the deliberative process privilege, as they were generated prior to the finalization of the Addendum, and reflect BOP's deliberative process in deciding how to present its efforts to procure Pentobarbital for use in the proposed Addendum.

93.   ***Communication regarding media inquiries and talking points***: The deliberative process privilege also applies to records, as identified and described in Exhibit F, *Vaughn* Index, that consist of email communications in which BOP attorneys and staff discussed proposed answers to media inquiries, as well as proposed "talking points" regarding the death penalty,

BOP's Protocol, and the investigation and assessment of viable substances to be included in the Protocol.   Disclosure of the records would reveal BOP's deliberative process, including discussions and recommendations concerning how BOP's existing policies should be presented to the media or other entities seeking information about the Protocol. As such, they are subject to the deliberative process privilege.

94.     For various records, information in those records that BOP withheld under Exemption 5 may also be exempt under one or more of the following:  Exemptions 4, 6, 7(A), 7(C), 7(E) and 7(F).  While every effort was made to release all segregable information, *see supra* ¶¶ 33 & 40, including through a page-by-page, line-by-line review, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### D.   Exemption 6 – Justification for Application under FOIA

95.     Exemption (b)(6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6.

96.     Throughout all of the records responsive to CREW's FOIA request, Exemption 6 was applied to the following types of information that could be used to identify BOP or DOJ staff involved in some aspect of the execution protocol, third-party individuals who participated in the federal government's procurement of Pentobarbital or provided related critical services, and other third-party individuals who have not consented to release of their personal information:  Names, initials, signatures, addresses, email addresses, telephone/fax numbers, job titles, and department titles.[16]

---

[16] *See* Ex. F, *Vaughn* Index for a full description of each record and information (including records

97.    Exemption 6 was applied to the above-referenced information because each individual identified in the responsive records has a substantial interest in the privacy of their information, as well as their personal safety, especially due to the nature of the records involved.  None of the individuals identified in the records have provided a written waiver of their personal privacy interests or otherwise authorized release of their identifying information.

98.    Disclosure of this information would reveal personal information of federal employees ("staff") who are employed in a sensitive occupation, some of whom perform work within a prison environment and are responsible for the safety and security of the institution, their colleagues, inmates, and the public.  Further, due to the nature of the records, staff identified in the responsive records would also be identified as being involved in some component of the federal death penalty, which could include procurement of lethal injection substances, contributing to the creation of the Protocol, and/or actual implementation of the Protocol.  As recognized by the court in the *Execution Protocol Cases*, the mission and nature of the work of these staff members render them vulnerable to harassment, threats or attack.  *See Roane*, 05-02337 (D.D.C.) at Doc. 30-1 (Protective Order prohibiting the release of identifying information concerning anyone involved in past executions or those expected to be involved in future executions, even to the plaintiffs).[17]  Further, disclosure of the names and personal-contact information of these staff members would permit the targeting of individual employees, as well as potentially their families and friends outside the workplace.

---

and information that OIP withheld on behalf of BOP) that was subject to Exemption 6.

[17] Throughout the *Execution Protocol Cases* litigation, the Government has maintained, pursuant to the protective order in place and the law-enforcement privilege, the confidentiality of the sources of the Pentobarbital BOP has used to fulfill its duty to carry out capital sentences.  None of the plaintiffs in that litigation have challenged the Government's withholding of such information.

99.     For example, in April 2019, five individuals were sentenced for their role in murdering a BOP correctional officer.  The individuals admitted that they conspired to murder the staff member specifically in retaliation for his actions in seizing contraband from them, and that they recruited the assistance of hitmen from outside the facility to do the job.  *See* Exhibit L, (April 30, 2019 USAO for D. Puerto Rico Press Release).[18]  In another case, an inmate in Pennsylvania stabbed a correctional officer at the United States Penitentiary-Canaan 200 times with two shanks and mutilated his body because of what he told prison officials was "a disrespect issue."  *See* Exhibit M (July 11, 2017 DOJ Press Release);[19] Exhibit N (June 5, 2017 WNEP News Article).[20]  While murders of BOP staff members are thankfully rare, these cases highlight the many risks of harm a BOP staff member faces as a result of carrying out their official duties.  The controversial nature of the death penalty could increase the risk for those directly involved in the execution process.

100.    Disclosure of the names or other identifying information of third parties would reveal private information of persons who may be engaged in a highly-sensitive and emotionally-charged issue.  Each of the third parties identified in the responsive documents would be associated with the procurement of Pentobarbital needed to implement the Protocol.  Similar to staff, disclosing the job titles of third parties may allow these individuals to be identified based on their positions.  Revealing this information would allow owners, managers and employees, along with their friends

---

[18] "Five men sentenced for their role in conspiracy to murder Federal Bureau of Prison Correctional Officer Osvaldo Albarati-Casanas," U.S. Attorney's Office, District of Puerto Rico, (April 30, 2019), https://www.atf.gov/news/pr/five-men-sentenced-their-role-conspiracy-murder-federal-bureau-prisons-correctional-officer.

[19] July 11, 2017, Dept. of Justice Press Release, https://www.justice.gov/opa/pr/ federal-jury-returns-sentence-life-imprisonment-murder-federal-correctional-officer.

[20] Jim Hamill, "Stunning Video, Testimony in Prison Murder Trial," (June 5, 2017), https://www.wnep.com/article/news/local/bradford-county/opening-statements-complete-in-prison-murder-trial/523-4c9f43ed-ba87-4a45-b02a-815b404fe9c1.

and families, to be targeted, and would likely subject these individuals to embarrassment, harassment, threats or even assault.  *See supra* ¶¶ 52-56, and *infra* ¶ 132.

101.    Disclosure of this information would constitute a clearly unwarranted invasion of personal privacy that is not overcome by a cognizable public interest.  While CREW asserts in its FOIA Request No. 2019-05579 that the public has a great interest in ensuring the federal government conducts executions in compliance with all constitutional requirements, CREW does not indicate how the disclosure of the names and personal information of staff, or third party entities who do not participate in the operation of government, would further the public interest.  *See* Ex. A.

102.    Since CREW failed to identify any public interest in knowing the names and personal information of staff and third parties involved with implementation of the lethal injection protocol, it has not identified a public interest that outweighs these individuals' substantial privacy interest. In contrast, revealing the information would subject these persons and those close to them to embarrassment, as well as threats, harassment, assault, or other reprisals by anti-death penalty advocates, inmates, or perhaps the families and friends of those who have received a sentence of death.

103.    For various records, information in those records that BOP withheld under Exemption 6 may also be exempt under one or more of the following:  Exemptions 4, 5, 7(A), 7(C), 7(E) and 7(F).  While every effort was made to release all segregable information, *see supra* ¶¶ 33 & 40, including through a page-by-page, line-by-line review, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### E.  Exemption 7 – Justification for Threshold Requirement for Exemptions

104.    As a threshold to applying Exemption 7, an agency has to demonstrate that the "records or information [were] compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).

105.    BOP is a law enforcement agency.  The term "law enforcement officer" has been defined as "an employee of the Bureau of Prisons or Federal Prison Industries, Inc."  *See, e.g.*, 5 U.S.C. § 8401(17)(D)(i).   Furthermore, BOP employees perform law enforcement functions.   They possess the authority to make arrests, 18 U.S.C. § 3050; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. §§ 511.10-511.12, 552.10-552.14.

106.    BOP is also tasked as part of its law enforcement function with setting the date, time, place, and method of execution when a sentence of death has been imposed.  Specifically,

> a sentence of death shall be executed: (1) On a date and at a time designated by the Director of the Federal Bureau of Prisons . . . (2) At a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons; (3) By a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional personnel selected by the Marshal and the Warden of the designated institution and acting at the direction of the Marshal; and (4) By intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal.

*See* 28 C.F.R. § 26.3(a) (1993).

107.    Because BOP, along with the United States Marshals Service, is charged with carrying out the judgment of a sentence of death, the requested records – all of which address the procurement of Pentobarbital to fulfill this mission – were necessarily compiled for law enforcement purposes.

### F.  Exemption 7(A) – Justification for Application of Exemption

108.    Under Exemption (7)(A), an agency may withhold from disclosure records or information compiled for law enforcement purposes, "but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings."  *See* 5 U.S.C. § 552(b)(7)(A). To satisfy this standard, an agency must be able to point to a specific pending or contemplated

law-enforcement proceeding and identify some articulable harm that could reasonably be expected to result if the record or information requested were disclosed.  Rule 7(A) applies to civil and regulatory proceedings, as well as to criminal matters, and includes matters in which the agency has the initiative in bringing an enforcement action as well as ones in which it must be prepared to respond to a third-party's challenge.

109.    As discussed above, BOP is tasked with implementing federal death sentences and carrying out the executions of condemned prisoners. Enforcement proceedings remain pending or reasonably anticipated for each death row inmate.  Individuals sentenced to death may challenge their sentences through direct appeal and post-conviction petitions for relief, a process which can take years in some cases.  Following exhaustion of post-conviction appeals and petitions for relief, inmates often engage in civil litigation to challenge the method in which the government intends to carry out their execution or to bar the execution altogether, which effectively delays or bars the timely enforcement of a capital sentence.

110.    To take one example, federal death row inmate Brandon Bernard was sentenced to death by the United States District Court for the Western District of Texas on June 16, 2000.  *See U.S. v. Bernard*, Case No. 6:99-cr-070 (W.D. Tex.), Doc. 290.  After exhausting his direct appeal and petitions for post-conviction relief, Bernard filed a petition for writ of certiorari in the Supreme Court, which was denied on January 19, 2016.  *See Bernard v. U.S.*, Case No. 14-8071 (2016). Since that time, Bernard has filed, and continues to file, various challenges to numerous aspects of his federal death sentence.  For example, in November 2017, four (4) years after his motion to vacate his sentence was denied by the district court, and nearly two (2) years after the Supreme Court denied his petition for writ of certiorari, Bernard filed a motion styled as a Motion for Relief from Judgment pursuant to Federal Rules of Civil Procedure 60(b)(6).  The district court construed the motion as an unauthorized attempt to file successive motion pursuant to 28 U.S.C. § 2255.  *See*

*U.S. v. Bernard*, 6:99-cr-070 (W.D. Tex.), Docs. 569, 571.  Bernard's appeal to both the Fifth Circuit and the Supreme Court were unsuccessful.  *See U.S. v. Bernard*, No. 18-70008 (5th Cir., Sept. 14, 2018); *Bernard v. U.S.*, No. 18-6992 (Jan. 13, 2020).  Approximately two (2) years after filing his first unauthorized successive § 2255 motion, Bernard filed another motion seeking to set aside his sentence, this time raising allegations that the government failed to disclose favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *Id.* at Doc. 661.  The district court again construed the motion as an unauthorized attempt to file a successive § 2255 petition, and the Fifth Circuit agreed.  *Id.* at Doc. 664, 696; *U.S. v, Bernard*, No. 19-70021 (5th Cir., Sept. 9, 2020).  The petition was ultimately dismissed on October 15, 2020.  *U.S. v. Bernard*, 6:99-cr-070 (W.D. Tex.), Doc 696. Additionally, on February 19, 2020, Bernard filed a civil complaint in the District of Columbia challenging the government's method of execution, which was consolidated into the *Execution Protocol Cases*, Case No. 19-mc-00145.  *See Bernard v. Barr, et al.*, Case No. 20-cv-00474 (D.D.C. filed Feb. 19, 2020).

111.    Over half of the approximately 52 inmates on federal death row have not fully exhausted their appeals and petitions for post-conviction relief.  As such, the enforcement proceedings to implement the federal sentences of death for each death row prisoner remain pending, or at least reasonably anticipated.  BOP the disclosure of records which reveal the identity of those involved in BOP's procurement of Pentobarbital is reasonably likely to interfere with law enforcement proceedings necessary to effectuate capital sentences and its ability to carry out future executions.

112.    For example, in 2011, Hospira Inc., the United States manufacturer of sodium thiopental, stopped manufacturing this drug as a result of controversies over its use in executions, thereby forcing those responsible for implementing the death penalty to seek alternative substances.  *See*

Exhibit O (April 4, 2012, Center for Public Integrity Article).[21]   Similarly, Woodlands Compounding Pharmacy, which agreed to provide lethal injection substances to the State of Texas, demanded the return of its supply after information that it manufactured the substance was released.  *See* Ex. G (October 9, 2013, Article "Texas refuses to give back lethal drugs, proceeds to execution").  The owner of the pharmacy claimed "Texas authorities put him 'in the middle of a firestorm' of protesters, hate calls and press requests after letting it leak that he sold eight 2.5-gram doses of pentobarbital to the state for upcoming executions."  *See id.*

113.    Once it became known that the state of Missouri was intending to incorporate the drug propofol into its lethal-injection protocol, the German drug manufacturer that produced propofol announced it would no longer sell the drug to states for executions and shifted its distribution model.  *See* Exhibit. P (Aug. 7, 2013 TIME article).[22]   In November 2012 through mid-March 2013, the drug maker also stopped shipments to Louisiana distributor Morris & Dickson LLC after it discovered the distributor sent a carton containing 20 vials to Missouri's Department of Corrections. *See* Ex. Q (Oct. 10, 2013 REUTERS Article).[23]

---

[21] *See* Kimberly Leonard, The Center for Public Integrity*, Lethal injection drug access could put executions on hold* (April 4, 2012, 6:00 a.m.), https://www.publicintegrity.org/2012/04/04/8589/lethal-injection-drug-access-could-put-executions-hold. *See also Gray v. McAuliffe*, No. 3:16CV982-HEH, 2017 WL 102970, at *7 (E.D. Va. Jan. 10, 2017), *appeal dismissed* (4th Cir. Jan. 11, 2017) (noting that "[i]n light of the pressure waged by death penalty opponents, it has become increasingly difficult to obtain the drugs Virginia traditionally used to render a prisoner unconscious" and that "[b]ecause death penalty opponents have made it difficult to obtain FDA–approved drugs customarily used in executions, Virginia has recently resorted to obtaining drugs from compounding pharmacies instead of traditional suppliers.").

[22] Josh Sanburn, *The Hidden Hand Squeezing Texas' Supply of Execution Drugs*, TIME, (Aug. 7, 2013),  http:/nation.time.com/2013/08/07/the-hidden-hand-squeezing-texas-supply-of-execution-drugs/.

[23] Kevin Murphy, *German firm blocked shipments to U.S. distributor after drug sent for executions*, REUTERS, (Oct. 10, 2013 9:57 p.m.), https://www.reuters.com/article/us-usa-execution-drugs/german-firm-blocked-shipments-to-u-s-distributor-after-drug-sent-for-executions-idUSBRE99A02U20131011.

114.    In addition to information that directly identifies those involved in BOP's procurement of Pentobarbital, BOP determined that other information included in the records could reveal the identity of those involved, such as company brochures, quotes for services, invoices, testing results, dates and times of purchase and/or delivery of products or services, and specific descriptions of the substance(s) and/or service(s), such as item/stock/UPC numbers, price, quantity, concentration, packaging details, expiration dates, container units, and lot numbers.  This is because dates, times, or the specific description of a substance or service could be compared to heightened email activity, or activity reported in accordance with government reporting requirements, within a certain timeframe to determine, or least narrow down, the identity of such persons/companies.

115.    For example, dates of purchases or potential purchases could be compared to reporting logs or databases maintained by the Drug Enforcement Agency (DEA), which tracks and regulates the manufacture, sale, and purchase of controlled substances. Certain information is required to be reported to the DEA, and some of its databases and logs are publically available, or can be obtained through other means, such as unrelated FOIA requests or discovery. By comparing dates of purchases or potential purchases as listed in the records responsive to CREW's FOIA request at issue in this litigation to publically-available data, or data gained through other non-related requests or discovery, savvy individuals could determine or narrow down companies or individuals involved in BOP's procurement of Pentobarbital.

116.    Similarly, the description of a particular substance, including the manner in which it is produced, packaged, sold or identified, or the shelf-life of a particular substance (expiration date), can reveal the identity of the individual or company responsible for producing, packaging, selling, and/or testing lethal injection substances. For example, if a particular company is known or discovered to package or price a substance in a particular way, or test a product in a particular way,

the manner in which it is described in BOP's records could be used to trace the substance back to that particular provider by the process of comparison and elimination. Expiration dates can also be compared to DEA logs and data to narrow down or identify suppliers or potential suppliers of lethal injection substances.

117.    Likewise, company brochures, testing results, quotes for services, and invoices, even in redacted format, could be analyzed and compared to those obtained either in a public forum or through other FOIA requests to specifically identify which company(ies) produced them.  By way of example, on July 10, 2020, Reuters (an international news organization) published an article describing how it purportedly determined the identity of three laboratories who were allegedly involved in testing compounded pentobarbital intended to be used for federal executions. *See* Exhibit R, (July 10, 2020 Reuters Article).[24] According to the article, a Reuters investigation discovered the laboratories' purported involvement in testing the drugs by reviewing redacted laboratory reports that the Department of Justice had produced in the *Execution Protocol Cases*. *Id.* According to the article, the laboratories' company names, logos, and other identifying information, were "blacked out," but the news agency claims it was still able to determine, presumably through the process of comparison and elimination, the identity of the three laboratories.

118.    Shortly after the July 10, 2020, article was published, one of the purportedly identified laboratories, DynaLabs, announced that it would no longer test pentobarbital unless its client(s)

---

[24] Jonathan Allen, *Special Report: How the Trump administration secured a secret supply of execution drugs*, REUTERS, (July 10, 2020), https://www.reuters.com/article/us-usa-executionsspecialreport/ special-report-how-the-trump-administration-secured-a-secret-supply-of-executiondrugs-idUSKBN24B1E4. By referring to this article, I am neither confirming nor denying the accuracy of any of the statements made within the article, including whether the identified laboratories were involved in the testing of pentobarbital intended to be used in federal executions.

submitted a declaration indicating the drug would not be used for executions. *See* Exhibit S, (DynaLabs Announcement re: Testing Pentobarbital).[25] According to the Reuters article, DynaLabs' policy against testing substances intended for use in executions is based on its desire to avoid controversy and protests from capital punishment opponents. *See* Exhibit R. The article includes a quote from Michael Pruett, who is described as a co-founder of DynaLabs, stating, "[i]t's not that we don't agree with the death penalty. It wasn't worth the controversy – the picket line out front that would eventually take place." *Id.*

119.    This example highlights the harms that can be caused by release of exempt information. Even a small piece of information can be the catalyst leading to the revelation of those involved in BOP's procurement of Pentobarbital. And there is a very real risk that the identified individuals and/or companies will be subject to harassment and pressure, and will refuse to engage in business with the federal government.

120.    Even if BOP has sufficient quantities of lethal substances to carry out the death penalty, disclosure of the records can be reasonably expected to interfere with current and anticipated enforcement proceedings, as is evidenced by the numerous lawsuits filed by commercial businesses to enjoin executions by states that had obtained their lethal injection drug supplies from those businesses after the business's involvement became known.  *See* Exhibit T. (Aug. 13, 2018 Washington Post Article).[26]  *See also In re Lombardi*, 741 F.3d 888, 894 (8th Cir. 2014) (noting that after the 2013 disclosure of the identity of the pharmacy that supplied Texas with its lethal injection drug, the pharmacy "demanded the . . . return [of] a supply of compounded pentobarbital

---

[25] E. Michael Pruett and Russel Odegard, *Testing Pentobarbital* (undated announcement), https://www.dynalabs.us/company/announcements/testing-pentobarbital/.
[26] Mark Berman, "Drug Companies Don't Want to Be Involved in Executions, So They're Suing to Keep Their Drugs Out," Washington Post (Aug. 13, 2018) (describing lawsuits in Nebraska, Nevada, and Arkansas).

sold for use in executions, because of a 'firestorm,' including 'constant inquiries from the press, the hate mail and messages,' that result from publication of the pharmacy's identity") (quoting from the record).

121.    As these examples demonstrate, revealing the sources of any substance, including Pentobarbital, considered for use in BOP's lethal injection protocol can be reasonably expected to interfere with the enforcement proceedings in all cases in which a sentence of capital punishment is lawfully issued by a federal court.  As such, Exemption 7(A) was applied to any information that could lead to the identity of those associated with BOP's procurement of Pentobarbital or related critical services during the relevant time.

122.    For various records, information in those records that BOP withheld under Exemption 7(A) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(C), 7(E) and 7(F). While every effort was made to release all segregable information, *see supra* ¶¶ 33 & 40, including through a page-by-page, line-by-line review, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### G. Exemption 7(C) – Justification for Application of Exemption

123.    Exemption 7(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

124.     Exemption 7(C) was applied to withhold the same information identified under Exemption 6 and for the same reasons articulated to justify the withholding under Exemption 6.   *See supra* ¶¶ 95-102.

125.    For various records, information in those records that BOP withheld under Exemption 7(C) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(A), 7(E) and 7(F). While every effort was made to release all segregable information, *see supra* ¶¶ 33 & 40, including

through a page-by-page, line-by-line review, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### H. Exemption 7(E) – Justification for Application of Exemption

126.    Exemption 7(E) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

127.    Exemption 7(E) was applied to withhold information describing the guidelines, techniques and procedures used to obtain Pentobarbital.   Pursuant to 28 C.F.R. Part 26, BOP is responsible for implementing federal death sentences.  An integral part of that duty is to select and obtain substances to carry out a sentence of death by lethal injection.  28 C.F.R. § 26.3 (a).  While the general lethal injection and procurement procedures for BOP may be known by the public, the specific techniques and procedures utilized are not.  Although the public may be aware that the government must purchase lethal injection substances from outside sources, the process is not subject to full and open competition, as the disclosure of the agency's needs would compromise its ability to obtain such substances and would subject the parties involved to threats, harassment, or even physical injury.  As such, the specific techniques and procedures used to obtain lethal injection substances such as Pentobarbital are not well known to the public, and in fact, are only shared with particularly identified BOP and DOJ personnel, and even those individuals are prohibited from sharing this information, even within their own agencies.

128.    Exemption 7(E) was applied to information contained in records, as identified and described in Exhibit F, *Vaughn* Index, that would reveal the strategy undertaken in order to procure such substances, and information regarding the method by which BOP procured or attempted to

procure such substances.  If disclosed, this information is reasonably likely to interfere with BOP's ability to procure Pentobarbital for use in the lethal injection protocol, and thus could interrupt the procurement process and usurp BOP's legal mandate to carry out the death penalty.  Additionally, as discussed in detail above, disclosure of the information could subject both the federal officials who were involved in procuring such substances, as well as the providers of those substances, to harassment or threats to their safety by anti-death penalty advocates, inmates, or their friends and families, which in turn, could hinder BOP from carrying out its law enforcement mission of implementing the lethal injection protocol.  *See supra* ¶¶ 52-56, 98-100.  As such, the law enforcement guidelines, techniques and procedures utilized by BOP are subject to withholding under Exemption 7(E).

129.    For various records, information in those records that BOP withheld under Exemption 7(E) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(A), 7(C) and 7(F). While every effort was made to release all segregable information, *see supra* ¶¶ 33 & 40, including through a page-by-page, line-by-line review, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### I.   Exemption 7(F) – Justification for Application of Exemption

130.    Exemption 7(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which could endanger the life or physical safety of any individual.  *See* 5 U.S.C. § 552(b)(7)(F).

131.    As previously explained, disclosure of the names, personal identifiers and direct contact information of staff or third parties associated with implementing the death penalty could subject them to being targeted for harassment, threats or assault. *See supra* ¶¶ 52-56; 98-100.  Specifically, the individuals whose identities would be disclosed could reasonably be expected to be subjected to retaliation, threats, harassment or other actions at the direction or discretion of the inmates who

have received a sentence of death.  While these inmates may be incarcerated, this does not mean

that they are incapable of committing violent acts either directly against identified staff who may

work in the prison in which they are housed, or at their direction by persons in the community.

*See supra* ¶ 99, nn.18, 19, 20.

132.    Disclosure could also reasonably be expected to subject the identified individuals to

harassment or threats against their lives or physical safety by persons in the public, including anti-

death penalty advocates.  For example, a 2016 article by BUZZFEED, Inc. highlighted one such

threat, sent by a Nick Humez, via the comments section at the website of a pharmacy that was

suspected of providing lethal injection substances to the state of Missouri for executions.  *See*

Exhibit U (August 29, 2016 BUZZFEED, Inc. Article).[27]  The threat read as follows:

> "Your site says nothing about pentobarbital.  Do you compound it for
> the state of Missouri's department of corrections, as has been publicly
> alleged in an AP story that ran this morning, and if so, now that the story
> has gone public, do you think that is prudent?  Seems to me that
> manufacturing a drug expressly to kill people flies in the face of one of
> those commandments Moses got from Jehovah on Sinai, but maybe I'm
> just being old-fashioned.  Still, were I you I'd at least want to beef up
> my security now that you've been put in the spotlight as a likely supplier
> and failed to issue a flat denial.  As the folks at the federal building can
> tell you, it only takes one fanatic with a truckload of fertilizer to make a
> real dent in business as usual.  In your place, I'd either swear to the
> nation that my company didn't make execution drugs of ANY sort, and
> then make dang sure that's true, or else openly accept the burden of
> putting my employees and myself at unacceptable (and possibly
> uninsurable) risk.  Just sayin'."

*Id*.

133.    Since disclosure of the names and personal identifying information and direct contact

information of individuals could reasonably be expected to result in harassment, threats or other

---

[27] Chris McDaniel, FBI Documents Don't Back Up Claimed Threat to Execution Drug Supplier,
BUZZFEED.NEWS (August 29, 2016, 10:04 p.m.), https://www.buzzfeednews.com/
article/chrismcdaniel/fbi-documents-dont-back-up-claimed-threat-to-execution-drug.

activities endangering their life and physical safety, this information is exempt pursuant to Exemption 7(F).  Exemption 7(F) was applied to withhold the same information identified under Exemption 6 and 7(C) and for the same reasons articulated to justify the withholding under those exemptions.  *See supra* ¶¶ 95-102.

134.    For various records, information in those records that BOP withheld under Exemption 7(F) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(A), 7(C) and 7(E).  While every effort was made to release all segregable information, *see supra* ¶¶ 33 & 40, including through a page-by-page, line-by-line review, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 6th day of November 2020.


Kara Christenson
Central Office FOIA GIS
Rochester, Minnesota

# INDEX OF EXHIBITS

| | |
|---|---|
| A | Plaintiff's FOIA Request No. 2019-05579 |
| B | Aug. 14, 2019 BOP Acknowledgment Letter |
| C | Sept. 30, 2019 BOP FOIA Response Letter |
| D | Oct. 10, 2019 CREW OIP Appeal |
| E | Feb. 19, 2020 OIP Response Letter |
| F | BOP's *Vaughn* Index for FOIA Request No. 2019-05579 |
| G | Oct. 9, 2013 Fox News Article |
| H | Oct. 6, 2013 Blog Post |
| I | Oct. 4, 2013 letter |
| J | July 1, 2015 Mimesis Law Article |
| K | July 25, 2019 Dept. of Justice Press Release |
| L | April 30, 2019 USAO for D. Puerto Rico Press Release |
| M | July 11, 2017 Dept. of Justice Press Release |
| N | June 5, 2017 WNEP News Article |
| O | April 4, 2012, Center for Public Integrity Article |
| P | Aug. 7, 2013 TIME Article |
| Q | Oct. 10, 2013 REUTERS Article |
| R | July 10, 2020 REUTERS Article |
| S | DynaLabs Announcement |
| T | Aug. 13, 2018 Washington Post Article |
| U | Aug. 29, 2016 BUZZFEED, Inc. Article |

Exhibit A

**OGC Electronic Freedom of Information - FOIA Request - CREW**

| | |
|---|---|
| **From:** | Lauren White <lwhite@citizensforethics.org> |
| **To:** | <OGC_EFOIA@bop.gov> |
| **Date:** | 8/8/2019 2:35 PM |
| **Subject:** | FOIA Request - CREW |
| **Attachments:** | 2019-8-8 BOP Pentobarbital FOIA.docx |

Hello,
Please see the attached FOIA request regarding the procurement of pentobarbital for federal executions.
Sincerely,
Lauren White

--
Lauren White
Press Associate
CREW | Citizens For Responsibility and Ethics in Washington
lwhite@citizensforethics.org

CREW | Citizens for Responsibility and Ethics in Washington
Main: (202) 408-5565 | Fax: (202) 588-5020 | www.citizensforethics.org

Exhibit B



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_Central Office_
_320 First St., NW_
_Washington, DC  20534_

August 14, 2019

Lauren White
Citizens for Responsibility and Ethics
1101 K. Street, NW
Suite 201
Washington, DC  20005

Dear Ms. White:

The Federal Bureau of Prisons (BOP) received your Freedom of Information Act/Privacy Act (FOIA/PA) request. Your request has been assigned a number and forwarded to the processing office noted below. Please make a note of the request number and processing office as you will need to include it in any correspondence or inquiry regarding your request. In summary, you requested all records from 2/14/2019 to present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards.

FOIA/PA Request Number:         2019-05579
Processing Office:              Central Office

The time needed to complete our processing of your request depends on the complexity of our records search and the volume and complexity of any records located. Each request is assigned to one of three tracks: simple, complex, or expedited. Due to the large number of FOIA/PA requests received by BOP and the limited resources available to process such requests, BOP handles each request on a first-in, first-out basis in relation to other requests in the same track. Your request was assigned to the complex track and placed in chronological order based on the date of receipt.

We determined unusual circumstances exist as the documents responsive to your request must be searched for and collected from a field office, and/or the documents responsive to your request are expected to be voluminous and will require significant time to review, and/or your request requires consultation with at least one other agency with a substantial interest in your request. Because of these unusual circumstances, we are extending the time limit to respond to your request for the ten additional days provided by the statute. Processing complex requests may take up to nine months. Pursuant to 28 C.F.R. § 16.5(b) and (c), you may narrow or modify your request in an effort to reduce the processing time.

Pursuant to 28 C.F.R. § 16.10, in certain circumstances we are required to charge fees for time spent searching for or duplicating responsive documents. If we anticipate your fees will be in excess of $25.00 or the amount you have indicated you are willing to pay, we will notify you of the estimated amount.  At that time, you will have the option to reformulate your request to reduce the fees. If you requested a fee waiver, we will make a decision whether to grant your request after we determine whether fees will be assessed for this request.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, please feel free to contact the CO at  or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at 202-616-7750, 320 First Street NW, Suite 936, Washington DC 20534, or ogc_efoia@bop.gov. You can also check the status of your request on line at
http://www.bop.gov/PublicInfo/execute/foia.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information, Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

*T. Allen*

T. Allen, GIS, for
Eugene E. Baime, Supervisory Attorney

Exhibit C



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_North Central Region_
_North Central Regional Office_
_Kansas City, KS  66101_

September 30, 2019

Lauren White
Citizens for Responsibility and Ethics
1101 K. Street, NW, Suite 201
Washington, DC  20005

Request Number: 2019-05579

Dear Ms. White:

This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you request all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards.

We have determined that any records responsive to your request are categorically exempt from disclosure. Accordingly, this Office is not required to conduct a search for the requested records. Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records are withheld in full from disclosure to you under the following exemptions:

(b)(4) – trade secrets and commercial or financial information obtained from a person that is privileged or confidential
(b)(5) - inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency
(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(A) - could reasonably be expected to interfere with law enforcement proceedings
(b)(7)(B) - would deprive a person of a right to a fair trial or an impartial adjudication.
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Please note, exemption (b)(7)(A) is a temporary exemption utilized to protect active and on-going law enforcement proceedings. Because of its temporary nature, you may wish to consider refiling your request for records in the future. Should you chose to refile your request, the status of law enforcement proceedings will be reevaluated and a determination made at that time as to the continued applicability of exemption (b)(7)(A).

