# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON** <br>              *Plaintiff,* <br>    v. <br><br> **UNITED STATES DEPARTMENT OF JUSTICE**, <br><br>              *Defendant.* | No. 19-03626-DLF <br><br> DECLARATION OF VANESSA R. BRINKMANN <br><br> Hon. Dabney L. Friedrich |

### DECLARATION OF VANESSA R. BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.      I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (Department or DOJ).  In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP.  The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from within six senior leadership offices of the Department, specifically the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO).  I make the statements herein on the basis of personal knowledge, as well as information provided to me by others within the Executive Branch of the Federal Government with knowledge of the types of records sought in this case, and on information acquired by me in the course of performing my official duties.

**OIP's Processing of Plaintiff's FOIA Request**

2.      By facsimile dated August 9, 2019, Plaintiff submitted a FOIA request to OIP,

seeking, particularly from OAG, ODAG, and OASG, "all records from February 14, 2019 to the

present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be

used in federal executions, including without limitation any notifications to or communications

with vendors, solicitation information, requests for information, subcontracting leads, and

contract awards."  A copy of this FOIA request is attached hereto as Exhibit A.

3.      By letter dated September 6, 2019, OIP acknowledged Plaintiff's FOIA request and

assigned it the administrative tracking number DOJ-2019-006390.  A copy of this

acknowledgment is attached hereto as Exhibit B.

4.      On December 4, 2019, Plaintiff filed suit.  See Complaint, ECF No. 1.

5.      As reflected in the January 30, 2020 Joint Status Report (ECF No. 7), the parties

agreed that the Federal Bureau of Prisons (BOP) and OIP would prioritize searches for two

categories of records:  Category 1 pertaining to "contract awards related to the procurement of

pentobarbital," and Category 2 pertaining to "requests for information, solicitations,

subcontracting leads, and other non-email materials related to the procurement of pentobarbital."

As reflected in the February 27, 2020 Joint Status Report (ECF No. 8), on February 13, 2020

"OIP reported through counsel that it had no hard-copy documents responsive to Categories 1

and 2, but that it could not rule out that records responsive to Categories 1 and 2 could be found

in an email search."

6.      By letter dated August 21, 2020, OIP provided its final response to Plaintiff's FOIA

Request.  Pursuant to this response, OIP provided Plaintiff fifteen pages containing records

responsive to Plaintiff's request.  Seven pages were released in full.  The other eight pages were

released in part with certain information withheld pursuant to Exemptions 5, 7(A), 7(B), 7(E), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(A), (b)(7)(B), (b)(7)(E), and (b)(7)(F). Some of the withholdings were made on behalf of BOP.  A copy of OIP's final response letter, dated August 21, 2020, is attached hereto as Exhibit C.

7.      By letter dated August 25, 2020, OIP provided a supplemental response to Plaintiff's FOIA request.  Pursuant to this response, OIP informed Plaintiff that its letter of August 21, 2020 inadvertently omitted that OIP had also located an additional four pages containing records responsive to Plaintiff's request, and that these records were withheld in full pursuant to Exemptions 5, 7(A), 7(E) and 7(F) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(7)(A), (b)(7)(E), and (b)(7)(F).  OIP's letter further advised Plaintiff that its withholdings on the eight pages released in part on August 21, 2020 were made pursuant to Exemptions 5, 7(A), 7(E), and 7(F) of the FOIA, and OIP provided Plaintiff with an updated copy of those records with revised portion markings.  A copy of OIP's supplemental response letter, dated August 25, 2020, is attached hereto as Exhibit D.

8.      On November 6, 2020, OIP provided an additional supplemental response to Plaintiff. Pursuant to this response, OIP informed Plaintiff that it had identified twenty-one additional pages containing records responsive to Plaintiff's request, and that it had reprocessed certain pages that comprised part of its August 25, 2020 response.  In total, pursuant to this response, excluding the reprocessed pages, one page containing records responsive to Plaintiff's request was released in full, eleven pages were released in part with certain information withheld pursuant to Exemptions 4, 5, 6, 7(A), 7(C), 7(E), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(E), and (b)(7)(F), and nine pages were withheld in full pursuant to Exemptions 4, 5, 7(A), and 7(E) of the FOIA, 5 U.S.C. § 552(b)(4), (b)(5), (b)(7)(A),

and (b)(7)(E).  With respect to pages from OIP's August 25, 2020 response that were reprocessed, on two pages previously released to Plaintiff, and at BOP's request, OIP lifted redactions made pursuant to Exemptions 7(A), 7(E), and/or 7(F), and on one of those pages BOP requested that Exemption 5 be added as a basis to withhold certain information previously withheld.  Additionally, at BOP's request, OIP informed Plaintiff that with respect to the four pages previously withheld in full, OIP was adding Exemption 4 as a basis for withholding those pages, and removing Exemption 7(F) as a basis for withholding those pages on behalf of BOP. Separately, upon further review, OIP determined that certain withholdings it had made on two pages previously released in part to Plaintiff pursuant to Exemption 5, could be lifted.  In sum, a total of three pages previously released in part to Plaintiff in OIP's August 25, 2020 response were reprocessed and provided to Plaintiff.  A copy of OIP's supplemental response letter, dated November 6, 2020, is attached hereto as Exhibit E.

9.      In summary, across these three responses, OIP located forty pages containing records responsive to Plaintiff's request.  OIP released nine of those pages in full, and released eighteen of those pages in part, with withholdings made pursuant to Exemptions 4, 5, 6, 7(A), 7(C), 7(E), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(E), and (b)(7)(F).  OIP withheld the remaining thirteen pages in full, pursuant to Exemptions 4, 5, 7(A), and 7(E) of the FOIA, 5 U.S.C. § 552(b)(4), (b)(5), (b)(7)(A), and (b)(7)(E).

### Searches Conducted by OIP in Response to Plaintiff's Request

10.      Plaintiff's request to OIP seeks "all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions" and "includes, but is not limited to, the Office of the Attorney General, the Office of the Deputy Attorney General and the Office of the Associate Attorney General."  OIP

submitted remote electronic search requests of email and computer files for custodians in all

three offices identified in Plaintiff's request (OAG, ODAG, and OASG) on October 2, 2019.

