IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civ.  Action No. 1:19-cv-03626 (DLF) |
| UNITED STATES DEPARTMENT OF JUSTICE | ) ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE AND STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h), Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submits this response to Defendant U.S. Department of Justice's ("DOJ") Statement of Material Facts Not in Genuine Dispute in support of Defendant's Motion for Summary Judgment, ECF No. 17-2, and Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion for Summary Judgment.

**CREW's Response to Defendant's Statement of Material Facts Not in Genuine Dispute**

I.   **PLAINTIFF'S FOIA REQUESTS TO THE FEDERAL BUREAU OF PRISONS ("BOP") AND DOJ'S OFFICE OF INFORMATION POLICY ("OIP")**

   A.   **Submission of Plaintiff's FOIA Request to BOP**

1.      On August 8, 2019, BOP received a FOIA request from Lauren White, who identified herself as a Press Associate for Citizens for Responsibility and Ethics in Washington ("CREW").  *See* Declaration of Kara Christenson ("Christenson Decl.") ¶ 11 & Ex. A thereto (August 8, 2019, email from Lauren White).

1

**Plaintiff's Response**:  This paragraph is not disputed.

2.      In her request, Ms. White, on behalf of CREW, sought "all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards."[1]  *Id.*

   **Plaintiff's Response**:  This paragraph is not disputed.  CREW notes, however, that Exhibit A to the Christenson Declaration appears to include only the transmittal email and not CREW's FOIA request.  CREW refers the Court to Exhibit 1 to the Declaration of Jessica A. Lutkenhaus ("Lutkenhaus Decl.") for a complete copy of its FOIA request to BOP.

3.      BOP accepted CREW's request and assigned it FOIA Request No. 2019-05579. Christenson Decl. ¶ 12.

   **Plaintiff's Response**:  This paragraph is not disputed.

4.      On August 14, 2019, BOP sent CREW an acknowledgment letter, indicating that the FOIA request had been received and was assigned to the complex processing track.  *See id.* & Exhibit B thereto (August 14, 2019 letter to CREW).

   **Plaintiff's Response**:  This paragraph is not disputed.

5.      At the time, BOP determined that any records responsive to CREW's request would be categorically exempt from disclosure under the FOIA, pursuant to exemptions 5, 6, 7(A), 7(B), 7(C), 7(E) and 7(F).  *Id.* ¶ 14.

   **Plaintiff's Response**:  CREW does not dispute that BOP determined that any records responsive to CREW's request would be categorically exempt from disclosure under FOIA exemptions 5, 6, 7(A), 7(B), 7(C), 7(E) and 7(F).  This paragraph is disputed to the extent it implies

---

[1] DOJ refers to "pentobarbital, pentobarbital sodium, or Nembutal," collectively as "Pentobarbital."

a legal conclusion about the validity of BOP's determination, which is not a material fact to which CREW must respond.

6.      By letter dated September 30, 2019, BOP informed CREW of BOP's release determination, the nature of the exemptions applied, and CREW's right to appeal BOP's determination to OIP.  *Id.* & Exhibit C thereto (September 30, 2019 Response Letter).

<u>**Plaintiff's Response**</u>:  This paragraph is not disputed.

7.      On October 10, 2019, Anne Weismann, Chief FOIA Counsel for CREW, filed an appeal with OIP regarding BOP's total withholding of the documents responsive to FOIA Request No. 2019-05579.  *See id*. ¶ 15 & Exhibit D thereto (Oct. 10, 2019 CREW letter).

<u>**Plaintiff's Response**</u>:  This paragraph is not disputed.  CREW notes, however, that Exhibit D to the Christenson Declaration appears to be an incomplete copy of CREW's appeal.  CREW refers the Court to Exhibit 2 to the Lutkenhaus Declaration for a complete version of its appeal.

8.      The appeal was assigned Appeal No. DOJ-AP-2020-000362.  *Id.*

<u>**Plaintiff's Response**</u>:  This paragraph is not disputed.

9.      On February 19, 2020, OIP issued its response to CREW's appeal of BOP's determination, stating that it had been informed that CREW had filed a lawsuit concerning BOP's actions in the United States District Court for the District of Columbia, and, as a result, and pursuant to DOJ regulations, OIP closed CREW's appeal because the FOIA request was the subject of litigation.  *Id*. & Exhibit E thereto (February 19, 2020 OIP Determination Letter).

<u>**Plaintiff's Response**</u>:  This paragraph is not disputed.

**B.      Submission of Plaintiff's FOIA Request to OIP**

10.     By facsimile dated August 9, 2019, CREW submitted a FOIA request to OIP, seeking, particularly from OAG, ODAG, and OASG, "all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used

in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards."  Declaration of Vanessa R. Brinkmann ("Brinkmann Decl.") ¶ 2 & Ex. A thereto (August 9, 2019 fax from CREW).

**Plaintiff's Response**:  This paragraph is not disputed.

11.      By letter dated September 6, 2019, OIP acknowledged CREW's FOIA request and assigned it the administrative tracking number DOJ-2019-006390.  *Id*. ¶ 3 & Ex. B thereto (September 6, 2019 acknowledgement letter).

