# EXHIBIT 2

1

# CREW | citizens for responsibility and ethics in washington

October 10, 2019

Director, Office of Information Policy (OIP)
U.S. Department of Justice
441 G St., NW, Sixth Floor
Washington, D.C. 20001

*Via Certified Mail*

      Re: Appeal of <u>Freedom of Information Act/Privacy Acts Request No: 2019-05579</u>

Dear Director,

      Citizens for Responsibility and Ethics in Washington ("CREW") hereby appeals the August 20, 2019 determination of the Federal Bureau of Prisons ("BoP") in the above-referenced Freedom of Information Act ("FOIA") request.

      On August 8, 2019, CREW submitted a FOIA request to the BoP seeking all records from February 14, 2019 to the present "relating to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions."

      A copy of this request is attached as Exhibit A.

      By letter dated September 30, 2019, Regional Counsel Richard M. Winter asserted that the requested records were exempt from disclosure under FOIA Exemptions (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(B), (b)(7)(C), (b)(7)(E), and (b)(7)(F). A copy of this letter is attached as Exhibit B. As discussed below, the requested records do not fall within any of these exemptions.

      First, at the very least, BoP is required to "provide a specific basis for each withholding."[1] BoP has invoked the above exemptions but has provided no explanation for why or how those exemptions apply beyond merely citing "'bald assertion[s]' that 'amount[] to little more than recitation of the statutory standard[s].'"[2] By not providing more than boilerplate justifications, BoP has not provided a meaningful opportunity to contest its decision.

      Second, BoP makes a blanket statement that the requested information was categorically exempt under all of the exemptions cited without specifying any category of exempt records. The government may assert that a class of documents is categorically exempt from disclosure only when "its definitions of relevant categories are sufficiently distinct to allow a court to determine

---

[1] *Bartko v. U.S. Dep't of Justice*, 62 F.Supp.3d 134, 146-47 (D.D.C. 2014) (quoting *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, 746 F.3d 1082, 1101 (D.C. Cir. 2014)).
[2] *Id.*

whether the specific claimed exemptions are properly applied."[3] In addition, the "range of circumstances included in the category" must "'characteristically support an inference' that the statutory requirements for exemption are satisfied."[4] Here, BoP has completely failed to provide any definition or description of any category, much less a distinct category that would support an inference of exemption. Therefore, BoP's claim of categorical exemption is wholly inappropriate and must fail.

Third, each of the specific exemptions BoP cites fails. We address each exemption in turn.

**Exemption (4)**

BoP asserts that the requested records are exempt under FOIA Exemption 4, which exempts from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."[5] The two categories of records that Exemption 4 protects are (1) trade secrets and (2) commercial or financial information that is both obtained from a person and privileged or confidential.[6]

First, courts define "trade secret" in this context narrowly, as "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort."[7] Disclosing information about procurement does not concern the "productive process" that the trade secret exemption is limited to.[8] Rather, procurement information would concern only the end result of such a process, rather than the process itself.

Second, in order to be properly exempt as the "commercial or financial information, the government must show that the information is also "privileged or confidential." In the rare cases that courts have expounded on the meaning of "privilege," they have found that "privilege" in this context is not synonymous with "confidential" and refers to legal privilege, such as the attorney-client privilege.[9] No such legal privilege would exist here, as attorney, legal, or litigation records are not at issue.

Third, BoP has not adequately justified why the requested information may be "confidential." The Supreme Court recently released new guidance on the meaning of "confidential" in the Exemption 4 context. If "commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential.'"[10] Here, BoP has provided no explanation of its position outside of

---

[3] *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (quoting *Gallant v. NLRB*, 26 F.3d 168. 173 (D.C. Cir. 1994).
[4] *Id.* at 1088-89 (internal citations omitted).
[5] 5 U.S.C. § 552(b)(4) (2006).
[6] *Id.*
[7] *Public Citizen Health Research Group v. Food and Drug Admin*, 704 F.2d 1280, 1288 (D.C. Cir. 1983).
[8] *Center for Auto Safety v. National Highway Traffic Safety Admin.*, 244 F.3d 144, 151 (D.C. App. 2001).
[9] *Washington Post Co. v. U.S. Dep't of Health and Human Services*, 690 F.2d 252, 267 n.50 (D.C. Cir. 1982).
[10] *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019).

mere recitation of the statute, leaving no room to determine whether "confidential" information is at issue here.[11]

**Exemption (5)**

BoP asserts that the requested records are exempt under FOIA Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The Supreme Court has interpreted this exemption to "exempt those documents, and only those documents, normally privileged in the civil discovery context."[12] The agency "must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context."[13] Federal courts may "define new privileges by interpreting "common law principles."[14]

Here, BoP has failed to identify any privilege on which it relies. Therefore, without further reference as to which privilege BoP is invoking, BoP makes any response impossible without further explanation.

