# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| Plaintiff, | |
| v. | No. 19-cv-03626-DLF |
| U.S. DEPARTMENT OF JUSTICE, ET AL., | |
| Defendants. | |

### DECLARATION OF KARA CHRISTENSON

I.      **Preliminary Information**

I, Kara Christenson, do hereby declare and state as follows:

1.      I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP" or "Bureau"), as a Supervisory Government Information Specialist ("GIS") for Central Office, stationed at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester").  I have been assigned as a GIS for Central Office since August 2016 and was recently promoted to Supervisory GIS in March 2023.  Prior to that time, I served as a Paralegal for the North Central Regional Office from September 2008 to August 2016. From June of 1994 through September of 2008, I served as Legal Support Staff for the Legal Department at FMC Rochester.  I have been employed by BOP since March 1992.

2.      I am familiar with the Complaint filed by Plaintiff, Citizens for Responsibility and Ethics in Washington (hereinafter "CREW"), seeking disclosure of records sought through the Freedom of Information Act ("FOIA").  On November 6, 2020, I executed a declaration in the above-referenced case concerning the withholding of information from records released pursuant to CREW's FOIA request. As detailed in my previous declaration, I was assigned to process CREW's

FOIA Request No. 2019-05579, which is the subject of the above-captioned lawsuit. I was assigned to process this request due to my previous position as a GIS, but also due to my prior experience as a paralegal, wherein I provided administrative and litigation assistance regarding death penalty issues. As such, I have first-hand knowledge regarding the scope of documents maintained by BOP related to death penalty issues, as well as the substantive contents of such documents. The statements I make hereinafter are made on the basis of my review of the official files and records of BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

3.      I understand this case has been remanded to the United States District Court for the District of Columbia to further address information withheld by BOP under FOIA Exemption 4. Specifically, this case has been remanded to address: 1) whether the names of contractors involved in supplying pentobarbital are commercial; and 2) whether certain contract terms are confidential; that is, whether the contract terms could reveal the identity of the contractors involved in the supplying of pentobarbital.

II.     **Justification for Application of Exemption 4**

        A. **The Companies' Names are Commercial**

4.      I applied Exemption 4 to withhold the names of companies involved in the supply—including the manufacturing, compounding, or testing—of pentobarbital to be used for lethal injection purposes. In applying Exemption 4 to this information, I identified the names of the companies involved in BOP's procurement of pentobarbital as commercial information. I did so based on my generalized knowledge of commerce and government contracts, as well as my more specific knowledge of the commercial transactions involved in the procurement of pentobarbital. More specifically, I am aware that the government entered into contracts for services and/or products related to the supply of pentobarbital with the companies whose names are redacted from

the records responsive to CREW's FOIA request,[1] and that those companies are or were corporate entities authorized to engage in such business transactions. The contractors that engaged in commercial activities involving the supply of pentobarbital to the federal government did so under the company names that are redacted from the records responsive to CREW's FOIA request. The companies' names were featured prominently in the records responsive to CREW's FOIA request, identifying each as the business entity providing the services and/or products to the federal government. The federal government paid the companies for these services and/or products, either directly or through its contractors.

5.       There are several requirements that a company must satisfy to contract with BOP (or any other part of the government). One such requirement is the registration of a company in the System for Award Management (SAM). Any company wishing to contract with the federal government must be registered in the SAM before a contract may be awarded. The company utilizes its name to register in the SAM, which in turn, allows the government to identify that company as an authorized vendor for government services or products. The company's name, therefore, serves the commercial function of identifying it as an entity authorized to engage in commercial activity with the government, specifically the supply of goods or services to the government. Three of the four companies whose names are redacted from the records responsive to CREW's FOIA request are or were registered through the SAM using the redacted names.

---

[1] Some pentobarbital-related services were provided by independent contractors whom the government did not directly contract with or pay, but who provided critical services on behalf of the government contractors. Records responsive to CREW's FOIA request contained information and records provided by these independent contractors, including identifying information withheld from production pursuant to Exemption 4.

6.      Additionally, it should be noted the United States Patent and Trademark Office's (USPTO) public database known as the Trademark Electronic Search System (TESS)[2] lists at least three of the contractors as companies whose names are trademarked and whose registration includes detailed descriptions of the company name and logo, referred to officially as the "mark." According to the USPTO's website, https://www.uspto.gov, federally registering a trademark provides several benefits to companies including providing "legal protection for your brand" and "proof of ownership" of their commercial property. It also provides "public notice to anyone searching for similar trademarks" and identifies the "goods and services on your registration."