If you have questions about this response please feel free to contact me at kchristenson@bop.gov or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at (202) 616-7750, 320 First Street NW, Suite 936, Washington DC 20534, or ogc_efoia@bop.gov.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202)741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20001, or you may submit an appeal through OIP's FOIAonline portal by creating an account at: https://www.foiaonline.gov/foiaonline/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Richard M. Winter
Regional Counsel

Exhibit D



**CREW** | citizens for responsibility and ethics in washington

October 10, 2019

Director, Office of Information Policy (OIP)
U.S. Department of Justice
441 G St., NW, Sixth Floor
Washington, D.C. 20001

RECEIVED

OCT 1 6 2019

Office of Information Policy

*Via Certified Mail*

Re: Appeal of <u>Freedom of Information Act/Privacy Acts Request No: 2019-05579</u>

Dear Director,

Citizens for Responsibility and Ethics in Washington ("CREW") hereby appeals the August 20, 2019 determination of the Federal Bureau of Prisons ("BoP") in the above-referenced Freedom of Information Act ("FOIA") request.

On August 8, 2019, CREW submitted a FOIA request to the BoP seeking all records from February 14, 2019 to the present "relating to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions."

A copy of this request is attached as Exhibit A.

By letter dated September 30, 2019, Regional Counsel Richard M. Winter asserted that the requested records were exempt from disclosure under FOIA Exemptions (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(B), (b)(7)(C), (b)(7)(E), and (b)(7)(F). A copy of this letter is attached as Exhibit B. As discussed below, the requested records do not fall within any of these exemptions.

First, at the very least, BoP is required to "provide a specific basis for each withholding."[1] BoP has invoked the above exemptions but has provided no explanation for why or how those exemptions apply beyond merely citing "'bald assertion[s]' that 'amount[] to little more than recitation of the statutory standard[s]."[2] By not providing more than boilerplate justifications, BoP has not provided a meaningful opportunity to contest its decision.

Second, BoP makes a blanket statement that the requested information was categorically exempt under all of the exemptions cited without specifying any category of exempt records. The government may assert that a class of documents is categorically exempt from disclosure only when "its definitions of relevant categories are sufficiently distinct to allow a court to determine

---

[1] *Bartko v. U.S. Dep't of Justice*, 62 F.Supp.3d 134, 146-47 (D.D.C. 2014) (quoting *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, 746 F.3d 1082, 1101 (D.C. Cir. 2014)).
[2] *Id.*

Exhibit E



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

Anne Weismann, Esq.
Citizens for Responsibility and
   Ethics in Washington
Suite 201                                    Re:    Appeal No. DOJ-AP-2020-000362
1101 K Street, NW                                   Request No. 2019-005579
Washington, DC  20005                               CDT:ADF

**VIA:  U.S. Mail**

Dear Anne Weismann:

      You appealed from the action of the Federal Bureau of Prisons (BOP) on your Freedom of Information Act request for access to records from February 14, 2019, to the present concerning the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions.

      I have been informed that you filed a lawsuit concerning BOP's action in the United States District Court for the District of Columbia.  As indicated in the Department of Justice's regulations located at 28 C.F.R. § 16.8(b)(2) (2019), an appeal ordinarily will not be acted upon by this Office if the FOIA request becomes the subject of litigation.  For this reason, I am closing your appeal file in this Office.

      If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

      Sincerely,

2/19/2020

X _Matthew W. Hurd_

Matthew W. Hurd
Acting Chief, Administrative Appeals Staff
Signed by: MATTHEW HURD

Exhibit F

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

**EMAIL RECORDS (1-1095)**

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 1 | 03/22/2019<br><br>Email from BOP Assistant Director/General Counsel to Acting Director and other BOP attorneys/staff, in which a draft "processing summary" (discussing proposed lethal injection protocol and procurement of pentobarbital) is forwarded. | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 2 | Cover page for attachment to Record No. 1 (003);<br><br>Attachment to Record No. 1 (draft "processing summary") (003). | Partial redaction:<br><br>Draft "processing summary"<br><br>Confidential commercial information regarding lethal injection substances.<br><br>Substance description, including quantity and concentration.<br><br>Price | 4: Confidential commercial or financial information provided by individuals/companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including information that could lead to the identity of those individuals/companies, such as substance description (quantity & concentration); Confidential commercial information including price, production/testing capabilities.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals/companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Production/testing capabilities<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | |
| 3 | 07/03/19<br><br>Email reply from BOP staff to a pharmacy source provider re: certificate of analysis ("CoA"). | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Lot Number for substances<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals/companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including information that could lead to the identity of those individuals/companies, such as names, substance description (quantity & concentration); Lot numbers of substances.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals/companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 4 | 07/03/2019  Email from a pharmacy source provider to an independent testing facility. | Partial redactions:  Identifying information for a source/service provider  Lot Number for substances  Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals/companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including information that could lead to the identity of those individuals/companies, such as names, substance description (quantity & concentration), Lot numbers of substances.  6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.  7(A): Identifying information (as described above) that could lead to the identity of individuals/companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.  7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.  7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 5 | 4/22/19  Email from BOP staff to other BOP staff re: CoA. | Partial redactions:  Identity of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.  7(C): Identity of BOP staff involved in procurement of lethal injection substances.  7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 6 | 4/22/19  Email from a pharmacy source provider to BOP staff re: CoA. | Partial redactions:  Identity of BOP staff  Identifying information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names and email addresses; other information that could lead to the identity of those individuals, including substances description, to include Lot Number and packaging details. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| | | | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 7 | 4/22/19<br><br>Email from pharmacy source provider to BOP staff re: CoA and monograph | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Identity of BOP staff<br><br>Lot Number for substances | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, addresses, phone numbers; other commercial information that could lead to the identity of those individuals and/or companies, including Lot Number of substances.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals/companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services;<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 8 | Cover page for attachment #1 to Record No. 7. | Partial redactions:<br><br>Lot Number for substances | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services that could lead to their identity (Lot number).<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 9 | Attachment # 1 to Record No. 7 (laboratory testing report). | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Identifying information for BOP staff<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Logo<br><br>Lot Number/product ID for substances | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, signatures, phone/fax numbers, email addresses, addresses, and other information that could lead to the identity of those individuals and/or companies including, logos, lot numbers/product identification numbers, substance descriptions, including quantity/concentration, requirements for testing; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Substance description, including quantity & concentration | |
| 10 | Cover page for attachment to Record No. 7;

Attachment to Record No. 7 (monograph). | Partial redactions:

Monograph | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, phone numbers, and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (style of monograph, reference standards, substance descriptions, including quantity/concentration; Confidential commercial information including specific descriptions of testing capabilities/performance.

6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.

7(A): Identifying information (as described above) that could lead to the individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.

7(C): Identifying information (as described above) that could lead to the individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.
7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services |
| 11 | 04/09/19

Email reply from BOP staff to a pharmacy source provider re: sample submission | Partial redactions:

Identity of testing provider(s)

Identity of BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) that could lead to the identity of such individuals/companies.

6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals  from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 12 | 04/09/19<br><br>Email from a pharmacy source provider re: requirements for testing substances. | Partial redactions:<br><br>Identifying information for pharmacy provider(s)<br><br>Identifying Information for BOP staff<br><br>Substance description, including quantity & concentration<br><br>Specific testing requirements | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, email addresses, and other information that could lead to the identity of such individuals and/or companies, such as substance descriptions, including quantity/concentration, requirements for testing.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 13 | 04/08/19<br><br>Email between a pharmacy source provider and an independent independent testing facility. | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities<br><br>Account number<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone numbers, email addresses, account numbers, and other information that could lead to the identity of such individuals and/or companies, such as substance descriptions, including quantity/concentration, requirements for testing; Confidential commercial information including specific descriptions of testing requirements/capabilities.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 14 | 04/08/19<br><br>Email between a pharmacy source provider and an independent independent testing facility. | Partial redactions:<br><br>Identifying and contact information for source/service provider(s)<br><br>Testing requirements/capabilities<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone numbers, email addresses, and other information that could lead to the identity of such individuals and/or companies, such as substance descriptions, including quantity/concentration, requirements for testing; Confidential commercial information including specific descriptions of testing requirements/capabilities.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 15 | 04/05/19<br><br>Email between a pharmacy source provider and an independent independent testing facility. | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Billing/purchase requirements<br><br>Account number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, Confidential commercial information re instructions & requirements for ordering/billing.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services,<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 16 | Company logo | Withheld in full<br><br>Identifying information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services information that could lead to the identity of such individuals/companies.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 17 | Duplicate of No. 11 | See Duplicate | See Duplicate |
| 18 | Duplicate of No. 12 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 19 | Duplicate of No. 13 | See Duplicate | See Duplicate |
| 20 | Duplicate of No. 14 | See Duplicate | See Duplicate |
| 21 | Duplicate of No. 15 | See Duplicate | See Duplicate |
| 22 | 04/09/19<br><br>Email from BOP staff to BOP staff re: testing quotations & testing requirements | Partial redactions:<br><br>Identity of source/service provider<br><br>Identity of BOP staff<br><br>Testing requirements/capabilities | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names; Confidential commercial information re: testing requirements/capabilities.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 23 | Cover page for attachment to Record No. 22 | Partial redaction:<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 24 | 04/05/19<br><br>Quotation for testing | Withheld in full: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses, account |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Labeled confidential and proprietary by source. | Identifying and contact information for a source/service provider<br><br>Billing/purchase requirements<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Price/contract negotiations<br><br>Testing methods<br><br>Account number | numbers, logos; Confidential commercial information re: instructions & requirements for ordering/billing; testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing; price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services,<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 25 | 04/16/19<br><br>Reply from BOP staff to a pharmacy source provider re: testing update | Partial redactions:<br><br>Identity of a source/service provider<br><br>Identifying and contact information of BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names).<br><br>6: Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 26 | 04/15/19<br><br>Fwd from a pharmacy source provider re: "FYI" | Partial redactions:<br><br>Identifying and contact information of a source/service provider. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names).<br><br>6: Identifying information, including names and email addresses that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 27 | 04/15/19<br><br>Email between a pharmacy source provider and an independent testing facility | Withheld in full:<br><br>Identifying and contact information for a pharmacy(ies)/testing provider(s)<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing.<br><br>6: Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 28 | Company logo | Identifying information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 29 | Duplicate of No. 25 | See Duplicate | See Duplicate |
| 30 | Duplicate of No. 26 | See Duplicate | See Duplicate |
| 31 | Duplicate of No. 27 | See Duplicate | See Duplicate |
| 32 | 04/02/19 | Partial redactions: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Email from BOP staff to BOP staff | Identity of BOP staff<br><br>Identifying information for a source/service provider<br><br>Confidential commercial information<br><br>Testing/production requirements/capabilities & timelines<br><br>Formulas/quantities required for testing<br><br>Pre-decisional discussion re: evaluation of the availability, efficacy, reliability, timing of testing services | (reformulated by BOP staff), including titles, testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing.<br><br>5: Deliberative process privilege – pre-decisional discussions re: substances being considered for inclusion in proposed execution protocol & evaluation of availability, efficacy, reliability, timing of testing services as it relates to inclusion of the substance in the proposed execution protocol.<br><br>6: Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 33 | Email from BOP staff to a source provider re: contract for purchase | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Identifying and contact information for BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, email addresses, dates.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, email addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 34 | Cover page for attachment to Record No. 33 | Partial redactions:<br><br>Identity of a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 35 | Contract for purchase of pentobarbital | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Purchase order/reference numbers<br><br>Price/contract negotiations<br><br>Substance descriptions, including quantity and concentration<br><br>Item/stock numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, addresses, phone numbers, and other information that could lead to the identity of those individuals and/or companies, such as purchase order/reference numbers, item/stock numbers, substance descriptions, including quantity/concentration, dates of purchase; Confidential commercial information including price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, email addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Identifying and contact information for BOP staff<br><br>Date | 7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 36 | Email from BOP staff to a source provider re: contract for purchase | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Identifying and contact information for BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, email addresses, dates of purchase.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, titles, addresses, email addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 37 | Duplicate of No. 34 | See Duplicate | See Duplicate |
| 38 | Duplicate to No. 35 | See Duplicate | See Duplicate |
| 39 | Email from BOP staff to BOP staff re: contract | Partial redactions:<br><br>Identity of BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as contract award numbers, dates of purchase. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Contract award number<br><br>Date | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, titles, addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 40 | Cover page for attachment to Record No. 39 | Partial redactions:<br><br>Contract award number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as contract award numbers.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 41 | Contract for purchase of pentobarbital | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Purchase order/reference numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, signatures, addresses, phone numbers, and other information that could lead to the identity of those individuals and/or companies, such as purchase order/reference numbers, item/stock numbers, substance descriptions, including quantity/concentration, dates of purchase; Confidential commercial information including price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Price/contract negotiations<br><br>Substance descriptions, including quantity and concentration<br><br>Item/stock numbers<br><br>Identifying and contact information for BOP staff<br><br>Date | Identifying information (names, titles, signatures) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 42 | Email from BOP staff to BOP staff re: justification for other than full and open competition memo | Partial redactions:<br><br>Identity of BOP staff<br><br>Date of purchase | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such dates of purchase.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 43 | Email from BOP staff to BOP staff re: changes to justification for other | Partial redactions:<br><br>Identity of BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such dates of purchase. |

18

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | than full and open competition memo | Date | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 44 | Cover page for attachment to Record No. 42 | Released in full | None |
| 45 | Attachment to Record No. 42 (Draft memo, "Justification for other than full and open competition"). | Withheld in full<br><br>Pre-decisional draft memo re: justification for purchasing lethal injection substances.<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Price/contract negotiations<br><br>Description of BOP techniques and procedures used to procure lethal injection substances<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, dates of purchase; Confidential commercial information such as price/contract negotiations.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identifying information (names/titles/signatures) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 46 | 06/03/19 | Partial redactions: | 6: Identifying information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Email from BOP staff to BOP staff re: CoA | Identity of BOP staff | 7(C): Identifying information of BOP staff involved in procurement of lethal injection substances. <br><br> 7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 47 | 06/03/19 <br><br> Email from a pharmacy source provider to BOP staff re: CoA | Partial redactions: <br><br> Identifying information for a source/service provider <br><br> Identifying information for BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, email addresses. <br><br> 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names/email addresses) of BOP staff involved in procurement of lethal injection substances. <br><br> 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. <br><br> 7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. <br><br> 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 48 | 06/03/19 <br><br> Email from a pharmacy source provider to BOP staff re: CoA | Partial redactions: <br><br> Identifying information for a source/service provider <br><br> Identifying information for BOP staff <br><br> Account number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, email addresses, addresses, phone numbers, titles, and other information that could lead to the identity of those individuals and/or companies including account numbers. <br><br> 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
|  |  |  | Identifying information (names/email addresses) of BOP staff involved in procurement of lethal injection substances. |
|  |  |  | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
|  |  |  | 7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
|  |  |  | 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 49 | Cover page for attachment to Record No. 48 | Partial redaction:<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 50 | Attachment to Record No. 48: CoA | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Identifying information for BOP staff<br><br>Testing requirements/capabilities | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses, and other information and other information that could lead to the identity of such individuals/companies including, logos, lot numbers/product identification numbers, substance descriptions (quantity/concentration), requirements for testing; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (addresses) of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Logo<br><br>Lot Number/product ID for substances<br><br>Substance description, including quantity & concentration | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals  from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 51 | 05/14/19<br><br>Email from BOP staff to a pharmacy source provider re: CoA | Partial redactions:<br><br>Identity of a pharmacy source provider<br><br>Identity of BOP staff<br><br>Lot Number for substances<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, and other information that could lead to the identity of those individuals and/or companies including lot numbers, substance descriptions, including quantity/concentration.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 52 | 05/14/19<br><br>Email between a pharmacy source provider and independent testing facility re: CoA | Partial redactions:<br><br>Identity of a pharmacy source provider<br><br>Lot Number for substances<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names/email addresses/phone numbers/addresses, titles, and other information that could lead to the identity of those individuals and/or companies including lot numbers, substance descriptions, including quantity/concentration.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 53 | 05/15/19<br><br>Email from BOP staff to BOP staff | Partial redactions:<br><br>Account numbers<br><br>Pre-decisional discussions re: lethal injection substances as it relates to proposed protocol addendum; discussions re:  evaluation of the availability, efficacy, reliability, timing of testing services.<br><br>Identifying information for BOP staff<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff) that could lead to the identity of such individuals/companies, such as account numbers, expiration dates, requirements for testing;  Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing; testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, titles, addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 54 | Cover page for attachment to Record No. 53. | Partial redaction:<br><br>Account number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 55 | Attachment to Record No. 53: CoA | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Logo<br><br>Lot Number/product ID for substances<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, phone/fax numbers, email addresses, addresses, and other information that could lead to the identity of those individuals and/or companies including logos, lot numbers/product identification numbers, substance descriptions, including quantity/concentration, requirements for testing; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 56 | 04/04/19<br><br>Email between a pharmacy source provider and independent testing facility re: meeting concerning testing | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities<br><br>Testing methods | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, web addresses, video conference identification numbers and other information that could lead to the identity of those individuals and/or companies including requirements for testing; Confidential commercial information re: testing requirements/capabilities, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 57 | Cover page for attachment to Record No. 56 | Partial redaction:<br><br>IT information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as IT information.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 58 | Attachment to Record No. 56<br><br>IT info from an independent testing facility re: meeting. | Withheld in full:<br><br>Identifying and contact information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information, such as names, email addresses, web addresses, phone numbers, IT information.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 59 | 04/04/19<br><br>Email between a pharmacy source provider, independent testing facility, BOP staff re: testing | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Identity of BOP staff<br><br>Testing requirements/capabilities<br><br>Testing methods | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, phone numbers, web addresses, video conference identification numbers and other information that could lead to the identity of those individuals and/or companies including requirements for testing; Confidential commercial information re: testing requirements/capabilities, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 60 | Duplicate to Record No. 57 | See Duplicate | See Duplicate |
| 61 | IT info for video meeting from a source/service provider | Withheld in full:<br><br>IT info for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including IT information.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services to the federal government. |
| 62 | IT info for video meeting from a | Withheld in full: | 4: Confidential commercial or financial information provided by s, including identifying information such as names, email addresses, phone numbers, web addresses, video conference identification numbers, and |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | source/service provider | Identifying and contact information for a source/service provider<br><br>Identifying and contact information of BOP staff<br><br>Testing requirements/capabilities<br><br>Testing methods | other information that could lead to the identity of those individuals and/or companies including requirements for testing; Confidential commercial information re: testing requirements/capabilities, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 63 | 04/03/19<br><br>Email between a pharmacy source provider, independent testing facility, BOP staff re: testing | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Identifying and contact information of BOP staff<br><br>Testing requirements/capabilities<br><br>Testing methods | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, phone numbers, web addresses, video conference identification numbers and other information that could lead to the identity of those individuals and/or companies including requirements for testing; Confidential commercial information re: testing requirements/capabilities, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 64 | 03/26/19<br><br>Email from BOP staff to BOP staff re: lethal injection substances | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Pre-decisional discussions re: lethal injection substances as it relates to proposed protocol addendum; discussions re: evaluation of the availability, efficacy, reliability, timing of testing services.<br><br>Identifying information for BOP staff<br><br>Testing requirements/capabilities<br><br>Testing methods | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff) that could lead to the identity of such individuals/companies, such as names, titles, requirements for/methods of testing;  Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing/testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, titles, addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals  from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Formulas/quantity/time frames for production/testing | |
| 65 | Duplicate of No. 26 | See Duplicate | See Duplicate |
| 66 | Duplicate of No. 27 | See Duplicate | See Duplicate |
| 67 | Duplicate of No. 28 | See Duplicate | See Duplicate |
| 68 | Duplicate of No. 26 | See Duplicate | See Duplicate |
| 69 | Duplicate of No. 27 | See Duplicate | See Duplicate |
| 70 | 05/01/19<br><br>Email from a pharmacy source provider to BOP staff re: testing | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Identifying information for BOP staff<br><br>Account number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, account numbers.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 71 | 04/26/19<br><br>Email from an independent testing facility to a pharmacy source provider | Partial redactions:<br><br>Identifying and contact information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses, addresses, and other information that could lead to the identity of those individuals and/or companies including, account numbers, testing requirements; Confidential commercial information re: testing |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Account numbers<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods | requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 72 | Duplicate to Record No. 16 | See Duplicate | See Duplicate |
| 73 | Cover page for attachment to Record No. 69 | Partial redaction:<br><br>Identifying information for a source/service provider<br><br>Account numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, account numbers.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 74 | Undated<br><br>Testing protocol<br><br>Labeled confidential and proprietary by source. | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, web addresses, and other information that could lead to the identity of such individuals/companies, including account numbers, logos, substance description including substances description, to include quantity/concentration details; Confidential commercial information re: instructions & requirements for ordering; testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing; testing methods/standards. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Formulas/quantity/time frames for production/testing<br><br>Testing methods/standards<br><br>Account number<br><br>Substance description, including quantity & concentration<br><br>Ordering/billing/purchasing requirements | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals  from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 75 | 04/04/19<br><br>Email from independent testing facility to BOP staff re: quote | Partial redactions<br><br>Identifying and contact information for a source/service provider<br><br>Identifying information for BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, web addresses, logos.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 76 | Duplicate to Record No. 16 | See Duplicate | See Duplicate |
| 77 | Cover page for attachment to Record No. 74 | Partial redaction:<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 78 | 04/01/19<br><br>Quotation for testing<br><br>Labeled confidential and proprietary by source. | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Billing/purchase requirements<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Price/contract negotiations<br><br>Testing methods<br><br>Account number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, logos; Confidential commercial information re: instructions & requirements  for ordering/billing; testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing; price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services,<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 79 | Duplicate to Record No. 12 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 80 | Duplicate to Record No. 13 | See Duplicate | See Duplicate |
| 81 | Duplicate to Record No. 14 | See Duplicate | See Duplicate |
| 82 | Duplicate to Record No. 15 | See Duplicate | See Duplicate |
| 83 | Duplicate to Record No. 16 | See Duplicate | See Duplicate |
| 84 | Duplicate to Record No. 12 | See Duplicate | See Duplicate |
| 85 | Duplicate to Record No. 13 | See Duplicate | See Duplicate |
| 86 | Duplicate to Record No. 14 | See Duplicate | See Duplicate |
| 87 | Duplicate to Record No. 15 | See Duplicate | See Duplicate |
| 88 | 04/09/19<br><br>Email from a pharmacy source provider to BOP staff re: testing | Partial redactions<br><br>Identifying and contact information for a source/service provider<br><br>Identifying information for BOP staff<br><br>Account numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, such as account numbers.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 89 | Duplicate of Record No. 13 | See Duplicate | See Duplicate |
| 90 | Duplicate of Record No. 14 | See Duplicate | See Duplicate |
| 91 | Duplicate of Record No. 15 | See Duplicate | See Duplicate |
| 92 | Duplicate of Record No. 16 | See Duplicate | See Duplicate |
| 93 | Cover page for attachment to Record No. 87 | Partial redaction:<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 94 | 04/05/19<br><br>Quotation for testing<br><br>Labeled confidential and proprietary. | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Billing/purchase requirements<br><br>Testing requirements/capabilities | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, logos; Confidential commercial information re: instructions & requirements  for ordering/billing; testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing; price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services,<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Formulas/quantity/time frames for production/testing<br><br>Price/contract negotiations<br><br>Testing methods<br><br>Account number | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 95 | Duplicate of Record No. 15 | See Duplicate | See Duplicate |
| 96 | Cover page for attachment to Record No. 87 | Partial redaction:<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 97 | Duplicate to Record No. 24 | See Duplicate | See Duplicate |
| 98 | Duplicate to Record No. 93 | See Duplicate | See Duplicate |
| 99 | Duplicate to Record No. 94 | See Duplicate | See Duplicate |
| 100 | Duplicate to Record No. 7 | See Duplicate | See Duplicate |
| 101 | Duplicate to Record No. 8 | See Duplicate | See Duplicate |
| 102 | Duplicate of Record No. 9 | See Duplicate | See Duplicate |
| 103 | Duplicate to Record No. 10, 12 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 104 | 05/08/19<br><br>Email from a pharmacy source provider to BOP staff | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Identity of BOP staff<br><br>Account number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, account numbers.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 105 | 05/08/19<br><br>Email from an independent testing facility to a pharmacy source provider | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Account numbers<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, titles, phone/fax numbers, email addresses, addresses, and other information that could lead to the identity of those individuals and/or companies including, account numbers, testing requirements; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Testing methods | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 106 | 05/08/09<br><br>Email from a pharmacy source provider to an independent testing facility | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Account numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, email addresses.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 107 | Duplicate of Record No. 71 | See Duplicate | See Duplicate |
| 108 | Duplicate of Record No. 16 | See Duplicate | See Duplicate |
| 109 | Cover page for attachment to Record No. 103 | Partial redactions:<br><br>Account/quotation number<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number, substance description, including quantity/concentration of substance. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 110 | 05/08/19<br><br>Testing protocol<br><br>Labeled confidential and proprietary. | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods/standards<br><br>Account number<br><br>Substance description, including quantity & concentration<br><br>Ordering/billing/purchasing requirements | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as signatures, names, titles, phone/fax numbers, web addresses, and other information that could lead to the identity of such individuals/companies, including account numbers, logos, substance description including substances description, to include quantity/concentration details; Confidential commercial information re: instructions & requirements for ordering; testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing; testing methods/standards.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 111 | 05/14/19<br><br>Email from a pharmacy source provider to BOP staff re: CoA | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account numbers, substances description, to include Lot Number and quantity/concentration of substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Lot Number for substances<br><br>Substance description, including quantity & concentration<br><br>Account numbers | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 112 | 05/14/19<br><br>Email from an independent testing facility to pharmacy source provider re: CoA | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Lot Number for substances<br><br>Substance description, including quantity & concentration<br><br>Account numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account numbers, substances description, to include Lot Number and quantity/concentration of substances.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 113 | Cover page for attachment to Record No. 111 | Partial redactions:<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services |
| 114 | Attachment to Record No. 111: CoA | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Logo<br><br>Lot Number/product ID for substances | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as signatures, names, titles, phone/fax numbers, email addresses, and other information and other information that could lead to the identity of those individuals and/or companies including, logos, lot numbers/product identification numbers, substance descriptions, including quantity/concentration, requirements for testing; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Substance description, including quantity & concentration | |
| 115 | 05/14/19<br><br>Email from a pharmacy source provider to BOP staff re: CoA. | Partial redactions:<br><br>Identity of BOP staff<br><br>Identifying information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names and email addresses; other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including substances description, to include Lot Number and packaging details.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 116 | Duplicate to Record No. 52 | See Duplicate | See Duplicate |
| 117 | Duplicate to Record No. 54 | See Duplicate | See Duplicate |
| 118 | Duplicate to Record No. 55 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 119 | 05/21/19<br><br>Email from a pharmacy source provider to BOP staff re: invoice | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Account/Invoice numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, titles, addresses, phone numbers) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account/invoice numbers.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 120 | Cover page for attachment #1 to Record No. 119 | Partial redactions:<br><br>Account/invoice number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account/invoice numbers.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 121 | Attachment #1 to Record No. 119: invoice | Withheld in full:<br><br>Identifying and contact information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, phone/fax numbers, and other information and other information that could lead to the identity of those individuals and/or companies including account numbers, lot numbers/product identification numbers, requirements for testing; Confidential commercial |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Identifying and contact information of BOP staff<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Lot Number/product ID for substances<br><br>Account/invoice numbers<br><br>Price/contract negotiations | information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods; price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 122 | Cover page for attachment #2 to Record No. 119 | Partial redactions:<br><br>Account/invoice number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account/invoice numbers.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 123 | Attachment #2 to Record No. 119: invoice | Withheld in full:<br><br>Identifying and contact information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, phone/fax numbers, and other information and other information that could lead to the identity of such individuals/companies, including account numbers, lot numbers/product identification numbers, substance description, including quantity and concentration, requirements for testing; Confidential commercial information re: testing requirements/capabilities; |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Identifying and contact information of BOP staff | production/testing timelines; formulas/quantities required for testing, testing methods; price/contract negotiations. |
| | | Testing requirements/capabilities | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| | | Formulas/quantity/time frames for production/testing | |
| | | Testing methods | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| | | Lot Number/product ID for substances | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| | | Substance description, including quantity & concentration | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| | | Account/invoice numbers | |
| | | Price/contract negotiations | |
| 124 | Duplicate of Record No. 48 | See Duplicate | See Duplicate |
| 125 | Duplicate of Record No. 49 | See Duplicate | See Duplicate |
| 126 | Duplicate of Record No. 50 | See Duplicate | See Duplicate |
| 127 | Email from a source provider to BOP staff re: contract | Partial redactions: Identifying and contact information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, email addresses, dates, and other information that could lead to the identity of such individuals/companies, such as contract numbers and dates. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Identifying and contact information for BOP staff<br><br>Contract numbers<br><br>Date | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, titles, addresses, email addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 128 | Duplicate of Record No. 40 | See Duplicate | See Duplicate |
| 129 | Duplicate of No. 41 | See Duplicate | See Duplicate |
| 130 | 06/06/19<br><br>Email from a pharmacy source provider to BOP staff re: test results | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Account/Invoice numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, titles, addresses, phone numbers) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account/invoice numbers.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 131 | Cover page for attachment to Record No. 130 | Partial redactions:<br><br>Account/CoA number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account/CoA numbers.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 132 | Attachment to Record No. 130: CoA | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Logo<br><br>Lot Number/product ID for substances | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as signatures, names, titles, phone/fax numbers, email addresses, and other information and other information that could lead to the identity of those individuals and/or companies including, logos, lot numbers/product identification numbers, substance descriptions, including quantity/concentration, requirements for testing; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

47

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| | | Substance description, including quantity & concentration | |
| 133 | Email from a pharmacy source provider to BOP staff re: pricing | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Account/quotation numbers<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, titles, addresses, phone numbers) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account/quotation numbers.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 134 | Cover page for attachment to Record No. 133 | Partial redactions:<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account/CoA numbers.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 135 | Attachment to Record No. 133 (quotation) | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Identifying and contact information of BOP staff<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Logos<br><br>Substance description, including quantity & concentration<br><br>Account/quotation numbers<br><br>Price/contract negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, phone/fax numbers, addresses, email addresses, and other information and other information that could lead to the identity of such individuals/companies, including logos, account numbers, substance description, including quantity and concentration; Confidential commercial information re: price/contract negotiations;<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 136 | 07/01/19<br><br>Email from a pharmacy source provider to BOP staff re: invoice | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Account/Invoice numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, titles, addresses, phone numbers) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account/invoice numbers. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Substance description, including quantity & concentration | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 137 | Duplicate of Record No. 122 | See Duplicate | See Duplicate |
| 138 | Duplicate of Record No. 123 | See Duplicate | See Duplicate |
| 139 | 07/03/19<br><br>Email from a pharmacy source provider to BOP staff re: CoA | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Account/CoA numbers<br><br>Lot Number/product ID for substances | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account/CoA numbers, Lot numbers of substances, substance descriptions, including quantity and concentration.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Substance description, including quantity & concentration | 7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 140 | 07/03/19<br><br>Email from an independent testing facility to a pharmacy source provider re: CoA | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Identity of BOP staff<br><br>Account/CoA numbers<br><br>Lot Number/product ID for substances<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, titles, email addresses, addresses, phone numbers) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including account/CoA numbers, Lot numbers of substances, substance descriptions, including quantity and concentration.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 141 | Cover page for attachment to Record No. 139 | Partial redactions:<br><br>Account/CoA number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account/CoA numbers.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 142 | Attachment to Record No. 139: CoA | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Logo<br><br>Lot Number/product ID for substances<br><br>Substance description, including quantity & concentration | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as signatures, names, titles, phone/fax numbers, email addresses, and other information and other information that could lead to the identity of those individuals and/or companies including, logos, lot numbers/product identification numbers, substance descriptions, including quantity/concentration, requirements for testing; Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 143 | 03/08/2019 | Partial redaction: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Email from BOP attorney other BOP attorneys in which a draft memo addressed to the Attorney General ("draft AG memo") concerning the proposed protocol addendum is forwarded for review/editing. | Identifying information for a source/service provider

Identifying and contact information for BOP staff Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & finalize proposed lethal injection protocol.