11.     After litigation commenced on December 14, 2019, the parties met and conferred

and, as reflected in the January 30, 2020 Joint Status Report (ECF No. 7), the parties agreed that

BOP and OIP would prioritize searches for two categories of records: Category 1 pertaining to

"contract awards related to the procurement of pentobarbital," and Category 2 pertaining to

"requests for information, solicitations, subcontracting leads, and other non-email materials

related to the procurement of pentobarbital."  Pursuant to this agreement, OIP initiated contact

with knowledgeable officials within OAG, ODAG, and OASG to ascertain whether custodians in

their offices were reasonably likely to possess records responsive to Categories 1 or 2.  As stated

supra, as a result of these inquiries, OIP was able to report to Plaintiff that each of the three

management offices had no hard-copy documents responsive to Categories 1 and 2, but that OIP

could not rule out that records responsive to Categories 1 and 2 could be found in an email

search.  See ECF No. 8.

12.     As part of OIP initiating contact with knowledgeable officials in OAG, ODAG, and

OASG, OIP was able to identify and speak directly with the official who was the primary point

of contact in ODAG for BOP and the lethal injection protocol issue during the relevant time

periods (i.e., February 14, 2019 to October 2, 2019, when OIP first began its search).  As a result

of OIP's discussions, OIP was able to target its search to this official's ODAG records as well as

to the records of four additional officials who were in OAG and ODAG during the relevant time,

who were reasonably likely to possess records responsive to Plaintiff's request.  As described

below, upon reviewing the records responsive to Plaintiff's request that were located in OIP's

searches, this official further suggested that OIP search email records of two additional

custodians who were in OAG during the relevant time frame, because those custodians may plausibly also have maintained responsive records.[1]  An additional result of information gathered during OIP's discussions with OAG, ODAG, and OASG was that OIP was able to focus the scope of OIP's remaining email and computer electronic records search, through the development of targeted search criteria, and the elimination of any need to search within records maintained by custodians not reasonably likely to possess records responsive to Plaintiff's request.

13.     In the Department of Justice's organizational structure, the Deputy Attorney General advises and assists the Attorney General in formulating and implementing Departmental policies and programs, and in providing overall supervision and direction to all organizational units of the Department, including directly supervising BOP.  The Associate Attorney General, and OASG more broadly, is not in BOP's management chain.  As such, OIP preliminarily determined that OASG custodians were not reasonably likely to have been involved in discussions responsive to Plaintiff's request.  However, because Plaintiff expressly sought any responsive records maintained by OASG, OIP specifically inquired with OASG to confirm this preliminary determination, and OASG subsequently confirmed that they had no role in issues related to the procurement of drugs for use in federal executions, and therefore no OASG custodian would be reasonably likely to maintain records responsive to Plaintiff's request.  Due to this confirmation, made by OASG, that no OASG custodians were reasonably likely to maintain records responsive to Plaintiff's request, OIP was able to more effectively target its search by eliminating the need to search the records of any OASG custodian.

---

[1] OIP notes, and as more fully set forth below, that during the course of reviewing records located in its search, it independently cross-referenced records and ran down leads to confirm the adequacy of its search decisions.

## Search of OAG and ODAG Email and Electronic Records

14.    Based on its discussions with OAG, ODAG, and OASG, OIP modified its original search submitted on October 2, 2019.  First, OIP tailored its search to the five officials initially identified as being reasonably likely to possess records responsive to Plaintiff's request.  These five records custodians included the selected senior leadership employed in OAG and ODAG at the time of the events relevant to this request (i.e., February 14, 2019 to October 2, 2019). Second, for all five custodians, OIP employed a keyword search using the following search terms: "pentobarbital" and "Nembutal."  Additionally, for the custodian that was the primary ODAG point of contact for lethal injection protocol issues during the relevant times, OIP additionally employed the following search criteria: searches for all communications within a specified Microsoft Outlook inbox subfolder which the custodian identified as containing communications pertaining to the death penalty and execution protocol; and searches for all communications with specific BOP officials.  As described below, OIP subsequently searched the email records of two additional OAG custodians using the search terms "pentobarbital" and "Nembutal."  The date range for all searches was inclusive of February 14, 2019 to October 2, 2019.

## Results of the Email and Electronic Records Searches

15.    As a result of these email and electronic records searches, OIP located potentially responsive records in its searches.  On or about May 29, 2020, pursuant to Department regulations, OIP initiated consultations with other offices, including BOP, which were "better able to determine whether the record is exempt from disclosure under the FOIA."  See 28 C.F.R. 16.4(d).  After this consultation process, and as described in further detail below, OIP released a

total of twenty-seven pages containing records responsive to Plaintiff's request, with some

containing redactions of information exempt from mandatory release under the FOIA.  OIP also

withheld in full thirteen pages containing records responsive to Plaintiff's request, because those

pages are fully exempt from release under the FOIA.

### Adequacy of OIP's Records Searches

16.     The searches conducted for this request fully reflect the agile, dynamic, and

comprehensive search process OIP conducts in response to all FOIA requests.  As an initial

matter, in light of the parties' agreement to prioritize processing of certain categories of records,

OIP engaged in direct discussions with OAG, ODAG, and OASG.  OIP discussed with

knowledgeable officials in each office the likelihood that they or others in their offices would be

reasonably likely to possess records responsive to the two categories of records Plaintiff sought

to prioritize, as stated supra.  As a result of these discussions, OIP learned that no officials in

these three offices were reasonably likely to possess hard-copy documents responsive to

Categories 1 and 2, but that OIP could not rule out that prioritized records might be located in an

email and computer electronic records search.  Additionally, because BOP is overseen directly

by ODAG, and through ODAG by OAG, OIP preliminarily determined that, because OASG is

not in BOP's supervisory chain within the organizational structure of the Department, OASG

would not likely be involved in discussions responsive to Plaintiff's request.  But OIP

nevertheless reached out to OASG to confirm this preliminary determination, and OASG

subsequently confirmed that they had no role in issues related to the procurement of drugs for

use in federal executions.  As such, OIP reasonably determined that it did not need to continue its

search for OASG email or electronic records.  Furthermore, as noted, above, OIP is responsible

for processing FOIA requests on behalf of OAG, ODAG, OASG, OLP, OLA, and PAO.  In the

course of reviewing Plaintiff's request, OIP noted that Plaintiff's request included "but [was] not limited to," OAG, ODAG, and OASG.  However, based on OIP's understanding of the role and mission of OLP, OLA, and PAO within the Department, as well as a result of its discussions with OAG, ODAG, and OASG, OIP determined that these other three offices would be unlikely to have records responsive to Plaintiff's request.