**Plaintiff's Response**:  This paragraph is not disputed.

## II.      THE INSTANT LITIGATION

12.      CREW filed the instant lawsuit on December 4, 2019.  Compl., ECF No. 1.

**Plaintiff's Response**:  This paragraph is not disputed.

13.      DOJ filed its Answer on January 15, 2020.  Answer, ECF No. 12.

**Plaintiff's Response**:  This paragraph is not disputed.  CREW refers the Court to ECF No. 6 for Defendant's Answer.

14.      The parties subsequently agreed to a processing schedule and filed six joint status reports.  *See* ECF Nos. 7-9, 12, 13, & 15.

**Plaintiff's Response**:  This paragraph is not disputed.

15.      In the parties' last joint status report, they agreed upon a briefing schedule, *see* ECF No. 15, which has since been modified with the consent of the Parties and the Court.  Minute Order (October 22, 2020).

**Plaintiff's Response**:  This paragraph is not disputed.

## III.      BOP'S SEARCH AND PROCESSING OF EMAIL RECORDS

16.      BOP has conducted a search for documents responsive to CREW's request.  *See*

Christenson Decl. ¶¶ 17-25.

**Plaintiff's Response**: This paragraph is not disputed.

A.  **BOP Netmail System**

17.     BOP uses a Novell GroupWise email system to provide internal and external email communication by staff. *Id.* ¶ 18.

**Plaintiff's Response**: This paragraph is not disputed.

18.     To archive email, BOP also uses the Netmail Email Archive System ("Netmail"). Netmail collects email content directly from GroupWise and saves it into its separate system in an SML file format, preserving applicable metadata in the corresponding property page. *Id.*

**Plaintiff's Response**: This paragraph is not disputed.

19.     Regular email messages are flagged for a seven-year retention period and emails flagged as trash are subject to a 45-day retention period. *Id.*

**Plaintiff's Response**: This paragraph is not disputed.

20.     Via Netmail, BOP staff email is ordinarily searchable using names, date ranges, and specific search terms. *Id.* ¶ 19.

**Plaintiff's Response**: This paragraph is not disputed.

21.     After the email is searched and responsive email is located and collected, that email can be exported from Netmail for review purposes and will automatically include the corresponding property page(s), which provide tracking information for the email. *Id.*

**Plaintiff's Response**: This paragraph is not disputed.

22.     To search for emails responsive to a FOIA request, a network administrator must log into Netmail, identify the staff member's email to be searched by the staff member's network user ID, and then conduct a search against their archive based on defined search terms and dates provided by the FOIA requester. *Id.* ¶ 20.

**Plaintiff's Response**:  This paragraph is not disputed.

23.     After the search is completed and saved, the responsive email must be exported to a reviewable file format.  This process must be repeated for every identified staff member.  *Id*.

**Plaintiff's Response**:  This paragraph is not disputed.

**B.      Search Parameters**

24.     In conducting its search for email records responsive to CREW's FOIA request, BOP identified key BOP custodians via its institutional knowledge, including consultation with staff who oversee the United States Penitentiary located in Terre Haute, Indiana ("USP Terre Haute"), where executions for BOP inmates are performed.  *Id*. ¶ 21.

**Plaintiff's Response**:  This paragraph is not disputed.

25.     BOP identified twelve custodians who were involved in the procurement of Pentobarbital during the relevant time frame.    *Id*.

**Plaintiff's Response**:  This paragraph is not disputed.

26.     BOP then identified the following key words intended to generate responsive records based on CREW's FOIA request: "Pentobarbital," "Nembutal," and "pento."  *Id*. ¶¶ 22-23.

**Plaintiff's Response**:  This paragraph is not disputed.

27.     BOP then conducted an email search of the twelve custodians using those key words and a date range of February 14, 2019 through August 8, 2019.[2]  *Id*. ¶ 23.

**Plaintiff's Response**:  This paragraph is not disputed.

28.     Using the search procedures and parameters described above, BOP identified 1,248 potentially responsive emails.  *Id*. ¶ 25.

**Plaintiff's Response**:  This paragraph is not disputed.

---

[2] CREW's FOIA request requested records from February 14, 2019, "to the present."  Christenson Decl. ¶ 23 & n.5 & Ex. A.   As such, CREW's request was interpreted as a request for records from February 14, 2019 through August 8, 2019, the date BOP initiated its search.   *Id*.

29.     BOP determined that 970 emails were entirely duplicative of other records, were blank pages, or were entirely non-responsive to the FOIA request, and consequently eliminated them. *Id*. ¶ 27.

**Plaintiff's Response**:  This paragraph is not disputed.

30.     BOP then conducted a review of the remaining two-hundred-seventy-eight (278) emails, which consisted of 2,310 pages of potentially responsive records. *Id*. ¶ 29.

**Plaintiff's Response**:  This paragraph is not disputed.

31.     During this review, BOP categorized and identified email records by dividing each email chain into individual email records.   *Id*.