BoP also has failed to demonstrate that the documents at issue meet the threshold requirement of constituting inter- or intra-agency communications.

**Exemption (6)**

BoP asserts that the requested records are exempt under FOIA Exemption 6, which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[15] As a threshold matter, the records in question must be either personnel, medical, or "similar" files in order for the exemption to apply.[16] First, neither medical nor personnel files are implicated here. CREW requested procurement information, which would not concern specific medical or personnel information about any individual.

Second, "similar" files would also not be implicated. The Supreme Court has held that records in this category must "appl[y] to a particular individual" because "[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual."[17]

If BoP has somehow found that individual files are somehow implicated here, it must say so with specificity.[18] Otherwise, this exemption fails.

**Exemption 7**

---

[11] *Bartko,* 62 F.Supp.3d at 146-47.

[12] *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975).

[13] *Burka v. U.S. Dep't of Health and Human Services,* 87 F.3d 508, 517 (D.C. Cir. 1996).

[14] *Jaffee v. Redmond,* 518 U.S. 1, 8 (1996).

[15] 5 U.S.C. § 552(b)(6).

[16] *Id.*

[17] *U.S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602 (1982).

[18] *See Bartko,* 62 F.Supp.3d, at 146-47.

First, as a threshold requirement for Exemption 7 subcategories, the agency must "establish that the records at issue were compiled for law enforcement purposes."[19] Absent a showing by, BoP that the "relevant records were compiled for law enforcement purposes,"[20] BoP's reliance on Exemptions 7(A)-(7)(F) is inapposite. However, BoP also fails to establish that the "material satisfies the requirements of . . . the subparts of Exemption 7" it cites.[21]

**Exemption (7)(A)**

BoP asserts that the requested records are exempt under FOIA Exemption (7)(A), which exempts from disclosure "records or information compiled for law enforcement purposes" if "production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."[22] Under this exemption, the "agency must show that release of the records reasonably could be expected to cause some distinct harm to [a] pending or imminent enforcement proceeding or investigation."[23]

Again, BoP has failed to meet its legally required burden and identify any current, pending, or reasonably likely enforcement proceeding or investigation that the requested records could reasonably interfere with, and, if such an enforcement proceeding exists, how the release of records could reasonably harm that proceeding.[24]

**Exemption (7)(B)**

BoP asserts that the requested records are exempted under FOIA Exemption (7)(B), which exempts from disclosure "records or information compiled for law enforcement purposes . . to the extent that the production of such . . . records . . . would deprive a person of a right to a fair trial or an impartial adjudication."[25] This exemption applies narrowly and rarely, and only where the government can show "(1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of the proceedings."[26]

BoP has failed to assert any specific basis for asserting that such a pending or imminent trial exists, much less how disclosure would probably affect such a trial. Therefore, BoP's invocation of Exemption (7)(B) must fail.

**Exemption (7)(C)**

BoP asserts that the requested records are exempt under FOIA Exemption (7)(C), which exempts from disclosure "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[27] This

---

[19] *Banks v. Dep't of Justice*, 700 F.Supp.2d 9, 18 (D.D.C. 2010).

[20] *Id.*

[21] *Id.*

[22] 5 U.S.C. § 552(b)(7)(A).

[23] *Lazaridis v. U.S. Dep't of State*, 934 F.Supp.2d 21, 37 (D.D.C. 2013).

[24] *See Bartko*, 62 F.Supp.3d, at 146-47.

[25] 5 U.S.C. § 552(b)(7)(B).

[26] *Washington Post Co. v. Dep't of Justice*, 863 F.2d 96, 102 (1988).

[27] 5 U.S.C. § 552(b)(7)(C).

exemption has been applied to "protect[] the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants."[28] (7)(C) does not extend the privacy protection to corporations.[29]

First, because CREW has not specifically requested personal information about any individual, any (7)(C) personal information implicated while disclosing procurement information would be easily redactable. Second, any such information would be subject to a public interest balancing test.[30] If (7)(C) records do exist, the privacy interest must outweigh the public interest in disclosure.[31] Finally, BoP has again failed to assert any specific basis that would support its assertion that (7)(C) records are implicated here.[32]

### Exemption (7)(E)

BoP asserts that the requested records are exempt under FOIA Exemption (7)(E), which exempts from disclosure "records or information compiled for law enforcement purposes" if release of those records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[33]

In order to properly justify withholding under this exemption, BoP is required to "at least provide some explanation of what procedures are involved and how they would be disclosed."[34] Because BoP provides nothing more than a "near-verbatim recitation of the statutory standard," BoP's justification for withholding is wholly "inadequate."[35]