7.      I also applied Exemption 4 to the names of the contractors involved in the supply of pentobarbital for federal executions to withhold the nature of the contractual relationship between the government and the contractors. If the names of the contractors were not redacted from the records responsive to CREW's FOIA request, it would reveal that the companies were engaged in the commercial activity indicated by those records; namely, the commercial activity of assisting in the supply of pentobarbital to the federal government, including the manufacturing, compounding, or testing of pentobarbital. In other words, disclosing the names of the contractors alongside the other commercial information in the records reveals a fact about those contractors' commercial operations—that they are engaged in the manufacturing, compounding, or testing of pentobarbital. Therefore, I withheld any information that would reveal this particular commercial activity (i.e., manufacturing, compounding, or testing of lethal injection drugs).

   **B.  <u>Contract Terms are Confidential</u>**

8.      I applied Exemption 4 to withhold certain contract terms, including drug prices, quantities, expiration dates, invoices, container units, lot numbers, purchase order/reference numbers,

---

[2] https://tmsearch.uspto.gov

substance descriptions, drug concentrations, and dates of purchase, service, and/or delivery. As described above, BOP withheld the names of the companies involved in the supply of pentobarbital to the Bureau in part to keep confidential the commercial activities of those companies regarding the supply of pentobarbital to the government. For the same reason, BOP applied Exemption 4 to any other information that could reveal the identity of the companies, including the specific contract terms as described above. While each of these contract terms on their own do not directly identify any of the Bureau's contractors, I determined that each could be identifying if combined with or compared to other non-exempt information within the records, or with other information already available in the public domain.

9.      I applied Exemption 4 to withhold each of the contract terms described herein, because any single piece of information, or a combination of pieces of information, could reveal the identity of those who supplied such information. By way of example, and as detailed in my previous declaration, I was aware of a July 10, 2020, news article that purported to determine the identity of three laboratories who were allegedly involved in testing compounded pentobarbital intended to be used for federal executions. *See* Exhibit A (July 10, 2020 Reuters Article).[3] According to the article, the identity of the laboratories was discovered by reviewing redacted laboratory reports that the Department of Justice had produced as part of the publicly filed administrative record in *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.). According to the article, the laboratories' company names, logos, and other

---

[3] Jonathan Allen, *Special Report: How the Trump administration secured a secret supply of execution drugs*, REUTERS, (July 10, 2020), https://www.reuters.com/article/us-usa-executionsspecialreport/ special-report-how-the-trump-administration-secured-a-secret-supply-of-executiondrugs-idUSKBN24B1E4. By referring to this article, I am neither confirming nor denying the accuracy of any of the statements made within the article, including whether the identified laboratories were involved in the testing of pentobarbital intended to be used in federal executions.

identifying information were "blacked out," but the news agency claims it was still able to determine the identity of three laboratories.

10.     Following the publication of this article, I reviewed several redacted laboratory reports that were published in the administrative records in *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.). As indicated in the news article referenced above, company names, logos, and other unknown information were redacted from these reports. However, several pieces of data remained, including drug concentrations, quantities, dates of testing, expiration dates, and partial lot numbers.

11.     I was unable, from my review of the redacted reports alone, to identify the company name of the laboratory(ies) who had completed the reports. Therefore, I concluded that the news agency had compared the unredacted information contained in the laboratory reports to information that was already in the public domain, whether it was widely available to the public, or the news agency had obtained through other requests for information. By doing so, the news agency was purportedly able to identify the origin of the information and identify the companies that were involved in the testing of pentobarbital. Therefore, I determined that certain contract terms as described herein, either taken by themselves, or in combination with other pieces of information, could ultimately lead to the identity of the companies involved in the supply of pentobarbital to the government, and applied Exemption 4 to withhold identifying contract terms, specifically drug prices, quantities, expiration dates, invoices, container units, lot numbers, purchase order/reference numbers, substance descriptions, drug concentrations, and dates of purchase, service, and/or delivery contained in the records responsive to CREW's request.

12.     For example, I determined that purchase dates, as documented in contracts and invoices, dates that products were delivered or services were provided, expiration dates, container unit and lot numbers, and dates of email communication concerning purchase, delivery of services and/or

products, expiration dates or container unit and lot numbers, could reveal the identity of pentobarbital-related contractors because this information could be compared with information in public databases, such as the 503B registration system maintained by the U.S. Food and Drug Administration (FDA), the SAM system described above, or the Federal Register, which publishes, among other things, notice of applications received by the Drug Enforcement Agency (DEA) to be an importer or manufacturer of controlled substances such as pentobarbital, as well notices of registrations granted by the DEA.