Techniques and procedures utilized to procure lethal injection substances. | (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including location, registration requirements.

5: Deliberative process privilege – pre-decisional discussions re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.

6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers.

7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.

7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers

7(E): Techniques and procedures to procure lethal injection substances.

7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers. |
| 144 | Cover page for attachment to Record 143 (Memo to AG) | Released in full | None |
| 145 | 03/27/2019

Draft memo addressed to the Attorney General concerning the proposed protocol addendum | Withheld in full:

Confidential commercial information that could lead to Identity of a source/service provider.

Pre-decisional draft memorandum/Attorney work product re: BOP efforts | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including location, registration requirements, production requirements.

5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | to procure lethal injection substances & discussing the proposed lethal injection protocol, as it relates to ongoing and anticipated future litigation. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 146 | 03/27/2019<br><br>Email from BOP attorney to BOP Assistant Director/General Counsel to Acting Director in which a draft "processing summary" is forwarded. | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 147 | 03/27/19<br><br>Email from to BOP Assistant Director/General Counsel to BOP attorney | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 148 | Cover page for attachment #1 to Record No. 146 (010 12:31) | Released in full | None |
| 149 | Attachment #1 to Record No. 146 (draft "processing summary") (010 12:31). | Withheld in full:<br><br>Draft "processing summary" | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 150 | Cover page for attachment #2 to Record No. 146 (Clean 010) | Released in full | None |
| 151 | Attachment #2 to Record No. 146 (draft "processing summary") (Clean 010). | Withheld in full<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 152 | 03/27/2019<br><br>Email from BOP Assistant Director/General Counsel to Acting Director and other BOP staff, in which a draft "processing summary" is forwarded. | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 153 | Cover page for attachment to Record No. 152 (010 12:50 version). | Released in full | None |
| 154 | Attachment to Record No. 152 (draft "processing | Withheld in full:<br><br>Draft "processing summary" | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | summary") (010 12:50 version). | Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 155 | 03/27/2019<br><br>Email from BOP Assistant Director/General Counsel to Acting Director, BOP staff, and DOJ attorneys in which a draft "processing summary" is forwarded. | Partial redaction:<br><br>Identifying information for BOP/DOJ staff. | 6: Identity of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP/DOJ staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 156 | Cover page for attachment to Record No. 155 (010) (13:51). | Released in full | None |
| 157 | Attachment to Record No. 155 (draft "processing summary") (010) (13:51). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 158 | 03/27/2019<br><br>Email from BOP Assistant Director/General Counsel to Acting Director, BOP staff, | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | and DOJ attorneys in which a draft "processing summary" is forwarded. | | |
| 159 | Duplicate of Record No. 155 | See Duplicate | See Duplicate |
| 160 | Cover page for attachment to Record No. 158 (010) (14:17) version) | Released in full | None |
| 161 | Attachment to Record No. 156 (draft "processing summary") (010 14:17 version). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 162 | 03/26/2019<br><br>Email from BOP Assistant Director/General Counsel to Acting Director, BOP staff, and BOP DOJ attorneys in which a draft "processing summary" is forwarded. | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 163 | Cover page for attachment to Record No. 162 (007) | Released in full | None |
| 164 | Attachment to Record No. 162 (draft "processing summary") (007). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 165 | 03/22/2019<br><br>Email from BOP Assistant Director/General Counsel to Acting Director, BOP staff, and BOP DOJ attorneys in which a draft "processing summary" is forwarded. | Partial redaction:<br><br>Identifying information for BOP staff.<br><br>Attorney analysis of case law and how it affects processing summary as written. | 5: Deliberative process privilege – back and forth discussions re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 166 | 03/22/2019<br><br>Email from BOP attorney to BOP attorney and BOP Assistant Director/General Counsel re: draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff.<br><br>Attorney analysis of legal liability and how it affects processing summary as written.<br><br>Confidential commercial information reformulated by BOP staff re: production capabilities/time frames. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including production capabilities/time frames.<br><br>5: Deliberative process privilege – back and forth discussions re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 167 | 03/22/2019<br><br>Email from BOP Assistant Director/General Counsel to BOP attorney re: draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 168 | Cover page for attachment to Record No. 165 (9:43 draft) | Released in full | None |
| 169 | Attachment to Record No. 165 (draft "processing summary") (9:43 draft). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 170 | 03/21/19<br><br>Email from BOP attorney to BOP Assistant Director/General Counsel re: draft "processing summary." (first draft 22:14) | Partial redaction:<br><br>Pre-decisional discussion/attorney work product re: BOP deliberations as it relates to finalizing proposed execution protocol addendum and ongoing and anticipated litigation.<br><br>Identifying information for BOP staff. | 5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 171 | Cover page for attachment to Record No. 170 (first draft, 22:14) | Released in full | None |
| 172 | Attachment to Record No. 170 (draft "processing summary") (first draft, 22:14). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 7(E): Techniques and procedures to procure lethal injection substances. |
| 173 | 03/22/19<br><br>Email from BOP attorney to BOP Assistant Director/General Counsel forwarding draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 174 | Cover page for attachment to Record No. 173 (- 2) (12:11) | Released in full | None |
| 175 | Attachment to Record No. 173 (draft "processing summary") (-2) (12:11). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 176 | 03/22/19<br><br>Email from BOP attorney to BOP Assistant Director/General Counsel and BOP staff forwarding draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff.<br><br>Pre-decisional discussion/attorney work product/privileged attorney-client communication re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Contract/price negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 177 | Cover page for attachment to Record No. 176 (- 2) | Released in full | None |
| 178 | Attachment to Record No. 176 (draft "processing summary") (- 2). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 179 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 180 | Duplicate of Record No. 2 | See Duplicate | See Duplicate |
| 181 | Duplicate of Record No. 2 | See Duplicate | See Duplicate |
| 182 | 03/25/19 | Partial redaction: | 6: Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Email from BOP Assistant Director/General Counsel to BOP Acting Director, BOP attorneys, and BOP staff forwarding draft "processing summary." | Identifying information for BOP staff. | 7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 183 | Cover page for attachment to Record No. 182 (005) | Released in full | None |
| 184 | Attachment to Record No. 182 (draft "processing summary") (005). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 185 | 03/22/19<br><br>Email from BOP Assistant Director/General Counsel to BOP Acting Director, BOP attorneys, and BOP staff forwarding draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 186 | Duplicate of Record No. 173 | See Duplicate | See Duplicate |
| 187 | Duplicate of Record No. 174 | See Duplicate | See Duplicate |
| 188 | Duplicate of Record No. 175 | See Duplicate | See Duplicate |
| 189 | 03/22/19<br><br>Email from BOP attorney to BOP Assistant Director/General Counsel and BOP staff forwarding draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 190 | Cover page for attachment to Record No. 189 (-2 w/ fn) | Released in full | None |
| 191 | Attachment to Record No. 189 (draft "processing summary") (- 2 w/ fn). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 192 | 03/24/19<br><br>Email from BOP Assistant Director/General Counsel to BOP | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Acting Director, BOP attorneys, and BOP staff forwarding draft "processing summary." | | |
| 193 | 03/23/19<br><br>Email from BOP Acting Director to BOP Assistant Director/General Counsel re: edits to draft "processing summary | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 194 | Duplicate of Record No. 1 | | |
| 195 | Cover page for attachment to Record No. 192 (004) | Released in full | None |
| 196 | Attachment to Record No. 182 (draft "processing summary") (004). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | |
| 197 | 03/26/19<br><br>Email from BOP Regional Director to BOP Acting Director, BOP Assistant Director/General Counsel and BOP staff re: substances. | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 198 | Duplicate to Record No. 64 | See Duplicate | See Duplicate |
| 199 | 03/25/19<br><br>Email from BOP staff to BOP Acting Director, BOP Assistant Director/General Counsel & DOJ attorney forwarding draft "processing summary" (005) | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 200 | Duplicate of Record No. 183 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 201 | Duplicate of Record No. 184 | See Duplicate | See Duplicate |
| 202 | 04/01/19<br><br>Email from BOP Regional Director to BOP Acting Director, BOP Assistant Director/General Counsel, BOP attorneys, and BOP staff re: status of testing. | Partial redactions:<br><br>Identity of BOP staff<br><br>Pre-decisional discussion re: evaluation of the availability, efficacy, reliability, timing of testing services | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing.<br><br>5: Deliberative process privilege – pre-decisional discussions re: substances being considered for inclusion in proposed execution protocol & evaluation of availability, efficacy, reliability, timing of testing services as it relates to inclusion of the substance in the proposed execution protocol.<br><br>6: Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 203 | 03/26/2019<br><br>Email from BOP attorney to BOP Acting Director, BOP Assistant Director/General | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

72

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Counsel, BOP attorneys, and BOP staff re: edits to draft "processing summary." | | |
| 204 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 205 | Cover page for attachment to Record No. 203 (007-initials) | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 206 | Attachment to Record No. 192 (draft "processing summary") (007-initials). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 207 | 03/27/2019<br><br>Email from BOP Assistant Director/General Counsel to BOP Acting Director, BOP attorneys, and BOP staff re: edits to draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff. | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 208 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 209 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 210 | Cover page for attachment to Record No. 207 (008) | Released in full | None |
| 211 | Attachment to Record No. 207 (draft "processing summary") (008). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 212 | Duplicate of Record No. 147 | See Duplicate | See Duplicate |
| 213 | Cover page for attachment to Record No. 212 (009) | Released in full | None |
| 214 | Attachment to Record No. 212 (draft "processing summary") (009). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | |
| 215 | 03/27/19<br><br>Email from BOP staff to BOP Acting Director, BOP Assistant Director/General Counsel, BOP Regional Director, BOP attorneys, and BOP staff re: status of testing. | Partial redactions:<br><br>Identifying and contact information of BOP staff<br><br>Pre-decisional discussion re: evaluation of the availability, efficacy, reliability, timing of testing services | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing.<br><br>5: Deliberative process privilege – pre-decisional discussions re: substances being considered for inclusion in proposed execution protocol & evaluation of availability, efficacy, reliability, timing of testing services as it relates to inclusion of the substance in the proposed execution protocol.<br><br>6: Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (name, titles, addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 216 | 03/27/19<br><br>Email from BOP Assistant Director/General Counsel to BOP attorneys and BOP staff re: edits to processing summary. | Partial redactions:<br><br>Identifying and contact information of BOP staff<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 5: Deliberative process privilege – back and forth pre-decisional discussions re: information to include in draft processing summary re: proposed execution protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 217 | 03/27/19<br><br>Email from BOP attorney to BOP Assistant Director/General Counsel and BOP staff forwarding draft "processing summary." | Partial redaction:<br><br>Identifying information for BOP staff.<br><br>Identifying information for a source/service provider<br><br>Confidential commercial information: production/testing capabilities<br><br>Production/testing timeframes<br><br>Expiration of substances | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names); Confidential commercial information including production/testing capabilities and timeframes, expiration dates.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication; legal analysis.<br><br>6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Pre-decisional discussion/attorney work product/privileged attorney-client communication (legal analysis re: aspects of proposed lethal injection protocol, as it relates to ongoing and anticipated litigation). | 7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 218 | Duplicate of Record No. 208 | See Duplicate | See Duplicate |
| 219 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 220 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 221 | 04/05/19 Email from BOP Assistant Director/General Counsel to BOP attorneys and BOP staff re: edits to processing summary. | Partial redactions: Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances. 7(C): Identity of BOP staff involved in procurement of lethal injection substances. 7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 222 | 04/04/19 Email from BOP Regional Director | Released in full | None |
| 223 | Cover page for attachment to Record No. 221 (011) | Released in full | None |
| 224 | Attachment to Record No. 221 (draft | Withheld in full: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | "processing summary") (011). | Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 225 | 04/05/19<br><br>Email from BOP staff to BOP Regional Director, BOP attorneys re: edits to draft "processing summary" | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 226 | 04/05/19<br><br>Email from BOP attorney to BOP | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Assistant Director/General Counsel re: edits to draft "processing summary" | | 7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 227 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 228 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 229 | Cover page for attachment to Record No. 225 (011_edit) | Released in full | None |
| 230 | Attachment to Record No. 225 (draft "processing summary") (011_edit). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 231 | 04/05/19<br><br>Email from BOP Assistant Director/General Counsel to BOP Regional Director, BOP attorneys and staff re: edits to draft "processing summary." | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 232 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 233 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 234 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 235 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 236 | Cover page for attachment to Record No. 231 (012) | Released in full | None |
| 237 | Attachment to Record No. 231 (draft "processing summary") (012). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 238 | 04/08/19<br><br>Email from BOP Assistant Director/General Counsel to BOP staff re: edits to draft "processing summary." | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 239 | Cover page for attachment to Record No. 238 (016) | Released in full | None |
| 240 | Attachment to Record No. 238 (draft "processing summary") (016). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 241 | 04/01/19<br><br>Reply email from BOP Acting Director to BOP Assistant Director/General Counsel re: update | Released in full | None |
| 242 | 04/01/19<br><br>Email from BOP Assistant Director/General Counsel to BOP Acting Director, BOP attorneys and staff re: update. | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 243 | 04/01/19 | Partial redaction: | 5: Deliberative process privilege – pre-decisional, back and forth discussion re: status of proposed execution protocol, commentary re: changes to status. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Email from BOP Acting Director to BOP Assistant Director/General Counsel re: status of proposed protocol. | Identifying information for BOP/DOJ staff. Pre-decisional discussion/commentary re: status of proposed lethal injection protocol. | 6: Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. 7(C): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. 7(F): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. |
| 244 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 245 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 246 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 247 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 248 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 249 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 250 | 04/05/19 Email from BOP Assistant Director/General Counsel to BOP Regional Director, BOP attorneys and staff re: edits to draft "processing summary" | Partial redaction: Confidential commercial information re: production/testing capabilities and timeframes Substance description including quantity, packaging details, expiration dates | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including substance description (quantity & packaging details, expiration dates) & production/testing capabilities and timeframes. 5: Deliberative process privilege – pre-decisional discussion and commentary re: edits to draft processing summary; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis of information contained in draft summary. 6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al*., 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Pre-decisional discussion/attorney work product/attorney client communication re: information in processing summary as it relates to finalization of proposed protocol and pending/anticipated litigation. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. 7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. 7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 251 | Cover page for attachment to Record No. 250 (013) | Released in full | None |
| 252 | Attachment to Record No. 250 (draft "processing summary") (013). | Withheld in full: Draft "processing summary" Identifying information for a source/service provider Contract/price negotiations Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations. 5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. 7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 253 | 04/05/19<br><br>Email from BOP Assistant Director/General Counsel to BOP Regional Director, BOP attorneys and staff re: edits to draft "processing summary" | Partial redaction:<br><br>Identity of BOP staff<br><br>Confidential commercial information re: production/testing capabilities and timeframes<br><br>Substance description including quantity, packaging details, expiration dates<br><br>Pre-decisional discussion/attorney work product/attorney client communication re: information in processing summary as it relates to finalization of proposed protocol and pending/anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including substance description (quantity & packaging details, expiration dates) & production/testing capabilities and timeframes.<br><br>5: Deliberative process privilege – pre-decisional discussion and commentary re: edits to draft processing summary; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis of information contained in draft summary.<br><br>6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 254 | 04/05/19<br><br>Email from BOP Regional Director to BOP Assistant Director/General Counsel re: edits to | Partial redaction:<br><br>Confidential commercial information re: production/testing capabilities and timeframes | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including substance description (quantity & packaging details, expiration dates) & production/testing capabilities and timeframes.<br><br>5: Deliberative process privilege – pre-decisional discussion and commentary re: edits to draft processing summary. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | draft "processing summary" | Substance description including quantity, packaging details, expiration dates<br><br>Pre-decisional discussion/commentary re: information in processing summary as it relates to finalization of proposed protocol. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 255 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 256 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 257 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 258 | 04/08/19<br><br>Email from BOP Assistant Director/General Counsel to BOP Regional Director, BOP attorneys and staff re: edits to draft "processing summary" | Partial redaction:<br><br>Identity of BOP staff.<br><br>Pre-decisional discussion/attorney work product/attorney client communication re: information in processing summary as it relates to finalization of proposed protocol and pending/anticipated litigation. | 5: Deliberative process privilege – pre-decisional discussion and commentary re: edits to draft processing summary; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis of information contained in draft summary.<br><br>6: Identity of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP/DOJ staff involved in procurement of lethal injection substances. |
| 259 | Cover page for attachment to Record No. 258 (014) | Released in full | None |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 260 | Attachment to Record No. 258 (draft "processing summary") (014). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 261 | 04/08/19<br><br>Email from BOP Assistant Director/General Counsel to BOP Regional Director, BOP attorneys and staff re: edits to draft "processing summary" | Partial redaction:<br><br>Identity of BOP staff.<br><br>Pre-decisional discussion/attorney work product/attorney client communication re: information in processing summary as it relates to finalization of proposed | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including substance description (quantity & packaging details, expiration dates) & production/testing capabilities and timeframes.<br><br>5: Deliberative process privilege – pre-decisional discussion and commentary re: edits to draft processing summary; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis of information contained in draft summary.<br><br>6: Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | protocol and pending/anticipated litigation. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. <br><br> 7(C): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. <br><br> 7(F): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. |
| 262 | 04/08/19 <br><br> Email from BOP attorney re: edits to draft "processing summary." | Partial redaction: <br><br> Identity of BOP staff. <br><br> Pre-decisional discussion/attorney work product/attorney client communication re: information in processing summary as it relates to finalization of proposed protocol and pending/anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including substance description (quantity & packaging details, expiration dates) & production/testing capabilities and timeframes. <br><br> 5: Deliberative process privilege – pre-decisional discussion and commentary re: edits to draft processing summary; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis of information contained in draft summary. <br><br> 6: Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. <br><br> 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. <br><br> 7(C): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. <br><br> 7(F): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 263 | Cover page for attachment to Record No. 261 (015) | Released in full | None |
| 264 | Attachment to Record No. 261 (draft "processing summary") (015). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 265 | 04/05/19<br><br>Email from BOP attorney to BOP Assistant Director/General Counsel, BOP Regional Director, | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | BOP attorneys and staff re: draft "processing summary." | | |
| 266 | Cover page for attachment to Record No. 265 (013_1) | Released in full | None |
| 267 | Attachment to Record No. 261 (draft "processing summary") (013_1). | Withheld in full: <br><br> Draft "processing summary" <br><br> Identifying information for a source/service provider <br><br> Contract/price negotiations <br><br> Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. <br><br> Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations. <br><br> 5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. <br><br> 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. <br><br> 7(E): Techniques and procedures to procure lethal injection substances. |
| 268 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 269 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 270 | Duplicate of Record No. 223 | See Duplicate | See Duplicate |
| 271 | Duplicate of Record No. 224 | See Duplicate | See Duplicate |
| 272 | Duplicate of Record No. 265 | See Duplicate | See Duplicate |
| 273 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 274 | Duplicate of Record No. 267 | See Duplicate | See Duplicate |
| 275 | Duplicate of Record No. 265 | See Duplicate | See Duplicate |
| 276 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 277 | Duplicate of Record No. 267 | See Duplicate | See Duplicate |
| 278 | 04/05/19<br><br>Email from BOP attorney to BOP Regional Director re: edits to draft "processing summary." | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 279 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 280 | Duplicate of Record 267 | See Duplicate | See Duplicate |
| 281 | Duplicate of Record No. 253 | See Duplicate | See Duplicate |
| 282 | Duplicate of Record No. 254 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 283 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 284 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 285 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 286 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 287 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 288 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 289 | Duplicate of Record No. 231 | See Duplicate | See Duplicate |
| 290 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 291 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 292 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 293 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 294 | Duplicate of Record No. 236 | See Duplicate | See Duplicate |
| 295 | Duplicate of Record No. 237 | See Duplicate | See Duplicate |
| 296 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 297 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 298 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 299 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 300 | Duplicate of Record No. 229 | See Duplicate | See Duplicate |
| 301 | Duplicate of Record No. 230 | See Duplicate | See Duplicate |
| 302 | Duplicate of Record No. 261 | See Duplicate | See Duplicate |
| 303 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 304 | Duplicate of Record No. 263 | See Duplicate | See Duplicate |
| 305 | Duplicate of Record No. 264 | See Duplicate | See Duplicate |
| 306 | Duplicate of Record No. 258 | See Duplicate | See Duplicate |
| 307 | Duplicate of Record No. 259 | See Duplicate | See Duplicate |
| 308 | Duplicate of Record No. 260 | See Duplicate | See Duplicate |
| 309 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 310 | Cover page for attachment to Record No. 309 (014_1) | Released in full | None |
| 311 | Attachment to Record No. 309 (draft "processing summary") (014_1). | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider<br><br>Contract/price negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 312 | Duplicate of Record No. 143 | See Duplicate | See Duplicate |
| 313 | Duplicate of Record No. 144 | See Duplicate | See Duplicate |
| 314 | Duplicate of Record No. 145 | See Duplicate | See Duplicate |
| 315 | 03/12/19<br><br>Email from BOP attorney to BOP staff re: draft talking points re: BOP's efforts to procure lethal injection substances | Partial redaction:<br><br>Identity of BOP staff.<br><br>Pre-decisional discussion/commentary re: BOP's efforts, deliberations to select and procure lethal injection substances to be incorporated into proposed execution protocol addendum. | 5: Deliberative process privilege – pre-decisional discussion and commentary re: talking points for inquires re: BOP's efforts to select/procure lethal injection substances.<br><br>6: Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying and contact information of BOP/DOJ staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 316 | Cover page for attachment to Record No. 315 | Partial redaction:<br><br>Pre-decisional discussion re: BOP's efforts, deliberations to select and procure lethal injection substance to be incorporated into proposed execution protocol addendum.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 5: Deliberative process privilege – pre-decisional discussion and commentary re: talking points for inquires re: BOP's efforts to select/procure lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 317 | Attachment to Record No. 315 ("talking points" re: BOP's efforts to select/procure lethal injection substances for inclusion in the revised execution protocol. | Withheld in full:<br><br>Identity of BOP staff.<br><br>Pre-decisional discussion/commentary re: BOP's efforts, deliberations to select and procure lethal injection substance to be incorporated into proposed execution protocol addendum.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies, including names, locations, registration requirements.<br><br>5: Deliberative process privilege – pre-decisional draft "talking points" re: BOP's efforts to select/procure substances for inclusion in the proposed execution protocol.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 318 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 319 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 320 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 321 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 322 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 323 | 04/02/2019<br><br>Email from BOP attorney to BOP attorneys in which a draft memo addressed to the Attorney General concerning the proposed protocol addendum is forwarded for review/editing. | Partial redaction:<br><br>Identifying and contact information for BOP staff<br><br>Pre-decisional discussion/attorney work product/attorney-client privileged communication re: analysis and language in draft. | 5: Deliberative process privilege – pre-decisional discussions re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation/Privileged attorney-client communication, discussion of legal analysis contained in work product.<br><br>6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers<br><br>7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers. |
| 324 | 04/02/19<br><br>Email reply from BOP attorney to BOP attorney re: edits to draft AG memo | Partial redaction:<br><br>Identity of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 325 | 04/02/2019<br><br>Email from BOP attorney to BOP | Partial redaction:<br><br>Identifying and contact information for BOP staff | 5: Deliberative process privilege – pre-decisional discussions re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation/Privileged attorney-client communication, discussion of legal analysis contained in work product. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | attorneys in which a draft memo addressed to the Attorney General concerning the proposed protocol addendum is forwarded for review/editing. | Pre-decisional discussion/attorney work product/attorney-client privileged communication re: analysis and language in draft. | 6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers<br><br>7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers. |
| 326 | Cover page for attachment to Record 143 (Memo to AG, 003) | Partial redaction:<br><br>Identifying and contact information for BOP staff | 6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers<br><br>7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances, including names, titles, addresses, phone numbers. |
| 327 | 03/27/2019<br><br>Draft memo to AG concerning the proposed protocol addendum (003) | Withheld in full:<br><br>Confidential commercial information that could lead to Identity of a source/service provider.<br><br>Pre-decisional draft memorandum/Attorney work product re: BOP efforts to procure lethal injection substances & discussing the proposed lethal injection protocol, as it relates to ongoing and anticipated future litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including location, registration requirements, production requirements.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation; Privileged attorney-client communication, legal analysis, commentary.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 328 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 329 | Duplicate of Record No. 147 | See Duplicate | See Duplicate |
| 330 | Duplicate of Record No. 213 | See Duplicate | See Duplicate |
| 331 | Duplicate of Record No. 214 | See Duplicate | See Duplicate |
| 332 | Duplicate of Record No. 215 | See Duplicate | See Duplicate |
| 333 | Duplicate of Record No. 216 | See Duplicate | See Duplicate |
| 334 | Duplicate of Record No. 217 | See Duplicate | See Duplicate |
| 335 | Duplicate of Record No. 207 | See Duplicate | See Duplicate |
| 336 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 337 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 338 | Duplicate of Record No. 207 | See Duplicate | See Duplicate |
| 339 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 340 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 341 | Duplicate of Record No. 210 | See Duplicate | See Duplicate |
| 342 | Duplicate of Record No. 211 | See Duplicate | See Duplicate |
| 343 | Duplicate of Record No. 146 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 344 | Duplicate of Record No. 147 | See Duplicate | See Duplicate |
| 345 | Duplicate of Record No. 148 | See Duplicate | See Duplicate |
| 346 | Duplicate of Record No. 149 | See Duplicate | See Duplicate |
| 347 | Duplicate of Record No. 150 | See Duplicate | See Duplicate |
| 348 | Duplicate of Record No. 151 | See Duplicate | See Duplicate |
| 349 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 350 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 351 | Duplicate of Record No. 205 | See Duplicate | See Duplicate |
| 352 | Duplicate of Record No. 206 | See Duplicate | See Duplicate |
| 353 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 354 | Duplicate of Record No. 163 | See Duplicate | See Duplicate |
| 355 | Duplicate of Record No. 164 | See Duplicate | See Duplicate |
| 356 | Duplicate of Record No. 167 | See Duplicate | See Duplicate |
| 357 | Cover page for attachment to Record No. 356 (8:52 draft) | Released in full | None |
| 358 | Attachment to Record No. 356 (Draft "processing summary" 8:52 draft) | Withheld in full: Draft "processing summary" | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Identifying information for a source/service provider<br><br>Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.<br><br>5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 359 | Duplicate of Record No. 170 | See Duplicate | See Duplicate |
| 360 | Duplicate of Record No. 171 | See Duplicate | See Duplicate |
| 361 | Duplicate of Record No. 172 | See Duplicate | See Duplicate Double check this |
| 362 | Duplicate of Record No. 192 | See Duplicate | See Duplicate |
| 363 | Duplicate of Record No. 193 | See Duplicate | See Duplicate |
| 364 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 365 | Duplicate of Record No. 195 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 366 | Duplicate of Record No. 196 | See Duplicate | See Duplicate |
| 367 | 03/22/19

Email from BOP attorney to BOP staff re: edits to draft "processing summary." | Partial redaction:

Identifying and contact information of BOP staff | 6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances.

7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances.

7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 368 | Cover page for attachment to Record No. 367 ( - 2) | Released in full | None |
| 369 | Attachment to Record No. 367 (draft "processing summary") (-2). | Withheld in full:

Draft "processing summary"

Identifying information for a source/service provider

Contract/price negotiations

Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations.

5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.

7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.