17.     During these discussions, OIP also was informed that one specific official in ODAG served as the primary point of contact for BOP issues during the relevant times, including issues surrounding the procurement of drugs for use in lethal injection.  OIP spoke directly to this official, who identified to OIP four additional officials in OAG and ODAG who the official believed were reasonably likely to possess records responsive to Plaintiff's request based on that official's direct knowledge and involvement in BOP's efforts to procure lethal injection drugs. In addition, after the official was informed of OIP's provisional search terms "pentobarbital" and "Nembutal," the official advised OIP that there were likely additional records responsive to Plaintiff's request that would not be located by the use of just those search terms.  The official therefore advised OIP to also search specific Microsoft Outlook inbox subfolders where the official endeavored to file all communications on lethal injection matters, including any of the official's communications responsive to Plaintiff's request where the terms "pentobarbital" and "Nembutal" would not have appeared.  Further, in order to catch any responsive records that both did not use the terms "pentobarbital" or "Nembutal" and which were not filed in the official's applicable Outlook inbox subfolder, the official advised that OIP should additionally search the official's communications with three specific BOP officials, because the ODAG official communicated with those three BOP officials on lethal injection matters.

18.     With this contextual information in hand, OIP modified its original search submitted on October 2, 2019 to search the emails and electronic records of the five OAG and ODAG officials reasonably likely to have been involved in discussions related to the subject matter of Plaintiff's request.  Plaintiff's request sought records "related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal," so for all five custodians, OIP employed a keyword search to locate records which used either of the following search terms: "pentobarbital" or "Nembutal."  To ensure a thorough and comprehensive search, OIP broadened this search criteria for the primary ODAG point of contact for lethal injection protocol issues, searching for all communications within specified Microsoft Outlook inbox subfolders which the custodian identified as containing communications concerning the subject of Plaintiff's request, as well as searching for all communications between that ODAG official and specific BOP officials regardless of location in the ODAG custodian's email records.  As a result of these searches, responsive records were located and processed under the FOIA, and all releasable portions were provided to Plaintiff.

19.     In the course of processing the records located as a result of its search, OIP continually reviewed the records to identify any additional "leads," in the form of search terms or additional records custodians that might lead to the discovery of additional records responsive to Plaintiff's request.  For this case, in the course of reviewing records located during its searches, OIP identified a limited number of instances where responsive material was forwarded to two officials in OAG who not among the five records custodians OIP initially searched.  Upon identifying these officials, and upon recommendation by the ODAG official who was the primary point of contact on these issues, OIP conducted a secondary search of these two OAG officials' email accounts to see if additional records responsive to Plaintiff's request were likely

to exist outside of the records OIP's initial search located.  No such records were located.

Additionally, after receiving the results of its searches, OIP carefully reviewed the results for any

leads indicating that OLP, OLA, or PAO possessed additional records responsive to Plaintiff's

request, and, again, identified no such leads.

20.     Further, OIP incorporated information learned during the processing of FOIA

requests not submitted by Plaintiff, to ensure that OIP's searches for records in response to

Plaintiff's request were reasonably likely to capture all responsive records.  After OIP had issued

its supplemental final response to Plaintiff dated August 25, 2020, in the course of processing

records it had located in response to a different FOIA request, OIP identified records located in

response to that other search, which also appeared responsive to Plaintiff's request, but that were

not yet processed in response to Plaintiff's request.  The different FOIA request is broader than

Plaintiff's request, and so the searches conducted for records responsive to the different FOIA

request were, in every respect, equivalent to or broader than the searches conducted for records

responsive to Plaintiff's FOIA request.

21.     Upon discovery of these additional responsive records, OIP immediately canvassed

all records located during the searches for the different FOIA request, for any additional records

responsive to Plaintiff's FOIA request.  Having identified all such records (records located in the

search for the different FOIA request and that were responsive to Plaintiff's request, yet were not

yet processed in response to Plaintiff's request), OIP immediately re-started the consultation

process for these newly-identified records (the process described in paragraph 16, supra).  OIP

made a final determination on these records by letter dated November 6, 2020.  Further, in an

attempt to identify why these records had not been yet processed in response to Plaintiff's

request, OIP searched for each of these newly-identified records in the search results pulled in

response to Plaintiffs request.  Fortunately, OIP confirmed that each of these newly-identified

records had also been pulled during its prior search for records responsive to Plaintiff's request.

These records had previously not been processed in response to Plaintiffs request due to, for

example, erroneous "nonresponsive" determinations marked in OIP's eDiscovery platform.

However, because all of these newly-identified records initially located in a broader search were

also pulled in response to the narrower search conducted in response to Plaintiffs request as

described above, the adequacy of the searches conducted in response to Plaintiff's request was

not called into doubt.  Indeed, the fact that even a broader search was not able to locate

additional records responsive to Plaintiff's request itself bolsters the adequacy of OIP's search

conducted in response to Plaintiff's request.

22.     Based on my experience with the Department, my familiarity with the records

maintained by the leadership offices, discussions with knowledgeable staff, as well as my

understanding of the scope of Plaintiff's request, and information gathered from the documents

themselves, I aver that OIP's searches were reasonably calculated to uncover all potentially

responsive records and that all files likely to contain relevant documents were searched.

**Explanation of Information Withheld**

23.     OIP's search in response to Plaintiff's FOIA request located forty pages containing

records responsive to the FOIA request.  OIP withheld thirteen pages in full on behalf of BOP,

pursuant to Exemptions 4, 5, 7(A), and 7(E) of the FOIA and released eighteen pages in part with

certain information withheld pursuant to Exemptions 4, 5, 6, 7(A), 7(C), 7(E) and/or 7(F) of the

FOIA, some of these withholdings made on behalf of BOP.  Nine pages were released in full.

This declaration is intended to be read in tandem with the corresponding Vaughn Index ("Index")

prepared by OIP, filed contemporaneously, and attached hereto as Exhibit F.  This Index

contains descriptions of records withheld in full and records withheld in part.  For clarity of presentation and discussion, each fully- or partially-withheld record has been organized into a corresponding category.  OIP notes that it withheld certain information on behalf of BOP and that BOP will be defending these withholdings in its own declaration, attached to the Department's Motion for Summary Judgment.  Withholdings to be defended by BOP are identified in OIP's corresponding <u>Vaughn</u> Index.  The designated record categories and applicable FOIA Exemptions for each record category are as follows:

Records Withheld in Part:
- *Ex. 5: Deliberative Discussions Regarding Federal Execution Protocol Addendum* (3 pages) (Deliberative Process Privilege).
- *Ex. 5: Draft Meeting Agenda* (7 pages) (Deliberative Process Privilege)[2]
- *Ex. 5: Deliberative Discussions Regarding Specific Press Inquiry* (2 pages) (Deliberative Process Privilege)
- *Ex. 6: Third-Party Personally Identifiable Information and Contact Information* (2 pages) (Personal Privacy)

## Exemption 5

24.     Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  As discussed in detail below, all of the information withheld by OIP pursuant to Exemption 5 is protected pursuant to the deliberative process privilege.