**Plaintiff's Response**:  This paragraph is not disputed.

32.     BOP considered each email, even if contained among a chain of several emails, to be one record. *Id*.

**Plaintiff's Response**:  This paragraph is not disputed.

33.     BOP assigned each email record identified as responsive or duplicative a record number. *Id*. ¶ 30.

**Plaintiff's Response**:  This paragraph is not disputed.

34.     Based on BOP's review of the email records, BOP identified 1095 email records that were responsive to CREW's FOIA request, of which 848 were deemed duplicative. *Id*. ¶ 31.

**Plaintiff's Response**:  This paragraph is not disputed.

35.     Each record number, along with a brief description of the record and information withheld, as well as the FOIA Exemptions applied to the withheld information, has been enumerated in the attached *Vaughn* Index. *Id*. ¶ 32 & Ex. F.

 **Plaintiff's Response**:  This paragraph is disputed to the extent it implies a legal conclusion about the adequacy of Defendant's *Vaughn* Index or the validity of Defendant's withholdings,

which are not material facts to which Plaintiff must respond.

36.     BOP processed all records responsive to CREW's request, including a page-by-page and line-by-line search of all responsive records, to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions; every effort was made provide CREW with all reasonably segregable nonexempt information in the responsive records. *Id*. ¶ 33.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

37.     BOP plans to provide CREW all reasonably segregable nonexempt information from the email records on November 6, 2020; any exempt information was redacted from the records as described in the *Vaughn* Index.  *Id*.

**Plaintiff's Response**:  CREW does not dispute that BOP provided email records to CREW on November 6, 2020.  This paragraph is disputed to the extent it implies a legal conclusion about the validity of BOP's withholdings, which is not a material fact to which Plaintiff must respond.

## IV.   BOP'S SEARCH AND PROCESSING OF NON-EMAIL RECORDS

38.     CREW's FOIA request specifically requested procurement records, to include notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards.  *Id*. ¶ 35.

**Plaintiff's Response**:  This paragraph is not disputed.

39.     During the relevant time frame, any Pentobarbital would have been purchased by the North Central Regional Office ("NCRO"), Financial Management Department.  *Id*. ¶ 36.

**Plaintiff's Response**:  This paragraph is not disputed.

40.     Any documents related to the purchase of such substances would be maintained in a

locked filing cabinet located at NCRO Financial Management, to which only specified staff had access.  *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

41.     An authorized NCRO Financial Management staff member conducted a search of records within the relevant time frame (i.e., from February 14, 2019, through August 8, 2019), maintained in the relevant NCRO locked filing cabinet, and identified 57 pages of documents.  *Id.* ¶ 37.

**Plaintiff's Response**:  This paragraph is not disputed.

42.     BOP eliminated one of the 57 pages as not responsive, and then conducted a page-by-page and line-by-line review of the remaining 56 pages of responsive non-email documents.  *Id.* ¶ 39.

**Plaintiff's Response**:  This paragraph is not disputed.

43.     BOP grouped similar documents into categories of records, and assigned each category of records a record number.  *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

44.     Each record number, along with a brief description of the record and the information withheld, as well as the FOIA Exemptions applied to withheld information, is contained in the *Vaughn* Index.  *Id.*

**Plaintiff's Response**:  This paragraph is disputed to the extent it implies a legal conclusion about the adequacy of Defendant's *Vaughn* Index or the validity of Defendant's withholdings, which are not material facts to which Plaintiff must respond.

45.     BOP processed all such records in such a way so as to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions; every effort was made to provide CREW with all reasonably segregable nonexempt information in the

responsive records.  *Id.* ¶ 40.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

46.     BOP provided CREW with such information on September 11, 2020; exempt information was redacted from the records, as described in BOP's *Vaughn* Index.   *Id.*

**Plaintiff's Response**:  This paragraph is disputed to the extent it implies a legal conclusion about the validity of Defendant's withholdings, which is not a material fact to which Plaintiff must respond.  CREW does not dispute that BOP produced documents in response to CREW's FOIA request on September 11, 2020.

47.     In sum, BOP conducted a search of every location where responsive records could reasonably be expected to be maintained and has no reason to believe that responsive records were or are likely to be maintained elsewhere.  *Id.* ¶ 42.

**Plaintiff's Response**:  This paragraph is not disputed.

**V.     OIP'S SEARCH AND PROCESSING OF EMAIL RECORDS**

48.     CREW's request to OIP seeks "all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions" and "includes, but is not limited to, the Office of the Attorney General, the Office of the Deputy Attorney General and the Office of the Associate Attorney General."  Brinkmann Decl. ¶ 10.

**Plaintiff's Response**:  This paragraph is not disputed.

49.     OIP submitted remote electronic search requests of email and computer files for custodians in all three offices (OAG, ODAG, and OASG) on October 2, 2019.   *Id.*[3]

---

[3] CREW's FOIA request requested records from February 14, 2019, "to the present."  Brinkmann

**Plaintiff's Response**:  This paragraph is not disputed.

50.     After litigation commenced on December 14, 2019, the parties agreed that BOP and OIP would prioritize searches for two categories of records: Category 1 pertaining to "contract awards related to the procurement of pentobarbital," and Category 2 pertaining to "requests for information, solicitations, subcontracting leads, and other non-email materials related to the procurement of pentobarbital."  ECF No. 7; Brinkmann Decl. ¶ 11.