### Exemption (7)(F)

Finally, BoP asserts that the requested records are exempt under FOIA Exemption (7)(F), which exempts from disclosure "records or information compiled for law enforcement purposes" that "could reasonably be expected to endanger the life or physical safety of any individual." [36]

In order to properly invoke (7)(F), agencies are required to "identify at least one individual with reasonable specificity and establish that disclosure of the documents could reasonably be expected to endanger that individual."[37] The agency must "explain . . . how release of" the requested information "potentially endangers the life or physical safety of any individual."[38]

---

[28] *Skinner v. U.S. Dep't of Justice*, 744 F.Supp.2d 185, 210-11 (D.D.C. 2010).
[29] *FCC v. AT&T Inc.*, 562 U.S. 397, 409-10 (2011).
[30] *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996)
[31] *Id.*
[32] *See Bartko*, 62 F.Supp.3d, at 146-47.
[33] 5 U.S.C. § 552(b)(7)(E).
[34] *CREW*, 736 F.3d, at 1102.
[35] *Id.*
[36] 5 U.S.C. § 552(b)(7)(F).
[37] *American Civil Liberties Union v. Dep't of Defense*, 543 F.3d 59, 71 (2008), *cert. granted, vacated & remanded on other grounds*, 130 S. Ct. 777 (2009)
[38] *Allen v. Federal Bureau of Prisons*, No. 16-0708, 2019 WL 498804, at *7 (D.D.C. 2019).

Here, BoP does not provide this explanation. Nor does it demonstrate "the requisite nexus between disclosure and possible harm" to an individual.[39] In fact, BoP does not offer any explanation about why or how any individual may be in danger as a result of disclosure. Therefore, BoP's invocation of (7)(F) is inappropriate.

All the agency's boilerplate explanations of the asserted FOIA exemptions therefore fail and its initial decision must be reversed.

Very truly yours,

Anne L. Weismann
Chief FOIA Counsel

Ben Chang
Legal Intern

Encls.

---

[39] *Id.* (quoting *Albuquerque Pub. Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989))

# EXHIBIT A



August 8, 2019

**By Email: OGC_EFOIA@BOP.GOV**

FOIA/PA Section
Office of General Counsel, Room 924
Federal Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534

     Re: <u>Freedom of Information Act Request</u>

Dear FOIA Officer:

  Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and U.S. Department of Justice ("DOJ") regulations.

  CREW requests all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards. Our request includes, but is not limited to, the Office of the Attorney General, the Office of the Deputy Attorney General and the Office of the Associate Attorney General.

  Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records.

  If it is your position any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

**<u>Fee Waiver Request</u>**

In accordance with 5 U.S.C. § 552(a)(4)(A) and DOJ regulations, CREW requests a waiver of fees associated with processing this request for records.  The subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way.  *See* 5 U.S.C. § 552(a)(4)(A)(iii).  Moreover, the request primarily and fundamentally is for non-commercial purposes.  *See, e.g.*, *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

On July 25, 2019, DOJ filed an addendum to the Federal Bureau of Prisons' execution protocol allowing the use of pentobarbital sodium as the lethal agent in federal executions.[1]  The same day, DOJ published a press release confirming that Attorney General William Barr had directed the Federal Bureau of Prisons to adopt the addendum and resume capital punishment after a nearly two decade lapse. The press release states the addendum "closely mirrors protocols used by several states, including currently Georgia, Missouri, and Texas"[2]

States that use pentobarbital in executions, including Texas, have had an increasingly difficult time obtaining the drug. The manufacturer of pentobarbital requires distributors to sign agreements saying they will not sell the drugs to death penalty states.[3] States have subsequently used "compounding pharmacies" as an alternative to licensed manufacturers.[4] This practice poses an acute risk. The FDA has found that many compounders do not register as outsourcing facilities, which are subject to more regulation,[5] yet "were engaged in large-scale, non-patient specific compounding like a conventional manufacturer, without complying with premarket approval, labeling, and current good manufacturing practice (GCMP) requirements for their drugs, or compounders that prepared, packed, or held drugs under insanitary conditions."[6] Attorneys have also "warned that compounded pentobarbital could expire or degrade over time, putting their clients at risk of a painful death that would amount to torture"[7]

The requested records are likely to contribute to public understanding of the process DOJ intends to use to procure an especially difficult to obtain drug, including the extent to which DOJ considered the risks listed above and how they intend to address those risks. The public has a