13.     In filings published in *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.), the government asserted that BOP selected a DEA-registered domestic bulk manufacturer to produce the active pharmaceutical ingredient (API) pentobarbital, and that it selected a DEA-registered compounding pharmacy to store the API and convert it to an injectable form as needed. *See e.g.*, *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.), Doc. 36 at 9, 40; Doc. 39-1 at 4–5, 872; and Doc. 246 at 5–6, 29. In addition, the government asserted that the pharmacy was also registered with the FDA as a Section 503B facility. *Id.* at Doc. 36 at 40; Doc. 246 at 5–6, 29. The FDA maintains a list of facilities that have submitted 503B registrations, and that information is or was available publicly and searchable on the internet. *See* FDA, *Registered Outsourcing Facilities* (last updated June 20, 2023), https://perma.cc/CN7E-4RTS. For example, I conducted an internet search that revealed a table of less than 80 companies registered as 503B registered outsourcing facilities as of June 20, 2023. Similarly, applications submitted to the DEA to register as a bulk manufacturer of controlled substances, such as pentobarbital, are published in the Federal Register, and such information is or was available publicly and searchable on the internet. *See* Federal Register, The Daily Journal of the United States Government (last updated July 19, 2023), https://www.federalregister.gov. For example, I conducted a search for notices pertaining to the

DEA on the Federal Register website for "bulk manufacturer and pentobarbital," which revealed 486 relevant documents, dating back to the year 1994 as of July 19, 2023. As such, I determined that a simple internet search of FDA or DEA registrations as published in the Federal Register could significantly narrow the list of potential companies involved in the supply of pentobarbital to the government.

14.    Armed with additional details, such as dates of purchase, testing, delivery of services and/or products, dates of email exchanges, expiration dates, container units and lot numbers, the list of potential contractors could be narrowed even further or could directly identify a particular pentobarbital supplier. For example, the SAM could be used for this purpose. As described above, in order to enter into a contract with the federal government, a company must be registered in the SAM. The SAM is searchable and reveals the date a registration is submitted and the expiration date of the company's registration. A company known to compound, manufacture, test, or distribute pentobarbital, as gathered from searching FDA or Federal Register resources, could be searched for on the SAM. If the dates of purchase, payment for services, or the delivery of product and/or services was known, those dates could be compared to and cross-referenced with the dates that a particular company registered in the SAM, and a specific company involved in either the testing or manufacturing of pentobarbital could be determined. Similarly, it would be very easy to cross-reference dates of DEA registration as published in the Federal Register with dates of purchase, testing or delivery of services and/or product, in order to narrow down or pinpoint exactly who was involved in supplying pentobarbital to the federal government.

15.    Expiration dates and container unit and lot numbers could also be cross-referenced with FDA, SAM, and Federal Register resources as discussed above, to reveal the identity of pentobarbital contractors, because these terms are formulated based on the date of production and/or testing of the product. The expiration dates or container unit and lot numbers could easily

be reformulated into dates of purchase and or testing, and could be cross-referenced with FDA, SAM, and Federal Register systems in order to identify the government's pentobarbital contractors as described above. Similarly, the dates of email communication during which the purchase, testing, or delivery of pentobarbital was discussed could be cross-referenced with the same databases to reveal the identity of the contractors. For example, the date of an email communication to which a purchase order or contract was attached would reveal the date of purchase, which as described above, could be cross-referenced with dates in the SAM or dates published in the Federal Register concerning DEA applications and registrations. As such, I applied Exemption 4 to all dates of invoices, contracts, purchase, testing, service dates and/or delivery dates, as well as expiration dates, dates of email communication related to the same, and container unit and lot numbers throughout the responsive records.

16.     I also applied Exemption 4 to the remaining contract terms, which are drug pricing,[4] substance descriptions, including quantities and concentrations, purchase order/reference numbers, and invoices,[5] because each could be used, in combination with other information, to

---

[4] Exemption 4 was applied to withhold drug pricing not only because it could be identifying, but also because it constitutes confidential commercial information on its own. Specifically, in my previously executed  declaration, I indicated that "Exemption 4 was also applied to confidential commercial or financial information (including information reformulated into government records by using information provided by such sources), such as price and contract term negotiations, pricing and business strategies, instructions for ordering and purchase, unique order and purchase requirements, and production and/or testing capability, to include formulas, quantity, timing of production and/or testing, and specific production/testing methods or standards." Decl. of Kara Christenson ¶ 49, ECF No. 17-4 ("1st Christenson Decl."). Because the basis for withholding this information was not premised solely on its identifying nature, and because CREW does not contest the withholding of this information on any other basis, drug pricing does not appear to be at issue on remand.