7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| 370 | Duplicate of Record No. 176 | See Duplicate | See Duplicate |
| 371 | Duplicate of Record No. 177 | See Duplicate | See Duplicate |
| 372 | Duplicate of Record No. 178 | See Duplicate | See Duplicate |
| 373 | Duplicate of Record No. 185 | See Duplicate | See Duplicate |
| 374 | Duplicate of Record No. 173 | See Duplicate | See Duplicate |
| 375 | Duplicate of Record No. 174 | See Duplicate | See Duplicate |
| 376 | Duplicate of Record No. 175 | See Duplicate | See Duplicate |
| 377 | Duplicate of Record No. 173 | See Duplicate | See Duplicate |
| 378 | Duplicate of Record No. 174 | See Duplicate | See Duplicate |
| 379 | Duplicate of Record No. 175 | See Duplicate | See Duplicate |
| 380 | Duplicate of Record No. 182 | See Duplicate | See Duplicate |
| 381 | Duplicate of Record No. 183 | See Duplicate | See Duplicate |
| 382 | Duplicate of Record No. 184 | See Duplicate | See Duplicate |
| 383 | Duplicate of Record No. 189 | See Duplicate | See Duplicate |
| 384 | Duplicate of Record No. 190 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 385 | Duplicate of Record No. 191 | See Duplicate | See Duplicate |
| 386 | Duplicate of Record No. 165 | See Duplicate | See Duplicate |
| 387 | Duplicate of Record No. 166 | See Duplicate | See Duplicate |
| 388 | Duplicate of Record No. 167 | See Duplicate | See Duplicate |
| 389 | Duplicate of Record No. 168 | See Duplicate | See Duplicate |
| 390 | Duplicate of Record No. 169 | See Duplicate | See Duplicate |
| 391 | 03/22/19<br><br>Email from BOP attorney to BOP staff re: draft "processing summary." | Partial redaction:<br><br>Identifying and contact information of BOP staff | 6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 392 | Duplicate of Record No. 177 | See Duplicate | See Duplicate |
| 393 | Duplicate of Record No. 178 | See Duplicate | See Duplicate |
| 394 | 08/02/19<br><br>Email from a source provider re: procurement of lethal injection substances | Withheld in full:<br><br>Identifying and contact information for a source/service provider<br><br>Identity of BOP staff<br><br>Price/contract negotiations | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, addresses, phone/fax numbers, titles, email addresses, web addresses; Confidential commercial information such as price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 395 | Duplicate of Record No. 394 | See Duplicate | See Duplicate |
| 396 | Duplicate to Record No. 59 | See Duplicate | See Duplicate |
| 397 | Duplicate to Record No. 57, 61, 62 | See Duplicate | See Duplicate |
| 398 | Duplicate to Record No. 63 | See Duplicate | See Duplicate |
| 399 | Duplicate to Record No. 56 | See Duplicate | See Duplicate |
| 400 | Duplicate to Record No. 57 | See Duplicate | See Duplicate |
| 401 | Duplicate to Record No. 58 | See Duplicate | See Duplicate |
| 402 | Duplicate to Record No. 5 | See Duplicate | See Duplicate |
| 403 | Duplicate to Record No. 6 | See Duplicate | See Duplicate |
| 404 | Duplicate to Record No. 7 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 405 | Duplicate to Record No. 8 | See Duplicate | See Duplicate |
| 406 | Duplicate to Record No. 9 | See Duplicate | See Duplicate |
| 407 | Duplicate to Record No. 10 | See Duplicate | See Duplicate |
| 408 | Duplicate to Record No. 22 | See Duplicate | See Duplicate |
| 409 | Duplicate to Record No. 23 | See Duplicate | See Duplicate |
| 410 | Duplicate to Record No. 24 | See Duplicate | See Duplicate |
| 411 | Duplicate to Record No. 11 | See Duplicate | See Duplicate |
| 412 | Duplicate to Record No. 12 | See Duplicate | See Duplicate |
| 413 | Duplicate to Record No. 13 | See Duplicate | See Duplicate |
| 414 | Duplicate to Record No. 14 | See Duplicate | See Duplicate |
| 415 | Duplicate to Record No. 15 | See Duplicate | See Duplicate |
| 416 | Duplicate to Record No. 16 | See Duplicate | See Duplicate |
| 417 | Duplicate to Record No. 11 | See Duplicate | See Duplicate |
| 418 | Duplicate to Record No. 12 | See Duplicate | See Duplicate |
| 419 | Duplicate to Record No. 13 | See Duplicate | See Duplicate |
| 420 | Duplicate to Record No. 14 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 421 | Duplicate to Record No. 15 | See Duplicate | See Duplicate |
| 422 | Duplicate to Record No. 15 | See Duplicate | See Duplicate |
| 423 | Duplicate to Record No. 25 | See Duplicate | See Duplicate |
| 424 | Duplicate to Record No. 26 | See Duplicate | See Duplicate |
| 425 | Duplicate to Record No. 27 | See Duplicate | See Duplicate |
| 426 | Duplicate to Record No. 28 | See Duplicate | See Duplicate |
| 427 | Duplicate to Record No. 25 | See Duplicate | See Duplicate |
| 428 | Duplicate to Record No. 26 | See Duplicate | See Duplicate |
| 429 | Duplicate to Record No. 27 | See Duplicate | See Duplicate |
| 430 | Duplicate to Record No. 27 | See Duplicate | See Duplicate |
| 431 | Duplicate to Record No. 88 | See Duplicate | See Duplicate |
| 432 | Duplicate to Record No. 89 | See Duplicate | See Duplicate |
| 433 | Duplicate to Record No. 90 | See Duplicate | See Duplicate |
| 434 | Duplicate to Record No. 91 | See Duplicate | See Duplicate |
| 435 | Duplicate to Record No. 91 | See Duplicate | See Duplicate |
| 436 | Duplicate to Record No. 16 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 437 | Duplicate to Record No. 93 | See Duplicate | See Duplicate |
| 438 | Duplicate to Record No. 94 | See Duplicate | See Duplicate |
| 439 | Duplicate to Record No. 15 | See Duplicate | See Duplicate |
| 440 | Duplicate to Record No. 96 | See Duplicate | See Duplicate |
| 441 | Duplicate to Record No. 97 | See Duplicate | See Duplicate |
| 442 | Duplicate to Record No. 98 | See Duplicate | See Duplicate |
| 443 | Duplicate to Record No. 99 | See Duplicate | See Duplicate |
| 444 | Duplicate to Record No. 64 | See Duplicate | See Duplicate |
| 445 | Duplicate to Record No. 70 | See Duplicate | See Duplicate |
| 446 | Duplicate to Record No. 71 | See Duplicate | See Duplicate |
| 447 | Duplicate to Record No. 16 | See Duplicate | See Duplicate |
| 448 | Duplicate to Record No. 73 | See Duplicate | See Duplicate |
| 449 | Duplicate to Record No. 74 | See Duplicate | See Duplicate |
| 450 | Duplicate to Record No. 7 | See Duplicate | See Duplicate |
| 451 | Duplicate to Record No. 8 | See Duplicate | See Duplicate |
| 452 | Duplicate to Record No. 9 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 453 | Duplicate to Record No. 10 | See Duplicate | See Duplicate |
| 454 | Duplicate to Record No. 10 | See Duplicate | See Duplicate |
| 455 | Duplicate to Record No. 26 | See Duplicate | See Duplicate |
| 456 | Duplicate to Record No. 27 | See Duplicate | See Duplicate |
| 457 | Duplicate to Record No. 28 | See Duplicate | See Duplicate |
| 458 | Duplicate to Record No. 26 | See Duplicate | See Duplicate |
| 459 | Duplicate to Record No. 27 | See Duplicate | See Duplicate |
| 460 | Duplicate to Record No. 27 | See Duplicate | See Duplicate |
| 461 | Duplicate to Record No. 130 | See Duplicate | See Duplicate |
| 462 | NO RECORD | Inadvertent numbering | |
| 463 | Duplicate to Record No. 131 | See Duplicate | See Duplicate |
| 464 | Duplicate to Record No. 132 | See Duplicate | See Duplicate |
| 465 | Duplicate to Record No. 127 | See Duplicate | See Duplicate |
| 466 | Duplicate to Record No. 40 | See Duplicate | See Duplicate |
| 467 | Duplicate to Record No. 41 | See Duplicate | See Duplicate |
| 468 | Duplicate to Record No. 48 | See Duplicate | See Duplicate |
| 469 | Duplicate to Record No. 49 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 470 | Duplicate to Record No. 50 | See Duplicate | See Duplicate |
| 471 | Duplicate to Record No. 119 | See Duplicate | See Duplicate |
| 472 | Duplicate to Record No. 120 | See Duplicate | See Duplicate |
| 473 | Duplicate to Record No. 121 | See Duplicate | See Duplicate |
| 474 | Duplicate to Record No. 122 | See Duplicate | See Duplicate |
| 475 | Duplicate to Record No. 123 | See Duplicate | See Duplicate |
| 476 | Duplicate to Record No. 115, 116 | See Duplicate | See Duplicate |
| 477 | Duplicate to Record No. 117 | See Duplicate | See Duplicate |
| 478 | Duplicate to Record No. 118 | See Duplicate | See Duplicate |
| 479 | Duplicate to Record No. 111, 112 | See Duplicate | See Duplicate |
| 480 | Duplicate to Record No. 113 | See Duplicate | See Duplicate |
| 481 | Duplicate to Record No. 114 | See Duplicate | See Duplicate |
| 482 | Duplicate to Record No. 104 | See Duplicate | See Duplicate |
| 483 | Duplicate to Record No. 105 | See Duplicate | See Duplicate |
| 484 | Duplicate to Record No. 106 | See Duplicate | See Duplicate |
| 485 | Duplicate to Record No. 71 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 486 | Duplicate to Record No. 71 | See Duplicate | See Duplicate |
| 487 | Duplicate to Record No. 16 | See Duplicate | See Duplicate |
| 488 | Duplicate to Record No. 109 | See Duplicate | See Duplicate |
| 489 | Duplicate to Record No. 110 | See Duplicate | See Duplicate |
| 490 | Duplicate to Record No. 53 | See Duplicate | See Duplicate |
| 491 | Duplicate to Record No. 54 | See Duplicate | See Duplicate |
| 492 | Duplicate to Record No. 55 | See Duplicate | See Duplicate |
| 493 | Duplicate to Record No. 51 | See Duplicate | See Duplicate |
| 494 | Duplicate to Record No. 52 | See Duplicate | See Duplicate |
| 495 | Duplicate to Record No. 133 | See Duplicate | See Duplicate |
| 496 | Duplicate to Record No. 134 | See Duplicate | See Duplicate |
| 497 | Duplicate to Record No. 135 | See Duplicate | See Duplicate |
| 498 | Duplicate to Record No. 36 | See Duplicate | See Duplicate |
| 499 | Duplicate to Record No. 34 | See Duplicate | See Duplicate |
| 500 | Duplicate to Record No. 35 | See Duplicate | See Duplicate |
| 501 | Duplicate to Record No. 33 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions | |
|---|---|---|---|---|
| 502 | Duplicate to Record No. 34 | See Duplicate | See Duplicate | |
| 503 | Duplicate to Record No. 35 | See Duplicate | See Duplicate | |
| 504 | Duplicate to Record No. 42 | See Duplicate | See Duplicate | |
| 505 | Duplicate to Record No. 43 | See Duplicate | See Duplicate | |
| 506 | Duplicate to Record No. 44 | See Duplicate | See Duplicate | |
| 507 | Duplicate to Record No. 45 | See Duplicate | See Duplicate | |
| 508 | Duplicate to Record No. 39 | See Duplicate | See Duplicate | |
| 509 | Duplicate to Record No. 40 | See Duplicate | See Duplicate | |
| 510 | Duplicate to Record No. 41 | See Duplicate | See Duplicate | |
| 511 | Duplicate to Record No. 46 | See Duplicate | See Duplicate | |
| 512 | Duplicate to Record No. 47 | See Duplicate | See Duplicate | |
| 513 | Duplicate to Record No. 48 | See Duplicate | See Duplicate | |
| 514 | Duplicate to Record No. 49 | See Duplicate | See Duplicate | |
| 515 | Duplicate to Record No. 50 | See Duplicate | See Duplicate | |
| 516 | Duplicate to Record No. 32 | See Duplicate | See Duplicate | |
| 517 | Duplicate to Record No. 12 | See Duplicate | See Duplicate | |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions | |
|---|---|---|---|---|
| 518 | Duplicate to Record No. 13 | See Duplicate | See Duplicate | |
| 519 | Duplicate to Record No. 14 | See Duplicate | See Duplicate | |
| 520 | Duplicate to Record No. 15 | See Duplicate | See Duplicate | |
| 521 | Duplicate to Record No. 15 | See Duplicate | See Duplicate | |
| 522 | Duplicate to Record No. 16 | See Duplicate | See Duplicate | |
| 523 | Duplicate to Record No. 12 | See Duplicate | See Duplicate | |
| 524 | Duplicate to Record No. 13 | See Duplicate | See Duplicate | |
| 525 | Duplicate to Record No. 14 | See Duplicate | See Duplicate | |
| 526 | Duplicate to Record No. 15 | See Duplicate | See Duplicate | |
| 527 | Duplicate to Record No. 15 | See Duplicate | See Duplicate | |
| 528 | Duplicate to Record No. 75 | See Duplicate | See Duplicate | |
| 529 | Duplicate to Record No. 16 | See Duplicate | See Duplicate | |
| 530 | Duplicate to Record No. 77 | See Duplicate | See Duplicate | |
| 531 | Duplicate to Record No. 78 | See Duplicate | See Duplicate | |
| 532 | Duplicate to Record No. 139 | See Duplicate | See Duplicate | |
| 533 | Duplicate to Record No. 140 | See Duplicate | See Duplicate | |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions | |
|---|---|---|---|---|
| 534 | Duplicate to Record No. 141 | See Duplicate | See Duplicate | |
| 535 | Duplicate to Record No. 142 | See Duplicate | See Duplicate | |
| 536 | Duplicate to Record No. 136 | See Duplicate | See Duplicate | |
| 537 | Duplicate to Record No. 137 | See Duplicate | See Duplicate | |
| 538 | Duplicate to Record No. 138 | See Duplicate | See Duplicate | |
| 539 | Duplicate to Record No. 3 | See Duplicate | See Duplicate | |
| 540 | Duplicate to Record No. 4 | See Duplicate | See Duplicate | |
| 541 | 04/09/19<br><br>Email from BOP staff to BOP staff re: testing | Partial redaction:<br><br>Identity of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. | |
| 542 | 04/09/19<br><br>Email from BOP staff to BOP staff re: testing | Partial redaction:<br><br>Identity of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. | |
| 543 | Duplicate to Record No. 22 | See Duplicate | See Duplicate | |
| 544 | Duplicate to Record No. 23 | See Duplicate | See Duplicate | |
| 545 | Duplicate to Record No. 24 | See Duplicate | See Duplicate | |
| 546 | Duplicate to Record No. 46 | See Duplicate | See Duplicate | |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 547 | Duplicate to Record No. 47 | See Duplicate | See Duplicate |
| 548 | Duplicate to Record No. 48 | See Duplicate | See Duplicate |
| 549 | Duplicate to Record No. 49 | See Duplicate | See Duplicate |
| 550 | Duplicate to Record No. 50 | See Duplicate | See Duplicate |
| 551 | Duplicate to Record No. 5 | See Duplicate | See Duplicate |
| 552 | Duplicate to Record No. 6 | See Duplicate | See Duplicate |
| 553 | Duplicate to Record No. 7 | See Duplicate | See Duplicate |
| 554 | Duplicate to Record No. 8 | See Duplicate | See Duplicate |
| 555 | Duplicate to Record No. 9 | See Duplicate | See Duplicate |
| 556 | Duplicate to Record No. 10 | See Duplicate | See Duplicate |
| 557 | Duplicate to Record No. 10 | See Duplicate | See Duplicate |
| 558 | Email from BOP staff to BOP staff re: possible order of Pentobarbital | Partial redactions: Identifying information for a source/service provider (contract number) Identity of BOP staff Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as contract number and dates of purchase. 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

115

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 559 | Cover page for attachment to Record No. 558 | Partial redactions:<br><br>Identifying information for a source/service provider (contract number) | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as contract number and dates of purchase.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 560 | Email from BOP staff to BOP staff re: order of Pentobarbital | Partial redactions:<br><br>Identifying information for a source/service provider (contract number)<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as contract number and dates of purchase.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

116

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 561 | Email from BOP staff to BOP staff re: possible order of Pentobarbital | Partial redactions: <br><br> Identifying information for a source/service provider (contract number) <br><br> Identity of BOP staff <br><br> Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as contract number and dates of purchase. <br><br> 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. <br><br> 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. <br><br> 7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. <br><br> 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 562 | Cover page for attachment to Record No. 560 | Partial redactions: <br><br> Identifying information for a source/service provider (contract number) | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as contract number. <br><br> 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 563 | Email from BOP staff to BOP staff re: order of Pentobarbital | Partial redactions: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, contract number, dates of purchase. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Identifying information for a source/service provider (contract number, names)<br><br>Identity of BOP staff<br><br>Date | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 564 | Cover page for attachment to Record No. 563 | Partial redactions:<br><br>Identifying information for a source/service provider (contract number) | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, contract number.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 565 | Duplicate to Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 566 | Request for Purchase Card Acquisition form for Pentobarbital | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Purchase order/reference numbers | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, addresses, phone numbers, and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, such as purchase order/reference numbers, item/stock numbers, substance descriptions, including quantity/concentration, dates of purchase; Confidential commercial information including price/contract negotiations. |

118

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Price/contract negotiations<br><br>Substance descriptions, including quantity and concentration<br><br>Item/stock numbers<br><br>Identifying and contact information for BOP staff<br><br>Date | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, addresses, phone numbers, signatures) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 567 | Duplicate of Financial Record No. 8 (Justification Memo) | See Duplicate | See Duplicate |
| 568 | Duplicate of Financial Record No. 6 (SAMS) | See Duplicate | See Duplicate |
| 569 | Duplicate of Financial Record No. 8 (Justification Memo) | See Duplicate | See Duplicate |
| 570 | Duplicate of Record No. 561 | See Duplicate | See Duplicate |
| 571 | Cover page for attachment to Record No. 570 | Partial redactions:<br><br>Identifying information for a source/service provider (contract number) | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, contract number. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 572 | Email from BOP staff to BOP staff re: purchase of pentobarbital | Partial redactions:<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, such as dates of purchase.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 573 | Email from BOP staff to BOP staff re: purchase of pentobarbital | Partial redactions:<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, such as dates of purchase.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 574 | Email from BOP staff to BOP staff re: purchase of pentobarbital | Partial redactions: Identifying and contact information of BOP staff | 6: Identifying and contact information (names, titles, address, phone numbers) of BOP staff involved in procurement of lethal injection substances. 7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. 7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 575 | Cover page for attachment to Record No. 572 | Partial redactions: Identity of a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) of such individual/companies. 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 576 | Duplicate of Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 577 | Duplicate of Financial Record No. 5 (Request for Purchase) | See Duplicate | See Duplicate |
| 578 | Duplicate of Financial Record No. 6 (SAMS) | See Duplicate | See Duplicate |
| 579 | Cover page for attachment to Record No. 572 | Partial redactions: Identity of a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) of such individual/companies. 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 580 | Duplicate of Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 581 | Duplicate of Financial Record No. 5 (Request for Purchase) | See Duplicate | See Duplicate |
| 582 | Duplicate of Financial Record No. 6 (SAMS) | See Duplicate | See Duplicate |
| 583 | Duplicate of Record No. 573 | See Duplicate | See Duplicate |
| 584 | Duplicate of Record No. 574 | See Duplicate | See Duplicate |
| 585 | Duplicate of Record No. 575 | See Duplicate | See Duplicate |
| 586 | Duplicate of Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 587 | Duplicate of Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 588 | Duplicate of Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 589 | Duplicate of Record No. 579 | See Duplicate | See Duplicate |
| 590 | Duplicate of Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 591 | Duplicate of Financial Record No. 5 (Request for Purchase) | See Duplicate | See Duplicate |
| 592 | Duplicate of Financial Record No. 6 (SAMS) | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 593 | Duplicate of Record No. 541 | See Duplicate | See Duplicate |
| 594 | Duplicate of Record No. 542 | See Duplicate | See Duplicate |
| 595 | Duplicate of Record No. 22 | See Duplicate | See Duplicate |
| 596 | Duplicate of Record No. 23 | See Duplicate | See Duplicate |
| 597 | Duplicate of Record No. 24 | See Duplicate | See Duplicate |
| 598 | Email from BOP staff to BOP staff re: purchase of pentobarbital | Partial redactions:<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, such as dates of purchase.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 599 | Duplicate of Record No. 564 | See Duplicate | See Duplicate |
| 600 | Duplicate of Financial Record No. 4 (Contract) | See Duplicate | See Duplicate |
| 601 | Duplicate of Financial Record No. 5 (Request for purchase) | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 602 | Duplicate of Financial Record No. 8 (Justification Memo) | See Duplicate | See Duplicate |
| 603 | Duplicate of Financial Record No. 6– (SAMS) | See Duplicate | See Duplicate |
| 604 | Duplicate of Financial Record No. 8 (Justification Memo) | See Duplicate | See Duplicate |
| 605 | 04/16/19<br><br>Email from a pharmacy source provider to BOP staff re: sample. | Partial redactions:<br><br>Identifying information for source provider<br><br>Identifying information for BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) such individuals/companies.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 606 | Duplicate of Record No. 25 | See Duplicate | See Duplicate |
| 607 | Duplicate of Record No. 26 | See Duplicate | See Duplicate |
| 608 | Duplicate of Record No. 27 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 609 | Duplicate of Record No. 28 | See Duplicate | See Duplicate |
| 610 | Duplicate of Record No. 604 | See Duplicate | See Duplicate |
| 611 | Duplicate of Record No. 25 | See Duplicate | See Duplicate |
| 612 | Duplicate of Record No. 26 | See Duplicate | See Duplicate |
| 1613 | Duplicate of Record No. 27 | See Duplicate | See Duplicate |
| 614 | Email from BOP staff to BOP staff re: purchase of pentobarbital | Partial redactions:<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, such as dates of purchase.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 615 | Duplicate of Record No. 34 | See Duplicate | See Duplicate |
| 616 | Duplicate of Record No. 35 | See Duplicate | See Duplicate |
| 617 | Email from BOP staff to BOP staff re: purchase of pentobarbital and the | Partial redactions:<br><br>Identity of a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names) and other information that could lead to the identity of |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Justification for Other than Full and Open Competition. | Identifying and contact information of BOP staff<br><br>Date | individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, such as dates of purchase.<br><br>6: Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 618 | Email from BOP staff to BOP staff re: purchase of pentobarbital and the Justification for other than full and open competition. | Partial redactions:<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including information that could lead to the identity of such individuals and/or companies, such as dates of purchase.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 619 | Cover page for attachment to Record No. 617 | Released in full | None |
| 620 | Attachment to Record No. 617 (Draft memo, | Withheld in full | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, |

126

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al*., 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | "Justification for other than full and open competition"). | Pre-decisional draft memo re: justification for purchasing lethal injection substances.<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Price/contract negotiations<br><br>Description of BOP techniques and procedures used to procure lethal injection substances<br><br>Date<br><br>Techniques and procedures utilized to procure lethal injection substances. | including identifying information such as names, dates; Confidential commercial information such as price/contract negotiations.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names/titles/signatures) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures utilized to procure lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 621 | Duplicate of Record No. 34 | See Duplicate | See Duplicate |
| 622 | Duplicate of Record No. 35 | See Duplicate | See Duplicate |
| 623 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 624 | Duplicate of Record No. 163 | See Duplicate | See Duplicate |

127

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 625 | Duplicate of Record No. 164 | See Duplicate | See Duplicate |
| 626 | Duplicate of Record No. 173 | See Duplicate | See Duplicate |
| 267 | Duplicate of Record No. 174 | See Duplicate | See Duplicate |
| 628 | Duplicate of Record No. 175 | See Duplicate | See Duplicate |
| 629 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 630 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 631 | Duplicate of Record No. 205 | See Duplicate | See Duplicate |
| 632 | Duplicate of Record No. 206 | See Duplicate | See Duplicate |
| 633 | Duplicate of Record No. 207 | See Duplicate | See Duplicate |
| 634 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 635 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 636 | Duplicate of Record No. 210 | See Duplicate | See Duplicate |
| 637 | Duplicate of Record No. 211 | See Duplicate | See Duplicate |
| 638 | 04/08/19<br><br>Email from BOP attorney to BOP staff re: draft "processing summary." | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identity and contact information (names, titles, addresses, phone/fax numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity and contact information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 639 | Duplicate of Record No. 258 | See Duplicate | See Duplicate |
| 640 | Duplicate of Record No. 259 | See Duplicate | See Duplicate |
| 641 | Duplicate of Record No. 260 | See Duplicate | See Duplicate |
| 642 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 643 | Duplicate of Record No. 310 | See Duplicate | See Duplicate |
| 644 | Duplicate of Record No. 311 | See Duplicate | See Duplicate |
| 645 | Duplicate of Record No. 261 | See Duplicate | See Duplicate |
| 646 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 647 | Duplicate of Record No. 263 | See Duplicate | See Duplicate |
| 648 | Duplicate of Record No. 264 | See Duplicate | See Duplicate |
| 649 | Duplicate of Record No. 43 | See Duplicate | See Duplicate |
| 650 | Duplicate of Record No. 44 | See Duplicate | See Duplicate |
| 651 | Email from BOP staff to BOP staff re: signature on justification for other than full and open competition memo | Partial redactions:<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such dates of purchase.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 652 | Duplicate of Record No. 42 | See Duplicate | See Duplicate |
| 653 | Duplicate of Record No. 43 | See Duplicate | See Duplicate |
| 654 | Duplicate of Record No. 44 | See Duplicate | See Duplicate |
| 655 | Email from BOP staff to BOP staff re: changes to justification for other than full and open competition memo | Partial redactions:<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such dates of purchase.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 656 | Cover page for attachment to Record No. 655 (Justification memo) | Released in full | None |
| 657 | Attachment to Record No. 665 (Draft memo, "Justification for other than full and open competition"). | Withheld in full<br><br>Pre-decisional draft memo re: justification for purchasing lethal injection substances.<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Price/contract negotiations<br><br>Description of BOP techniques and procedures used to procure lethal injection substances<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, dates; Confidential commercial information such as price/contract negotiations.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names/titles/signatures) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 658 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 659 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 660 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 661 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 662 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 663 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 664 | Duplicate of Record No. 75 | See Duplicate | See Duplicate |
| 665 | Duplicate of Record No. 16 | See Duplicate | See Duplicate |
| 666 | Duplicate of Record No. 77 | See Duplicate | See Duplicate |
| 667 | Duplicate of Record No. 78 | See Duplicate | See Duplicate |
| 668 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 669 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 670 | Duplicate of Record No. 223 | See Duplicate | See Duplicate |
| 671 | Duplicate of Record No. 224 | See Duplicate | See Duplicate |
| 672 | 04/04/19<br><br>Email from BOP attorney to BOP Regional Director re: | Partial redactions:<br><br>Identity of BOP staff<br><br>Account/quotation number | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such account/quotation numbers. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | testing quotation discussion | | 6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |
| 673 | Duplicate of Record No. 77 | See Duplicate | See Duplicate |
| 674 | Duplicate of Record No. 78 | See Duplicate | See Duplicate |
| 675 | Duplicate of Record No. 207 | See Duplicate | See Duplicate |
| 676 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 677 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 678 | Duplicate of Record No. 210 | See Duplicate | See Duplicate |
| 679 | Duplicate of Record No. 211 | See Duplicate | See Duplicate |
| 680 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 681 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 682 | Duplicate of Record No. 205 | See Duplicate | See Duplicate |
| 683 | Duplicate of Record No. 206 | See Duplicate | See Duplicate |
| 684 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 685 | Duplicate of Record No. 163 | See Duplicate | See Duplicate |
| 686 | Duplicate of Record No. 164 | See Duplicate | See Duplicate |
| 687 | Duplicate of Record No. 22 | See Duplicate | See Duplicate |
| 688 | Duplicate of Record No. 23 | See Duplicate | See Duplicate |
| 689 | Duplicate of Record No. 24 | See Duplicate | See Duplicate |
| 690 | Duplicate of Record No. 258 | See Duplicate | See Duplicate |
| 691 | Duplicate of Record No. 259 | See Duplicate | See Duplicate |
| 692 | Duplicate of Record No. 260 | See Duplicate | See Duplicate |
| 693 | Duplicate of Record No. 261 | See Duplicate | See Duplicate |
| 694 | Duplicate of Record No. 638 | See Duplicate | See Duplicate |
| 695 | Duplicate of Record No. 258 | See Duplicate | See Duplicate |
| 696 | Duplicate of Record No. 259 | See Duplicate | See Duplicate |
| 697 | Duplicate of Record No. 260 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 698 | Duplicate of Record No. 261 | See Duplicate | See Duplicate |
| 699 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 700 | Duplicate of Record No. 263 | See Duplicate | See Duplicate |
| 701 | Duplicate of Record No. 264 | See Duplicate | See Duplicate |
| 702 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 703 | Duplicate of Record No. 310 | See Duplicate | See Duplicate |
| 704 | Duplicate of Record No. 311 | See Duplicate | See Duplicate |
| 705 | Duplicate of Record No. 265 | See Duplicate | See Duplicate |
| 706 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 707 | Duplicate of Record No. 267 | See Duplicate | See Duplicate |
| 708 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 709 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 710 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 711 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 712 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 713 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 714 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 715 | Duplicate of Record No. 229 | See Duplicate | See Duplicate |
| 716 | Duplicate of Record No. 230 | See Duplicate | See Duplicate |
| 717 | Duplicate of Record No. 231 | See Duplicate | See Duplicate |
| 718 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 719 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 720 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 721 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 722 | Duplicate of Record No. 236 | See Duplicate | See Duplicate |
| 723 | Duplicate of Record No. 237 | See Duplicate | See Duplicate |
| 724 | 04/05/19<br><br>Email from BOP Regional Director to BOP attorneys/staff re: update. | Partial redactions:<br><br>Identity of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 725 | 04/05/19<br><br>Email from BOP Regional Director to BOP attorneys/staff re: update. | Partial redactions:<br><br>Identifying and contact information of BOP staff | 6: Identifying and contact information (names, email addresses) of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |
| 726 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 727 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 728 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 729 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 730 | Duplicate of Record No. 229 | See Duplicate | See Duplicate |
| 731 | Duplicate of Record No. 230 | See Duplicate | See Duplicate |
| 732 | Duplicate of Record No. 253 | See Duplicate | See Duplicate |
| 733 | Duplicate of Record No. 254 | See Duplicate | See Duplicate |
| 734 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 735 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 736 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 737 | Duplicate of Record No. 32 | See Duplicate | See Duplicate |
| 738 | Duplicate of Record No. 165 | See Duplicate | See Duplicate |
| 739 | Duplicate of Record No. 166 | See Duplicate | See Duplicate |
| 740 | Duplicate of Record No. 167 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 741 | Duplicate of Record No. 168 | See Duplicate | See Duplicate |
| 742 | Duplicate of Record No. 169 | See Duplicate | See Duplicate |
| 743 | Duplicate of Record No. 167 | See Duplicate | See Duplicate |
| 744 | Duplicate of Record No. 357 | See Duplicate | See Duplicate |
| 745 | Duplicate of Record No. 358 | See Duplicate | See Duplicate |
| 746 | Duplicate of Record No. 46 | See Duplicate | See Duplicate |
| 747 | Duplicate of Record No. 47 | See Duplicate | See Duplicate |
| 748 | Duplicate of Record No. 48 | See Duplicate | See Duplicate |
| 749 | Duplicate of Record No. 49 | See Duplicate | See Duplicate |
| 750 | Duplicate of Record No. 50 | See Duplicate | See Duplicate |
| 751 | Duplicate of Record No. 394 | See Duplicate | See Duplicate |
| 752 | Duplicate of Record No. 394 | See Duplicate | See Duplicate |
| 753 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 754 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 755 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 756 | Duplicate of Record No. 241 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 757 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 758 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 759 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 760 | Duplicate of Record No. 155 | See Duplicate | See Duplicate |
| 761 | Duplicate of Record No. 156 | See Duplicate | See Duplicate |
| 762 | Duplicate of Record No. 157 | See Duplicate | See Duplicate |
| 763 | 04/05/19<br><br>Email from BOP staff to BOP Acting Director re: draft "processing summary." (011_edit) | Partial redactions:<br><br>Identity of BOP/DOJ staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 764 | Duplicate of Record No. 229 | See Duplicate | See Duplicate |
| 765 | Duplicate of Record No. 230 | See Duplicate | See Duplicate |
| 766 | 04/08/19<br><br>Email from BOP staff to DOJ attorneys re: draft "processing summary." (016) | Partial redactions:<br><br>Identity of BOP/DOJ staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 767 | Duplicate of Record No. 239 | See Duplicate | See Duplicate |
| 768 | Duplicate of Record No. 240 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 769 | Duplicate of Record No. 261 | See Duplicate | See Duplicate |
| 770 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 771 | Duplicate of Record No. 263 | See Duplicate | See Duplicate |
| 772 | Duplicate of Record No. 264 | See Duplicate | See Duplicate |
| 773 | 04/05/19<br><br>Email from BOP staff to DOJ attorneys re: draft "processing summary." (013_1) | Partial redactions:<br><br>Identity of BOP/DOJ staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 774 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 775 | Duplicate of Record No. 267 | See Duplicate | See Duplicate |
| 776 | 04/05/19<br><br>Email from BOP staff to BOP Acting Director re: draft "processing summary." (013_1) | Partial redactions:<br><br>Identity of BOP/DOJ staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 777 | Not used – inadvertently skipped | | |
| 778 | Duplicate of Record No. 265 | See Duplicate | See Duplicate |
| 779 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 780 | Duplicate of Record No. 267 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 781 | Duplicate of Record No. 265 | See Duplicate | See Duplicate |
| 782 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 783 | Duplicate of Record No. 267 | See Duplicate | See Duplicate |
| 784 | Duplicate of Record No. 253 | See Duplicate | See Duplicate |
| 785 | Duplicate of Record No. 254 | See Duplicate | See Duplicate |
| 786 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 787 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 788 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 789 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 790 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 791 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 792 | 04/05/19<br><br>Email from BOP staff to BOP Acting Director re: draft "processing summary." (012) | Partial redactions:<br><br>Identity of BOP/DOJ staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 793 | Duplicate of Record No. 763 | See Duplicate | See Duplicate |
| 794 | Duplicate of Record No. 236 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 795 | Duplicate of Record No. 237 | See Duplicate | See Duplicate |
| 796 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 797 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 798 | Duplicate of Record No. 223 | See Duplicate | See Duplicate |
| 799 | Duplicate of Record No. 224 | See Duplicate | See Duplicate |
| 800 | Duplicate of Record No. 763 | See Duplicate | See Duplicate |
| 801 | Duplicate of Record No. 229 | See Duplicate | See Duplicate |
| 802 | Duplicate of Record No. 230 | See Duplicate | See Duplicate |
| 803 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 804 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 805 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 806 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 807 | Duplicate of Record No. 229 | See Duplicate | See Duplicate |
| 808 | Duplicate of Record No. 230 | See Duplicate | See Duplicate |
| 809 | Duplicate of Record No. 231 | See Duplicate | See Duplicate |
| 810 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 811 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 812 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 813 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 814 | Duplicate of Record No. 236 | See Duplicate | See Duplicate |
| 815 | Duplicate of Record No. 237 | See Duplicate | See Duplicate |
| 816 | Duplicate of Record No. 158 | See Duplicate | See Duplicate |
| 817 | Duplicate of Record No. 155 | See Duplicate | See Duplicate |
| 818 | Duplicate of Record No. 160 | See Duplicate | See Duplicate |
| 819 | Duplicate of Record No. 161 | See Duplicate | See Duplicate |
| 820 | Duplicate of Record No. 155 | See Duplicate | See Duplicate |
| 821 | Duplicate of Record No. 156 | See Duplicate | See Duplicate |
| 822 | Duplicate of Record No. 157 | See Duplicate | See Duplicate |
| 823 | Duplicate of Record No. 207 | See Duplicate | See Duplicate |
| 824 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 825 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 826 | Duplicate of Record No. 210 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 827 | Duplicate of Record No. 211 | See Duplicate | See Duplicate |
| 828 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 829 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 830 | Duplicate of Record No. 205 | See Duplicate | See Duplicate |
| 831 | Duplicate of Record No. 206 | See Duplicate | See Duplicate |
| 832 | Duplicate of Record No. 152 | See Duplicate | See Duplicate |
| 833 | Duplicate of Record No. 153 | See Duplicate | See Duplicate |
| 834 | Duplicate of Record No. 154 | See Duplicate | See Duplicate |
| 835 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 836 | Duplicate of Record No. 163 | See Duplicate | See Duplicate |
| 837 | Duplicate of Record No. 164 | See Duplicate | See Duplicate |
| 838 | 03/26/19<br><br>Email from BOP staff to BOP Regional Director re: substances | Partial redactions:<br><br>Identity of BOP/DOJ staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 839 | Duplicate of Record No. 197 | See Duplicate | See Duplicate |
| 840 | Duplicate of Record No. 64 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 841 | Duplicate of Record No. 197 | See Duplicate | See Duplicate |
| 842 | Duplicate of Record No. 64 | See Duplicate | See Duplicate |
| 843 | Duplicate of Record No. 199 | See Duplicate | See Duplicate |
| 844 | Duplicate of Record No. 183 | See Duplicate | See Duplicate |
| 845 | Duplicate of Record No. 184 | See Duplicate | See Duplicate |
| 846 | Duplicate of Record No. 238 | See Duplicate | See Duplicate |
| 847 | Duplicate of Record No. 239 | See Duplicate | See Duplicate |
| 848 | Duplicate of Record No. 240 | See Duplicate | See Duplicate |
| 849 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 850 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 851 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 852 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 853 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 854 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 855 | Duplicate of Record No. 239 | See Duplicate | See Duplicate |
| 856 | Duplicate of Record No. 182 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 857 | Duplicate of Record No. 183 | See Duplicate | See Duplicate |
| 858 | Duplicate of Record No. 184 | See Duplicate | See Duplicate |
| 859 | Duplicate of Record No. 192 | See Duplicate | See Duplicate |
| 860 | Duplicate of Record No. 193 | See Duplicate | See Duplicate |
| 861 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 862 | Duplicate of Record No. 195 | See Duplicate | See Duplicate |
| 863 | Duplicate of Record No. 196 | See Duplicate | See Duplicate |
| 864 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 865 | Duplicate of Record No. 310 | See Duplicate | See Duplicate |
| 866 | Duplicate of Record No. 311 | See Duplicate | See Duplicate |
| 867 | Duplicate of Record No. 258 | See Duplicate | See Duplicate |
| 8658 | Duplicate of Record No. 259 | See Duplicate | See Duplicate |
| 869 | Duplicate of Record No. 260 | See Duplicate | See Duplicate |
| 870 | Duplicate of Record No. 315 | See Duplicate | See Duplicate |
| 871 | Duplicate of Record No. 316 | See Duplicate | See Duplicate |
| 872 | Duplicate of Record No. 317 | See Duplicate | See Duplicate |
| 873 | 03/12/19 | Partial redactions: | 6: Identity of BOP staff involved in procurement of lethal injection substances. |