## Exemption 5: Inter-/Intra-Agency Threshold

25.     In order to withhold records from release pursuant to Exemption 5 of the FOIA, the records must be inter- or intra-agency records.  The responsive information withheld pursuant to

---

[2] Certain information contained in the "Draft Meeting Agenda" records was withheld pursuant to Exemptions 4, 7(A), and 7(E), at BOP's request.

this exemption consists of communications and draft documents generated by and wholly

internal to the Department of Justice.  Here, all information withheld from Plaintiff pursuant to

this exemption consists of communications and working drafts generated by, exchanged within,

and wholly internal to, DOJ.  As such, they are "inter- or intra-agency" records covered by the

threshold of FOIA Exemption 5.

### Exemption 5: Deliberative Process Privilege

26.     OIP has protected information within the following records categories pursuant to the

deliberative process privilege: *Deliberative Discussions Regarding Federal Execution Protocol*

*Addendum, Draft Meeting Agenda, and Deliberative Discussions Regarding Specific Press*

*Inquiry.*

27.     The deliberative process privilege is intended to protect the decision-making process

of government agencies from public scrutiny in order to enhance the quality of agency decisions.

To be protected by the deliberative process privilege, the information at issue must be both "pre-

decisional" and "deliberative."  If pre-decisional, deliberative communications were to be

routinely released to the public, DOJ and other Executive Branch employees would be much

more cautious in their discussions with each other and in providing all pertinent information and

viewpoints to agency decision-makers in a timely manner.  This lack of candor would seriously

impair the Department's ability to foster forthright, internal discussions necessary for efficient

and proper Departmental decision-making. OIP will discuss each Exemption 5 Document

Category, in turn.

*Withheld in Part: Deliberative Discussions Regarding Federal Execution Protocol Addendum*

28.     This category of withheld information appears in records released in part to Plaintiff.

The withheld information in this category consists of portions of internal email communications

among DOJ employees engaged in deliberations over the then-proposed addendum to the Federal Execution Protocol, including characterizing and assessing draft memoranda prepared by BOP related to this proposal as well as recommended edits, and assessments on when BOP would be ready to make its recommendation to the Attorney General.  These draft memoranda, in turn, were being prepared by BOP to provide relevant information to senior Department leadership related to the proposed addendum to the Federal Execution Protocol, including information related to the procurement of pentobarbital**.**  The internal email communications among DOJ employees are predecisional because the discussions were antecedent to the final recommendation made by BOP to the Attorney General to amend the Federal Execution Protocol, an amendment which the Attorney General directed the BOP to adopt on July 25, 2019. The withheld email communications are also deliberative as they consist of internal evaluations and recommendations of draft, non-final memoranda being prepared to inform Department leadership, as well as preliminary assessments of BOP's progress in preparing the recommendation for the Attorney General's review, and thereby reflects the evolving, back-and-forth process that is so integral to Executive Branch decision-making.

29.     Disclosure of these discussions would undermine the ability of the Department of Justice to freely provide candid and forthright analyses towards preparing clear and accurate memorandum to inform Department decision-makers in order for them to make a final decision on potentially new policy initiatives and the internal development of final agency decisions.  The officials assigned to the task must feel free to take steps necessary to draft and candidly evaluate draft materials so that the Department can effectively deliberate and consider new policies, proposals and initiatives.  These deliberations relate to the proposed addendum to the Federal Execution Protocol, the final decision of which is reflected in the addendum which the Attorney

General directed the BOP to adopt on July 25, 2019 and which has been publically disclosed. The disclosure of these pre-decisional discussions would result in confusion as the public could infer that the Department relied on or adopted views contained in these drafts and reflected in the withheld discussions but, which, in fact, may not ultimately have been incorporated into the final decision by Department leadership.

*Withheld in Part: Draft Meeting Agenda*

30.     This category of withheld information appears in records released in part to Plaintiff. The withheld information in this category consists of internal draft meeting agendas among ODAG, BOP, and other DOJ components related to the proposed addendum to the Federal Execution Protocol, including issues related to the procurement of pentobarbital.  The drafters of these draft meeting agendas attempt to propose topics for consideration, succinctly summarize information, identify important issues and outstanding questions, and provide key background information in a concise summary format for ease of understanding and presentation.  The Department's most senior officials rely heavily on the creation of such agenda materials so that they will be fully informed on the substance of the many legal and policy issues being analyzed in the Department.

31.     In this instance, OIP located iterative draft meeting agendas for a then-upcoming meeting with the Attorney General and Deputy Attorney General on the Federal Death Penalty Process and Procedure.  These draft meeting agendas are predecisional because they set forth a proposed set of topics for discussion at an upcoming meeting that had not yet occurred, and for which the final agenda had not yet been decided.  The final meeting agenda is reflected in the content of the actual meeting and what was actually discussed, and as such these records do not

confirm or memorialize the final topics actually discussed at the meeting, nor the information, questions, or issues raised during the meeting.

32.     OIP withheld only the portions of these records that actually constitute recommended agenda items, as well as highlighting and in-line commentary on same.  The withheld portion of these draft meeting agendas are deliberative because they reflect the drafters' evaluations and assessments on important topics to discuss at a proposed meeting related to the proposed addendum to the Federal Execution Protocol.  Moreover, the selection of topics itself is revelatory of a deliberative process, inasmuch as that selection reveals matters that staff from the Department components which authored the proposed agenda thought were appropriate to brief the Attorney General and Deputy Attorney General on.  Specifically, throughout this process, authors necessarily reviewed the universe of facts and possible issues arising on the topic at hand, and then selected those facts and issues that they deemed most appropriate for briefing senior leadership. The decision to include or exclude certain factual information in or from analytical documents is itself an important part of the deliberative process, because a drafter's inclusion of factual material on a meeting agenda itself embodies a recommendation by the drafter that this fact should be discussed at the meeting.

33.     Disclosure of these draft agendas would significantly undermine the ability of Department officials to freely engage in the candid "give and take" and forthright internal development of final agency actions.  Revealing such opinions and analyses would hinder Department staff's ability to provide candid evaluations on the topics of the day for Department leadership.  These draft agenda was prepared with an eye towards developing the most cogent articulation of the issues to inform Department leadership officials.  If Department officials believed that their internal working drafts, topic proposals, and issue summaries would be made

public it is reasonably foreseeable that they would be more circumspect in their drafting.  This would obviously impair the quality of agency decisions, as officials would temper their work-product with an eye to future public scrutiny of their nascent views and hold back critical commentary intended to improve the quality of the final product. Moreover, disclosure of predecisional drafts would result in public confusion from the disclosure of various rationales, information, or characterizations of the issues that were not ultimately the grounds for the Department's final actions.