**Plaintiff's Response**:  This paragraph is not disputed.

51.     Pursuant to this agreement, OIP initiated contact with knowledgeable officials within OAG, ODAG, and OASG to ascertain whether custodians in their offices were reasonably likely to possess records responsive to Categories 1 or 2.   *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

52.     As a result of these inquiries, OIP was able to report to CREW that each of the three management offices had no hard-copy documents responsive to Categories 1 and 2, but that OIP could not rule out that records responsive to Categories 1 and 2 could be found in an email search. ECF No. 8; Brinkmann Decl. ¶ 11.

**Plaintiff's Response**:  This paragraph is not disputed.

53.     An additional result of information gathered during OIP's discussions with OAG, ODAG, and OASG was that OIP was able to focus the scope of OIP's remaining email and computer hard drive search, through the development of targeted search criteria, and the elimination of any need to search within records maintained by custodians not reasonably likely to possess records responsive to CREW's request.  *Id.* ¶ 12.

**Plaintiff's Response**:  This paragraph is not disputed.

54.     In the DOJ's organizational structure, the Deputy Attorney General advises and

Decl. ¶ 10 & Ex. A.  As such, CREW's request was interpreted as a request for records from February 14, 2019 through October 2, 2019, the date BOP initiated its search.  *Id.* ¶ 12.

assists the Attorney General in formulating and implementing Departmental policies and programs, and in providing overall supervision and direction to all organizational units of the Department, including directly supervising BOP.  *Id*. ¶ 13.

     **Plaintiff's Response**:  This paragraph is not disputed.

55.    The Associate Attorney General, and OASG more broadly, is not in BOP's management chain, so OIP preliminarily determined that OASG custodians were not reasonably likely to have been involved in discussions responsive to CREW's request.  *Id*.

     **Plaintiff's Response**:  This paragraph is not disputed.

56.    However, OIP specifically inquired with OASG to confirm this preliminary determination, and OASG subsequently confirmed that they had no role in issues related to the procurement of drugs for use in federal executions, and therefore no OASG custodian would be reasonably likely to maintain records responsive to CREW's request.  *Id*.

     **Plaintiff's Response**:  This paragraph is not disputed.

57.    Due to this confirmation, made by OASG, that no OASG custodians were reasonably likely to maintain records responsive to CREW's request, OIP eliminated the need to search the records of any OASG custodian.  *Id*.

     **Plaintiff's Response**:  This paragraph is not disputed.

58.    Based on its discussions with OAG, ODAG, and OASG, OIP modified its original search submitted on October 2, 2019.  *Id*. ¶ 14.

     **Plaintiff's Response**:  This paragraph is not disputed.

59.    OIP was able to identify and speak directly with the official who was the primary point of contact in ODAG for BOP and the lethal injection protocol issue during the relevant time periods (i.e., February 14, 2019 to October 2, 2019, when OIP first began its search).  *Id*.¶ 14.

     **Plaintiff's Response**:  This paragraph is not disputed.

60.     As a result of OIP's discussions, OIP was able to target its search to this official's

ODAG records as well as to the records of four additional officials who were in OAG and ODAG

during the relevant time, who were reasonably likely to possess records responsive to CREW's

request.   *Id.*

    **Plaintiff's Response**:  This paragraph is not disputed.

61.     OIP tailored its search to the five officials initially identified as being reasonably

likely to possess records responsive to CREW's request, including the selected senior leadership

employed in OAG and ODAG at the time of the events relevant to this request (i.e., February 14,

2019 to October 2, 2019).   *Id.*

    **Plaintiff's Response**:  This paragraph is not disputed.

62.     For all five custodians, OIP employed a keyword search using the following search

terms: "pentobarbital" and "Nembutal."   *Id.*

    **Plaintiff's Response**:  This paragraph is not disputed.

63.     Additionally, for the custodian that was the primary ODAG point of contact for

lethal injection protocol issues during the relevant times, OIP additionally employed the following

search criteria: searches for all communications within a specified Microsoft Outlook inbox

subfolder which the custodian identified as containing communications pertaining to the death

penalty and execution protocol; and searches for all communications with specific BOP officials.

*Id.*

    **Plaintiff's Response**:  This paragraph is not disputed.

64.     As described below, OIP subsequently searched the email records of two additional

OAG custodians using the search terms "pentobarbital" and "Nembutal," between February 14,

2019 and October 2, 2019.   *Id.*

    **Plaintiff's Response**:  This paragraph is not disputed.

65.     As a result of these email and hard drive searches, OIP located potentially responsive records in its searches and, pursuant to Department regulations, initiated consultations with other offices, including BOP, which were "better able to determine whether the record is exempt from disclosure under the FOIA." *See* 28 C.F.R. 16.4(d); Brinkmann Decl. ¶ 15.