---

[1] Roane Jr. v. William Barr, Notice of Adoption of Revised Protocol. Civil Action No. 05-2337. Filed July 25, 2019, *available at* https://www.politico.com/f/?id=0000016c-29bc-d88f-a9ec-2dbd798f0000
[2] Press Release, Attorney General William P. Barr Directs the Federal Bureau of Prisons to Adopt an Addendum to the Federal Execution Protocol and Schedule the Executions of Five Death-Row Inmates Convicted of Murdering Children, June 25, 2019, *available at* https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse
[3] Chris McDaniel, Inmates Said The Drug Burned As They Died. This Is How Texas Gets Its Execution Drugs., *Buzzfeed*, November 28, 2018, *available at* https://www.buzzfeednews.com/article/chrismcdaniel/inmates-said-the-drug-burned-as-they-died-this-is-how-texas?bftwnews&utm_term=4ldqpgc#4ldqpgc
[4] Chip Brownlee, The Federal Government Plans to Revive the Death Penalty After 16 Years, *Slate*, July 25, 2019, *available at* https://slate.com/news-and-politics/2019/07/justice-department-bill-barr-orders-revival-federal-executions-lethal-injection.html
[5] FDA, Compounding Laws and Policies, July 13, 2018, *available at* https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies
[6] FDA, Compounding Oversight, June 21, 2018, *available at* https://www.fda.gov/drugs/human-drug-compounding/compounding-oversight
[7] Chris McDaniel, Inmates Said The Drug Burned As They Died. This Is How Texas Gets Its Execution Drugs., *Buzzfeed*, November 28, 2018, *available at* https://www.buzzfeednews.com/article/chrismcdaniel/inmates-said-the-drug-burned-as-they-died-this-is-how-texas?bftwnews&utm_term=4ldqpgc#4ldqpgc

great interest in ensuring the federal government conducts executions in compliance with all constitutional requirements.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code.  CREW is committed to protecting the public's right to be aware of the activities of government officials, to ensuring the integrity of those officials, and to highlighting and working to reduce the influence of money on politics.  CREW uses a combination of research, litigation, and advocacy to advance its mission.  CREW intends to analyze the information responsive to this request and to share its analysis with the public through reports, press releases, or other means.  In addition, CREW will disseminate any documents it acquires from this request to the public through its website, www.citizensforethics.org.  The release of information obtained through this request is not in CREW's financial interest.

CREW further requests that it not be charged search or review fees for this request pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because CREW qualifies as a member of the news media.  *See Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (holding non-profit a "representative of the news media" and broadly interpreting the term to include "any person or organization which regularly publishes or disseminates information to the public").

CREW routinely and systematically disseminates information to the public in several ways.  CREW's website receives tens of thousands of page views every month.  The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues.  In addition, CREW posts the documents it receives under the FOIA on its website.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

## Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (████████ or ██████████  Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such a determination.

Where possible, please produce records in electronic format.  Please send the requested records to me either ████████████████ or Lauren White, Citizens for Responsibility and Ethics in Washington, 1101 K Street, N.W., Suite 201 Washington, D.C. 20005.  Thank you for your assistance in this matter.

Sincerely,

Lauren White

Press Associate

# EXHIBIT B



**U.S. Department of Justice**
**Federal Bureau of Prisons**

*North Central Region*
*North Central Regional Office*
*Kansas City, KS  66101*

September 30, 2019

Lauren White
Citizens for Responsibility and Ethics
1101 K. Street, NW, Suite 201
Washington, DC  20005

Request Number: 2019-05579

Dear Ms. White:

This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you request all records from February 14, 2019 to the present related to the procurement of pentobarbital, pentobarbital sodium, or Nembutal to be used in federal executions, including without limitation any notifications to or communications with vendors, solicitation information, requests for information, subcontracting leads, and contract awards.

We have determined that any records responsive to your request are categorically exempt from disclosure. Accordingly, this Office is not required to conduct a search for the requested records. Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records are withheld in full from disclosure to you under the following exemptions:

(b)(4) – trade secrets and commercial or financial information obtained from a person that is privileged or confidential
(b)(5) - inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency
(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(A) - could reasonably be expected to interfere with law enforcement proceedings
(b)(7)(B) - would deprive a person of a right to a fair trial or an impartial adjudication.
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Please note, exemption (b)(7)(A) is a temporary exemption utilized to protect active and on-going law enforcement proceedings. Because of its temporary nature, you may wish to consider refiling your request for records in the future. Should you chose to refile your request, the status of law enforcement proceedings will be reevaluated and a determination made at that time as to the continued applicability of exemption (b)(7)(A).

If you have questions about this response please feel free to contact me at kchristenson@bop.gov or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at (202) 616-7750, 320 First Street NW, Suite 936, Washington DC 20534, or ogc_efoia@bop.gov.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202)741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20001, or you may submit an appeal through OIP's FOIAonline portal by creating an account at: https://www.foiaonline.gov/foiaonline/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*[signature: for Kara Christenson]*

Richard M. Winter
Regional Counsel