[5] Exemption 4 was applied to invoices, not only because it could be identifying, but also because it constitutes confidential commercial information on its own. Specifically, in my previously executed declaration, I indicated that "Exemption 4 was also applied to withhold, in full, invoices, quotations, and protocols for third-party testing services, as well as test results, as these documents reflect price and contract term negotiations, specific methods of testing, and detailed descriptions

identify the contractors redacted from the responsive records. For example, another government reporting system that is available for public access is the Federal Procurement Data System, also referred to as the FPDS-NG system. *See* General Services Administration, *Federal Procurement Data System* (last accessed July 5, 2023), https://perma.cc/XH5X-DPXU. This system publicizes government contracts and is easily searchable by company name, government entity, or topic. Search results include a plethora of information, including contract dates, amounts obligated and paid, funding ID numbers, entity ID numbers, procurement ID numbers, reference numbers, business information, contract type, product codes, and descriptions of services and/or products provided, amongst other information.

17.    If the contract terms redacted from the responsive records at issue in this case were to be unredacted, the information could be compared to information contained in the FPDS-NG reporting system based on other government contracts entered into by specific companies and could be used to confirm the identities of those involved in the supply of pentobarbital to the federal government. For example, if a company known to sell or test pentobarbital entered into a government contract with another government entity, the information contained in the FPDS-NG system could be compared, line-by-line, with the information sought to be protected here. Contract terms such as pricing and purchase order/reference numbers are likely to be unique, but also consistent, for each contract entered into by a particular company. For example, I reviewed contract awards involving one of BOP's pentobarbital contractors and a different government agency. Over the course of several years, the contractor entered into multiple separate contacts to supply products to another government agency. Each contract, although awarded on completely

---

of how testing was or can be completed, including formulas, quantities and time frames required for testing." 1st Christenson Decl. ¶ 50.  Because the basis for withholding this information was not premised solely on its identifying nature, and because CREW does not contest the withholding of this information on any other basis, invoices do not appear to be at issue on remand.

separate dates, contained the same obligation amount for the products. Pricing patterns such as the one I easily identified using the FPDS-NG system, could similarly be found by entering the known names of businesses registered to manufacture or distribute pentobarbital (as gleaned from FDA, SAM, and Federal Register resources described above) into the FPDS-NG system and comparing the resulting information to the withheld contract information, such as drug prices or product/reference numbers.

18.     Taking this process one step further, a request (for example, through FOIA) for a copy of a contract reported in the FPDS-NG system could be made, and information such as purchase orders/reference numbers from the contracts could easily be compared to the purchase order/reference numbers redacted from the records responsive to CREW's request, to identify similarities in assigning such numbers. Similarly, substance descriptions, including quantities and concentrations, could be compared to substance descriptions found in other government contracts or invoices, which could be easily obtained by submitting a FOIA request for information gleaned from the FPDS-NG system.

19.     In addition to the specific contract terms that could be compared to information contained in other contracts, the mere formatting or style of a contract or invoice could be revealing when compared to other contracts or invoices created by a pentobarbital supplier. In my experience, companies utilize unique invoicing systems, formats, or style when formulating an invoice or entering into a contract. These often contain the company's logo if they have one, slogans, or other characteristics, such as color, design, or font that are unique to that company. It is also my experience that the unique format is incorporated into all invoices, and would be utilized consistently, even when prepared for different purposes. As such, if the style or formatting of an invoice or contract from a particular company was already known, it could be compared and cross-referenced to the information redacted from the records responsive to CREW's FOIA request.

Each unique piece of information, whether it be a date, a product/reference number, a substance description, or a price, could be compared to similar pieces of information created by the contractor in other matters. Given the relatively small number of companies involved in the manufacture, compounding, or testing of pentobarbital, these comparisons could easily identify those involved in the supply of pentobarbital to the government. As such, I applied Exemption 4 to contract terms that could be used to identify the government's pentobarbital contractors, including drug pricing, substance descriptions, including quantities and concentrations, purchase order/reference numbers, and invoices throughout the responsive records.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this __21st__ day of July 2023.


Kara Christenson
Central Office Supervisory FOIA GIS
Rochester, MN

**TABLE OF EXHIBITS**

| A | July 10, 2020 REUTERS Article |
|---|-------------------------------|
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |
|   |                               |