146

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | Email from BOP Regional Director to BOP staff re: timelines | Identity of BOP/DOJ staff | 7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 874 | 03/12/19<br><br>Email from BOP Regional Director to BOP staff re: timelines | Partial redactions:<br><br>Identifying information for a source/service provider<br><br>Pre-decisional discussions re: selection and procurement of lethal injection substances as it relates to proposed protocol addendum; discussions re: evaluation of the availability, efficacy, reliability, timing of testing services.<br><br>Identity of BOP staff<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff) that could lead to the identity of such individuals/companies, such as names, expiration dates, requirements for testing;  Confidential commercial information re: testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing; testing methods.<br><br>5: Deliberative process privilege – pre-decisional discussions re: selection and procurement of substances to be included in proposed execution protocol & evaluation of availability, efficacy, reliability, timing of testing services as it relates to inclusion of the substance in the proposed execution protocol.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identity of BOP staff involved in procurement of lethal injection substances. |

147

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to select and procure lethal injection substances | 7(E): Techniques and procedures to procure lethal injection substances. |
| 875 | Duplicate of Record No. 185 | See Duplicate | See Duplicate |
| 876 | Duplicate of Record No. 173 | See Duplicate | See Duplicate |
| 877 | Duplicate of Record No. 174 | See Duplicate | See Duplicate |
| 878 | Duplicate of Record No. 175 | See Duplicate | See Duplicate |
| 879 | Duplicate of Record No. 189 | See Duplicate | See Duplicate |
| 880 | Duplicate of Record No. 190 | See Duplicate | See Duplicate |
| 881 | Duplicate of Record No. 191 | See Duplicate | See Duplicate |
| 882 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 883 | Duplicate of Record No. 2 | See Duplicate | See Duplicate |
| 884 | Duplicate of Record No. 2 | See Duplicate | See Duplicate |
| 885 | Duplicate of Record No. 176 | See Duplicate | See Duplicate |
| 886 | Duplicate of Record No. 177 | See Duplicate | See Duplicate |
| 887 | Duplicate of Record No. 178 | See Duplicate | See Duplicate |
| 888 | Duplicate of Record No. 367 | See Duplicate | See Duplicate |
| 889 | Duplicate of Record No. 368 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 890 | Duplicate of Record No. 369 | See Duplicate | See Duplicate |
| 891 | 05/15/19<br><br>Email from BOP Regional Director to BOP staff re: full report (CoA) | Partial redactions:<br><br>Identity of BOP/DOJ staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as account number.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 892 | Duplicate of Record No. 54 | See Duplicate | See Duplicate |
| 893 | Duplicate of Record No. 55 | See Duplicate | See Duplicate |
| 894 | 06/03/19<br><br>Email from BOP Regional Director to BOP staff re: CoA | Partial redactions:<br><br>Identity of BOP staff | 6: Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 895 | 06/03/19<br><br>Email from BOP staff to BOP Regional Director and BOP staff re: CoA | Partial redactions:<br><br>Identity of BOP staff | 6: Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 896 | Duplicate of Record No. 46 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 897 | Duplicate of Record No. 47 | See Duplicate | See Duplicate |
| 898 | Duplicate of Record No. 48 | See Duplicate | See Duplicate |
| 899 | Duplicate of Record No. 49 | See Duplicate | See Duplicate |
| 900 | Duplicate of Record No. 50 | See Duplicate | See Duplicate |
| 901 | 07/25/19<br><br>Email from BOP staff to BOP staff re: draft responses to media inquiries concerning execution protocol and procurement of pentobarbital. | Partial redactions:<br><br>Commentary, back and forth discussion regarding content of proposed responses to media inquiry.<br><br>Identity of BOP staff | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & re: proposed answers to media inquiries; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP staff involved in procurement of lethal injection substances, including names and email addresses.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |
| 902 | 07/25/19<br><br>Email from BOP staff to BOP staff re: draft responses to media inquiries. | Partial redactions:<br><br>Commentary, back and forth discussion regarding content of proposed responses to media inquiry.<br><br>Identity of BOP staff | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & re: proposed answers to media inquiries; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP staff involved in procurement of lethal injection substances, including names and email addresses.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 903 | Duplicate of Record No. 902 | See Duplicate | See Duplicate |
| 904 | Duplicate of Record No. 53 | See Duplicate | See Duplicate |
| 905 | Duplicate of Record No. 53 | See Duplicate | See Duplicate |
| 906 | Duplicate of Record No. 54 | See Duplicate | See Duplicate |
| 907 | Duplicate of Record No. 55 | See Duplicate | See Duplicate |
| 908 | Duplicate of Record No. 32 | See Duplicate | See Duplicate |
| 909 | Duplicate of Record No. 22 | See Duplicate | See Duplicate |
| 910 | Duplicate of Record No. 23 | See Duplicate | See Duplicate |
| 911 | Duplicate of Record No. 24 | See Duplicate | See Duplicate |
| 912 | Duplicate of Record No. 46 | See Duplicate | See Duplicate |
| 913 | Duplicate of Record No. 47 | See Duplicate | See Duplicate |
| 914 | Duplicate of Record No. 48 | See Duplicate | See Duplicate |
| 915 | Duplicate of Record No. 49 | See Duplicate | See Duplicate |
| 916 | Duplicate of Record No. 50 | See Duplicate | See Duplicate |
| 917 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 918 | Duplicate of Record No. 776 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 919 | Duplicate of Record No. 265 | See Duplicate | See Duplicate |
| 920 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 921 | Duplicate of Record No. 267 | See Duplicate | See Duplicate |
| 922 | Duplicate of Record No. 792 | See Duplicate | See Duplicate |
| 923 | Duplicate of Record No. 763 | See Duplicate | See Duplicate |
| 924 | Duplicate of Record No. 236 | See Duplicate | See Duplicate |
| 925 | Duplicate of Record No. 237 | See Duplicate | See Duplicate |
| 926 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 927 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 928 | Duplicate of Record No. 192 | See Duplicate | See Duplicate |
| 929 | Duplicate of Record No. 193 | See Duplicate | See Duplicate |
| 930 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 931 | Duplicate of Record No. 195 | See Duplicate | See Duplicate |
| 932 | Duplicate of Record No. 196 | See Duplicate | See Duplicate |
| 933 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 934 | Duplicate of Record No.2 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 935 | Duplicate of Record No.2 | See Duplicate | See Duplicate |
| 936 | Duplicate of Record No.185 | See Duplicate | See Duplicate |
| 937 | Duplicate of Record No.173 | See Duplicate | See Duplicate |
| 938 | Duplicate of Record No.174 | See Duplicate | See Duplicate |
| 939 | Duplicate of Record No.175 | See Duplicate | See Duplicate |
| 940 | Duplicate of Record No.182 | See Duplicate | See Duplicate |
| 941 | Duplicate of Record No.183 | See Duplicate | See Duplicate |
| 942 | Duplicate of Record No.184 | See Duplicate | See Duplicate |
| 943 | Duplicate of Record No. 197 | See Duplicate | See Duplicate |
| 944 | Duplicate of Record No. 64 | See Duplicate | See Duplicate |
| 945 | Duplicate to Record No. 203 | See Duplicate | See Duplicate |
| 946 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 947 | Duplicate of Record No. 205 | See Duplicate | See Duplicate |
| 948 | Duplicate of Record No. 206 | See Duplicate | See Duplicate |
| 949 | Duplicate of Record No. 152 | See Duplicate | See Duplicate |
| 950 | Duplicate of Record No. 153 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 951 | Duplicate of Record No. 154 | See Duplicate | See Duplicate |
| 952 | Duplicate of Record No. 158 | See Duplicate | See Duplicate |
| 953 | Duplicate of Record No. 155 | See Duplicate | See Duplicate |
| 954 | Duplicate of Record No. 160 | See Duplicate | See Duplicate |
| 955 | Duplicate of Record No. 161 | See Duplicate | See Duplicate |
| 956 | Duplicate of Record No.199 | See Duplicate | See Duplicate |
| 957 | Duplicate of Record No. 183 | See Duplicate | See Duplicate |
| 958 | Duplicate of Record No. 184 | See Duplicate | See Duplicate |
| 959 | Duplicate of Record No.162 | See Duplicate | See Duplicate |
| 960 | Duplicate of Record No.163 | See Duplicate | See Duplicate |
| 961 | Duplicate of Record No.164 | See Duplicate | See Duplicate |
| 962 | Duplicate of Record No.207 | See Duplicate | See Duplicate |
| 963 | Duplicate of Record No.203 | See Duplicate | See Duplicate |
| 964 | Duplicate of Record No.162 | See Duplicate | See Duplicate |
| 965 | Duplicate of Record No.210 | See Duplicate | See Duplicate |
| 966 | Duplicate of Record No.211 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 967 | Duplicate of Record No.155 | See Duplicate | See Duplicate |
| 968 | Duplicate of Record No. 156 | See Duplicate | See Duplicate |
| 969 | Duplicate of Record No. 157 | See Duplicate | See Duplicate |
| 970 | Duplicate of Record No.152 | See Duplicate | See Duplicate |
| 971 | Duplicate of Record No.153 | See Duplicate | See Duplicate |
| 972 | Duplicate of Record No. 154 | See Duplicate | See Duplicate |
| 973 | Duplicate of Record No. 154 | See Duplicate | See Duplicate |
| 974 | Duplicate of Record No. 146 | See Duplicate | See Duplicate |
| 975 | Duplicate of Record No.147 | | |
| 976 | Duplicate of Record No. 148 | See Duplicate | See Duplicate |
| 977 | Duplicate of Record No. 149 | See Duplicate | See Duplicate |
| 978 | Duplicate of Record No. 150 | See Duplicate | See Duplicate |
| 979 | Duplicate of Record No.151 | See Duplicate | See Duplicate |
| 980 | Duplicate of Record No. 147 | See Duplicate | See Duplicate |
| 981 | Duplicate of Record No. 213 | See Duplicate | See Duplicate |
| 982 | Duplicate of Record No.214 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 983 | Duplicate of Record No. 215 | See Duplicate | See Duplicate |
| 984 | Duplicate of Record No. 216 | See Duplicate | See Duplicate |
| 985 | Duplicate of Record No.217 | See Duplicate | See Duplicate |
| 986 | Duplicate of Record No. of Record No.207 | See Duplicate | See Duplicate |
| 987 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 988 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 989 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 990 | Duplicate of Record No. 163 | See Duplicate | See Duplicate |
| 991 | Duplicate of Record No. 164 | See Duplicate | See Duplicate |
| 992 | Duplicate of Record No. 207 | See Duplicate | See Duplicate |
| 993 | Duplicate  of Record No. 203 | See Duplicate | See Duplicate |
| 994 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 995 | Duplicate of Record No. 210 | See Duplicate | See Duplicate |
| 996 | Duplicate of Record No. 211 | See Duplicate | See Duplicate |
| 997 | Duplicate of Record No. 197 | See Duplicate | See Duplicate |
| 998 | Duplicate of Record No. 64 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 999 | Duplicate of Record No. 203 | See Duplicate | See Duplicate |
| 1000 | Duplicate of Record No. 162 | See Duplicate | See Duplicate |
| 1001 | Duplicate of Record No. 205 | See Duplicate | See Duplicate |
| 1002 | Duplicate of Record No. 206 | See Duplicate | See Duplicate |
| 1003 | Duplicate of Record No. 158 | See Duplicate | See Duplicate |
| 1004 | Duplicate of Record No. 155 | See Duplicate | See Duplicate |
| 1005 | Duplicate of Record No. 160 | See Duplicate | See Duplicate |
| 1006 | Duplicate of Record No. 161 | See Duplicate | See Duplicate |
| 1007 | Duplicate of Record No. 192 | See Duplicate | See Duplicate |
| 1008 | Duplicate of Record No. 193 | See Duplicate | See Duplicate |
| 1009 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 1010 | Duplicate of Record No. 195 | See Duplicate | See Duplicate |
| 1011 | Duplicate of Record No. 196 | See Duplicate | See Duplicate |
| 1012 | Duplicate of Record No. 1 | See Duplicate | See Duplicate |
| 1013 | Duplicate of Record No. 2 | See Duplicate | See Duplicate |
| 1014 | Duplicate of Record No. 2 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 1015 | Duplicate of Record No. 176 | See Duplicate | See Duplicate |
| 1016 | Duplicate of Record No. 177 | See Duplicate | See Duplicate |
| 1017 | Duplicate of Record No. 178 | See Duplicate | See Duplicate |
| 1018 | Duplicate of Record No. 185 | See Duplicate | See Duplicate |
| 1019 | Duplicate of Record No. 173 | See Duplicate | See Duplicate |
| 1020 | Duplicate of Record No. 174 | See Duplicate | See Duplicate |
| 1021 | Duplicate of Record No. 175 | See Duplicate | See Duplicate |
| 1022 | Duplicate of Record No. 189 | See Duplicate | See Duplicate |
| 1023 | Duplicate of Record No. 190 | See Duplicate | See Duplicate |
| 1024 | Duplicate of Record No.191 | See Duplicate | See Duplicate |
| 1025 | Duplicate of Record No. 182 | See Duplicate | See Duplicate |
| 1026 | Duplicate of Record No. 183 | See Duplicate | See Duplicate |
| 1027 | Duplicate of Record No. 184 | See Duplicate | See Duplicate |
| 1028 | Duplicate of Record No. 199 | See Duplicate | See Duplicate |
| 1029 | Duplicate of Record No. 183 | See Duplicate | See Duplicate |
| 1030 | Duplicate of Record No. 184 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 1031 | Duplicate of Record No. 231 | See Duplicate | See Duplicate |
| 1032 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 1033 | Duplicate of Record No. 226 | See Duplicate | See Duplicate |
| 1034 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 1035 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 1036 | Duplicate of Record No. 236 | See Duplicate | See Duplicate |
| 1037 | Duplicate of Record No. 237 | See Duplicate | See Duplicate |
| 1038 | Duplicate of Record No. 225 | See Duplicate | See Duplicate |
| 1039 | Duplicate of Record No. 2226 | See Duplicate | See Duplicate |
| 1040 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 1041 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 1042 | Duplicate of Record No. 229 | See Duplicate | See Duplicate |
| 1043 | Duplicate of Record No. 230 | See Duplicate | See Duplicate |
| 1044 | Duplicate of Record No. 221 | See Duplicate | See Duplicate |
| 1045 | Duplicate of Record No. 222 | See Duplicate | See Duplicate |
| 1046 | Duplicate of Record No. 223 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 1047 | Duplicate of Record No. 224 | See Duplicate | See Duplicate |
| 1048 | Duplicate of Record No. 261 | See Duplicate | See Duplicate |
| 1049 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 1050 | Duplicate of Record No. 263 | See Duplicate | See Duplicate |
| 1051 | Duplicate of Record No. 264 | See Duplicate | See Duplicate |
| 1052 | Duplicate of Record No. 262 | See Duplicate | See Duplicate |
| 1053 | Duplicate of Record No. 310 | See Duplicate | See Duplicate |
| 1054 | Duplicate of Record No. 311 | See Duplicate | See Duplicate |
| 1055 | Duplicate of Record No. 238 | See Duplicate | See Duplicate |
| 1056 | Duplicate of Record No. 239 | See Duplicate | See Duplicate |
| 1057 | Duplicate of Record No. 240 | See Duplicate | See Duplicate |
| 1058 | Duplicate of Record No. 265 | See Duplicate | See Duplicate |
| 1059 | Duplicate of Record No. 266 | See Duplicate | See Duplicate |
| 1060 | Duplicate of Record No.  267 | See Duplicate | See Duplicate |
| 1061 | Duplicate of Record No. 258 | See Duplicate | See Duplicate |
| 1062 | Duplicate of Record No. 259 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 1063 | Duplicate of Record No. 260 | See Duplicate | See Duplicate |
| 1064 | Duplicate of Record No. 253 | See Duplicate | See Duplicate |
| 1065 | Duplicate of Record No. 254 | See Duplicate | See Duplicate |
| 1066 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 1067 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 1068 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 1069 | Duplicate of Record No. 250 | See Duplicate | See Duplicate |
| 1070 | Duplicate of Record No. 251 | See Duplicate | See Duplicate |
| 1071 | Duplicate of Record No. 252 | See Duplicate | See Duplicate |
| 1072 | Duplicate of Record No. 241 | See Duplicate | See Duplicate |
| 1073 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 1074 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 1075 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 1076 | Duplicate of Record No. 242 | See Duplicate | See Duplicate |
| 1077 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 1078 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 1079 | Duplicate of Record No. 243 | See Duplicate | See Duplicate |
| 1080 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 1081 | Duplicate of Record No. 202 | See Duplicate | See Duplicate |
| 1082 | Duplicate of Record No. 165 | See Duplicate | See Duplicate |
| 1083 | Duplicate of Record No. 166 | See Duplicate | See Duplicate |
| 1084 | Duplicate of Record No. 167 | See Duplicate | See Duplicate |
| 1085 | Duplicate of Record No. 168 | See Duplicate | See Duplicate |
| 1086 | Duplicate of Record No. 169 | See Duplicate | See Duplicate |
| 1087 | Duplicate of Record No. 170 | See Duplicate | See Duplicate |
| 1088 | Duplicate of Record No. 168 | See Duplicate | See Duplicate |
| 1089 | Duplicate of Record No. 172 | See Duplicate | See Duplicate |
| 1090 | Duplicate of Record No. 167 | See Duplicate | See Duplicate |
| 1091 | Duplicate of Record No. 357 | See Duplicate | See Duplicate |
| 1092 | Duplicate of Record No. 358 | See Duplicate | See Duplicate |
| 1093 | Duplicate of Record No. 173 | See Duplicate | See Duplicate |
| 1094 | Duplicate of Record No. 174 | See Duplicate | See Duplicate |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 1095 | Duplicate of Record No. 175 | See Duplicate | See Duplicate |
| | | | **END OF EMAIL RECORDS** |
| | | | **NON-EMAIL RECORDS (FINANCIAL DOCS), RECORDS 1-8** |
| 1 | Voucher Validation Reports<br><br>12 pages | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Purchase order/contract/reference numbers<br><br>Account number<br><br>Price/contract negotiations<br><br>Identifying and contact information for BOP staff<br><br>Dates | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as names, addresses, phone numbers, and other information that could lead to the identity of those individuals and/or companies, such as purchase order/reference/contract numbers, account numbers, dates of purchase, delivery; Confidential commercial information including price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 2 | Invoices from source providers<br><br>Emails from source providers forwarding invoices | Withheld in full:<br><br>Identifying and contact information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as signatures, names, phone/fax numbers, and other information and other information that could lead to the identity of such individuals/companies, including account numbers, lot numbers/product identification numbers, substance description, including quantity and concentration, requirements for testing, dates of purchase; Confidential commercial information re: |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | 9 pages | Identifying and contact information of BOP staff<br><br>Testing requirements/capabilities<br><br>Formulas/quantity/time frames for production/testing<br><br>Testing methods<br><br>Lot Number/product ID for substances<br><br>Substance description, including quantity & concentration<br><br>Account/invoice numbers<br><br>Price/contract negotiations<br><br>Dates of purchase/delivery | testing requirements/capabilities; production/testing timelines; formulas/quantities required for testing, testing methods; price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying and contact information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| 3 | Emails between BOP staff re: verification of invoices<br><br>2 pages | Partial redactions:<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, dates of purchase).<br><br>6: Identifying information (names/titles/signatures) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 4 | Contracts (including amendment/modification) for purchase of pentobarbital<br><br>14 pages | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Purchase order/reference numbers<br><br>Price/contract negotiations<br><br>Substance descriptions, including quantity and concentration<br><br>Item/stock numbers<br><br>Identifying and contact information for BOP staff | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as signatures, names, addresses, phone numbers, and other information that could lead to the identity of those individuals and/or companies, such as purchase order/reference numbers, item/stock numbers, substance descriptions, including quantity/concentration, dates of purchase; Confidential commercial information including price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, email addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Date | 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 5 | Request for Purchase (Purchase Card Acquisition Form)<br><br>4 pages | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Purchase order/reference numbers<br><br>Price/contract negotiations<br><br>Substance descriptions, including quantity and concentration<br><br>Item/stock numbers<br><br>Identifying and contact information for BOP staff<br><br>Date | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information such as signatures, names, addresses, phone numbers, and other information that could lead to the identity of those individuals and/or companies, such as purchase order/reference numbers, item/stock numbers, substance descriptions, including quantity/concentration, dates of purchase; Confidential commercial information including price/contract negotiations.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information (names, email addresses, phone numbers) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |

166

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services; Identifying information of BOP staff involved in procurement of lethal injection substances. |
| 6 | SAM forms<br><br>4 pages | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Registration dates | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, addresses, registration numbers/dates)<br><br>6: Identifying information (as described above) that could lead to the identity of individuals from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(F): Identifying information that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 7 | Financial transaction spreadsheets<br><br>6 pages | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Purchase order/reference numbers<br><br>Price/contract negotiations<br><br>Dates of purchase | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including identifying information (names, dates of purchase, purchase order/reference numbers) ; Confidential commercial information including price/contract negotiations.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services. |
| 8 | "Justification for other than full and | Partial redactions: | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | open competition" memorandum.<br><br>5 pages | Pre-decisional discussions re: selection and procurement of pentobarbital for inclusion in the proposed execution protocol.<br><br>Identity of a source/service provider<br><br>Identity of BOP staff<br><br>Price/contract negotiations<br><br>Description of BOP techniques and procedures used to procure lethal injection substances<br><br>Date | including identifying information such as names, addresses, dates of purchase; Confidential commercial information such as price/contract negotiations.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identifying information (names/titles/signatures) of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| | | | **END OF NON-EMAIL (FINANCIAL) RECORDS** |
| | | | **OIP Consultation Records**<br><br>**BOP asserted exemptions additional to those identified by OIP:** |
| OIP Row No. 1-7 | Draft "Processing Summary"<br><br>016<br>010<br>019<br>017 | Withheld in full:<br><br>Draft "processing summary"<br><br>Identifying information for a source/service provider | 4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services (reformulated by BOP staff), including information that could lead to the identity of those individuals and/or companies including production requirements, substance description, price, quantity & packaging details, expiration dates; Confidential commercial information including price and contract negotiations. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | 013<br>005<br>Not numbered<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation. | Contract/price negotiations<br><br>Pre-decisional discussion/attorney work product re: BOP efforts to procure lethal injection substances & discussion re: proposed lethal injection protocol, as it relates to ongoing and anticipated litigation.<br><br>Techniques and procedures utilized to procure lethal injection substances. | 5: Deliberative process privilege – pre-decisional draft document re: proposed execution protocol; Attorney work product – prepared in anticipation of litigation.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| OIP Row No. 8<br><br>0.7.138 9.1195 4 | 4/8/2019<br>4:51 PM<br><br>Email between DOJ attorneys/staff | Partial redactions:<br><br>Pre-decisional discussions re: selection and procurement of pentobarbital for inclusion in the proposed execution protocol/evaluation & timing of testing services. | 5: Deliberations of BOP/DOJ staff re: status of BOP efforts to select and procure lethal injection substances/evaluation & timing of third party testing services, prior to adoption of revised protocol. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| OIP Row No. 10<br><br>0.7.138 9.9744 | 7/5/2019 11:02 AM<br><br>Email from BOP staff to DOJ attorney | Partial redactions:<br><br>Pre-decisional discussions re: selection and procurement of pentobarbital for inclusion in the proposed execution protocol | 5: Deliberations of BOP/DOJ staff re: status of BOP efforts to select and procure lethal injection substances/evaluation & timing of third party testing services, prior to adoption of revised protocol. |
| OIP Row No. 12<br><br>0.7.424 2.3046 2 | 04/18/19 4:00 PM<br><br>Email | Partial redactions:<br><br>Identity of BOP staff | 6: Identifying information (names/emails) of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |

170

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| OIP Row No. 13<br><br>0.7.4242.30105 | Draft Meeting Agendas | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Substance descriptions, including quantity and concentration<br><br>Shelf-life<br><br>Testing methods/capabilities<br><br>Techniques and procedures utilized to procure lethal injection substances. | In addition to OIP's asserted exemptions:<br><br>4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including information that could lead to the identity of those individuals/companies, substance descriptions, including quantity/concentration, expiration dates, testing methods/capabilities.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| OIP Row No. 15<br><br>0.7.4242.33751 | Draft Meeting Agendas | Partial redactions:<br><br>Identifying and contact information for a source/service provider<br><br>Substance descriptions, including quantity and concentration<br><br>Shelf-life<br><br>Testing methods/capabilities | In addition to OIP's asserted exemptions:<br><br>4: Confidential commercial or financial information provided by individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services, including information that could lead to the identity of those individuals/companies, substance descriptions, including quantity/concentration, expiration dates, testing methods/capabilities.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies from whom the federal government procured or contemplated procuring Pentobarbital or related critical services.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Citizens for Responsibility and Ethics in Washington, v. U.S. Dept. of Justice, et al.*, 19-cv-03626-DLF (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2019-05579

| Record No. | Date/Description | Information Withheld | Exemptions |
|---|---|---|---|
| | | Techniques and procedures utilized to procure lethal injection substances. | |
| OIP Row No. 16<br><br>0.7.424 2.1328 2 | 05/19/19 3:56 PM Email | Partial redactions:<br><br>Identity of BOP staff | 6: Identifying information (names/emails) of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| OIP Row No. 17<br><br>0.7.138 9.8788 | 3/25/19 9:07 AM<br><br>Email | Partial redactions:<br><br>Identity of BOP staff | 6: Identifying information (names/emails) of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| OIP Row No. 18<br><br>0.7.138 9.1023 1 | 3/28/19 8:47 AM<br><br>Email | Partial redactions:<br><br>Identity of BOP staff | 6: Identifying information (names/emails) of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identifying information of BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information of BOP staff involved in procurement of lethal injection substances. |
| | | | **END OF OIP CONSULTATION RECORDS** |

Exhibit G

9/1/2018
Texas refuses to give back lethal drugs, proceeds with execution | Fox News
Case 1:19-cv-03626-DLF Document 17-4 Filed 11/06/20 Page 231 of 315

Home  Video  Politics  U.S.  Opinion  Business  Entertainment  Tech  Science  Health  Travel  Lifestyle  Wo

Politics Home    Executive    Senate    House    Defense    Judiciary    Fox News Poll

**STATES RIGHTS**

# Texas refuses to give back lethal drugs, proceeds execution



By **Barnini Chakraborty**
Published October 09, 2013
Fox News



The gurney in the death chamber is shown in this May 27, 2008 file photo from Huntsville, Texas.  (AP)

WASHINGTON —  A Texas man convicted of killing his parents was executed as planned Wednesday night despite a gr
drug used to carry out the punishment.