*Deliberative Discussions Regarding Specific Press Inquiry*

34.    This category of withheld information consists of internal Department discussions connected to the official characterization and release of information related to the Attorney General's federal execution protocol.  Specifically, how to best respond to press inquiries related to the federal execution policy and the procurement of pentobarbital.

35.    The material withheld within this category of records is predecisional because it was created prior to the final, approved or released to the public response, if any.  In this instance, the final agency decision was the actual statement issued by the Department to the reporter, if any, or the decision to issue no statement at all.

36.    The withheld material is deliberative as it reflects internal Department discussions regarding the content, language, and strategy on how to respond to this press specific inquiry. Within these emails, the Office of Public Affairs, which is tasked with communicating the Department's position to the public, seeks advice on how best to respond to a press inquiry from the Department officials who were within ODAG during the time-period the addendum to the Federal Execution Protocol was under consideration and who were therefore intimately involved

in those deliberations and thus were best placed to provide the substantive information and context PAO needed to begin to formulate a response to the reporter.

37.     The disclosure of such deliberations would severely hamper the efficient day-to-day workings of the Department, as individuals would no longer freely share their ideas and advice on matters under consideration by Department officials often while those viewpoints are still developing, via email.  The Department must routinely provide public comment on decisions of weighty significance and public concern, including on issues related to lethal injection.  During the course of deliberating over how to respond to inquiries, it is not uncommon that public affairs staff will need to confer directly with individuals who have personal knowledge and involvement in the Departmental actions subject to the inquiry.  The resultant draft statements or proposed responses can be subjected to multiple rounds of editing and revision, with careful attention to matters of emphasis, phrasing, and tone.  If deliberative emails such as these were released to the public, Department officials would be much more circumspect in their email discussions with each other.  This lack of candor would seriously impair the ability to foster the forthright inter- and intra-agency discussions that are essential for efficient and proper decisionmaking and for providing clear, accurate, and well-vetted public comment on issues of national importance.  For example, Department officials offering up alternative strategies, ideas, or language on how to explain a decision by the Department should not temper their ideas because they may end up differing from the public course of action ultimately taken but instead should be concerned about providing frank assessments and options to relevant decision makers.

*OIP Took Steps to Release all Reasonably Segregable, Non-Exempt Information from the Withheld-in-Part Materials*

38.     OIP conducted a thorough, line-by-line review of each of the records it released in part and released all reasonably segregable, non-exempt information contained within them.  OIP

withheld from disclosure only that information which would reveal the Department's pre-

decisional, decision-making process—specifically, those portions of emails and documents that

would reveal Department staff's internal impressions, opinions, and suggestions on areas of

Department policy initiatives or how best to respond to media requests.

39.     OIP's decision to release other portions of these records, as well as its decision to

release preceding or subsequent email records in full further demonstrates its efforts to segregate

this material.

<u>Exemption 6</u>

40.     Exemption 6 of the FOIA pertains to information the release of which would

constitute a clearly unwarranted invasion of the personal privacy of individuals.  When

determining whether to withhold information pursuant to Exemptions 6, OIP balances the

privacy interests of individuals identified in records against any "FOIA public interest" in

disclosure of that information.  The FOIA public interest considered in the balancing is limited to

information which would shed light on the Department's performance of its mission:  to enforce

the law and defend the interests of the United States according to the law; to ensure public safety

against threats foreign and domestic; to provide federal leadership in preventing and controlling

crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and

impartial administration of justice for all Americans.

41.     Within these records OIP has protected one category of information pursuant to

Exemption 6:  *Third-Party Personally Identifiable Information and Contact Information*.

Specifically, OIP protected a reporter's mobile number and PGP Fingerprint.  OIP understands a

PGP Fingerprint to operate as a digital signature allowing users identify and authenticate the

sender of information.

42.     Given that the reporter's mobile number and PGP Fingerprint were not in the public

domain (which OIP confirmed through an online search), release of this information would

subject this individual to unwarranted attention and communications from the press and the general public, as well as potential harassment, which gives rise to a significant privacy interest. In assessing whether there is a FOIA public interest in disclosure of the contact information, OIP considered the mission and role of DOJ and whether revealing these types of contact information sheds light on the operations activities of DOJ.  OIP determined that there is no legitimate FOIA public interest in third-party contact information, and, the release would in no way enhance the public's understanding of how the Department carries out its duties.

43.      I have determined that the significant privacy interests of this third-party individual outweighs the dearth of public interest in disclosure.  As such, this information has been protected pursuant to FOIA Exemption 6 because its release would constitute a clearly unwarranted invasion of the personal privacy of individuals.


I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann

Executed this 6th day of November 2020.

EXHIBIT A

CREW | citizens for responsibility
       and ethics in washington

August 9, 2019

**By Facsimile: (202) 514-1009**

AUG 0 9 2019

Office of Information Policy

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001

Re: Freedom of Information Act Request

Dear Mr. Hibbard:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and U.S. Department of Justice ("DOJ") regulations.

CREW requests all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards. Our request includes, but is not limited to, the Office of the Attorney General, the Office of the Deputy Attorney General and the Office of the Associate Attorney General.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records.

If it is your position any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

**Fee Waiver Request**

# CREW | citizens for responsibility and ethics in washington

In accordance with 5 U.S.C. § 552(a)(4)(A) and DOJ regulations, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g., McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

On July 25, 2019, DOJ filed an addendum to the Federal Bureau of Prisons' execution protocol allowing the use of pentobarbital sodium as the lethal agent in federal executions.[1] The same day, DOJ published a press release confirming that Attorney General William Barr had directed the Federal Bureau of Prisons to adopt the addendum and resume capital punishment after a nearly two decade lapse. The press release states the addendum "closely mirrors protocols used by several states, including currently Georgia, Missouri, and Texas"[2]