**Plaintiff's Response**:  This paragraph is not disputed.

66.     In the course of processing the records located as a result of its search, OIP continually reviewed the records to identify any additional "leads," in the form of search terms or additional records custodians that might lead to the discovery of additional records responsive to CREW's request.  *Id.* ¶ 19.

**Plaintiff's Response**:  This paragraph is not disputed.

67.     For this case, in the course of reviewing records located during its searches, OIP identified a limited number of instances where responsive material was forwarded to two officials in OAG who not among the five records custodians OIP initially searched.  *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

68.     Upon identifying these officials, and upon recommendation by the ODAG official who was the primary point of contact on these issues, OIP conducted a secondary search of these two OAG officials' email accounts to see if additional records responsive to CREW's request were likely to exist outside of the records OIP's initial search located; no such records were located.  *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

69.     Additionally, after receiving the results of its searches, OIP carefully reviewed the results for any leads indicating that OLP, OLA, or PAO possessed additional records responsive to CREW's request, and, again, identified no such leads.  *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

70.     Further, OIP incorporated information learned during the processing of FOIA

requests not submitted by CREW, to ensure that OIP's searches for records in response to CREW's request were reasonably likely to capture all responsive records. *Id.* ¶ 20.

**Plaintiff's Response**:  This paragraph is not disputed.

71.    In the course of processing records it had located in response to a different FOIA request, OIP identified records located in response to that other search, which also appeared responsive to CREW's request, but that were not yet processed in response to CREW's request. *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

72.    The different FOIA request is broader than CREW's request, and so the searches conducted for records responsive to the different FOIA request were, in every respect, equivalent to or broader than the searches conducted for records responsive to CREW's FOIA request. *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

73.    Upon discovery of these additional responsive records, OIP immediately canvassed all records located during the searches for the different FOIA request, for any additional records responsive to CREW's FOIA request. *Id.* ¶ 21.

**Plaintiff's Response**:  This paragraph is not disputed.

74.    Having identified all such records, OIP immediately re-started the consultation process for these newly-identified records. *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

75.    OIP made a final determination on these records by letter dated November 6, 2020. *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

76.    Further, in an attempt to identify why these records had not been yet processed in response to CREW's request, OIP searched for each of these newly-identified records in the search results pulled in response to CREW's request.    *Id.*

**Plaintiff's Response**:  This paragraph is not disputed.

77.     OIP confirmed that each of these newly-identified records had also been pulled during its prior search for records responsive to CREW's request.   *Id*.

**Plaintiff's Response**:  This paragraph is not disputed.

78.     Ultimately, OIP released a total of twenty-seven pages containing records responsive to CREW's request, with some containing redactions of information exempt from mandatory release under the FOIA.  *Id*. ¶ 15.

**Plaintiff's Response**:  CREW does not dispute that OIP released twenty-seven pages containing records responsive to CREW's FOIA request.  This paragraph is disputed to the extent it implies a legal conclusion about the validity of OIP's withholdings, which is not a material fact to which Plaintiff must respond.

79.     OIP also withheld in full thirteen pages containing records responsive to CREW's request, because those pages are fully exempt from mandatory release under the FOIA.   *Id*.

**Plaintiff's Response**:  CREW does not dispute that OIP withheld in full thirteen pages containing records responsive CREW's FOIA request.  This paragraph is disputed to the extent it implies a legal conclusion about the validity of OIP's withholdings, which is not a material fact to which Plaintiff must respond.

## VI.     APPLICATION OF EXEMPTIONS

### A.     BOP's Application of Exemptions

#### 1.     Exemption 4

80.     Exemption 4 protects "trade secrets and commercial or financial information obtained from a person which is privileged or confidential."  *See* 5 U.S.C. § 552(b)(4).  BOP has applied this exemption to commercial and financial information, as well as to identifying information, included in both email and non-email records responsive to FOIA Request No. 2019-05579, as specifically

described in BOP's *Vaughn* Index.  *Id*. ¶ 43 & Exhibit F.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

### 2.    **Exemption 5**

81.    Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* 5 U.S.C. § 552(b)(5); Christenson Decl. ¶ 61.  BOP has applied this exemption to the following types of email records:

- Iterations of a draft "processing summary" concerning the procurement and proposed use of Pentobarbital, which, as identified in BOP's *Vaughn* Index, *id*. at Exhibit F, was originally prepared by a BOP attorney in preparation for the finalization of the Addendum, as well as in anticipation of litigation concerning the Protocol, *id*. ¶ 85;

- Email communications, as identified in BOP's *Vaughn* Index, *id*. at Exhibit F, between BOP and DOJ attorneys and staff, in which a draft of the processing summary was forwarded for review, updating, and/or editing, or returned with comments and/or revisions, *id*. ¶ 86;

- Communications regarding available testing services and the status of, or descriptions of such services, as identified and described in BOP's *Vaughn* Index, *id*. at Exhibit F, that were generated prior to the finalization of the Addendum, and which reflect discussions among and between staff, *id*. ¶ 87;