Last week, state prison officials refused a request from the compounding pharmacy that created and sold Texas the pen
drug used in executions -- to return the drug.

Jasper Lovoi, owner of The Woodlands Compounding Pharmacy, claims Texas authorities put him "in the middle of a fire
calls and press requests after letting it leak that he sold eight 2.5-gram doses of pentobarbital to the state for upcoming

Lovoi says he had been promised anonymity by the state.

But Jason Clark, a spokesman for the Texas Department of Criminal Justice, said the department bought the drug vials

Clark said the state has enough vials to carry out scheduled executions for the remainder of the year.

Death penalty states like Texas, which has executed 505 people since 1981, have been turning to compounding pharma
of barbiturates used in executions.

The switch comes after the drugs' primary makers shut off supplies to states following pressure from anti-death penalty

Compounding pharmacies allow certified specialists to mix ingredients for medicine themselves and sell them. For exam
dose of a particular drug available, compounding pharmacists can manipulate the active ingredients and change the dos

However, the U.S. Food and Drug Administration does not vouch for the validity, safety or effectiveness of drugs made in

Earlier this year, these new go-to drug dens came under scrutiny following a deadly meningitis outbreak that was linked
made at a Massachusetts compounding pharmacy.

In Texas, attorneys for Michael Yowell, 43, had hoped to get a last-minute stay for their client. But minutes before he was
the U.S. Supreme Court rejected a lawsuit he and two other condemned prisoners had brought seeking execution delay
pentobarbital could cause unconstitutional pain and suffering.

He was pronounced dead at 7:11pm CDT (8:11 ET) in Huntsville, Texas.

Yowell was convicted of killing his parents, Johnny and Carol Yowell, in 1998 and setting fire to their home in Lubbock, T
records, Yowell told authorities he shot his father and then beat, strangled and killed his mother. He then blew up the ho

Yowell's grandmother, who lived with them, was killed though Yowell was not convicted in her death.

Last month, the House passed legislation aimed at regulating compounding pharmacies. The bill, which is now in the Se
set of standards to track the distribution chain of pharmaceuticals. Proponents say the bill closes a pretty wide gap betw
oversight of compounding pharmacies. In the Massachusetts meningitis outbreak, 64 people died and more than 700 pe
states from a bad batch of steroids produced at the New England Compounding Center.

Other states like South Dakota and Georgia have had similar problems with purchasing drugs directly through manufact

Georgia's first use of an execution drug obtained through a compounding pharmacy was put on hold in July after the con
a new state law that bars the release of information about where Georgia obtains its execution drug.

Separately, on Tuesday, the 5th Circuit Court of Appeals rejected a motion made by Yowell's attorneys who asked to su[...]
execution process."

*The Associated Press contributed to this report.*

## Sponsored Stories You May Like



### The Incredible Life Of John McCain In Photos
Jetlaggin



### CPAP Makers Scrambling After New Snoring Fix Unveiled
SmartConsumerToday



### New 2018 Trucks Competitors
Yahoo! Search



### If You Can Qualify for Any Credit Card, These Are the Top 6
NerdWallet



### 15 Military Discounts All Veterans And Active Duty Military Members Are…
www.veteranssavings.com



### Donald Trump's Bedtime Rituals
Auto Draft | The Che[...]

### Sponsored Stories

- **Here's Why Guys Are Obsessed With This Underwear**
  *Weekly Brief | Mack Weldon*

- **Whats The Best Treatment For Constipation?**
  *Constipation Treatments | Sponsored Links*

- **27 Discounts Seniors Get Only If They Know**
  *seniordiscountsclub.com*

- **If Your IQ is Above 148, You'll Get These Jokes**
  *Offbeat*

### More from Fox News

- **Todd Starnes: BOYCOTT! California De[...] In-N-Out Burger**
  *Fox News Opinion*

- **How MotorGrrl is breaking the motorcy[...]**
  *Fox Business*

- **'Hunger stones' with dire warnings hav[...] Europe**
  *Fox News Science*

Exhibit H

# The Pentobarbital Experiment

Danish company Lundbeck took an active and dedicated part in executions of human beings. Here is the full story: the facts and the numbers.

### October 6, 2013

# The Pharmacist who approves the business of killing, but only under the veil of secrecy

By The Pentobarbital Experiment



October 6, 2013 – The Pharmacist who approves the business of killing, but only under the veil of secrecy

The state of Texas is now using compounding pharmacies to get its supply of killing drugs. The first winner of the death race is the **Woodlands Compounding Pharmacy**, which supplied 8 doses of home made Pentobarbital.

Meet the pharmacist who sold the medical ethics and shamed his profession for $2,800 (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/woodlandsbill16092013.pdf), **Mr. Jasper Lovoi, RPh**; the man who had no issue selling the poison to TDCJ (http://www.tdcj.state.tx.us) as long as he believed the identity of his company was protected and would not be revealed.

That worked fine from September 16th, 2013 (date of his infamous transaction with TDCJ) until October 1st, 2013 when three death row prisoners filed a lawsuit against TDCJ (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/tx_licomplaint011013.pdf) for using

lethal drugs acquired via an unknown, and potentially illegal, source. Subsequently, <u>TDCJ filed a response (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/tdcj-response021013.pdf)</u> on October 2nd, which revealed the details of the purchase and the identity of the vendor.

On October 4th, the <u>deceived and disappointed Mr. Lovoi sent a letter to TDCJ (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/woodlandsletter041013.pdf)</u> complaining about his identity and the details of the sale having been made public and requesting that TDCJ returns the drugs to his company. As you can tell from the letter, he is far more concerned about his business being disrupted by media calls and receiving messages than being involved in human killings in the first place!

It is one of these rare PentoX moments, and they don't occur frequently!

Undoubtedly, the Woodlands compounding pharmacy is the first but not the last one that will be fooled and tricked into selling its soul to the evil death machine.

**<u>To mark this special occasion:</u>**

- <u>Write a review about the Woodlands Compounding Pharmacy (http://bit.ly/1fRCQpR)</u> on their Google+ page;
- Contact the American Pharmacist Association via its <u>website (http://www.pharmacist.com/contact-us)</u> or its <u>facebook page (http://www.facebook.com/APhAPharmacists)</u> to lodge a complaint and a request for an official statement on pharmacists' involvement in human executions;
- If you haven't already done so, <u>sign and share our petition (http://chn.ge/19lZ3TD)</u>: "David Miller & Dagmar Climo, IACP: Address the ethical issue of supplying drugs for executions" on Change.org.

As always, collective work is of the essence, and today more than ever before!

Thank you!

**PentoX**

<u>Related:</u> Read <u>The killer around the corner: the International Academy of Compounding Pharmacists (https://thepentobarbitalexperiment.wordpress.com/2013/08/05/the-killer-around-the-corner-the-international-academy-of-compounding-pharmacists/)</u> (August 5, 2013) and <u>Texas and compounding pharmacies: partners in crime (https://thepentobarbitalexperiment.wordpress.com/2013/10/03/texas-and-compounding-pharmacies-partners-in-crime/)</u> (October 3, 2013)

Advertisements



REPORT THIS AD

# About The Pentobarbital Experiment

"Lundbeck is a global pharmaceutical company engaged in the research and development, production, marketing and sale of drugs for treatment of psychiatric and neurological disorders." As the sole supplier of Pentobarbital to US departments of corrections, Danish company Lundbeck took an active and dedicated part in the executions of human beings. This is a clear violation of its ethical obligations as a European pharmaceutical laboratory. Its manufacturing plant for Pentobarbital is based in Kansas, USA. Here is the full story: the facts and the numbers brought to you by European activists dedicated to the universal abolition of the death penalty. Disclaimer: This blog was created to raise awareness and to encourage legitimate citizen actions to bring an end to the torturous executions in the USA. It does not, and never did advocate violence or retaliation against whoever participates in the legal lynchings of human beings.

This entry was posted on Sunday, October 6th, 2013 at 17:00 and tagged with American Medical Association, American Pharmacists Association, Code of ethics, Compounding, Drug, Executions, FDA, Food and Drug Administration, Houston, Lethal injection, Pentobarbital, Texas, Texas Department of Criminal Justice, United States, Woodlands Compounding Pharmacy and posted in General, Timeline. You can follow any responses to this entry through the RSS 2.0 feed.

## 2 responses to "The Pharmacist who approves the business of killing, but only under the veil of secrecy"

- _How can LloydsPharmacy help patients make the process of taking their medication safer? | The LoveLloyds Blog_

  October 8th, 2013 at 17:26
  [...] The Pharmacist who approves the business of killing, but only under the veil of secrecy (thepentobarbitalexperiment.wordpress.com) [...]

  0

  0

  i
  Rate This

- _Susan Chandler_

  October 14th, 2013 at 17:20
  Reblogged this on Wobbly Warrior's Blog.

  0

6/10/2020 The Pharmacist who approves the business of killing, but only under the veil of secrecy | the Pentobarbital Experiment

Case 1:19-cv-03626-DLF Document 17-4 Filed 11/06/20 Page 238 of 315

0

i
Rate This

Subscribe to RSS
Create a free website or blog at WordPress.com.

Exhibit I

## The Woodlands Compounding Pharmacy

3200 Research Forest Dr. Ste. A3

The Woodlands, TX 77381

Phone: 281-419-1340

Fax: 281-419-2181

October 4, 2013

Judge Larry Gist
Board Member, Texas Board of Criminal Justice
Fax 512.305.9398

Brad Livingston
Texas Department of Criminal Justice
Fax 936.437.2123

Bryan Collier
Deputy Executive Director, Texas Department of Criminal Justice
Fax 936.437.8925

Jason Clark
Information Director, Texas Department of Criminal Justice
Fax 936.437.6055

Region I Regional Director Richard Alford
Texas Department of Criminal Justice
Fax 936.437.2651

Region I Deputy Director Robert "Jay" Eason
Texas Department of Criminal Justice
Fax 936.437.2651

Katherine D. Hayes
Assistant Attorney General
Fax 512.320.8132

Dear Sirs and Madam:

I am the owner and pharmacist-in-charge of the Woodlands Compounding Pharmacy, the pharmacy that has provided TDCJ with vials of compounded pentobarbital.

Based on the phone calls I had with Erica Minor of TDCJ regarding its request for these drugs, including statements that she made to me, it was my belief that this information

would be kept on the "down low" and that it was unlikely that it would be discovered that my pharmacy provided these drugs.  Based on Ms. Minor's requests, I took steps to ensure it would be private.  However, the State of Texas misrepresented this fact because my name and the name of my pharmacy are posted all over the internet.  Now that the information has been made public, I find myself in the middle of a firestorm that I was not advised of and did not bargain for.  Had I known that this information would be made public, which the State implied it would not, I never would have agreed to provide the drugs to the TDCJ.

I, and my staff, are very busy operating our pharmacy, and do not have the time to deal with the constant inquiries from the press, the hate mail and messages, as well as getting dragged into the state's lawsuit with the prisoners, and possible future lawsuits.  For these reasons, I must demand that TDCJ immediately return the vials of compounded pentobarbital in exchange for a refund.

Please contact me immediately to arrange for the return of the drugs.  Otherwise I may have to ask the Court in the prisoners' lawsuit to consider my concerns.

Sincerely,

Jasper Lovoi, RPh.

Exhibit J

About     Privacy Policy     Terms of Service

# MIMESIS
### LAW

NEW FAULT LINES WEBSITE     MIMESIS LAW

SEARCH

Mimesis Law  |  **10 June 2020**



Home  >  Fault Lines

by Tamara Tabo ·Jul 1, 2015

## ALITO'S PAYBACK IN THE "GUERILLA WAR" OVER EXECUTIONS

July 1, 2015 (Mimesis Law) — This week, the United States Supreme Court released its decision in Glossip v. Gross, where Oklahoma inmates sentenced to die challenged the State's use of a controversial three-drug lethal injection protocol.

Justice Samuel Alito wrote for the majority.  Chief Justice Roberts and Justices Scalia, Kennedy, and Thomas joined. (Justices Scalia and Thomas each filed concurring opinions joined by the other.  Justice Breyer wrote a scathing dissent, with support from Justice Ginsburg.  Justice Sotomayor dissented, joined by Ginsburg, Breyer, and Kagan.)

Justice Alito's majority opinion addresses two main issues.

First, the majority concluded that the District Court did not commit clear error when it found that the inmate petitioners failed to show that using the drug midazolam during executions posed a substantial risk of severe pain.  The lower court's factual finding was pivotal because of the particular role midazolam plays in the three-drug lethal injection protocol.

The three-drug lethal injection protocol used by states in the past included a barbiturate to anesthetize the inmate, then a paralytic agent such as pancuronium bromide to slow the inmate's breathing, and potassium chloride to stop the inmate's heart.  The second and third drugs, quite frankly, hurt.  When considering a 2008 challenge to the lethal injection protocol in Baze v. Rees, Chief Justice Roberts wrote, "It is uncontested that, failing a proper dose of sodium thiopental to render the prisoner unconscious, there is substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and of pain from potassium chloride."



**OUTSOURCING LINDA GREENHOUSE TO YALE**

RELATED BY 

TAGS      **CATEGORY**      AUTHOR

 **In Beckles, SCOTUS Perpetuates the Advisory G …**
by Josh Kendrick - Mar 8, 2017
Fault Lines

 **At the Supreme Court, You've Got the Fr …**
by Andrew King - Mar 7, 2017
Fault Lines

 **Judge Silberman to Notorious RBG: Shut Up!**
by Andrew King - Mar 3, 2017
Fault Lines

 **Judge John Kane on Supreme Court Nominee, 10t …**
by John L. Kane Jr. - Feb 28, 2017
Fault Lines

**POPULAR POSTS** 

The Oklahoma protocol at issue in *Glossip* uses midazolam in place of the sodium thiopental. So, midazolam must do the same thing — render the prisoner unconscious, unable to feel the effects of the next two drugs in the sequence.

The District Court in *Glossip* was satisfied that midazolam does.

When the Supreme Court reviewed the District Court's decision, it applied the "clear error" standard. This standard of review only corrects the lower court's decision if the decision was "clearly erroneous," and it precludes correction if the reviewing court might simply have decided the factual question differently. Justice Alito's opinion sifts through plenty of rivaling expert testimony offered in *Glossip*. But His conclusion that the District Court did not commit clear error says as much about how deferential the standard of review is as it does about the actual anesthetic effects of midazolam.

On the second main issue in *Glossip*, the majority found that the inmates did not meet a very important burden: pleading and proving that there is a known and available alternative method of execution that is better than the midazolam protocol.

The inmates suggest that sodium thiopental or pentobarbital would be good alternatives to midazolam. The State of Oklahoma actually agrees. What a shame that an influential anti-death penalty lobby didn't think of that before intimidating manufacturers of those drugs to stop making them available to prisons.

Under pressure from opponents of capital punishment, the European Union banned the sale of drugs used in the standard lethal injection protocol to U.S. prisons. Anti death penalty activists also convinced the EU to add "short and intermediate acting barbiturate anaesthetic agents" like pentobarbital and sodium thiopental to its Regulation on Products used for Capital Punishment and Torture.

The apparent strategy of capital punishment opponents was to take away the means of lethal injection, in order to force prisons to stop executing inmates. Instead, Oklahoma and other states began experimenting with alternative drug cocktails, including combinations using midazolam.

This strategy is like banning the sale of rope to U.S. prisons, instead of repealing statutes that allow execution by hanging. The strategy works pretty well until the prisons start looking around for a rubber hose or leather strap to make the noose out of.

At oral arguments for *Glossip*, Justice Samuel Alito posed what I considered at the time to be the decisive question.

> Now, this Court has held that the death penalty is constitutional. It's controversial as a constitutional matter. It certainly is controversial as a policy matter. Those who oppose the death penalty are free to try to persuade legislatures to abolish the death penalty. Some of those efforts have been successful. They're free to ask this Court to overrule the death penalty.
>
> But until that occurs, is it appropriate for the judiciary to countenance what amounts to a guerrilla war against the death penalty which consists of efforts to make it impossible for the States to obtain drugs that could be used to carry out capital punishment with little, if any, pain? And so the States are reduced to using drugs like this one which give rise to disputes about whether, in fact, every possibility of pain is eliminated.

In Justice Alito's majority opinion in *Glossip*, Alito answered his own question. By insisting that the inmates bore the burden of providing an alternative to midazolam, the Court forced onto anti-death penalty abolitionists the consequences of guerrilla war. In war, there are casualties. In war, there is collateral damage. In war, there are strategies that backfire.

## Share this:

Reddit   Email   Print   Facebook   LinkedIn
Google   Twitter

Related

The Death Penalty: Not Quite Dead Yet
January 19, 2016
In "Fault Lines"

Scalia's Greatest Hits
February 15, 2016
In "Fault Lines"

Tweaking The Machinery of Death
July 6, 2015
In "Fault Lines"

DEATH PENALTY   FAUL LINES   SAMUEL ALITO   SCOTUS

**2 Comments on this post.**
☐ Notify me of follow-up comments by email.

**LEAVE A REPLY**

Name *    Email *    Website

POST COMMENT ☐ Notify me of new posts by email.

Comments for Fault Lines posts are closed here. You can leave comments for this post at the new site, faultlines.us



**Have the anti-death penalty folks been hung by their own petard? « Hercules and the umpire.**
2 July 2015 at 9:05 am - Reply
[...] subject. It is in that vein that urge you to read Tamara Tabo's provocative article entitled Alito's payback in the "Guerilla War" over executions, Mimesis Law (June 1, [...]



**The Trilemma of The Religious Death Penalty Juror**
29 June 2016 at 11:22 am - Reply
[...] to enforce the death penalty. It might even be considered by some on the court to be part of the "guerilla war" halting executions across the [...]

Disclaimer: Advertising content does not reflect any knowledge of or endorsement by Mimesis Law, Fault Lines or any contributor. The advertisements you see on your device are what robots think you are interested in buying, not Mimesis Law or its writers.

COPYRIGHT 2015-2016 MIMESIS LAW

Exhibit K

Case 1:19-cv-03626-DLF   Document 17-4   Filed 11/06/20   Page 247 of 315



🇺🇸 An official website of the United States government
  Here's how you know

THE UNITED STATES
DEPARTMENT *of* JUSTICE
JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                    Thursday, July 25, 2019

# Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse

### Attorney General William P. Barr Directs the Federal Bureau of Prisons to Adopt an Addendum to the Federal Execution Protocol and Schedule the Executions of Five Death-Row Inmates Convicted of Murdering Children

Attorney General William P. Barr has directed the Federal Bureau of Prisons (BOP) to adopt a proposed Addendum to the Federal Execution Protocol—clearing the way for the federal government to resume capital punishment after a nearly two decade lapse, and bringing justice to victims of the most horrific crimes.  The Attorney General has further directed the Acting Director of the BOP, Hugh Hurwitz, to schedule the executions of five death-row inmates convicted of murdering, and in some cases torturing and raping, the most vulnerable in our society—children and the elderly.

"Congress has expressly authorized the death penalty through legislation adopted by the people's representatives in both houses of Congress and signed by the President," Attorney General Barr said.  "Under Administrations of both parties, the Department of Justice has sought the death penalty against the worst criminals, including these five murderers, each of whom was convicted by a jury of his peers after a full and fair proceeding.  The Justice Department upholds the rule of law—and we owe it to the victims and their families to carry forward the sentence imposed by our justice system."

The Federal Execution Protocol Addendum, which closely mirrors protocols utilized by several states, including currently Georgia, Missouri, and Texas, replaces the three-drug procedure previously used in federal executions with a single drug—pentobarbital.  Since 2010, 14 states have used pentobarbital in over 200 executions, and federal courts, including the Supreme Court, have repeatedly upheld the use of pentobarbital in executions as consistent with the Eighth Amendment.

Upon the Attorney General's direction, Acting Director Hurwitz adopted the Addendum to the Federal Execution Protocol and, in accordance with 28 C.F.R. Part 26, scheduled executions for the following individuals:

- Daniel Lewis Lee, a member of a white supremacist group, murdered a family of three, including an eight-year-old girl. After robbing and shooting the victims with a stun gun, Lee covered their heads with plastic bags, sealed the bags with duct tape, weighed down each victim with rocks, and threw the family of three into the Illinois bayou.  On May 4, 1999, a jury in the U.S. District Court for the Eastern District of Arkansas found Lee guilty of numerous offenses, including three counts of murder in aid of racketeering, and he was sentenced to death.  Lee's execution is scheduled to occur on Dec. 9, 2019.
- Lezmond Mitchell stabbed to death a 63-year-old grandmother and forced her nine-year-old granddaughter to sit beside her lifeless body for a 30 to 40-mile drive. Mitchell then slit the girl's throat twice, crushed her head with 20-pound rocks, and severed and buried both victims' heads and hands.  On May 8, 2003, a jury in the U.S. District Court for the District of Arizona found Mitchell guilty of numerous offenses, including first degree murder, felony murder, and carjacking resulting in murder, and he was sentenced to death.  Mitchell's execution is scheduled to occur on Dec. 11, 2019.

- Wesley Ira Purkey violently raped and murdered a 16-year-old girl, and then dismembered, burned, and dumped the young girl's body in a septic pond. He also was convicted in state court for using a claw hammer to bludgeon to death an 80-year-old woman who suffered from polio and walked with a cane. On Nov. 5, 2003, a jury in the U.S. District Court for the Western District of Missouri found Purkey guilty of kidnapping a child resulting in the child's death, and he was sentenced to death. Purkey's execution is scheduled to occur on Dec. 13, 2019.
- Alfred Bourgeois physically and emotionally tortured, sexually molested, and then beat to death his two-and-a-half-year-old daughter. On March 16, 2004, a jury in the U.S. District Court for the Southern District of Texas found Bourgeois guilty of multiple offenses, including murder, and he was sentenced to death. Bourgeois' execution is scheduled to occur on Jan. 13, 2020.
- Dustin Lee Honken shot and killed five people—two men who planned to testify against him and a single, working mother and her ten-year-old and six-year-old daughters. On Oct. 14, 2004, a jury in the U.S. District Court for the Northern District of Iowa found Honken guilty of numerous offenses, including five counts of murder during the course of a continuing criminal enterprise, and he was sentenced to death. Honken's execution is scheduled to occur on Jan. 15, 2020.

Each of these inmates has exhausted their appellate and post-conviction remedies, and currently no legal impediments prevent their executions, which will take place at U.S. Penitentiary Terre Haute, Indiana. Additional executions will be scheduled at a later date.

---

**Component(s):**
Office of the Attorney General

**Press Release Number:**
19-807

*Updated July 25, 2019*

Exhibit L



# Department of Justice
## U.S. Attorney's Office
## District of Puerto Rico

For Immediate Release                                      Tuesday, April 30, 2019

Rosa Emilia Rodríguez-Vélez, United States Attorney
Contact: Lymarie V. Llovet-Ayala
(787) 766-5656
www.justice.gov/usao-pr

## Five men sentenced for their role in conspiracy to murder Federal Bureau of Prisons Correctional Officer Osvaldo Albarati-Casanas

SAN JUAN, P.R. – On April 30, 2019, five men were sentenced by the Honorable Judge Gustavo A. Gelpi today for their roles in the conspiracy to murder Lieutenant Osvaldo Albarati-Casañas, a Federal Bureau of Prisons Correctional Officer, announced United States Attorney for the District of Puerto Rico, Rosa Emilia Rodríguez-Vélez. Lieutenant Albarati was murdered on February 26, 2013.

On December 7, 2018, Ángel D. Ramos-Cruz, Juan Quiñones-Meléndez, Orlando Mojica-Rodríguez, and Jayson Rodríguez-González entered pleas of guilty to the pending indictment and on December 14, 2018, Miguel Diaz-Rivera pled guilty for his role in the conspiracy. As part of the plea agreements, the defendants acknowledged that they conspired to murder Lt. Albarati as a direct result of continuous seizures of contraband by Albarati and other correctional officers. At the time of the conspiracy, Ramos-Cruz was an inmate at the facility and from inside MDC, he contacted an associate, Quiñones-Meléndez, a.k.a. "El Manco", and requested that "El Manco" recruit the triggermen to carry out the hit or "vuelta."

"Vuelta" which translates in English to "turn" or "errand" was a term that the organizations of Orlando Mojica-Rodríguez and Quiñones-Meléndez would use to describe a plan to commit a murder. Quiñonez-Meléndez contacted his fellow associate Orlando Mojica-Rodríguez a.k.a. "Yogui," to shore up resources and triggermen. Quiñones-Meléndez recruited Carlos Rosado-Rosado, a.k.a. "Cano" and Jayson Rodríguez-González, a.k.a. "Gonzo," to participate in the murder of Lt. Albarati. Meanwhile, Mojica-Rodríguez recruited Alexander Rosario de León, a.k.a. "Coqui," as an additional enforcer to participate in the murder. Rosado-Rosado and Rosario de León had previously entered guilty pleas.

The murder of Lt. Albarati was carried out on February 26, 2013, as planned. Co-defendant, Oscar Martínez-Hernández was found guilty by a jury on September 20, 2018, for his role in the conspiracy to murder Lt. Albarati. 2

Today the defendants were sentenced by Judge Gelpi in accordance with their respective plea agreements for their specific roles in the offense. Ramos-Cruz was sentenced to 309 months, Quiñones-Meléndez was sentenced to 285 months, Diaz-Rivera was sentenced to 129 months, Mojica-Rodriguez was sentenced to 249 months, and Rodriguez-Gonzalez was sentenced to 396 months.

"Throughout his law enforcement career, Lieutenant Albarati's service was exemplary, selfless and courageous," said United States Attorney Rosa Emilia Rodríguez-Vélez. "With this conviction we take another step towards our goal of holding those who carried out this reprehensible and senseless murder accountable for their actions. The Department of Justice will continue to honor Lieutenant Albarati's legacy as a public servant, his dedication to safeguard the community, and his integrity."

6/10/2020　　Five men sentenced for their role in conspiracy to murder Federal Bureau of Prisons correctional officer Osvaldo Albarati-Casanas | Bur...

Case 1:19-cv-03626-DLF　Document 17-4　Filed 11/06/20　Page 251 of 315

The murder of government employees and officials is a crime punishable by death or imprisonment for any term of years or for life. Murder for hire is a crime punishable by death or imprisonment for any terms of years or for life. Use of a firearm resulting in death is also punishable by a maximum term of life.

The case was investigated by the FBI with the collaboration of the U.S. Department of Justice, Office of the Inspector General, Miami Field Office, the Federal Bureau of Prisons, DEA, ATF, the United States Marshals Service, ICE-HSI, the Puerto Rico Police Department, the San Juan Municipal Police, and other law enforcement agencies that covered hundreds of leads developed as a result of the investigation.

The case was prosecuted by Assistant United States Attorneys Nicholas W. Cannon and Max Pérez-Bouret.

# # #

Miami Field Division

Exhibit M

 An official website of the United States government
Here's how you know

**THE UNITED STATES
DEPARTMENT of JUSTICE**
JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                                                 Tuesday, July 11, 2017

## Federal Jury Returns Sentence of Life Imprisonment for Murder of a Federal Correctional Officer

A federal jury in Scranton returned a verdict yesterday of life in prison for Jessie Con-Ui, 40, a federal inmate, for the first-degree murder of U.S. Correctional Officer Eric Williams.  Senior U.S. District Court Judge A. Richard Caputo scheduled the formal imposition of the life sentence for October 12.

Attorney General Jeff Sessions of the Justice Department; Acting Assistant Attorney General Kenneth A. Blanco of the Justice Department's Criminal Division; and U.S. Attorney Bruce D. Brandler for the Middle District of Pennsylvania made the announcement.

On June 7, 2017, the same jury convicted Con-Ui of "willfully, deliberately, maliciously, and with premeditation and malice aforethought" killing Officer Williams while he was engaged in the performance of his duties at the Canaan Federal Correctional Complex, U.S. Penitentiary, in Waymart, Pennsylvania, on Feb. 25, 2013.

The evidence at trial established that Con-Ui, armed with two sharpened weapons (commonly known as "shanks"), positioned himself at the top of a metal stairway as Correctional Officer Williams ascended the stairway leading to the second floor of a housing unit within the prison. Con-Ui kicked Correctional Officer Williams down the stairs and then stabbed him over 200 times with the weapons. Con-Ui also repeatedly kicked and stomped on Correctional Officer Williams, causing massive fatal injuries.

At the time of the murder, Con-Ui was serving an 11-year federal sentence for conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, imposed by the United States District Court for the District of Arizona in 2005.  Con-Ui was also serving a concurrent life sentence for first-degree murder imposed by the Maricopa County Superior Court, Phoenix, Arizona, in 2008 for the 2002 murder of Carlos Garcia in Phoenix, Arizona.

"I extend my sincere condolences to Officer Williams's family, colleagues, and friends.  The murder of a dedicated public servant in the line of duty, under such heinous circumstances, strikes at the core and soul of our nation," said Acting Assistant Attorney General Blanco.  "We hope and pray that Officer Williams's family will find some closure with the conclusion of these proceedings, and knowing that his dedicated service will always be remembered by a grateful nation."

"We are extremely disappointed with the jury's verdict, but I want to highlight the outstanding work of all the men and women who worked on this case for over four years," said U.S. Attorney Brandler.  "The Phoenix, Arizona Division of the Federal Bureau of Investigation; the Phoenix Police Department; the Phoenix Department of Corrections; the Phoenix Juvenile Justice Office; the Federal Bureau of Investigation Laboratory in Quantico, Virginia; the Scranton, Pennsylvania Division of the Federal Bureau of Investigation; the Federal Bureau of Prisons; the U.S. Attorney's Office Victim-Witness Unit and legal support staff; and Assistant United States Attorneys Fran P. Sempa and Robert J. O'Hara and Department of Justice Capital Case Section Trial Attorney Robert J. Feitel, all performed their roles in exemplary fashion and deserve our appreciation for their tireless efforts in the prosecution of this case."

"A correctional officer has one of the most dangerous jobs in law enforcement. Eric Williams was performing that job at USP Canaan, when was he blindsided and brutalized by Jessie Con-Ui," said Michael Harpster, Special Agent in Charge of the FBI's Philadelphia Division. "The heinous violence inflicted upon Correctional Officer Williams cost a dedicated federal officer his life. At the Philadelphia FBI, our hearts go out to the Williams family and all who knew and loved Eric."

At the time of his death, Officer Williams was 34 years old, and a resident of Wapwallopen, Pennsylvania.