States that use pentobarbital in executions, including Texas, have had an increasingly difficult time obtaining the drug. The manufacturer of pentobarbital requires distributors to sign agreements saying they will not sell the drugs to death penalty states.[3] States have subsequently used "compounding pharmacies" as an alternative to licensed manufacturers.[4] This practice poses an acute risk. The FDA has found that many compounders do not register as outsourcing facilities,[5] yet "were engaged in large-scale, non-patient specific compounding like a conventional manufacturer, without complying with premarket approval, labeling, and current good manufacturing practice (GCMP) requirements for their drugs, or compounders that prepared, packed, or held drugs under insanitary conditions."[6] Attorneys have also "warned that compounded pentobarbital could expire or degrade over time, putting their clients at risk of a painful death that would amount to torture"[7]

The requested records are likely to contribute to public understanding of the process DOJ intends to use to procure an especially difficult to obtain drug, including the extent to which DOJ

---

[1] Roane Jr. v. William Barr, Notice of Adoption of Revised Protocol. Civil Action No. 05-2337. Filed July 25, 2019, *available at* https://www.politico.com/f/?id=0000016c-29bc-d88f-a9ec-2dbd798f0000
[2] Press Release, Attorney General William P. Barr Directs the Federal Bureau of Prisons to Adopt an Addendum to the Federal Execution Protocol and Schedule the Executions of Five Death-Row Inmates Convicted of Murdering Children, June 25, 2019, *available at* https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse
[3] Chris McDaniel, Inmates Said The Drug Burned As They Died. This Is How Texas Gets Its Execution Drugs., *Buzzfeed*, November 28, 2018, *available at* https://www.buzzfeednews.com/article/chrismcdaniel/inmates-said-the-drug-burned-as-they-died-this-is-how-texas?bftwnews&utm_term=4ldqpgc#4ldqpgc
[4] Chip Brownlee, The Federal Government Plans to Revive the Death Penalty After 16 Years, *Slate*, July 25, 2019, *available at* https://slate.com/news-and-politics/2019/07/justice-department-bill-barr-orders-revival-federal-executions-lethal-injection.html
[5] FDA, Compounding Laws and Policies. July 13, 2018, *available at* https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies
[6] FDA, Compounding Oversight, June 21, 2018, *available at* https://www.fda.gov/drugs/human-drug-compounding/compounding-oversight
[7] Chris McDaniel, Inmates Said The Drug Burned As They Died. This Is How Texas Gets Its Execution Drugs., *Buzzfeed*, November 28, 2018, *available at* https://www.buzzfeednews.com/article/chrismcdaniel/inmates-said-the-drug-burned-this-is-how-texas?bftwnews&utm_term=4ldqpgc#4ldqpgc

**CREW** | citizens for responsibility and ethics in washington

considered the risks listed above and how they intend to address those risks. The public has a great interest in ensuring the federal government conducts executions in compliance with all constitutional requirements.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the public's right to be aware of the activities of government officials, to ensuring the integrity of those officials, and to highlighting and working to reduce the influence of money on politics. CREW uses a combination of research, litigation, and advocacy to advance its mission. CREW intends to analyze the information responsive to this request and to share its analysis with the public through reports, press releases, or other means. In addition, CREW will disseminate any documents it acquires from this request to the public through its website, www.citizensforethics.org. The release of information obtained through this request is not in CREW's financial interest.

CREW further requests that it not be charged search or review fees for this request pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because CREW qualifies as a member of the news media. *See Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (holding non-profit a "representative of the news media" and broadly interpreting the term to include "any person or organization which regularly publishes or disseminates information to the public").

CREW routinely and systematically disseminates information to the public in several ways. CREW's website receives tens of thousands of page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. In addition, CREW posts the documents it receives under the FOIA on its website.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

## Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 408-5565 or lwhite@citizensforethics.org. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to either the email listed above or Lauren White, Citizens for Responsibility and Ethics in Washington, 1101 K Street, N.W., Suite 201 Washington, D.C. 20005. Thank you for your assistance in this matter.

Sincerely,

Lauren White
Press Associate

# EXHIBIT B



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

September 6, 2019

Lauren White
CREW
1101 K Street NW Suite 201
Washington, DC 20005
lwhite@citizensforethics.org                    Re:        DOJ-2019-006390

Dear Lauren White:

      This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on August 9, 2019 in which you requested records from the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General pertaining to the drug pentobarbital and federal executions, dating from February 14, 2019.

      The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2012 & Supp. V 2017).  Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options.  Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

      We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact this Office by telephone at the above number or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001.  Lastly, you may contact our FOIA Public Liaison, Valeree Villanueva, at the telephone number listed above to discuss any aspect of your request.

-2-


        Additionally, you may contact the Office of Government Information Services (OGIS)
at the National Archives and Records Administration to inquire about the FOIA mediation
services they offer.  The contact information for OGIS is as follows:  Office of Government
Information Services, National Archives and Records Administration, Room 2510, 8601
Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at
202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.


                                                        Sincerely,
                                                        Initial Request Staff
                                                        Office of Information Policy
                                                        U.S. Department of Justice

EXHIBIT C



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

---

*Telephone: (202) 514-3642*

August 21, 2020

Lauren White                                             Re:   DOJ-2019-006390
Citizen for Responsibility                                        19-cv-3626 (D.D.C.)
  and Ethics in Washington                                  VRB:TAZ:AJH
1101 K Street NW, Suite 201
Washington, D.C. 20005
lwhite@citizensforethics.org

Dear Lauren White:

     This is a final response to your Freedom of Information Act (FOIA) request, dated and received in this Office on August 9, 2019, in which you requested records pertaining to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, dating from February 14, 2019.

     Please be advised that searches have been completed in response to your request, and fifteen pages containing records responsive to your request were located.  I have determined that seven of these pages are appropriate for release in full, and eight of these pages are appropriate for release with certain information withheld pursuant to Exemptions 5, 6, 7(A), 7(B), 7(E) and 7(F) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(A), (b)(7)(B), (b)(7)(E) and (b)(7)(F), and copies are enclosed.  Some of these withholdings have been made on behalf of the Federal Bureau of Prisons (BOP).  Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of personal privacy.  Exemptions 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.  Exemption 7(B) pertains to records or information compiled for law enforcement purposes, the release of which would deprive a person of a right to a fair trial or impartial adjudication.  Exemption 7(E) pertains to records or information compiled for law enforcement purposes, the release of which would disclose certain techniques and procedures or guidelines for law enforcement investigations or prosecutions.  Exemption 7(F) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to endanger the life or physical safety of an individual.