- Communications regarding the status of the finalization of BOP's Addendum to its execution Protocol, as identified and described in BOP's *Vaughn* Index, *id*. at

Exhibit F, that were generated prior to the finalization of the Addendum, and which contain discussions among and between BOP and DOJ attorneys and staff regarding the status of the finalization of the Addendum, *id.* ¶88;

- Communications regarding a draft memorandum and the draft memorandum itself concerning the Addendum, as identified and described in BOP's *Vaughn* Index, *id.* at Exhibit F, which was originally prepared by a BOP attorney in preparation for the finalization of the Addendum, as well as in anticipation of litigation concerning the revised Protocol, and which underwent several revisions, edits, and updates based on feedback and editing by other BOP attorneys and staff, *id.* ¶¶ 89-90;

- Communications regarding identifying viable substances for inclusion in the Protocol, as identified and described in BOP's *Vaughn* Index, *id.* at Exhibit F, that were generated as part of BOP's efforts to revise the execution protocol, and which reflect discussions among and between staff, *id.* ¶ 91;

- Communications regarding procurement processes related to Pentobarbital, as identified and described in BOP's *Vaughn* Index, *id.* at Exhibit F, including a draft memorandum concerning BOP's justification for procuring Pentobarbital in a non-traditional manner (other than through full and open competition) that was forwarded a number of times between BOP staff and underwent several revisions based on feedback and editing by other BOP staff, *id.* ¶ 92;

- Communications regarding media inquiries and talking points, as identified and described in BOP's *Vaughn* Index, *id.* at Exhibit F, in which BOP attorneys and staff discussed proposed answers to media inquiries, as well as proposed talking points regarding the death penalty, BOP's Protocol, and the investigation and assessment of viable substances to be included in the Protocol, *id.* ¶ 92.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

82.     The litigation relevant to BOP's invocation of the work-product privilege includes *Roane, et al. v. Gonzales*, No. 05-2337 (D.D.C.); *Robinson v. Mukasey*, No. 07-2145 (D.D.C.); *Bourgeois v. U.S. Dept. of Justice, et al.*, No. 12-00782 (D.D.C.), and *Fulks v. U.S. Dept. of Justice*, No. 13-00938 (D.D.C.), all of which challenged BOP's previous federal execution protocol and each of which was stayed in either 2011 or 2012 as BOP re- evaluated and revised its lethal injection protocol due to the unavailability of sodium thiopental, one of three-drugs used in its previous execution protocol.  *See* Christenson Decl. ¶¶ 70-73.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

83.     It also includes the Master Consolidated Case, *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.), into which all of the above cases were consolidated in 2019, *see* Christenson Decl. ¶ 74, and related litigation stemming from the scheduling of federal executions, *see id*. ¶ 78.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

### 3.     Exemption 6

84.     Exemption (6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); Christenson Decl. ¶ 95.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, this paragraph is not disputed.

85.     BOP has applied this exemption to identifying information throughout every record responsive to CREW's FOIA request.  *Id.* ¶ 96 and Exhibit F.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

86.     Exemption 6 was applied to the following types of information that could be used to identify BOP or DOJ staff involved in some aspect of the execution protocol, third parties who have not consented to the release of their personal identifying information, and information that could be used to identify third party individuals who participated in the sale or potential sale of lethal injection substances to the federal government:

      a.   Names, initials, signatures, email addresses, telephone/fax numbers, job titles, and department titles.

*Id.*

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

### 4.     Exemption 7(A)

87.     Under Exemption (7)(A), an agency may withhold from disclosure records or information compiled for law enforcement purposes, "to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings."  *See* 5 U.S.C. § 552(b)(7)(A); Christenson Decl. ¶ 108.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is not disputed.

88.     BOP has applied this exemption to information that could lead to the identity of those associated with BOP's procurement of Pentobarbital or related critical services during the relevant time.  *Id.* ¶ 121 & Exhibit F.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

### 5.     Exemption 7(C)

89.     Exemption 7(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); Christenson Decl. ¶ 123.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is not disputed.

90.     BOP applied this exemption to the same information in which Exemption 6 was applied.  *See supra* ¶¶ 84-86; Christenson Decl. ¶ 124 & Exhibit F.

 **Plaintiff's Response**:  CREW does not dispute that BOP applied Exemption 7(C) to the same information in which Exemption 6 was applied.  This paragraph is disputed to the extent it implies a legal conclusion about the validity of BOP's withholdings, which is not a material fact to which Plaintiff must respond.

### 6. Exemption 7(E)

91.     Exemption 7(E) protects from disclosure records or information compiled for law enforcement purposes to the extent that disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); Christenson Decl. ¶ 126.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is not disputed.