The charges against Con-Ui resulted from an investigation by the FBI, with assistance from the Federal Bureau of Prisons. The case is being prosecuted by the Criminal Division's Capital Case Section and the U.S. Attorney's Office for the Middle District of Pennsylvania.

---

**Topic(s):**
Violent Crime

**Component(s):**
Criminal Division

**Press Release Number:**
17-756

*Updated November 8, 2017*

Exhibit N

**Your browser is not fully supported.**

For full feature support, please upgrade to a modern browser such as Microsoft Edge.

**BRADFORD-COUNTY**

# Stunning Video, Testimony in Prison Murder Trial

SCRANTON — Four years after the vicious and deadly attack on a federal correctional officer in Wayne County, the man accused of killing Eric Williams of N...



jessie con-ui

Author: **Jim Hamill**
Published: **11:53 AM EDT June 5, 2017**
Updated: **5:04 PM EDT June 5, 2017**

 

SCRANTON -- Four years after the vicious and deadly attack on a federal correctional officer in Wayne County, the man accused of killing Eric Williams of Nanticoke is on trial.

The convicted gang member's attorneys fully admit he is guilty.

The Williams family was on hand for opening statements and testimony from about a half dozen correctional officers from USP Canaan in Wayne County.



But Eric Williams' parents did not stay in court while jurors watched their son get stabbed 200 times by an inmate who faces the death penalty.

Eric Williams' parents left the federal courthouse in Scranton following opening statements in their son's murder trial.

Jessie Con-ui is charged with first-degree murder of a U.S. correctional officer after the convict jumped Williams in a housing unit at the federal prison near Waymart in 2013.

Assistant U.S. Attorney Francis Sempa told the jury, "Eric Williams was two hours from shift end and going home. He never made it home."

Prosecutors say Con-ui waited for Williams to walk to the top of the stairs that night before kicking him. Williams fell, then Con-ui spent the next 11 minutes attacking the officer while more than 100 inmates watched and did nothing.

Williams was stabbed more than 200 times with two shanks, kicked repeatedly in the head, stomped, and his head was slammed onto the concrete floor.

There were gasps in the courtroom when a photo of Williams' bloodied face was shown.

Con-ui told prison officials that night it was, "a disrespect issue."

Defense attorneys fully admitted to jurors that "Jessie is guilty of murder beyond all doubt" and plan to focus on trying to keep him from being sentenced to death.

By afternoon, Williams' parents left the courtroom while video of the murder played for the jury. The room was silent. Con-ui covered his eyes the entire time. Many watched in horror as Williams was stabbed repeatedly.

A fellow corrections officer broke down on the stand and testified when he finally found Williams, "He was mutilated, my friend, co-worker, and brother. I couldn't recognize him."



Prosecutors will keep presenting evidence in the coming days, but a guilty verdict is all but guaranteed without a defense

However, Con-ui's attorneys made it clear they plan to do everything it takes to keep him off death row.

The penalty phase is expected to last weeks.



Exhibit O



HEALTH

Published — April 4, 2012
Updated — May 19, 2014 at 12:19 pm ET

# LETHAL INJECTION DRUG ACCESS COULD PUT EXECUTIONS ON HOLD

↑  Inmates on death row in the United States are executed by means of lethal injection. Dave Martin/AP

## Pentobarbital, now most-commonly used execution drug, likely to face barriers in coming months

Kimberly Leonard

Thomas Arthur has spent 29 years in prison. He was scheduled to be executed last week in Alabama, but the lethal injection was put on hold because of pentobarbital concerns. (AP)

A federal judge's decision to block imports of a drug used in executions will leave states to rely more on a substitute drug that could itself be getting scarce — developments that raise questions about both how these drugs are regulated and whether states will have the drugs they need to continue capital punishment by lethal injection.

Over the past three decades, lethal injection has become the primary method of execution in the United States because it is widely viewed as the most humane alternative. Thirty-five states and the federal government use this method and more than 1,100 inmates have been put to death by lethal injection.

State justice or corrections departments have conducted these executions by administering the anesthetic sodium thiopental in a lethal dosage on its own, or as part of a three-step "cocktail" in which sodium thiopental is followed by pancuronium bromide, a paralytic agent, then potassium chloride, which stops the heart and causes death.

But in late March, a federal judge **blocked importation** (https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2011cv0289-23) of sodium thiopental, ruling that the Food and Drug Administration (FDA) ignored the law by allowing it to be imported into the country without following regulatory protocol. The drugs were slated for executions, a purpose unapproved by the agency — and unlikely to ever be approved by the agency. Sodium thiopental is only available from overseas, because its U.S. manufacturer, Hospira Inc., stopped making it 2011, as a result of controversies over its use in executions.

## Search for an alternative

The logical alternative to sodium thiopental is pentobarbital, an anesthetic that causes people to lose consciousness, sensation and memory. Since 2010, 12 state justice departments have used pentobarbital, a drug veterinarians also administer to euthanize animals, to execute 47 inmates, usually as part of a three-drug cocktail, according to the **Death Penalty Information Center** (http://www.deathpenaltyinfo.org/) , a nonprofit organization that publishes annual reports on capital punishment.

With sodium thiopental now nearly impossible to access, pentobarbital is likely to become even more critical for those who want to carry out executions in the near future, Richard Dieter, executive director for the Death Penalty Information Center, told *iWatch News*. If the restrictions become effective, correctional departments may have to choose another drug or form of execution altogether, he said.

# Related Articles

HEALTH (HTTPS://PUBLICINTEGRITY.ORG/TOPICS/HEALTH/)

**Texas switches to 1-drug execution due to shortage (https://publicintegrity.org/health/texas-switches-to-1-drug-execution-due-to-shortage/)**

READ (HTTPS://PUBLICINTEGRITY.ORG/HEALTH/TEXAS-SWITCHES-TO-1-DRUG-EXECUTION-DUE-TO-SHORTAGE/)  →


(https://publicintegrity.org/health/texas-switches-to-1-drug-execution-due-to-shortage/)

But pentobarbital could eventually become scarce. Most state justice departments say that for security reasons they cannot specify how much of the drug they have stored, but pentobarbital's manufacturers for human uses have in recent months acted on a number of fronts to prevent its use for executions.

Lundbeck Inc., a Danish pharmaceutical company that manufactured the drug until late last year, sent **letters** (http://www.deathpenaltyinfo.org/documents/LundbeckLethInj.pdf) last August to governors and correctional departments in 16 states — Alabama, Arizona, Florida, Georgia, Idaho, Louisiana, Mississippi, Montana, Nebraska, Ohio, Oklahoma, Oregon, South Carolina, Tennessee, Texas and Virginia — saying it did not want its drug used for executions.

When that request was ignored, the company switched from using several distributors last June to using a drop ship program, selling its product directly to health care facilities through a single distributor, Cardinal Health. In addition, every medical facility that received the drugs had to sign a document saying the product would not be used for executions or resold for that purpose.

"We stated very clearly that we're in the business of improving peoples lives and using it for capital punishment is against what we do," Matt Flesch, spokesman for Lundbeck, told *iWatch News*.

Finally last December Lundbeck sold its pentobarbital rights to Illinois-based Akorn Inc., which signed an agreement promising it would not sell the drug for the purpose of executions.

## Stockpiled

For the moment, though, pentobarbital is still available. States bought supplies of the drug before distribution limitations were enacted, Flesch said, though some states may soon run out, or the drug could expire. Like most pharmaceuticals, pentobarbital has an expiration date of about 18 months.

Dale Baich, assistant federal public defender in the state of Arizona, said his state and other obtained pentobarbital some time ago. "In Arizona, the state was ordering it in 2010, along with sodium thiopental," he said. "Other states stockpiled it."

A spokesman for the Department of Criminal Justice in Texas, the state responsible for the highest number of executions in the country, would not specify how much pentobarbital the state had left, though he did confirm in an email to *iWatch News* that there was enough to carry out the seven executions it has scheduled for 2012. In Georgia, a spokeswoman also confirmed in writing that the state had "an adequate supply of all pharmaceuticals necessary to carry out lethal injections."

Case 1:19-cv-03626-DLF Document 17-4 Filed 11/06/20 Page 261 of 315

But the efforts to limit the supply for executions may be having some effect. Oklahoma only has enough pentobarbital to execute three more people, said Jerry Massie, public information officer at the state's Department of Corrections. Two inmates were executed earlier this year, and the state had purchased enough pentobarbital for five executions. Two more executions have been scheduled for 2012, and the state has more than 60 inmates on death row.

## Obstacles

The use of pentobarbital is facing other challenges, as well. In several cases, judges have put executions on hold until questions about the drug can be answered. Alabama was supposed to put Thomas Douglas Arthur to death by lethal injection last week, but shortly before the scheduled execution date, a federal appeals court **put his execution on hold** (http://www.ca11.uscourts.gov/opinions/ops/201115548.pdf) for the fifth time over the course of his 29 years in prison, because of concerns about pentobarbital.

His attorney, Suhana Han, argued it might not knock her client out all the way. This could make the subsequent injections extremely painful, she argued, falling under the definition of "cruel and unusual punishment," prohibited by the Eighth Amendment.

**Megan McCracken** (http://www.law.berkeley.edu/2868.htm) , Eighth Amendment resource counsel at the University of California-Berkeley School of Law, is worried that states have simply switched to using pentobarbital in executions without much study or oversight. "There really hasn't been a thorough look at the use of this drug in a three-drug execution protocol," she said, "where the prisoner is paralyzed, and cardiac arrest is induced, shortly after administration of the pentobarbital."

Texas started using pentobarbital last year, and did not consult a physician in the process. The decision was made by officials within the correctional department, a department spokesman told *iWatch News*.

In Ohio and Washington state, the three-step execution cocktail has been scrapped altogether in favor of a single, lethal dosage of pentobarbital.

Mike Rushford, president and CEO at the **Criminal Justice Legal Foundation** (http://www.cjlf.org/) , which supports the death penalty, is encouraging states to use this approach. The important thing is not whether states use pentobarbital or sodium thiopental, he said, but to simplify the process so the arguments against lethal injections fall away.

## Regulatory limbo

Just who has the authority to decide whether pentobarbital can or should be used in executions is more than a little murky. Tightly monitoring the use of any drug is nearly impossible. The safety and efficacy of all drugs has to be approved by the FDA, but once pharmaceuticals are approved for any purpose, it is up to physicians to determine to whom and for what reasons they will prescribe them, said **Ed Elder** (http://apps.pharmacy.wisc.edu/sopdir/PersonDetails.cfm?ID=213) , director at Lenor Zeeh Pharmaceutical Experiment Station at the University of Wisconsin-Madison.

The FDA-approved uses for pentobarbital include short-term treatment for insomnia and seizure control for patients with epilepsy. It is not FDA approved to alleviate Reye's syndrome, a disease of the brain and liver, though some physicians have prescribed it for that purpose.

It is also not FDA-approved for use in executions or for the use of anesthesia, but it's not clear the FDA believes that's its business. A spokeswoman declined to comment on the FDA's role in overseeing pentobarbital for the use of executions, but spoke generally of the agency's practices. "FDA has authority to take both administrative and judicial actions to protect the public from dangerous and illegal products, to punish persons and companies who violate the law, and to deter violations," she said.

Elder said drugs for the use of executions may fall outside their oversight definition, and in the past the FDA has publicly taken that stance. "The use of drugs for an indication that doesn't involve making people well is contrary to what the FDA is trying to do with approving drugs," he said.

In 2008, the **Supreme Court upheld** (http://www.law.cornell.edu/supct/html/07-5439.ZS.html) the constitutionality of the three-drug protocol that Kentucky used for lethal injections. The state was using the former drug, sodium thiopental, as its anesthetic. The high court hasn't said anything about pentobarbital, but several federal courts and the Florida Supreme Court have signed off on it.

Rushford from the Criminal Justice Legal Foundation sees the concerns raised about legal injections as merely the latest effort by groups whose mission is to thwart the death penalty. "These are claims by people who wouldn't want to execute any murderer under any circumstances by any means," he said.

# Read more in Health

HEALTH

## HIGH COURT UPHOLDS KEY PART OF OBAMA HEALTH LAW

HEALTH

## SLIDESHOW: LOOKING AT 4 YEARS OF H.E.A.T.

Exhibit P

Case 1:19-cv-03626-DLF   Document 17-4   Filed 11/06/20   Page 264 of 315

≡

Sign In    Subscribe

NATIONAL

# The Hidden Hand Squeezing Texas' Supply of Execution Drugs

After lobbying by human-rights groups, European drug companies are increasingly unwilling to supply U.S. states with lethal medicine

By Josh Sanburn  |  Aug. 07, 2013

   Read Later

By September, Texas will run out of the sole drug it uses in lethal injections thanks in part to an overseas effort that has persuaded a European pharmaceutical company to halt its supply to U.S. states for use in executions.

The Texas Department of Criminal Justice announced last week that the state's supply of pentobarbital — the sedative used in the lethal injections of its death-row inmates — would expire in September. Pentobarbital has become the most common drug in lethal injections in the U.S. Of the 23 executions this year, 22 of them used pentobarbital by itself or in combination with other drugs.



PAUL BUCK / EPA

The death chamber inside the Huntsville Unit in Huntsville, Texas, seen in 2000

Texas is facing a depleted supply after a Danish drugmaker announced two years ago that it would no longer supply the drug for use in executions, thanks in part to pressure from multiple groups in Europe that have unexpectedly thrown up obstacles to U.S. states carrying out the death penalty.

Email    Print

Share

Follow @TIME

In early 2011, Danish drugmaker Lundbeck, which at that time manufactured pentobarbital (sold under the name Nembutal), discovered that U.S. states were using its product in lethal injections. The complex international distribution networks of pharmaceuticals often make it difficult for manufacturers to know exactly where their products end up. But once pentobarbital's use in U.S. executions came to light, many in Denmark were upset that medicine made in a country that abolished the death penalty decades ago was being used for ending lives rather than saving them.

(MORE: Werner Herzog Dives Into the Abyss of the American Death-Penalty System)

By spring 2011, Danish newspapers were regularly publishing stories about pentobarbital's use as several human-rights organizations, including Amnesty International and U.K.-based Reprieve, issued press releases to highlight each new execution that used drugs made by Lundbeck. In June 2011, Dr. David Nicholl — a neurologist and human-rights activist — wrote an open letter to Ulf Wiinberg, the chief executive of Lundbeck. The letter, signed by more than 60 other doctors and academics urging the company to halt its U.S. supply, was published in the medical journal the *Lancet*.

"As clinicians and prescribers of Lundbeck's products, we are appalled at the inaction of Lundbeck to prevent the supply of their drug, Nembutal [pentobarbital], for use in executions in the USA," the letter stated. "Pentobarbital is rapidly proving to be the drug of choice for U.S. executions. Lundbeck should restrict distribution of pentobarbital to legitimate users ... but not to executioners."

Three weeks later, Lundbeck said it would no longer allow the drug to be used in U.S. executions and began reviewing all orders of the drug and denying U.S. prisons looking to order it. Now, states like Texas, Georgia and Missouri are grappling with how to continue their planned executions without their go-to drug.

"When I first approached this issue, I thought it would never work," says Nicholl, referring to the decision to apply pressure to drugmakers supplying states carrying out executions. "But our efforts have turned out to be quite

## Most Popular

FROM U.S.

1   Female Generals: The Pentagon's First Pair of Four-Star Women

2   Top 10 U.S. News Stories

3   Chicago Girl Who Performed at Obama's Inauguration Killed in Shooting

4   From Messiah to Hitler, What You Can and Cannot Name Your Child

5   The Outing of the SEALs Has SecDef Ticked Off

FROM TIME.COM

CONNECT WITH TIME



Sign In     Subscribe

To halt its supply, Lundbeck worked with human-rights group Reprieve to simplify its distribution model, essentially taking out middlemen so the company could more easily identify who ended up with its products. Maya Foa, deputy director of Reprieve's death-penalty team, says her organization's goal isn't to end capital punishment in the U.S. but merely to get pharmaceutical companies to follow the Hippocratic oath to do no harm.

"Their reason to be is to make medicine to save lives," Foa says.

The struggle to obtain pentobarbital is the latest in a series of problems that have dogged lethal injection. In 2009, Hospira Inc., a drugmaker headquartered in Lake Forest, Ill., stopped making sodium thiopental, a general anesthetic often used in a three-drug method of lethal injection. That forced many states to look overseas, but both the U.K. and the E.U. blocked their own manufacturers from supplying it to the U.S. for executions.

(**MORE:** Articles of Faith: Is the Death Penalty in Keeping With Catholic Doctrine?)

The obstacles to getting sodium thiopental pushed states to rely even further on pentobarbital — but now it appears that states like Texas will once again have to find another drug to take its place. There are no generic versions of the drug, and the alternatives available have yet to be either tested or used in lethal injections.

John Hurt, the director of public information for the Texas Department of Criminal Justice, says the state is considering finding another supplier of pentobarbital, a different drug altogether or possibly working with a compounding pharmacy that could create the drug specifically for the state's executions. (Texas, which has executed 503 inmates since 1982, more than any other state by far, has two executions scheduled in September, two more in October and one in November.)

It's unclear where Texas would find another supplier. In December 2011, Lundbeck sold the rights to pentobarbital to Illinois-based Akorn Inc. The new company, however, signed an agreement saying it would follow the same distribution restrictions as Lundbeck.

Texas could turn to a compounding pharmacy, but according to the Death Penalty Information Center, those providers don't face oversight from the Food and Drug Administration. That often leads to questions about the drugs' safety and its intended effects of being a more humane alternative of execution.

"Compounding pharmacies are the underbelly of the industry," says Maurie Levin, who has represented death-sentence inmates for 20 years, referring to a sector of the pharmaceutical industry that often goes under the radar of federal and state regulators.

Hurt says the most likely scenario is that Texas will simply find another drug to replace pentobarbital, and he cites Missouri's intention to switch to the general anesthetic propofol, which gained notoriety when an overdose of the drug was blamed for singer Michael Jackson's death. But last year, German drug manufacturer Fresenius Kabi announced last year that it too would no longer sell the drug to states for executions, shifting its distribution with help from Reprieve.

The best hope for states like Texas is that a domestic manufacturer would agree to make drugs like propofol or pentobarbital, far from a continent that has largely done away with the death penalty. But it should be no surprise that pharmaceutical companies aren't racing to distribute drugs that are often associated more with death than life.

**MORE:** A Brief History of Lethal Injection

*Correction: An earlier version of this story stated that Fresenius Kabi is the only supplier of propofol in the U.S. Hospira and Teva Pharmaceuticals restarted manufacturing and selling the drug earlier this year.*

## Sponsored Stories

Recommended by



**Americas #1 Futurist 2020 Prediction Will Surprise You**

Internet Reboot 2020



**Your Response Missing: Are You Voting for Joe Biden?**

share.joebiden.com



**The Early Signs of Psoriatic Arthritis**

Yahoo Search

Sign In    Subscribe



**White House Releases Staff Salaries Report**

The Delite | Scripps

**[Pics] He watched neighbor expand into his yard for years, but he finally got his revenge**

Top5



**45 Weird Small Towns In The United States**

Ranker

© 2020 TIME USA, LLC. All rights reserved.

Exhibit Q



[advertisement]

HEALTH NEWS

OCTOBER 10, 2013 / 9:57 PM / 7 YEARS AGO

# German firm blocked shipments to U.S. distributor after drug sent for executions

Kevin Murphy



(Reuters) - A German manufacturer confirmed on Thursday that it took the extraordinary step of suspending shipments of a widely used drug to a U.S. distributor this year after 20 vials were mistakenly sent to the state of Missouri to be used in executions.

Drugmaker Fresenius Kabi said shipments of the anesthetic propofol were halted to a Louisiana distributor for 4 1/2 months through mid-March because the company feared the European Union would ban export of the drug altogether if it was used in executions.

"We felt it was important to make sure it was restricted to the healthcare professionals," said Geoffrey Fenton, a U.S. spokesman for the firm.

Propofol, which is mostly made in Europe, is administered about 50 million times a year in the United States during various surgical procedures, according to the manufacturer.

German firm blocked shipments to U.S. distributor after drug sent for executions - Reuters

The Death Penalty Information Center said Missouri had been expected to become the first U.S. state to use the drug in an execution scheduled for October 23.

The death penalty is banned in the European Union, and the 28-country bloc, of which Germany is a part, bans the export of drugs for use in executions.

Fresenius Kabi said it had stopped shipments to Louisiana distributor Morris & Dickson LLC from November 1, 2012 to mid-March, 2013 after the U.S. firm inadvertently sent a carton containing 20 vials to Missouri's department of corrections.

The German company confirmed it had suspended the shipments a day after Missouri announced that it would return the drugs to the distributor. Missouri is taking the unusual step some 11 months after the distributor frantically pleaded for the return of the vials, according to emails recently made public.

A leading death penalty expert, Richard Dieter, executive director of the Death Penalty Information Center, said he had never heard of a drug firm suspending shipments to a distributor over their possible use in U.S. executions.

The move shows how U.S. states and suppliers of drugs are coming under strong pressure from big pharmaceutical companies, especially in Europe, not to use supplies in executions.

The campaign against the death penalty has forced death-penalty states to change the drugs they use in lethal injections, find new supplies of existing drugs, or buy drugs from lightly regulated compounding pharmacies.

The American Civil Liberties Union of Missouri Foundation filed a lawsuit against the Department of Corrections on October 4 in an attempt to obtain information about the state's supply of propofol.

According to one of the documents posted on the ACLU's website the distributor mistakenly sent propofol to the department of corrections on September 26 or 27, 2012.

A salesperson for the distributor spent the "entire day" on November 1 at the state prison in Bonne Terre, Missouri, attempting in vain to retrieve the propofol, according to an email sent to George Lombardi, director of the department of corrections, from Dale Kelley, vice president of purchasing at Morris & Dickson.

In the email, Kelley said Fresenius Kabi had suspended distribution of propofol to Morris & Dickson, a move that would "cause irreparable harm to the medical community which we serve."

The email said the suspension would affect thousands of patients in need of the anesthetic at more than 600 hospitals in the Midwest and southern United States.

"Please - Please - Please HELP ...this system failure - a mistake - 1 carton of 20 vials - is going to affect thousands of Americans," he wrote.

The salesperson was told that approval to give the drug back had to come from Lombardi or Missouri Governor Jay Nixon, according to the email from Kelley to Lombardi.

The suspension did not end up restricting supply of propofol in the United States because Fresenius Kabi delivered the drug directly to hospitals rather to the distributor, Fenton said.

An audit was conducted of Morris & Dickson to ensure the sale of the drug to prisons would not happen again and then supplies to the distributor were resumed, he said.

Fresenius Kabi sells propofol to a total of 14 U.S. distributors, which agree not to sell the drug to jails and prisons, Fenton said.

Missouri state officials did not respond to requests to comment about the incident.

The state had been expected to use propofol for the execution of convicted murderer Allen Nicklasson scheduled for October 23, according to the Death Penalty Information Center.

(This story has been corrected for paragraph 6 to read '28-country' instead of '27-country', and to the company's Reuters Instrument Code)

Case 1:19-cv-03626-DLF Document 17-4 Filed 11/06/20 Page 271 of 315

Additional reporting and writing by Brendan O'Brien; Editing by Greg McCune

*Our Standards:*   *The Thomson Reuters Trust Principles.*

**MORE FROM REUTERS**

PAID PROMOTIONAL LINKS      Promoted by **Dianomi**



**This Startup Raised $51M to Help You Retire On Time**

smartasset



**Motley Fool Issues Rare "All In" Buy Alert**

The Motley Fool



**NYU's Executive MBA Program Offers Convenient Classes in D.C.**

NYU Stern Executive MBA



**How to Earn a Fortune (Outside of Stocks)**

Crowdability

**Legend Who Bought Apple at $1.42, Amazon at $48 Says Buy This Now**

Empire Financial Research

MORE FROM REUTERS



Exclusive: Canada, U.S. set to extend border closure to end-July -...

09 Jun



California bans private prisons and immigration detention centers

12 Oct



Arizona calls for emergency plan as COVID-19 spikes after reopening

10 Jun



Widespread mask-wearing could prevent COVID-19 second waves: study

10 Jun



North Korean leader's sister emerges as policymaker in spat...

10 Jun

Case 1:19-cv-03626-DLF Document 13-4 Filed 11/06/20 Page 275 of 315

**MORE FROM REUTERS**



U.S. decision to withdraw troops from Germany...

08 Jun



Georgia Democrats vote on Senate challenger as five U.S. states...

09 Jun



Swedish prosecutor names killer of PM Palme, closes 34-year case

10 Jun



Republican 'law and order' appeal prompts U.S....

09 Jun



California, Southwest face new coronavirus woes as U.S. economy...

10 Jun

Apps    Newsletters    Advertise with Us    Advertising Guidelines    Cookies    Terms of Use    Privacy



All quotes delayed a minimum of 15 minutes. See here for a complete list of exchanges and delays.

© 2020 Reuters. All Rights Reserved.

Exhibit R



Discover Thomson Reuters

Directory of sites    Login    Contact    Support

Business    Markets    World    Politics    TV    More

SPECIAL REPORTS    JULY 10, 2020 / 6:13 AM / 25 DAYS AGO

# Special Report: How the Trump administration secured a secret supply of execution drugs

Jonathan Allen

13 MIN READ

(Reuters) - If the Trump administration carries out the first federal execution since 2003 on Monday, as scheduled, it will mark the culmination of a three-year campaign to line up a secret supply chain to make and test lethal-injection drugs, a Reuters investigation has found.

The headquarters of testing firm DYNALABS are seen in St Louis,
Missouri, U.S., July 9, 2020. REUTERS/Lawrence Bryant

Intent on enforcing the death penalty, President Donald Trump's
Department of Justice had started building the network of contractors
it would need by May 2017, federal procurement records show. Since
then, it has pursued a new drug protocol that could survive legal
challenges through firms whose identities it has fought to keep
hidden. Without the secrecy, the government has argued in court
filings, its ability to procure the drugs would be "severely impaired"
because the companies are not willing to supply or test execution
drugs if they are publicly identified.

In some cases, even the companies involved in testing the deadly
pentobarbital said they didn't know its intended purpose. Among
them is DynaLabs in downtown St. Louis, a laboratory that years ago
decided against doing quality tests on execution drugs because of the
controversy surrounding capital punishment.

So co-founder Michael Pruett was surprised to learn from a Reuters
reporter that his firm had been testing drugs that the Justice
Department planned to use in lethal injections of condemned
prisoners. The vials containing 50 milliliters of pentobarbital, a
powerful barbiturate, began arriving at his firm for testing on April 9

of last year, according to laboratory records included in Justice Department filings.

The samples came not from the government, but rather a regular DynaLabs customer, a so-called compounding pharmacy that mixes custom-ordered drugs. Because pentobarbital has other uses, such as euthanizing animals or treating seizures, Pruett said he had little reason to suspect they might be used to kill condemned prisoners.

"We decided seven or eight years ago we were not going to test for compounds that were being used for putting anyone to death," Pruett said in an interview.

Reuters identified DynaLabs, along with two other laboratories that were involved in testing, through redacted laboratory reports that the Justice Department produced in response to lawsuits filed by death-row inmates. In legal filings, the department had cited the testing firms' results as evidence of the drugs' safety. It blacked out the companies' names, logos and other identifying information.

All three firms confirmed that they had produced the test results cited by the Justice Department in court filings. One of the firms, ARL Bio Pharma Inc in Oklahoma City, said in a statement to Reuters that it was "not aware of the intended use" of the drugs. The third firm, Eagle Analytical Services Inc in Houston, declined to comment on whether it knew at the time that it was testing lethal-injection drugs for the government.

All three firms told Reuters the Justice Department did not hire them directly, saying they were contracted by a compounding pharmacy, which they declined to identify. The Justice Department has confirmed in court filings that it has hired one such pharmacy to make the execution drugs. Department spokesman Wyn Hornbuckle declined to name any of the companies in its supply chain or to answer detailed questions from Reuters about its efforts to secure lethal drugs.

Lawyers for death-row prisoners and death-penalty opponents argue that such secrecy prevents the public and condemned inmates from evaluating whether executions will adhere to the country's strict drug-control laws and a constitutional ban on "cruel and unusual" punishments. Paul Enzinna, one of the lead attorneys representing the death-row inmates challenging the federal execution protocol, declined to comment for this story.

The difficulty in procuring execution drugs has forced states and the U.S. government to get their supplies of the drug from compounding pharmacies, which operate differently from large pharmaceutical companies — and with less oversight. Such pharmacies typically mix tailored versions of drugs suited to individual patients, for example by turning a pill into a liquid form for a patient who has trouble swallowing. Their products have short shelf-lives and do not require FDA approval, making them more prone to problems with potency or contamination that could lead to a needlessly painful death, health experts say.

Introduced in the 1970s, lethal injections have since replaced the electric chair as the primary method of U.S. executions, in part because states argued injection was a more humane method. But the drugs can inflict pain. Pentobarbital can rapidly damage capillaries in the lungs and force blood frothing into the airways, leading to a drowning sensation in a condemned inmate who has not yet lost consciousness, autopsies of executed inmates show. A degraded or substandard drug can cause suffering by delaying the moment of unconsciousness, lawyers for condemned inmates have argued in court filings.

The Justice Department has scheduled the executions of two men convicted of murdering children for next week, starting Monday, and a third in August. The U.S. Supreme Court cleared the way for the executions on June 29, when it declined to rule on a legal challenge brought by death row inmates. Their lawyers argued that the government's move to create its own lethal-injection protocol violated a law requiring federal executions to follow the procedures of the state where an inmate was sentenced.

The department first announced in July 2019 that it would resume executions. But its work in lining up a lethal drug supply had started more than two years earlier, a timeline that has not been previously reported. In May 2017, the department — anticipating legal challenges — hired an Arizona litigation consulting firm, Elite Medical Experts LLC, according to contracting records in the government's procurement database.

Elite lined up physicians and scientists who could assess whether pentobarbital was a humane method of execution that could replace the three-drug lethal injection protocol used in the last federal execution in 2003, the documents showed. The new drug protocol was needed because supplies of an anaesthetic in the three-drug cocktail, sodium thiopental, had dried up when the last remaining U.S. manufacturer, Hospira Inc, stopped making it in 2011. The company said at the time that it could not comply with a requirement from the government of Italy, where its factory was located, that it ensure the drug is not used for U.S. executions.

Elite's founder, Burton Bentley, said in an interview that his firm only provided the department with expert witnesses and that he had no knowledge of what companies would supply the lethal drug.

The refusal by pharmaceutical companies to sell execution drugs to U.S. prison systems has choked legal supply channels for Texas, Missouri and the more than two dozen other states that still enforce the death penalty. Over the last decade, some states have resorted to promising anonymity to their lethal-drug suppliers, with at least 13 passing new laws to keep the companies' identities secret. Other states say they have abandoned efforts to procure a reliable source of lethal-injection drugs because of the increasing difficulty, leaving their condemned inmates in limbo.

Many pharmaceutical firms avoid any involvement in supplying drugs for executions, reasoning that their medicines are intended to promote health rather than kill people. The industry has come under pressure

by anti-capital punishment groups and had to comply with a 2011 European Union ban on execution drugs. It has since become standard for pharmaceutical firms to refuse to sell drugs for U.S. executions. The American Pharmacists Association, representing about 60,000 practicing pharmacists and other medical groups, tell members that aiding executions is unethical.