2

 For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

 If you have any questions regarding this response, please contact Jonathan Kossak of the Department of Justice Civil Division at 202-305-0612.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

Enclosures

# EXHIBIT D



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

August 25, 2020

Lauren White                                  Re:     DOJ-2019-006390
Citizen for Responsibility                            19-cv-3626 (D.D.C.)
and Ethics in Washington                              VRB:TAZ:AJH
1101 K Street NW, Suite 201
Washington, D.C. 20005
lwhite@citizensforethics.org

Dear Lauren White:

        This is a revision and supplement to our August 21, 2020 final response to your
Freedom of Information Act (FOIA) request, dated and received in this Office on August 9,
2019, in which you requested records pertaining to the procurement of pentobarbital,
pentobarbital sodium, or Nembutal to be used in federal executions, dating from February 14,
2019.

        In our August 21, 2020 letter, we advised that searches had been completed in response
to your request, and fifteen pages containing records responsive to your request were located.
Those pages were released to you, with certain information withheld pursuant to Exemptions
5, 6, 7(A), 7(B), 7(E) and 7(F) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(A), (b)(7)(B),
(b)(7)(E) and (b)(7)(F), as enclosures to that letter.  As noted in our letter, some of those
withholdings were made on behalf of the Federal Bureau of Prisons (BOP).  Please be advised
that we have since been informed that BOP is not asserting Exemption 7(B) on the records
provided to you in our August 21, 2020 response; accordingly, I have enclosed a revised set of
records which removes the citation to Exemption 7(B) in the redaction markings (although the
same information remains redacted on other grounds).

        Please also note that our August 21, 2020 letter inadvertently omitted that we also
located, and have withheld in full, an additional four pages containing records responsive to
your request.  Those pages have been withheld on behalf of BOP pursuant to Exemptions 5,
7(A), 7(E) and 7(F) of the FOIA.  Exemption 5 pertains to certain inter- and intra-agency
communications protected by the deliberative process privilege.  Exemption 7(A) pertains to
records or information compiled for law enforcement purposes, the release of which could
reasonably be expected to interfere with law enforcement proceedings.  Exemption 7(E)
pertains to records or information compiled for law enforcement purposes, the release of which
would disclose certain techniques and procedures or guidelines for law enforcement
investigations or prosecutions.  Exemption 7(F) pertains to records or information compiled for

2

law enforcement purposes, the release of which could reasonably be expected to endanger the life or physical safety of an individual.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Jonathan Kossak of the Department of Justice Civil Division at 202-305-0612.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

Enclosures

# EXHIBIT E



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

November 6, 2020

Lauren White                                    Re:   DOJ-2019-006390
Citizen for Responsibility                              19-cv-3626 (D.D.C.)
and Ethics in Washington                               VRB:TAZ:SJD:AJH
1101 K Street NW, Suite 201
Washington, D.C. 20005
lwhite@citizensforethics.org

Dear Lauren White:

This is a revision and supplement to our August 25, 2020 response to your Freedom of Information Act (FOIA) request, dated and received in this Office on August 9, 2019, in which you requested records pertaining to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, dating from February 14, 2019.

In our August 25, 2020 letter, we advised that searches had been completed in response to your request, and nineteen pages containing records responsive to your request were located. Fifteen pages were released to you, with certain information withheld pursuant to Exemptions 5, 6, 7(A), 7(E) and 7(F) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(A), (b)(7)(E) and (b)(7)(F), as enclosures to that letter.  An additional four pages were withheld in full pursuant to Exemptions 5, 7(A), 7(E), and 7(F) of the FOIA.  As noted in our letter, some of those withholdings were made on behalf of the Federal Bureau of Prisons (BOP).  Please be advised that, with respect to the four pages withheld in full, BOP has subsequently informed this Office that it is not asserting Exemption 7(F) on these four pages but that Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4), does apply.  Additionally, BOP also informed this Office that, with respect to two pages released in part, it is not asserting Exemptions 7(A), 7(E) and/or 7(F) but that Exemption 5 applies to one of these pages.  Moreover, upon further review, with respect to two pages released in part, OIP determined that partial withholdings made pursuant to Exemption 5 could be removed.  In total, three pages previously released in part have been reprocessed with revised exemptions, and updated copies are enclosed.

Furthermore, OIP has identified an additional twenty-one pages containing records responsive to your request.  I have determined that twelve pages containing records responsive to your request are appropriate for release, with certain information withheld pursuant to Exemptions 4, 5, 6, 7(A), 7(C), 7(E), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(E) and (b)(7)(F).  Additionally, nine pages containing

records responsive to your request are being withheld in full pursuant to Exemptions 4, 5, 7(A), and 7(E) of the FOIA.  Some of these withholdings have been made on behalf of BOP.

Exemption 4 pertains to trade secrets and certain commercial or financial information obtained from a person that is privileged or confidential.  Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of personal privacy.  Exemption 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.  Exemption 7(C) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Exemption 7(E) pertains to records or information compiled for law enforcement purposes, the release of which would disclose certain techniques and procedures or guidelines for law enforcement investigations or prosecutions.  Exemption 7(F) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to endanger the life or physical safety of an individual.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2018). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Jonathan Kossak of the Department's Civil Division, Federal Programs Branch at 202-305-0612.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

Enclosures

EXHIBIT F

**Office of Information Policy (OIP) *Vaughn* Index**

Citizens for Responsibility and Ethics in Washington  v. U.S. Department of Justice, No. 19-cv-03626 (D.D.C.)

This statement describes records released in part by OIP pursuant to FOIA Exemption 5 (deliberative process privileges) and 6 (personal privacy).  On behalf of the Federal Bureau of Prisons (BOP), OIP applied additional exemptions in part and in full pursuant to FOIA Exemptions 4 (trade secrets or commercial information), 5 (deliberative process privilege), 6 and 7(C) (personal privacy), 7(A) (ongoing law enforcement proceedings), Exemption 7(E) (law enforcement techniques & procedures ), and Exemption 7(F) (physical safety).  As noted herein, BOP will be defending certain withholdings identified below in its own declaration.  The descriptions of each document within this Vaughn Index are meant to be read in tandem with the OIP declaration, which provides a more fulsome explanation of the basis for withholding the information at issue

This Vaughn Index will use acronyms when referring to components of the Department of Justice (DOJ):

OAG:       Office of the Attorney General
ODAG:     Office of the Deputy Attorney General
BOP:       Federal Bureau of Prisons
PAO:       Office of Public Affairs
.