92.     BOP applied this exemption to information describing the guidelines, techniques and procedures used to obtain Pentobarbital during the relevant time that would reveal the strategy undertaken in order to procure Pentobarbital, and information regarding the method by which BOP procured or attempted to procure Pentobarbital.  Christenson Decl. ¶¶ 127-28 & Exhibit F.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

### 7. Exemption 7(F)

93.     Exemption 7(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which "could reasonably be expected to endanger the life or physical safety of any individual."  *See* 5 U.S.C. § 552(b)(7)(F); Christenson Decl. ¶ 130.  BOP applied this exemption to the same identifying information throughout the records as was described under Exemption 6 and Exemption 7(C).  *See supra* ¶¶ 84-86; Christenson Decl. ¶ 133.

**Plaintiff's Response**:  CREW does not dispute that BOP applied Exemption 7(F) to the same information in which Exemptions 6 and 7(C) were applied.  This paragraph is disputed to the

22

extent it implies a legal conclusion about the validity of BOP's withholdings, which is not a material fact to which Plaintiff must respond.

### B.     OIP's Application of Exemptions

94.     OIP's search in response to CREW's FOIA request located forty pages containing records responsive to the FOIA request.  Brinkmann Decl. ¶ 23.

**Plaintiff's Response**:  This paragraph is not disputed.

95.     OIP withheld thirteen pages in full pursuant to Exemptions 4, 5, 7(A), and 7(E) of the FOIA on behalf of BOP and released eighteen pages in part with certain information withheld pursuant to Exemptions 4, 5, 6, 7(A), 7(C), 7(E) and/or 7(F) of the FOIA.  *Id*. & Exhibit E (OIP's *Vaughn* Index).

**Plaintiff's Response**:  CREW does not dispute that OIP withheld in full thirteen pages responsive to CREW's FOIA request, or that OIP released eighteen pages in part.  This paragraph is disputed to the extent it implies a legal conclusion about the validity of OIP's withholdings, which is not a material fact to which Plaintiff must respond.

96.     Nine pages were released in full.  *Id*.

**Plaintiff's Response**:  This paragraph is not disputed.

### 1.     Exemption 5

97.     Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* 5 U.S.C. § 552(b)(5); Brinkmann Decl. ¶ 24.

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is not disputed.

98.     OIP has protected information within the following records categories pursuant to

the deliberative process privilege:

    a. *Deliberative Discussions Regarding Federal Execution Protocol Addendum* (3 pages), *id*. ¶¶ 26, 28: The withheld information in this category consists of portions of internal email communications among DOJ employees engaged in deliberations over the then-proposed addendum to the Federal Execution Protocol, including characterizing and assessing draft memoranda prepared by BOP related to this proposal as well as recommended edits, and assessments on when BOP would be ready to make its recommendation to the Attorney General, *id*. ¶ 28; the draft memoranda, in turn, were being prepared by BOP to provide relevant information to senior Department leadership related to the proposed addendum to the Federal Execution Protocol, including information related to the procurement of pentobarbital, *id*.;

    b. *Draft Meeting Agenda* (7 pages), *id*. ¶¶ 24, 30: The withheld information in this category consists of an internal draft meeting agenda among ODAG, BOP, and other DOJ components related to the proposed addendum to the Federal Execution Protocol, including issues related to the procurement of pentobarbital, *id*. ¶ 30; and

    c. *Deliberative Discussions Regarding Specific Press Inquiry* (2 pages), *id*. ¶¶ 26, 34: This category of withheld information consists of internal Department discussions connected to the official characterization and release of information related to the Attorney General's federal execution protocol, specifically, how to best respond to press inquiries related to the federal execution policy and the procurement of pentobarbital, *id*. ¶ 34.

    **Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the

paragraph is denied.

### 2.    Exemption 6

99.    Exemption 6 of the FOIA pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of individuals.  Brinkmann Decl. ¶ 40.

   **Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is not disputed.

100.    OIP has protected one category of information pursuant to Exemption 6: *Third-Party Personally Identifiable Information and Contact Information*; specifically, OIP protected a reporter's mobile number and PGP Fingerprint.  *Id*. ¶ 41.

   **Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is not disputed.

101.    OIP conducted a thorough, line-by-line review of each of the records it released in part and released all reasonably segregable, non-exempt information contained within them.  *Id*. ¶ 38.

   **Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

102.    OIP withheld from disclosure only that information which would reveal the Department's pre-decisional, decision-making process—specifically, those portions of emails and documents that would reveal Department staff's internal impressions, opinions, and suggestions on areas of Department policy initiatives or how best to respond to media requests.   *Id.*

**Plaintiff's Response**:  This paragraph sets forth conclusions of law, not a statement of material fact to which Plaintiff must respond.  To the extent a response is deemed required, the paragraph is denied.

**CREW's Statement of Undisputed Material Facts In Support**
**Of Plaintiff's Cross-Motion For Summary Judgment**

I.    **CREW'S FOIA REQUESTS**

   A.    **CREW's FOIA Request to BOP**

   1.    On August 8, 2019, CREW submitted a FOIA request to BOP.  Christenson Decl., Ex. A; Lutkenhaus Decl., Ex. 1.

   2.    CREW's FOIA request sought "all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards." Lutkenhaus Decl., Ex. 1.