Only four drug companies have U.S. Food and Drug Administration approval to make a pentobarbital drug for human use: Akorn Inc, which sells it under the trade name Nembutal, and three generic manufacturers: Sagent Pharmaceuticals Inc, Custopharm Inc, and Renaissance Pharma Inc. But all four makers have anti-capital punishment policies and refuse to sell the drug to U.S. prisons and the Justice Department.

DynaLabs wanted to avoid any protests from capital punishment opponents. It had decided its policy years before, and had previously turned down a compounding pharmacy in Missouri that asked DynaLabs to test execution drugs.

"It's not that we don't agree with the death penalty," Pruett said. "It wasn't worth the controversy — the picket line out front that would eventually take place. That was our decision, and as far as I know, we stood by it."

Justice Department court filings show that its compounding pharmacy sent at least 21 pentobarbital samples to DynaLabs for potency and

stability testing in 2019. The work included a year-long study of the drug's shelf-life that was due to run through May.

After learning from Reuters that he was testing execution drugs, Pruett declined to comment - citing the advice of his attorney - on whether he would continue to run the commissioned tests on the pentobarbital samples.

Slideshow (4 Images)

## SECRET SUPPLIERS

Most capital crimes in America are prosecuted by states. The federal government has only executed three people since 1963, all between 2001 and 2003. Currently, 62 people are on death row for federal crimes.

Eric Holder — attorney general in the administration of Trump's Democratic predecessor, Barack Obama — expressed discomfort with capital punishment as he waited for state-level legal challenges to play out. "I think there are fundamental questions we need to ask about the death penalty," Holder said in remarks to the National Press Club in 2015.

The Justice Department's stance changed under the Trump administration, but it needed to solve the drug-supply issues and set its sights on pentobarbital. Fourteen states now use pentobarbital in

executions, either by itself or in combination with other drugs, according to the Death Penalty Information Center, a Washington-based nonprofit research organization.

By March 2018, the Justice Department had secured a compounding pharmacy willing to make an injectable pentobarbital, according to a memo from the department's Bureau of Prisons written that month. By October of that year, the department had found a "bulk manufacturer" of the raw pentobarbital powder, according to the partially redacted laboratory records the department filed in court. The compounding pharmacy would then use the powder to make a sterile injectable solution, according to department court filings. The pharmacy would also order quality-control testing on sample batches of the drug.

The bulk manufacturer's first attempt to pass quality tests failed, department filings show. When ARL Bio Pharma tested that initial sample of the pentobarbital powder on October 20, it found it was contaminated with unknown impurities, according to results filed in court by the Justice Department. But the manufacturer "refined" its production processes and a subsequent batch of the pentobarbital powder passed purity tests in February 2019, according to an affidavit filed by an official with the Bureau of Prisons.

## PAINFUL DEATHS

In executions involving compounded pentobarbital in Texas, seven out of the 22 inmates killed in 2018 and 2019 complained of a burning sensation in their veins after the drug was injected, according to accounts by the Associated Press, which attends all executions in the state.

Such cases make it important that lethal-injection drugs are secured through a transparent process, said Robert Dunham, director of the Death Penalty Information Center. "It's important that the public be able to examine the history of the contractors," he said. "Have they been involved in improper conduct in the past? How does their safety record look?"

But the identity of such contractors remains a closely guarded secret — even to some of the contractors themselves.DynaLabs' Pruett wasn't pleased to learn of his company's involvement in testing lethal-injection drugs without his knowledge. He initially thought it was a mistake, but confirmed through his own records that his company had completed the tests cited in court by the Justice Department.

In a second interview, he said it seemed reassuring that the government had ordered extensive testing of the drugs. "I'd rather know, if someone I knew was being put to death with lethal injection, that the injection was tested by a qualified laboratory," he said.

Reporting by Jonathan Allen; Additional reporting by Matthew Lavietes; Editing by Jason Szep and Brian Thevenot

Our Standards:    *The Thomson Reuters Trust Principles.*

MORE FROM REUTERS



PAID PROMOTIONAL LINKS

Promoted
by **Dianomi**



7 Mistakes You'll Make When
Hiring a Financial Advisor

smartasset



Motley Fool Issues Rare "All In"
Buy Alert

The Motley Fool





MORE FROM REUTERS



**Manhattan DA seeks to dismiss Trump lawsuit over subpoena for tax...**

03 Aug



**WHO says there may never be a 'silver bullet' for COVID-19**

03 Aug



**White House adviser Navarro questions Microsoft's China ties...**

03 Aug



**Judge voids Trump administration restrictions on coronavirus sick...**

03 Aug



**COVID floors aero suppliers after years of planemaker blows**

21 Jul

MORE FROM REUTERS



U.S. Congress in position to spend big on coronavirus relief, Fed...

02 Aug



Former Pope Benedict is seriously ill: newspaper

03 Aug



Spurs' Rose says tired of police stopping him to ask if car is...

04 Aug



Trump says he can issue order on mail-in voting but hasn't...

03 Aug



Exclusive: Papers leaked before UK election in suspected Russian...

03 Aug

Apps    Newsletters    Advertise with Us    Advertising Guidelines    Cookies
Terms of Use    Privacy



All quotes delayed a minimum of 15 minutes. See here for a complete list of exchanges and delays.

© 2020 Reuters. All Rights Reserved.

Exhibit S

Case 1:19-cv-03626-DLF   Document 17-4   Filed 11/06/20   Page 294 of 315

**888.396.2522  •  314.241.3962  •  info@dynalabs.us**      LOGIN      User Registration

Account Registration



# Testing Pentobarbital

On July 10, 2020, an article from a Reuters reporter appeared in the news indicating DYNALABS had unknowingly been testing pentobarbital, a medication that was compounded for use in executions.  This medication is commonly used to help with sleep disorders, in anesthesia, and to help shrink brain tissue subsequent to severe head trauma.

Several years ago, DYNALABS was asked to test pentobarbital for lethal injection for a penal system. We refused to do so, because of the controversial nature surrounding the use of this drug for that purpose.  It has been, and will always be, our policy to not knowingly test a medication that will be used for that purpose.

Further, DYNALABS does not require our clients to disclose the ultimate use of the medications they send to us to test.  Our job is to provide timely, accurate, cost-effective testing and consulting services to our clients, so they can provide their customers with safe, efficacious medication.

Although pentobarbital is a medication submitted infrequently to us for testing, DYNALABS is now conducting a review of those clients that have submitted it for analysis.  It will be our policy going forward to require a statement from our client indicating their preparation will not be used for execution.  Clients that decline to make that declaration will not be allowed to submit their pentobarbital preparations to DYNALABS for testing.

DYNALABS fully understands the complexity of this situation.  We stand by our prior decision to not knowingly test medication intended for execution.  We hope this statement clarifies our position on this important matter.

Best Regards,

**E. Michael Pruett, MBA, RPh**                    **Russell Odegard**

CEO/Managing Partner                    CEO, Founder (Managing Partner)

---

DYNALABS LLC is registered with the U.S. Food and Drug
Administration (FDA), DEA and Bureau of Narcotics and Dangerous
Drugs licensed, as well as ISO 17025 accredited. The products and
services provided by DYNALABS are protected by U.S. Patent Nos.
7,197,405 and 7,660,678.



© 2020 DYNALABS LLC. All Rights Reserved.

For additional information about DYNALABS please call 888-396-
2522   •   info@dynalabs.us

Terms Of Use   •   Privacy Policy   •   Customer Agreement

Exhibit T

**News**Room

8/13/18 WashingtonPost.com (Pg. Unavail. Online)
2018 WLNR 24685603

WashingtonPost.com
Copyright (c) 2018 The Washington Post

August 13, 2018

Section: post-nation

**Drug companies don't want to be involved in executions,** so they're suing to keep their drugs out
Companies that make and sell the drugs have restricted who can buy them,
asked states to return them and even stopped making one to try to keep it ...

Mark Berman

Companies that make and sell the drugs have restricted who can buy them, asked states to return them and even stopped making one to try to keep it away from lethal injections.

Drug companies have made it clear that they don't want states using their products to carry out death sentences. They've imposed strict limits on who can buy the drugs used for lethal injections, asked states to return some chemicals and, in one case, completely stopped making a drug to keep it out of the nation's death chambers.

The strategy has helped cut states off from many of the drugs they have used or sought to use for lethal injections, causing authorities to scramble to find new drug combinations or different execution methods. But it hasn't entirely stopped states from getting the drugs they seek, so some companies have started testing a new tactic: Filing lawsuits aimed at keeping their drugs away from executions.

In three suits filed since last year, drug manufacturers and distributors have taken aim at states on the verge of carrying out executions, accusing them of using deceit to obtain the chemicals and demanding states return them. Experts say the drug companies are turning to the courts as a last resort.

"The companies have found that you have to up the ante because a threat is simply not enough," said Deborah W. Denno, a law professor at Fordham University and a death penalty expert.

While the lawsuits have had mixed results, Denno said she expects more could follow as companies further try to distance themselves from capital punishment.

"The company's goal is to not have their medicine used to kill prisoners," said Robert Dunham, executive director of the Death Penalty Information Center, a Washington nonprofit. These firms worry about "the damage to their reputation that is caused by having medicines associated with death instead of life," he said.

Supporters of capital punishment accuse the drug companies of forcing states to use inferior execution options and of using the court battles as a way to stop executions — or at least delay them just long enough for the drugs to expire.

The latest of these legal fights has unfolded in Nebraska, where state officials have been preparing to execute Carey Dean Moore, 60, who was sentenced to death for killing two Omaha cabdrivers in 1979. Moore's execution, scheduled for Tuesday morning, would be Nebraska's first-ever lethal injection and the country's first execution using the powerful opioid fentanyl.

The drug company Fresenius Kabi filed a federal lawsuit last week seeking to block Nebraska from using what the company says it believes are two of its drugs to execute Moore. The company said it took no position on the death penalty but "opposes the use of its products for this purpose and therefore does not sell certain drugs to correctional facilities." In court papers, the firm accused Nebraska of obtaining its drugs "through improper or illegal means" because of the restrictions it has in place.

Nebraska officials pushed back, arguing they bought their drugs lawfully and legitimately. They also argued they had no other way to obtain drugs. Scott R. Frakes, director of Nebraska's Department of Correctional Services, wrote in an affidavit that he had contacted at least 40 suppliers and a half-dozen other states seeking drugs; only one supplier would provide them, and it will not sell more to the state, he said.

A federal judge ruled against the drug company Friday, and a three-judge panel of the U.S. Court of Appeals for the 8th Circuit affirmed that ruling on Monday. A spokesman for the company said it will not seek further appeals, likely clearing the way for Nebraska to carry out the execution. The office of Nebraska's attorney general declined to comment on the appellate court's decision.

That lawsuit came closely on the heels of another drug company's suit that, at least temporarily, blocked Nevada from carrying out an execution using fentanyl. The state was hours away from executing Scott Dozier for murder last month, when a judge halted it because Alvogen, a pharmaceutical firm, accused the state of "illegitimately" acquiring its drug, the sedative midazolam.

The cases both have echoes of an effort last year by McKesson, the drug distributor, which went to court to stop Arkansas from using a drug the company said state officials had obtained under false pretenses. A state judge initially prohibited officials from using the drug, but Arkansas Attorney General Leslie Rutledge (R) successfully appealed to the Arkansas Supreme Court to have that order stayed. The state went on to carry out four executions in eight days.

"Pharmaceutical companies are trying to circumvent the rule of law by using eleventh-hour litigation tactics to stall these lawful executions," Rutledge said in a statement last week. Rutledge and more than a dozen other attorneys general have opposed the drug companies' lawsuits in Nebraska and Nevada, calling them "frivolous claims" and accusing the firms of "abusing the litigation process."

"The Arkansas Supreme Court did not cave to the pressure from anti-death-penalty advocates," Rutledge said. "I will continue to fight for justice and support my colleagues against these meritless arguments in states like Nevada and Nebraska, where drug companies have asked courts to halt lawful executions."

In briefs filed in the Nebraska and Nevada cases, the attorneys general said "these lawsuits did not come out of nowhere" but are "the most recent battle" in what Supreme Court Justice Samuel A. Alito Jr. has described as "a guerrilla war against the death penalty."

After Louisiana Attorney General Jeff Landry (R) joined the group of attorneys general weighing in on the Nevada case, he issued a statement saying the drug company "stood between victims' families and justice" and added: "No family should be deprived of their hard-won justice and closure because of the hypocritical actions of this drug peddler."

The legal fights come at an uncertain moment for capital punishment in the United States, where the practice remains on the books in 31 states but death sentences are carried out by far fewer.

Executions and death sentences alike have both plummeted in recent years. Lethal injection remains the main execution method nationwide, used in 289 out of the 292 executions carried out since 2010, according to records kept by the Death Penalty Information Center. (The others were two electrocutions in Virginia and one execution by firing squad in Utah; both states have lethal injection but allowed inmates to choose other options.)

Unable to readily obtain lethal drugs, Oklahoma said this year it would begin using nitrogen gas for all executions, which Alabama and Mississippi recently approved as backup options. Utah also has approved using a firing squad in more cases.

"Lethal substances used in a lethal injection execution are difficult, if nearly impossible, to obtain," Frakes said in an affidavit filed in federal court. "This problem is not limited solely to Nebraska, but exists in other death penalty states."

Officials seeking drugs for executions also have turned to new, untested drug combinations. What used to be a largely uniform process nationwide — a three-drug protocol using an anesthetic, a paralytic and then a drug to stop the heart — has become something that varies from state to state.

Florida last year became the first state to use the anesthetic etomidate in an execution. Ohio, Arkansas, Alabama and Tennessee are among the states that have recently carried out executions using a combination of three drugs that includes midazolam, which is a common sedative but has become controversial for its use in unusually lengthy or bungled executions.

Nevada and Nebraska both announced plans to use fentanyl in lethal injections, scheduling the first executions involving the powerful synthetic opioid for this summer. Both ran headlong into drug companies asking courts to block the states from using their products and to hand them over, albeit with different results. Nevada's execution remains on hold, and the case is ongoing, while Nebraska's court fight appears to be over.

Richard G. Kopf, senior U.S. district judge, issued an order last week rejecting the drug company's request in Nebraska. He pointed to the particularly tangled recent history of capital punishment in the state, noting that lawmakers abolished the death penalty in 2015 and then voters restored it the following year after it was added to the statewide ballot.

"The will of the people, as very currently understood, is plain," he wrote.

Read more:

Trump remains a staunch supporter of the death penalty, but many Americans are souring on it

The steady decline of America's death rows

Using a new drug, Florida executes a death-row inmate for the first time in a year-and-a-half


**---- Index References ----**

Company: FRESENIUS KABI NV; MCKESSON CORP

News Subject: (Crime (1CR87); Criminal Law (1CR79); Death Penalty (1DE04); Government Litigation (1GO18); Judicial Cases & Rulings (1JU36); Legal (1LE33); Social Issues (1SO05))

Industry: (Pharmaceuticals (1PH33); Pharmaceuticals & Biotechnology (1PH13); Pharmaceuticals Wholesale Distribution (1PH35))

Region: (Alabama (1AL90); Americas (1AM92); Arkansas (1AR83); Florida (1FL79); Nebraska (1NE88); Nevada (1NE81); North America (1NO39); U.S. Midwest Region (1MI19); U.S. Southeast Region (1SO88); U.S. West Region (1WE46); USA (1US73); Utah (1UT90))

Language: EN

Other Indexing: (Deborah Denno; Samuel Alito Jr.; Scott Frakes; Dean Moore; Dean Moore; Richard Kopf; Scott Dozier; Robert Dunham)

Word Count: 1447

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.



Exhibit U

# BuzzFeed News



**POLITICS**

# FBI Documents Don't Back Up Claimed Threat To Execution Drug Supplier

While death penalty states make the case that secrecy laws are needed to protect execution drug suppliers from possible violence, a review of the available information shows evidence for that argument is lacking.

**By Chris McDaniel**
Posted on August 29, 2016, at 10:04 p.m. ET

**New Message**

"Your site says n____ing about pentobarbital. Do you c
Missouri's department of corrections, as has been p____
this morning, and it so, now that the story has gone p
Seems to me that manufacturing a drug expressly to
those commandments Moses got from Jehovah on S
fashioned. Still, were I you I'd at least want to beef u
put in the spotlight as a likely supplier and failed to is
federal building can tell you, it only takes one fanatic
a real dent in business as usual. In your place, I'd ei
company didn't make execution drugs of ANY sort, a
or else openly accept the burden of putting my empl____
(and possibly uninsurable) risk. Just sayin'."

*BuzzFeed News*

Over the past several years, states have become increasingly secretive about the drugs officials use to execute people.

Despite widespread problems with drugs used in executions, states often claim this secrecy is necessary, and the product of intimidation: Officials say lethal drug suppliers face harassment and even physical threats after the suppliers' identities have been revealed.

But there are few concrete examples to justify the secrecy, a BuzzFeed News review found. And the states' marquee example — in which the FBI allegedly investigated a serious bomb threat sent to a drug supplier — is contradicted by internal FBI documents.

The question of who supplies drugs, and which drugs are used, has dominated discussion about the death penalty over the last several years. Inmates argue that information about who is supplying the drugs could reveal questionable practices or even illegal activity, and that without transparency there can be no oversight. States counter that the information is too dangerous to be made public.

But the real danger to drug suppliers appears to be legal and economic risk, not risk of violence.

Two states appear to have premised the need for this kind of secrecy on an FBI investigation of threats made to one drug supplier. But the states' claims don't hold up to scrutiny.

In early 2014, a man sent an email in his own name to a pharmacy that supplied execution drug that alluded to violence the pharmacy could face.

Later, states claimed that FBI agents investigated the man, believing it was a credible threat, and hired an expert who testified to that effect under oath.

But according to documents obtained by BuzzFeed News, the FBI didn't even hear about the threat until months later, when a reporter

called. FBI documents show that the threats were characterized as "not specific" in nature, there was no follow up provided by the pharmacy, and no further action was taken by the FBI.

---

In the course of fighting lawsuits seeking information about execution drug suppliers, both Texas and Ohio hired the same expert to gauge the risk of threats to those suppliers. The two states turned to Lawrence Cunningham, a former US Secret Service officer who retired in 1994 and now works as a security consultant for a company called Torchstone.

Cunningham admits that he didn't speak to any execution drug suppliers when he was forming his opinions, and based much of his research on social media. Cunningham found evidence of angry emails and protests, but was unable to find any examples of suppliers actually being attacked.

The most damning evidence Cunningham and the two states were able to find was an email sent to a pharmacy in Oklahoma that, at the time, supplied execution drugs to Missouri.

Missouri had been trying to keep the supplier of its execution drugs a secret. But in early 2014, journalists discovered a pharmacy called the Apothecary Shoppe was selling the drugs without a license in Missouri.

A retired college humanities professor living in Ohio read one of the stories, went to the pharmacy's website, clicked on "Contact," and left a comment.

In the comment, Nick Humez wrote:


**BuzzFeed News**   FBI Documents Don't Back Up Claimed Threat To Executio

*"Your site says nothing about pentobarbital. Do you compound it for the state of Missouri's department of corrections, as has been publicly alleged in an AP story that ran this morning, and if so, now that the story has gone public, do you think that is prudent? Seems to me that manufacturing a drug expressly to kill people flies in the face of one of those commandments Moses got from Jehovah on Sinai, but maybe I'm just being old-fashioned. Still, were I you I'd at least want to beef up my security now that you've been put in the spotlight as a likely supplier and failed to issue a flat denial. As the folks at the federal building can tell you, it only takes one fanatic with a truckload of fertilizer to make a real dent in business as usual. In your place, I'd either swear to the nation that my company didn't make execution drugs of ANY sort, and then make dang sure that's true, or else openly accept the burden of putting my employees and myself at unacceptable (and possibly uninsurable) risk. Just sayin'."*

In a court filing, Texas Attorney General Ken Paxton's office wrote, "Needless to say, the email got the authorities' attention. Federal agents questioned Humez about it and his underlying intentions in connection to the" pharmacy.

"The undisputed content of Humez's email, and the extent to which federal and state law enforcement took the email seriously, exceeds what is required to demonstrate a substantial threat of physical harm, as a matter of law," the state asserted.

Humez has claimed in repeated conversations, including with BuzzFeed News, that he didn't intend the email as a threat — pointing out that he included his real name and phone number in the email. Instead, he says he was trying to warn the supplier to be cautious.

In the Ohio and Texas cases, arguing for secrecy, Cunningham said

**BuzzFeed News**  FBI Documents Don't Back Up Claimed Threat To Executio

The contention that law enforcement considered the email credible enough for an investigation is central to the states' argument that this information is too dangerous to be public.

"The fact that they went to interview him based on this email is significant," Cunningham said in the Texas case. "They felt it was serious. They interviewed him.

"I would offer that the FBI considered that serious enough to interview Humez, so they considered that a threat on its surface," Cunningham testified. "They had to investigate it further. They expended resources to go talk to this individual."

In an October 2014 deposition for the Texas case, Cunningham initially claimed knowledge of why the FBI interviewed Humez — specifically noting his reference to the Oklahoma City bombing — and said that the FBI kept a file on the professor after speaking with him.

But an internal FBI report obtained by BuzzFeed News through a Freedom of Information Act request disputes Cunningham's testimony.

According to a May 2014 report, Tulsa's FBI office did not hear about the threat from the pharmacy when it received the email. Instead, the report shows the office only heard about it months later, when an Associated Press reporter called and asked about threats against the pharmacy.

Both the Tulsa Police Department (TPD) and the FBI's Tulsa office wrote in the report that they weren't aware of any threats against the pharmacy. The FBI and a TPD detective then reached out to the pharmacy's employees.

An Apothecary Shoppe employee "stated that immediately following their name being released to the media they received a couple of threatening phone calls and emails but the threats [were] not specific in nature," according to a TPD report.

The FBI provided contact information so the Apothecary Shoppe could provide any copies of threatening emails. But a month later, the FBI wrote in its report that the pharmacy had not forwarded any threats and that "[w]ithout further cooperation from the Apothecary Shoppe the types of threats remain unspecified."

An FBI spokesperson told BuzzFeed News that it has no other reports about threats against the pharmacy. The only evidence in the court record that Humez was interviewed by the FBI is Humez's claim that he was.

Cunningham declined numerous requests for an interview. "At this juncture, I have no comment," Cunningham said, when asked to explain his testimony. Torchstone did not respond to a request for comment.

The Ohio and Texas departments of correction declined to comment, and their attorneys general did not respond to requests for comment on their filings in the cases.

A year after the Texas testimony, in September 2015 testimony in the Ohio case, Cunningham claimed that the Texas Department of Public Safety interviewed Humez as well.

However, that claim is contradicted by Texas DPS documents and sworn statements of its department head, FBI internal documents, and Cunningham's own testimony in the Texas case.

The head of the Texas DPS, in that earlier case, said his agency "[a]bsolutely [did] not" do any investigation into the matter.

"I did not do any investigations," Colonel Steven McCraw said in a deposition, when asked about the email. "We didn't look at any people. We didn't do anything."

At that time, Cunningham himself also agreed that the Texas law enforcement agency did not interview Humez.

---

Cunningham's testimony in both cases was based more on conclusions he drew from related — or what he determined to be analogous — threats than on specific, concrete examples relating to execution drugs.

In his testimony in the two cases, Cunningham readily admits that he didn't speak to any execution drug suppliers when he was forming his opinions, and based much of his research on social media.

"In this era, as we all know now, social media has become both a blessing and a curse," Cunningham said.

"In the curse side of it, yes, a lot of recruiting can go on. In fact, ISIS and other terrorist organizations are doing a very effective job recruiting children and others to join the cause. It's a very serious

issue. And so a lot of what you find on the internet can be very useful in validating and adding to the leads or the assessment process."

In fact, between the two cases, Cunningham referenced ISIS, al-Qaeda, or the September 11th attacks a total of 28 times in his testimony.

At one point, Cunningham claimed that his company checked Humez out in a database. When asked what database they used, he clarifies that they had Googled him.



Cunningham also testified that he believed that the anti-death penalty movement is similar to the anti-abortion movement, or movements for animal and environmental rights.

"I would consider, for example, the abortion movement relevant," he said. "This is a relatively new focus compared to the history of the abortion issue. If you look at the abortion issue and trace its history, there's an ocean of examples showing violence, bombings, and killings. It's created an outrage and they've acted on it. Animal rights groups have done the same thing."

"So the point is, these things are in a similar vein. They have to do with life and right to life. And they're obviously divisive, they create a lot of angst and in some cases people act on these things and become very obsessed and attack."

The National Abortion Federation keeps data on incidents of violence against abortion providers, detailing more than 7,000 incidents since 1977. Regarding execution drug providers, on the other hand, Cunningham was unable to find any examples.

Cunningham testified that "it would be nice to have a direct threat" that he could point to, but said that "just because I'm not aware of it doesn't mean it doesn't exist."

In what could stand in as a summary of his analysis, Cunningham later said, "In my mind, in my view it's very important to [be proactive] to identify the threat before it finds you."

For example, Cunningham identified threats in many places. At one point, he said Christians boycotting the abortion pill was "an aggressive act" and financial terrorism.



"Your grandmother. Your sister. My mother. My first grade teacher if she was still alive. All these people we're finding have propensity for violence. If they're involved in [boycotts and protests], I don't just offhandedly say, well, that's just one — one little protest, this is America, they're allowed to be protesting, they're allowed to sit down and be arrested. Environmental — environmental protests do it all the time," Cunningham said. "But in the context of what we're talking about here, I feel like it adds more to the argument" that execution drug suppliers should be secret.

At another point, Cunningham pointed to a list of news stories that he believed supported his opinion that the drug supplier information should be kept secret. One of the news stories detailed a love triangle murder that had been featured on *Dateline*. In that case, a plastic surgeon hired a man to kill another doctor because the doctor was dating his ex-girlfriend.

Cunningham argued the case showed violence in the medical community. The lawyer deposing him — fighting the secrecy — was skeptical.

"This seems far fetched and crazy," attorney Philip Durst said. He then read from Cunningham's notes. "'David Shepard murdered Dr. Joseph Sonnier in Lubbock, Texas. Shepard was hired to commit the crime by a plastic surgeon angry about a love triangle.' You're the paid expert for the state," he continued. Of Cunningham's conclusion that the story is relevant to the question of execution drug secrecy, Durst asked: "Tell me why you think that is not crazy."

"I wouldn't call it crazy, but it speaks to violence," Cunningham responded. "It speaks to violence in the medical arena. This is important."


FBI Documents Don't Back Up Claimed Threat To Executio

Cunningham wasn't the first expert that Texas turned to in the case. The state earlier had the head of the Department of Public Safety, Col. McCraw, perform a threat assessment. McCraw said he spent "a couple of hours at the most" looking at emails sent to drug suppliers, and concluded there was the potential for serious threats.

In a deposition, McCraw said that the head of the Texas Department of Criminal Justice requested specific language be used — that he say there was a "substantial threat" of harm to the pharmacies if they were made public.

McCraw testified that the request did not bother him and that he was not asked to conclude anything he did not believe.

As the case progressed, however, Texas also retained Cunningham's services to do his external threat assessment.

A year later, he gave a similar assessment for Ohio, concluding, "I believe it's reasonable to withhold the identities of those people."

Threats "have to be taken seriously," he explained. "When you look at all these factors in total I believe it's very important to protect their identities until this firestorm dies down, if you will, or is reconciled. But right now this is a volatile area and these people are vulnerable based on my experience and my assessment of all the factors I've looked at in this case."

In the two cases where Cunningham testified, state officials received mixed results.

A federal judge in the Ohio case found Cunningham's testimony "perhaps more persuasive" than the expert hired by death row inmates, ultimately deciding that information about execution drug suppliers could be kept secret. The inmates have appealed the ruling.

Much of the Ohio case took place behind closed doors, and most of the filings, including Cunningham's testimony, were originally sealed. Later, at the request of death row inmates, the judge unsealed the testimony — enabling this BuzzFeed News review to proceed.

In the Texas case, the state lost but has has appealed the decision. In a May hearing, Texas' 3rd Court of Appeals appeared skeptical of the state's position.

"Where do we draw the line... without blowing a hole in the (Public Information Act) big enough to drive a truck through anytime the government says, 'Well, gee, this can cause harm?'" asked one of the justices.

"It is not as if there's a known assailant out there who says any compounding pharmacy will be attacked. It's not that specific," another justice remarked.

The appeals court has yet to make a ruling in the case.

---

It's not just Ohio and Texas arguing that threats necessitate increased secrecy regarding execution drugs. Around the country, other states are arguing the same thing.

Mississippi recently approved a new law, written by Attorney General Jim Hood's office, that made execution drug suppliers confidential.

The state lawmaker who championed the bill said Hood's office warned that there had been threats and harassing phone calls to executioners.

But in a court case, when forced to identify all known threats, harassment, or harm from supplying execution drugs, Hood's office

could only identify legal expenses.

"The pharmacy that supplied [the Mississippi Department of Corrections] with pentobarbital in May 2012 and its owners were harmed when they were forced to incur significant legal expenses in order to respond to a document subpoena served on them by [death row inmates'] counsel. Further, they were harmed when the pharmacy was identified as a supplier of lethal injection drugs in court papers and media reports and disparaged as an herbal remedy shop."

Evidence provided by multiple states shows that the biggest threats drug suppliers have faced are legal and economic ones, not violent ones.

In the Ohio case, the judge, U.S. District Court Judge Gregory Frost, ruled that capital attorneys were not allowed to know the name of the supplier — even if the attorneys agreed it was for their eyes only.

"Part of the harassment, harm, or similar undesirable consequences implicitly animating the protective order decision is that disclosure of identities subjects the disclosed persons or entities to suit," Frost wrote. "A reasonable inference … is that the entities … do not want to subject themselves to such litigation."

In 2013, a pharmacy that supplied Texas with execution drugs complained to the state about a "firestorm" after its identity was revealed. The pharmacy received calls from media, angry emails, negative reviews on Google, and protests. The pharmacy demanded Texas return the drugs, but the state did not comply.

In February 2014 in Missouri, Attorney General Chris Koster's office complained to a judge that a death row inmate wrote a "threatening letter" to a pharmacy that sold execution drugs to the state.

But the "threatening letter" was a letter that said the attorney would sue the Apothecary Shoppe if it sold drugs to the state.

The pharmacy was sued by that Missouri death row inmate, Michael Taylor, in February 2014. The pharmacy, still trying to keep its identity under wraps, filed some of its arguments under seal. The lawsuit lasted less than a month, and the pharmacy settled out of court, agreeing to not sell execution drugs to the state.

Its troubles didn't end there. The pharmacy faced significant economic troubles since then. When the Apothecary Shoppe was inspected by Oklahoma regulators, more than a thousand pharmaceutical violations were found — leading to its pharmacy license being put on probation.

The company subsequently defaulted on loans in November 2015. Months ago, the pharmacy sold off its assets to another pharmacy business in Oklahoma.

## Read the FBI report:

Download PDF





Chris McDaniel is an investigative reporter for BuzzFeed News and is based in New York. His secure PGP fingerprint is C90B B2EF E872 EF22 4EDA DABB 50E6 F2BE 1164 FCAF

Contact Chris McDaniel at chris.mcdaniel@buzzfeed.com.

Got a confidential tip? Submit it here.