**DOJ OIP, Records Withheld-in-Full**

| August 25, 2020 Response | | | | |
|---|---|---|---|---|
| **Row No.** | **Document Title** | **Exemption(s)** | **Description of Withheld Material** | **Pages** |
| **1** | *BOP Processing Summary 016* | (b)(4), (b)(5), 7(A), and 7(E) | See BOP Declaration | 2 (full) |
| **2** | *BOP Processing Summary 010* | (b)(4), (b)(5), 7(A), and 7(E) | See BOP Declaration | 2 (full) |

| November 6, 2020 Response | | | | |
|---|---|---|---|---|
| **Row No.** | **Document Title** | **Exemption(s)** | **Description of Withheld Material** | **Pages** |
| *3* | *BOP Processing Summary 019* | (b)(4), (b)(5), 7(A), and 7(E) | See BOP Declaration | 2 (full) |
| *4* | *BOP Processing Summary 017* | (b)(4), (b)(5), 7(A), and 7(E) | See BOP Declaration | 2 (full) |
| *5* | *BOP Processing Summary 013* | (b)(4), (b)(5), 7(A), and 7(E) | See BOP Declaration | 2 (full) |
| *6* | *BOP Processing Summary 005* | (b)(4), (b)(5), 7(A), and 7(E) | See BOP Declaration | 1 (full) |
| *7* | *Draft BOP Document* | (b)(4), (b)(5), 7(A), and 7(E) | See BOP Declaration | 2 (full) |

**DOJ Office of Information Policy, Released-In-Part Document Index**

| | | | August 25, 2020 Response | | | |
|---|---|---|---|---|---|---|
| **Row No.** | **Document ID** | **Date[1]** | **Document Sender/Recipient/Subject/Title** | **Exemption(s)** | **Description of Withheld Material** | **Pages** |
| **8** | 0.7.1389.11954 | 4/8/2019 4:51 PM | **FRM:** Paul Perkins (ODAG) **TO:** Corey F. Ellis (ODAG) **CC:** Andrew Peterson (ODAG) **SUBJ:** Death Penalty Update | (b)(5) | *Ex. 5:* See BOP Declaration | 1 (partial) |
| **9** | 0.7.1389.6140 | 3/29/2019 | **Title:** AG/DAG Meeting – Federal Death Penalty Process and Procedure | (b)(5) | *Draft Meeting Agenda* | 1 (partial) |
| **10** | 0.7.1389.9744 | 7/5/2019 11:02 AM | **FRM:** Kevin Pestro **TO:** Paul Perkins **SUBJ:** Update | (b)(5) | *Ex. 5:* See BOP Declaration | 1 (partial) |
| **11** | 0.7.1389.19280 | 8/19/2019 2:02 | **FRM:** Sarah Sutton (PAO) **TO:** Christopher Grieco (ODAG) **SUBJ:** Reuters/New Execution Protocol | (b)(5) | *Ex. 5: Deliberative Discussions Regarding Specific Press Inquiry* | 2 (partial) |
| | | | | (b)(6) | *Ex. 6: Third-Party Personally Identifiable Information and Contact Information* | 2 (partial) |

---

[1] Note: the date stamp and sender/recipient/subject are provided for the emails at the top of each selected email chain.

| | | | | | | |
|---|---|---|---|---|---|---|
| **November 6, 2020 Response** | | | | | | |
| **Row No.** | **Document ID** | **Date[2]** | **Document Sender/Recipient/Subject/Title** | **Exemption(s)** | **Description of Withheld Material** | **Pages** |
| **12** | 0.7.4242.30462 | 4/18/19 4:00 PM | **FRM:** Paul Perkins (ODAG) **TO:** Seth DuCharme (OAG) **SUBJ:** Update - | (b)(5)<br><br>(b)(6), (b)(7)(C), (b)(7)(F) | *Ex. 5: Deliberative Discussions Regarding Federal Execution Protocol Addendum*<br><br>*Ex. 6, 7C, 7F:* See BOP Declaration | 1 (partial) |
| **13** | 0.7.4242.30105 | 3/29/2019 | **Title:** AG/DAG Meeting – Federal Death Penalty Process and Procedure | (b)(5)<br><br>(b)(4), (b)(7)(A), (b)(7)(E) | *Ex 5: Draft Meeting Agenda*<br><br>*Ex. 4, 7A, 7E:* See BOP Declaration | 2 (partial) |
| **14** | 0.7.4242.17253-000001 | 3/28/2019 | **Title:** AG/DAG Meeting – Federal Death Penalty Process and Procedure | (b)(5) | *Ex. 5: Draft Meeting Agenda* | 1 (partial) |
| **15** | 0.7.4242.33751 | 3/28/2019 | **Title:** AG/DAG Meeting – Federal Death Penalty Process and Procedure | (b)(5)<br><br>(b)(4), (b)(7)(A), (b)(7)(E) | *Ex 5: Draft Meeting Agenda*<br><br>*Ex.4, 7A, 7E:* See BOP Declaration | 2 (partial) |
| **16** | 0.7.4242.13282 | 5/17/19 3:56 PM | **FRM:** Paul Perkins (ODAG) **TO:** Timothy Shea (OAG) **SUBJ:** FW: Updated – Processing Memo | (b)(5)<br><br>(b)(6), (b)(7)(C), (b)(7)(F) | *Ex. 5: Deliberative Discussions Regarding Federal Execution Protocol Addendum*<br><br>*Ex. 6, 7C, 7F:* See BOP Declaration | 1 (partial) |

| 17 | 0.7.1389.8788 | 4/05/19 5:30 PM | **FRM:** (b)(6), (b)(7)(C), (b)(7)(F) **TO:** Paul Perkins (ODAG) **SUBJ:** Update | (b)(6), (b)(7)(C), (b)(7)(F) | *Ex. 6, 7C, 7F:* See BOP Declaration | 1 (partial) |
| 18 | 0.7.1389.10231 | 3/25/19 9:07 AM | **FRM:** (b)(6), (b)(7)(C), (b)(7)(F) **TO:** Paul Perkins (ODAG) **SUBJ:** Processing Information | (b)(6), (b)(7)(C), (b)(7)(F) | *Ex. 6, 7C, 7F:* See BOP Declaration | 1 (partial) |
| 19 | 0.7.4242.17253 | 3/28/2019 8:47 AM | **FRM:** Paul Perkins (ODAG) **TO:** Seth DuCharme (OAG) **SUBJ:** RE: Updated Documents | (b)(5) | *Ex. 5: Deliberative Discussions Regarding Federal Execution Protocol Addendum* | 1 (partial) |
| 20 | 0.7.4242.25124-000001 | 3/27/2019 | **Title:** AG/DAG Meeting – Federal Death Penalty Process and Procedure | (b)(5) | *Ex. 5: Draft Meeting Agenda* | 1 (partial) |

---

[2] Note: the date stamp and sender/recipient/subject are provided for the emails at the top of each selected email chain.