   3.    In its request, CREW noted that states using pentobarbital in executions had used "compounding pharmacies" as a means of acquiring the drug, and that compounded drugs may not be reviewed by the FDA for safety, effectiveness, or quality.  CREW cited concerns from attorneys that compounded pentobarbital could expire or degrade over time, potentially causing painful death.  The requested records, CREW explained, would shed light on the government's process in obtaining pentobarbital.  *Id.*

   4.    BOP acknowledged receipt of CREW's FOIA request by letter dated August 14, 2019.  Christenson Decl., Ex. B.

   5.    In a letter dated September 30, 2019, BOP claimed that "any records responsive to [CREW's] request are categorically exempt from disclosure" pursuant to FOIA exemptions 4, 5, 6,

26

7(A), 7(B), 7(C), 7(E), and 7(F), and BOP would therefore not conduct a search for the requested records.  Christenson Decl., Ex. C.

6.       CREW appealed BOP's determination in a letter sent to OIP via certified mail on October 10, 2019.  Lutkenhaus Decl., Ex. 2.

7.       BOP did not respond to CREW's appeal within the time period provided for in the FOIA.  *See* 5 U.S.C. §§ 552(a)(6)(A)(ii), (a)(6)(B).

**B.**       **CREW's FOIA Request to OIP**

8.       On August 9, 2019, CREW sent a FOIA request by facsimile to OIP.  Brinkmann Decl., Ex. A.

9.       CREW's request sought the same types of records as CREW's request to BOP, namely "all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards."  *Id.*

10.       As with its request to BOP, CREW explained that the requested records were likely to contribute to public understanding of the process that the agency intended to use to procure this-difficult-to-obtain drug.  *Id.*

11.       OIP acknowledged receipt of CREW's FOIA request by letter dated September 6, 2019.  OIP indicated that it required more time to come to a determination but provided no timeline for its response.  Brinkmann Decl., Ex. B.

12.       OIP did not respond to CREW's request within the time period provided for in the FOIA.  *See* U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(B).

**II.**       <u>**THIS SUIT**</u>

13.       After BOP's and OIP's statutory response deadlines elapsed, CREW filed this FOIA

suit on December 4, 2019.  ECF No. 1.

14.     Defendant filed an answer on January 15, 2020.  ECF No. 6.

15.     Over the next several months, BOP and OIP searched for and processed responsive records pursuant to a schedule agreed upon by the parties.  *See* ECF Nos. 7-9, 12-13, 15 (joint status reports).

16.     On August 21, 2020, OIP released 15 pages of responsive records to CREW.  Seven pages were released in full and eight pages were released with redactions pursuant to claims under FOIA exemptions 5, 6, 7(A), 7(B), 7(E), and 7(E).  Brinkmann Decl., Ex. C.

17.     On August 25, 2020, OIP revised its August 21 response to remove withholdings based on FOIA exemption 7(B).  OIP also informed CREW that it had located an additional four pages of responsive records, and was withholding these pages in full pursuant to claims under FOIA exemptions 5, 7(A), 7(E), and 7(F).  Brinkmann Decl., Ex. D.

18.     On September 11, 2020, BOP released 45 pages of responsive records to CREW.  Two pages were released in full and 43 pages were released with redactions pursuant to claims under FOIA exemptions 4, 5, 6, 7(A), 7(C), 7(E), and 7(F).  Lutkenhaus Decl., Ex. 3.

19.     On November 6, 2020, OIP revised its August 25 response to alter the exemptions applied to three pages previously released in part.  OIP also informed CREW that it had located an additional 21 pages of responsive records.  It released 12 pages with redactions and withheld the remaining 9 pages pursuant to claims under FOIA exemptions 4, 5, 6, 7(A), 7(C), 7(E), and 7(F).  Brinkmann Decl., Ex. E.

20.     Also on November 6, 2020, BOP informed CREW that it had located 1,095 email records responsive to CREW's FOIA request.  Of the 1,095 records, BOP deemed 848 to be duplicative.  Of the remaining records, BOP released 32 records in full.  BOP also released 153 records with redactions and withheld 62 records pursuant to claims under FOIA exemptions 4, 5, 6,

7(A), 7(C), 7(E), and 7(F).  Lutkenhaus Decl., Ex. 4.


Dated:  December 23, 2020                    Respectfully submitted,

                                             /s/ Jessica A. Lutkenhaus
                                             Jessica A. Lutkenhaus
                                             (D.C. Bar No. 1046749)
                                             Wilmer Cutler Pickering Hale and Dorr LLP
                                             1875 Pennsylvania Avenue NW
                                             Washington, D.C. 20006
                                             Phone: (202) 663-6640
                                             Facsimile: (202) 663-6363
                                             jessica.lutkenhaus@wilmerhale.com

                                             Nikhel S. Sus
                                             (D.C. Bar No. 1017937)
                                             Citizens for Responsibility and
                                                  Ethics in Washington
                                             1101 K St. NW, Suite 201
                                             Washington, D.C. 20005
                                             Telephone: (202) 408-5565
                                             Fax: (202) 588-5020
                                             nsus@citizensforethics.org


                                             *Attorneys for Plaintiff*